No. 25-2120

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

NATIONAL TPS ALLIANCE, et al.,
*Appellees,*

v.

KRISTI NOEM, et al.,
*Appellants.*

————————————

On Appeal from the United States District Court
for the Northern District of California
District Court Case No. 3:25-cv-1766

————————————

EMERGENCY MOTION PURSUANT TO CIRCUIT RULE 27-3

APPELLANTS' MOTION
FOR A STAY
PENDING APPEAL

(Relief requested by April 15, 2025)

————————————

## INTRODUCTION

This appeal involves an extraordinary intrusion by a district court into the Secretary's administration of the TPS statute. In the last days of the Biden Administration, former Secretary Mayorkas consolidated two separate TPS designations relating to Venezuela and extended them as long as possible, transparently attempting to bind President Trump and Secretary Noem to the former administration's immigration policy. Secretary Noem properly vacated that consolidation and extension and, after evaluating national security and other legitimate policy interests, took the statutorily authorized action of terminating Venezuela's 2023 TPS designation as contrary to the "national interest." 8 U.S.C. § 1254a(b)(1)(C). The Secretary's vacatur and termination determinations are expressly shielded from judicial review by 8 U.S.C. § 1254a(b)(5)(A), and no court (besides the Supreme Court) has jurisdiction to "enjoin or restrain" the TPS statute or the removals of the non-party Venezuelan beneficiaries, *id.* § 1252(f)(1).

Nonetheless, the district court proceeded to issue sweeping preliminary relief that, in effect, overrides the Secretary's determinations. In doing so, the district judge largely replicated his own prior decision from 2018—which a panel of this Court *reversed* before the litigation became moot. Consistent with his own prior ruling—but not the statutes or established legal principles—the district court disregarded the jurisdictional bars and purported to "postpone" the Secretary's actions nationwide.

1

The district court's order is flawed on numerous independent grounds. It ignored the plain text of the TPS statute's bar on judicial review. It contravened the basic principle of administrative law that agencies have inherent authority to reconsider prior actions before they take effect. It found likely success under the Equal Protection Clause based on a mish-mash of "evidence" remote in time and taken out of context— none of which had anything to do with the Secretary's rational and reasoned policy determination to end TPS for Venezuela. And it then entered nationwide relief— overriding Secretary Noem's assessment of the national interest and elevating a single district judge to control the nation's immigration policy, while stifling litigation in other courts addressing the same issues. This order imposes ongoing and irreparable harm to the Executive's ability to enforce immigration law. This Court should stay that order pending appeal.

## BACKGROUND

**The TPS Mechanism.** The Secretary, "after consultation with appropriate agencies[,]" may designate a country for TPS if, among other bases, there are "extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(C).

Aliens covered by TPS are eligible for work authorization and may not be removed. *Id.* § 1254a(a). Initial TPS designations are discretionary, and the Secretary

must conduct periodic reviews to determine whether the conditions underlying a TPS designation continue to be met. *Id.* § 1254a(b)(2), (b)(3)(A). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C). But if the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation." *Id.* § 1254a(b)(3)(B).

The TPS statute leaves the sensitive judgment calls about the government's national interest in the Secretary's hands. It bars judicial review of her TPS determinations, in plain terms: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A).

**Secretary Mayorkas's TPS Determinations.** Venezuela was initially designated for TPS in 2021 based on extraordinary and temporary conditions that prevented Venezuelans from safely returning. *Designation of Venez. for [TPS] and Implementation of Emp. Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 Fed. Reg. 13,574 (Mar. 9, 2021) ("2021 Designation").

On October 3, 2023, Secretary Mayorkas extended the 2021 Designation through September 10, 2025, and at the same time redesignated Venezuela for TPS until April 2, 2025. *Extension and Redesignation of Venez. for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023) (hereinafter "2023 Designation").

3

On January 17, 2025—the last Friday of the Biden Administration—Secretary Mayorkas published notification that he extended the 2023 Designation for 18 months, effective on April 3, 2025, and established a consolidated filing process that allowed all Venezuela TPS beneficiaries to obtain TPS through the expiration of that extension (*i.e.*, until October 2, 2026). *See Extension of the 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025) ("2025 Extension").

**Secretary Noem's TPS Determinations.** On January 28, 2025, Secretary Noem vacated the 2025 Extension, because both the consolidation of the two tracks and the premature extension failed to "acknowledge the novelty of its approach" or "explain how it is consistent with the TPS statute." *Vacatur of 2025 TPS Decision for Venez.*, 90 Fed. Reg. 8,805 (Feb. 3, 2025) ("2025 Vacatur"). The 2025 Vacatur took effect immediately.

On February 5, 2025, after consulting with relevant agencies, Secretary Noem reviewed and terminated Venezuela's 2023 Designation because she determined it was "contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States." *Termination of the October 3, 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 9,040, 9,041 (Feb. 5, 2025) ("2025 Termination"); 8 U.S.C. § 1254a(b)(1)(C). Consistent with the statutory timelines, the 2025 Termination was scheduled to become effective on April 7, 2025. *Id.*

**This Litigation.** The National TPS Alliance and seven individual Appellees challenged the Secretary's 2025 Vacatur and Termination determinations under the

4

Administrative Procedure Act (APA) and moved to postpone the effective date of both determinations. *See* Dkt. 1. On March 31, the district court granted Appellees' motion and purported to postpone the 2025 Vacatur and Termination, nationwide. Dkt. 93. The district court denied the government's motion to stay. Dkt. 102.

On April 1, the government appealed. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) because the district court's interlocutory order has the same effect as a preliminary injunction. *See, e.g., Abbot v. Perez*, 585 U.S. 579, 595 (2018) ("[W]e have not allowed district courts to shield their orders from appellate review by avoiding the label injunction") (cleaned up).

## ARGUMENT

## THIS COURT SHOULD STAY THE DISTRICT COURT'S NATIONWIDE ORDER WHILE THIS APPEAL IS PENDING

The government is very likely to succeed in challenging the district court's impermissible intrusion into the Secretary's administration of TPS. The remaining stay factors likewise favor the government. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (discussing the stay standard); *City & Cnty. of S.F. v. USCIS*, 944 F.3d 773, 789 (9th Cir. 2019). This Court should accordingly stay the district court's order pending appeal.

## I.    The Government Is Likely to Succeed on Appeal

The district court's order will not survive appeal. Most fundamentally, the court had no power to review the Secretary's determinations in the first place; the TPS statute's express jurisdictional bar shields these determinations from judicial review.

5

Even if they were subject to review, the district court erroneously held that the Secretary lacked authority to reconsider her predecessor's last-minute (and not yet effective) TPS **decision** and erred again by looking to campaign statements and years-old remarks to discern an illicit discriminatory purpose for facially legitimate policy determinations. And the court then doubled down by sidestepping another jurisdictional barrier, this time in 8 U.S.C. § 1252(f)(1), to grant inappropriate nationwide relief.

### A. The TPS statute precludes judicial review of the Secretary's termination and vacatur determinations

At the threshold, the district court's order should be stayed because 8 U.S.C. § 1254a(b)(5)(A) expressly bars review of the Secretary's determinations relating to extension or termination of TPS designations, and both the 2025 Termination and 2025 Vacatur determinations fall squarely into that category. The TPS statute forbids "judicial review" of "any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). There can be no serious question that Secretary Noem's termination and vacatur orders are not such determinations.

**1.** Section 1254a plainly precludes judicial review of the Secretary's 2025 Termination because it is a "determination ... with respect to ... the termination" of the 2021 and 2023 TPS designations for Venezuela. *See 2025 Vacatur*, 90 Fed. Reg. 8,805. Indeed, the Supreme Court held that materially similar jurisdiction stripping language in the INA precludes a whole category of judicial review. *Patel v. Garland*, 596 U.S. 328,

337-40 (2022) (statutes barring review of "any judgment regarding the granting of relief" covers "any authoritative decision" on the matter). Because the Secretary's determination to terminate the 2023 Venezuela designation was clearly a determination, "with respect to" the TPS extension or termination, the district court lacked jurisdiction to review it.

In a since-vacated decision, this Court held that the statute "preclude[s] direct review of the Secretary's country-specific TPS determinations." *Ramos v. Wolf*, 975 F.3d 872, 889 (9th Cir. 2020).[1] That leads to the same result: Terminating Venezuela's 2023 TPS designation was a country-specific TPS determination on any view.

**2.** The Secretary's 2025 Vacatur likewise falls within § 1254a(b)(5)(A)'s bar. A determination to vacate an extension of a designation is undoubtedly a determination "with respect to" the "extension of a designation." 8 U.S.C. § 1254a(b)(5)(A); *see Merriam-Webster's Dictionary* (2025), Determination ("the act of deciding definitely and firmly"); *The American Heritage Dictionary* (2022), Determination ("The act of making or arriving at a decision[;] … The decision reached[;] … The settling of a question … by an authoritative decision or pronouncement"). That determination is therefore not

---

[1] The panel's opinion was vacated on rehearing, 59 F.4th 1010, 1011 (9th Cir. 2023), but the case then became moot. A vacated decision, however, "still carries informational and perhaps even persuasive precedential value." *DHX Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1176 (9th Cir. 2005).

subject to judicial review—period. *See Patel*, 596 U.S. at 338 (acknowledging importance of broadening terms "any" and "regarding" in similar jurisdiction-stripping provision).

The application of § 1254a(b)(5)(A)'s bar on judicial review is not complicated. Plaintiffs challenged the Secretary's 2025 Vacatur and 2025 Termination determinations. But both were with respect to "termination or extension of a [TPS] designation." 8 U.S.C. § 1254a(b)(5)(A). The district court thus lacked jurisdiction to review them and this Court need look no further to conclude that the district court likely erred.

The district court never explained, Dkt. 93 at 23-37, why review of the 2025 termination was available despite concluding that a 5 U.S.C. § 705 order was proper because Appellees ultimately sought "postponement of . . . the actual termination of the 2023 TPS Designation[.]" Dkt. 93 at 28. To the contrary, its entire discussion of § 1254a(b)(5)(A)'s judicial-review bar was limited to the 2025 Vacatur. *See* ECF 93 at 25-27. At minimum, then, the Court should stay the district court's order with respect to the 2025 Termination.

As to the 2025 Vacatur, the district court did offer a rationale, but one that is irreconcilable with the statutory text. The court said a "decision to vacate" is not "literally and textually" a "designation, or termination or extension of a designation." ECF 93 at 25. That is true but legally irrelevant. The statute bars review as to a determination "*with respect to*" such an action. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). Vacating an extension is plainly a determination "with respect to" the extension.

8

The district court also reasoned that it could review the legal question whether the Secretary has the statutory authority to vacate an extension. ECF 93 at 23. Even if that were true (it is not), the court got the answer wrong. *Infra*, Part I.B. Section 1254a(b)(5)(A) bars review of "any determination" by the Secretary, and the 2025 Vacatur is such a determination. The question is not whether a particular *legal issue* is reviewable, but rather whether this *determination* is reviewable. It is not. And it does not become reviewable by an allegation that it is unlawful in some respect—the whole point of a judicial-review bar is to preclude those inquiries.

The court's reliance on a purported "concession" at argument is unavailing. *See* ECF 93 at 23. For one thing, jurisdictional arguments cannot be waived or forfeited. *See Wilkins v. United States*, 598 U.S. 152, 157-58 (2023). For another, the government did not concede anything. The government expressly argued that "Secretary Noem's Vacatur of the 2025 Extension falls well within the statute's 'any determination' language" and thus "§ 1254a(b)(5)(A) eliminates … jurisdiction." ECF 60, at 13. At the hearing, the government again reiterated that the Secretary's "decision to vacate" is "swept up under 1254a(b)(5)(A)." Hr'g Tr. 50. Subsequent exchanges addressed why Plaintiffs' claims failed even under district court's prior ruling in *Ramos*, but the government did not concede that any review of the 2025 Vacatur is permissible. Again, the statute expressly provides that there is "no judicial review" of determinations like this one. 8 U.S.C. § 1254a(b)(5)(A). That alone is dispositive.

**B. The Secretary has inherent authority to reconsider past actions**

In evading the judicial-review bar, the district court focused on the 2025 Vacatur and concluded that review was permissible as to whether the Secretary has the authority to vacate past actions in the first place. ECF 93 at 23, 26-27. For the reasons explained above, that attempt to circumvent the jurisdiction-stripping statute is misdirected. Regardless, the court also erred by concluding that Secretary Noem lacked authority to reconsider Secretary Mayorkas's unreasoned decision to effectively consolidate and extend Venezuela's TPS designations for all Venezuelans.

Statutory authorization to issue a benefit "must be understood as carrying with it an implied incidental authority" to revoke the benefit, *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1143 (9th Cir. 2024), especially because the TPS statute gives the Secretary discretion over both the length of a TPS designation and the timing of periodic review, 8 U.S.C. § 1254a(b)(3)(A)-(C). *See Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (collecting cases and explaining that "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions, at least if done in a timely fashion.").

Here, Secretary Noem acted promptly to reconsider Secretary Mayorkas's last-minute TPS extension—less than two weeks later—and did so months before the extension's effective date of April 3, 2025. If agencies hold *any* inherent power to reconsider past actions, as the law says they do, this was, as Secretary Mayorkas previously recognized, a quintessential exercise. *See Reconsideration and Rescission of*

10

*Termination of the Designation of El Salvador for [TPS]; Extension of the [TPS] Designation for El Salvador*, 88 Fed. Reg. 40,282, 40,285 & n.16 (June 21, 2023).

Contrary to the district court's reasoning, nothing in the statute implicitly limits the Secretary's inherent power in this regard. The TPS statute imposes no deadlines or timeframes for modifying or vacating a deficient extension, especially one that is not yet effective. Nor does the statute provide any timeframes relevant to consolidation of two different TPS designations that could prevent reconsideration of a consolidation decision; indeed, the statute does not discuss such a consolidation at all (which was among Secretary Noem's concerns). The district court's reasoning that the presence of *some* temporal limitations forecloses authority to reconsider *any* decisions simply does not withstand scrutiny. *See* ECF 93 at 50-52.

### C. Secretary Noem's determinations did not violate Equal Protection Principles

Appellees' claim that the 2025 Vacatur and Termination were motivated by racial animus is just as baseless as when this Court rejected their similar arguments in *Ramos*, 975 F.3d at 897. The Supreme Court has been clear that where, as here, a decision is based on a national interest finding, courts cannot look behind facially legitimate actions to hunt for illicit purposes. *See Trump v. Hawaii*, 585 U.S. 667 (2018). Nor could the district court's conclusion withstand review on any standard.

**1.** The deferential standard set out in *Trump v. Hawaii* applies here, and the Secretary's decisions easily pass muster under it. *Hawaii*'s deferential rational-basis

11

standard governs these immigration policy decisions, which depend upon the Secretary's determination of the national interest. *See id.* at 684 (considering determination "that entry of the covered aliens would be detrimental to the national interest"); *Poursina v. USCIS*, 936 F.3d 868, 871 (9th Cir. 2019) ("invocation of the 'national interest' is a core example of a consideration that lacks a judicially manageable standard or review"); *Id.* at 874 (INA "'national interest' . . . determinations are firmly committed to the discretion of the Executive Branch—not to federal courts"). *Hawaii* made clear that courts are "highly constrained" in this context; any "'rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution.'" 585 U.S. at 704. If "there is persuasive evidence that the [decision] has a legitimate grounding in national security concerns," courts "must accept that independent justification." *Id.* at 706.

The Secretary's actions readily pass that test. Secretary Noem consulted with appropriate governmental agencies, including the Department of State, and determined that prolonging Venezuela's TPS designation was contrary to the national interest in light of factors—such as gang activity and public safety concerns, adverse impact on U.S. communities, foreign policy interests, immigration and border policies, and the potential magnet effect of TPS on illegal immigration of Venezuelans—that are rational and related to the Government's legitimate interests in immigration, national security, and foreign policy. *2025 Termination*, 90 Fed. Reg. at 9040, 9042-43. Because the

12

Secretary's determination is strongly related, let alone "plausibly related," to those interests and TPS's objectives, the district court erred by looking behind it to find an Equal Protection violation. *Hawaii*, 585 U.S. at 704-05; Dkt. 93 at 61.

**2.** Even under the standard set forth in *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977), the Equal Protection claim is still baseless. Under that test, Appellees must prove that a racially "discriminatory purpose [was] a motivating factor in the [government's] decision"—something that they cannot do through statements taken out of context and without direct links to the Secretary's determinations. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34-35 (2020) (explaining that disparate impact, unusual recission history, and pre- and post-election statements failed "to raise a plausible inference that the recission was motivated by animus").

Here, the paucity of evidence of an invidious discriminatory purpose is underscored by Appellees' invocation of a "cat's paw" theory, which this Court previously rejected. *Ramos*, 975 F.3d at 889 (emphasizing Appellees' failure to "provide any case where such a theory of liability has been extended to governmental decisions in the foreign policy and national security realm").

The district court invoked quotes, social media posts, and media appearances from the Secretary and the President to suggest discriminatory motives for the 2025 Vacatur and Termination. Yet some of these quotes date back *years*, long before Venezuela was ever designated for TPS in the first instance. *See* Dkt. 93 at 66. Some—similar to statements challenged and rejected in *Hawaii*—arose on the campaign trail.

13

And, in any event, none reflect animus based on race or national origin; they are instead taken grossly out of context. For example, the court thought Secretary Noem referred to Venezuelans as "dirtbags"—despite clear context indicating she was referring to members of the violent, terrorist Tren de Aragua gang, not Venezuelans writ large. Dkt. 93 at 65.

President Trump and Secretary Noem seek to reduce illegal immigration and crime—policy goals that are reflected in their public statements and that Americans elected President Trump to prioritize. But the district court's reasoning would leave virtually any immigration policy adopted by this Administration susceptible to an Equal Protection challenge. That is untenable. Even if the *Arlington Heights* test applied, the government is very likely to prevail on the equal protection claim.

### D. The Court's Order Violates 8 U.S.C. § 1252(f)(1)

The district court also violated the specific restrictions on relief found in 8 U.S.C. § 1252(f)(1). Congress provided that:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 [(IIRIRA)], other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). This provision "generally prohibits lower courts from entering injunctions that order federal officials to take or refrain from taking actions to enforce,

14

implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). The TPS statute is a covered provision. IIRIRA, div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546; *see Galvez v. Jaddou*, 52 F.4th 821, 830 (9th Cir. 2022*)* ("[T]he text of the United States Code cannot prevail over the Statutes at Large when the two are inconsistent.") (cleaned up). And no one argues that the district court's sweeping order falls within § 1252(f)(1)'s "individual proceedings" exception.

Critically, the court failed to acknowledge that § 1252(f)(1)'s prohibition applies "[r]egardless of the nature of the action or claim," and that it applies not just to injunctions but also to any order that "restrain[s]" the Secretary. *Cf. Abbott*, 585 U.S. at 595 ("[W]e have not allowed district courts to shield their orders from appellate review by avoiding the label injunction") (cleaned up); *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (statute barring court orders that "suspend or restrain" tax collection stripped jurisdiction to enter injunctions or declaratory relief).

The district court tried to evade § 1252(f)(1) by styling its order as postponing the effective date of agency action under 5 U.S.C. § 705. That does not work on its own terms, however, because the 2025 Vacatur became "effective immediately." *2025 Vacatur*, 90 Fed. Reg. at 8,806. The court could not postpone an action that had already occurred. *See Graddick v. Newman*, 453 U.S. 928, 936 (1981) (Powell, J., opinion regarding a stay denial) ("I believe that Graddick's request for a 'stay' is now moot. Ordinary

15

linguistic usage suggests that an order, once executed, cannot be 'stayed.'"); *Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 204-05 (D.D.C. 2022) (concluding that postponement is inapposite, for courts or agencies, "once a rule has taken effect"). Even the district court acknowledged that what Plaintiffs "are ultimately seeking is postponement of … the actual termination of the 2023 TPS Designation." Dkt. 93 at 28. So at minimum, the district court's purported postponement order should not be permitted to operate on the already-effective 2025 Vacatur.

Regardless of label, the district court's order impermissibly "restrain[s]" the Secretary from exercising her authority under the TPS statute, compels the Secretary to expend finite resources implementing a TPS designation that is contrary to the national interest, and precludes officials from enforcing immigration law how they deem appropriate. *See Biden v. Texas*, 597 U.S. 785, 788 (2022) (explaining that a district court injunction requiring the government to take action "violated" § 1252(f)); *Aleman Gonzalez*, 596 U.S. at 549 ("restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action) (cleaned up). The district court's analysis of the injunction factors, Dkt. 93 at 31-37, removes any doubt that postponement impermissibly amounts to an injunction—another ground for staying this sweeping order.

\*      \*      \*

The district court evaded two jurisdictional bars to review the Secretary's determinations and badly erred on the merits. The result is that a single judge took

16

charge of federal immigration policy with respect to Venezuela and supplanted the Executive's authority over sensitive determinations of the national interest of the United States. This Court is likely to reverse, and it should therefore correct the district court's overreach by granting a stay pending appeal.

## II. The Equitable Factors Favor a Stay Pending Appeal

The remaining stay factors, which merge here, weigh in favor of a stay pending appeal. *Nken*, 556 U.S. at 435. The district court's order irreparably injures the Executive and the public interest by supplanting the Secretary's discretion-laden judgment about whether extending the 2023 TPS Designation for 348,202 Venezuelans was in the national interest, where doing, *inter alia*, posed serious public safety concerns, strained local resources, and encouraged illegal immigration. *2025 Termination*, 90 Fed. Reg. at 9,041; *see Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (noting that the government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people."). That injury is especially acute here because rules and policies governing immigration "implement[] an inherent executive power." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). The district court's order "is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assist. Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (granting a stay).

17

In contrast, a stay will not irreparably harm Appellees. Congress designed the TPS statute to provide "temporary" status, 8 U.S.C. §§ 1254a(b)(1)(B)(i), (b)(1)(B)(ii), (b)(1)(C), (g), and the Secretary's 2025 Termination provided the requisite 60-day notice that the 2023 Designation would terminate. Thus, Appellees' alleged economic harms are inherent in the scheme *Congress* designed. 8 U.S.C. § 1254a(b)(3)(B); *see Sampson*, 415 U.S. at 90 ("Mere injuries, however, substantial, in terms of money, time and energy necessarily expended ... are not enough."); Dkt. 16 at 22.

Appellees' speculative concern about their future immigration status cannot establish irreparable harm either, because neither the 2025 Vacatur nor Termination is equivalent to a final removal order. 8 U.S.C. §§ 1101(a)(47), 1229a(a)(3); *City & Cnty of S.F.*, 944 F.3d at 806 ("this analysis focuses on irreparability, irrespective of the magnitude of the injury.") (cleaned up). TPS recipients may have other immigrant or nonimmigrant status. 8 U.S.C. § 1254a(a)(5). And, in all events, "the burden of removal alone cannot constitute the requisite irreparable injury." *Nken*, 556 U.S. at 435; *see Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011).

At bottom, Appellees' effort to recast their lack of immigration status as irreparable injury fails because it is incompatible with Congress's and the Executive's sovereign prerogative over immigration. A continuing violation of immigration law harms the public, not those without any claim to lawful status in the United States

18

(however sympathetic they may appear). *See Dep't. of State v. Munoz*, 602 U.S. 899, 915-16 (2024); *Nken*, 556 U.S. at 435; *Shaughnessy*, 345 U.S. at 212, 222-23.

## III.   At Minimum, the District Court's Chosen Relief Was Overbroad

If nothing else, the nationwide scope of the district court's order was an abuse of discretion, and this Court should narrow it. *See E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) (granting a stay "insofar as the injunction applies outside the Ninth Circuit, because the nationwide scope of the injunction is not supported by the record as it stands").

Remedies that reach beyond the parties impose a serious "toll on the federal court system." *Hawaii*, 585 U.S. at 713 (Thomas, J., concurring); *see Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs"); *see California*, 911 F.3d at 584 (courts should limit relief to "redress only the injury shown as to [Plaintiffs]").

Here, that counsels narrowing the district court's nationwide order. To be sure, Appellees have not made a showing of irreparable harm even to their own members, and they have not even *tried* to show irreparable harm to *every* TPS recipient under the 2023 Designation across the country. *Trump*, 897 F.3d at 1245 (vacating a nationwide injunction and remanding "to the district court for a more searching inquiry into the whether [the] case justifies the breadth of the injunction imposed"); Dkt. 16 at 30-33

19

(acknowledging that not all TPS holders have suffered particularized harm and speculating about possible future harm).

Troublingly, the court's nationwide order also stifled "novel legal challenges and robust debate arising in different judicial districts," *E. Bay*, 934 F.3d at 1029-30 (cleaned up), because district courts in Maryland and Massachusetts denied similar motions to postpone as moot in light of the challenged order. *See Haitian Americans United Inc. v. Trump*, No. 25-cv-10498 (D. Mass.), ECF No. 39; *Casa, Inc. v. Noem*, No. GLR-25-0525 (D. Md.), ECF No. 49. The resulting "lack of percolation has serious consequences for judicial decisionmaking." *Ramos*, 975 F.3d. at 903-04 (Nelson, J., concurring).

Finally, the nationwide scope of the order "is especially problematic here given [§ 1252(f)(1)'s] unambiguous foreclosure of any injunctive relief outside a proceeding against an individual alien." *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 647 n.16 (D.C. Cir. 2020) (Rao, J., dissenting). If this Court declines to stay the district court's order outright, it should at least stay the injunction as to non-parties. *E. Bay*, 934 F.3d at 1029.

## CONCLUSION

The Court should grant a stay pending appeal by April 15, 2025.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

DREW C. ENSIGN
  *Deputy Assistant Attorney General*

EREZ R. REUVENI
  *Acting Deputy Director*

/s/ *Sarah L. Vuong*
SARAH L. VUONG
  *Assistant Director*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-1263
Sarah.L.Vuong@usdoj.gov

WILLIAM H. WEILAND
  *Senior Litigation Counsel*

ANNA DICHTER
ERIC SNYDERMAN
LAUREN BRYANT
AMANDA SAYLOR
CATHERINE ROSS
LUZ MARIA RESTREPO
JEFFREY HARTMAN
  *Trial Attorneys*

21

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(1), I certify that the text of this motion is in double-spaced, proportionally spaced 14-point Times New Roman type, and the motion contains 20 pages in compliance with Ninth Circuit Rule 27-1(d).

/s/ *Sarah L. Vuong*
SARAH L. VUONG
Assistant Director
Office of Immigration Litigation
Dated: April 4, 2025            Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2025, counsel for Appellants electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system and that service will be accomplished via the ACMS system.

/s/ *Sarah L. Vuong*
SARAH L. VUONG
Assistant Director
Office of Immigration Litigation
Attorney for Appellants

Dated: April 4, 2025

# EXHIBITS

## TABLE OF CONTENTS

Motion to Postpone Effective Date of Agency Action
(February 20, 2025) (Dkt. 16)……………………………….……………………....…1

Exhibits (February 20, 2025) (Dkts. 17–35)………………….……....…………39

Exhibits (February 21, 2025) (Dkts. 36–37)………………….……………..…309

Response in Opposition to Motion to Postpone Effective Date of Agency Action
(March 3, 2025) (Dkt. 60)…………………………………....……....……..1071

Reply in Support of Motion to Postpone Effective Date of Agency Action
(March 7, 2025) (Dkt. 67)………………...…………………………....……..1107

District Court Order Granting Postponement
(March 31, 2025) (Dkt. 93)………………………..…………………....…1132

District Court Order Denying Stay
(April 4, 2025) (Dkt. 102)…………………………..………………..…....…1210