No. 25-2120

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

**NATIONAL TPS ALLIANCE, et al.,**
Appellees,

v.

**KRISTI NOEM, et al.,**
Appellants.

———————————

On Appeal from the United States District Court
for the Northern District of California
District Court Case No. 3:25-cv-1766

———————————

**APPELLANTS' REPLY IN SUPPORT OF
A STAY PENDING APPEAL**

———————————

## INTRODUCTION

In issuing universal relief, the district court disregarded *two* independent jurisdictional bars established by Congress and supplanted the Secretary's unreviewable (and legally proper) TPS determinations. That erroneous order is inflicting irreparable harm on the government. This Court previously rejected the district court's similar analysis, and nothing in Appellees' response indicates a different result is likely here. The Court should stay the order pending appeal.

## ARGUMENT

### APPELLEES' RESPONSE CONFIRMS THAT THE DISTRICT COURT'S UNIVERSAL POSTPONEMENT ORDER SHOULD BE STAYED

**I.     This Court has jurisdiction to review the district court's order, which functions as an injunction**

Appellees first contend (Resp. 4) that this Court lacks jurisdiction to review the district court's order because the order is captioned as a § 705 stay and is "not injunctive in nature." Not so. The district court's postponement order is reviewable under 28 U.S.C. § 1292(a)(1), which grants jurisdiction over interlocutory appeals from orders granting injunctions. "[D]istrict courts [cannot] shield their orders from appellate review by avoiding the label injunction." *Abbot v. Perez*, 585 U.S. 579, 595 (2018). Instead, courts ask whether the appealed order is functionally an injunction.

Here, this appeal falls within the Court's jurisdiction because the district court's order (1) has the "practical effect" of an injunction and was issued after applying an injunction standard (*see* Mot. 15-16); (2) has "serious, perhaps irreparable,

1

consequences" on the Secretary's administration of the TPS statute (*see* Mot. 17-19); and (3) an "immediate appeal is the only effective way to challenge" the district court's order. *Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 27 (9th Cir. 2025). That is particularly true here because the district court applied the *injunction factors* to assess whether 5 U.S.C. § 705 was warranted. Dkt. 93 at 30-31; *see Sampson v. Murray*, 415 U.S. 61, 80 (1974). Moreover, the Supreme Court recently reaffirmed that temporary restraining orders related to APA claims *are* immediately appealable. *Dep't of Educ. v. California*, 604 U.S. —, 2025 WL 1008354, at *1 (Apr. 4, 2025) (per curiam) (staying order that "carries many of the hallmarks of a preliminary injunction"). This Court has jurisdiction to review the district court's erroneous order.

## II. The Government Is Likely To Succeed On The Merits

### A. Appellees' challenge to the Secretary's vacatur and termination determinations lacks any textual hook

Congress foreclosed Appellees' challenge to the Secretary's TPS determinations in § 1254a. *See* Mot. 6-9. That provision provides—in the clearest possible terms—that "[t]here is no judicial review of any determination of . . . with respect to . . . termination . . . of a designation." 8 U.S.C. § 1254a(b)(5)(A). And that is *precisely* what Appellees seek here.

Appellees' attempts (Resp. 6-10) to justify the district court's circumvention of that jurisdictional bar fail. Tellingly, Appellees never specifically analyze the application of § 1254a(b)(5)(A) to the Secretary's separate vacatur (a determination "with respect

to" an extension) and termination determinations (Resp. 6-10), and their remaining arguments all lack merit.

Appellees' assertion (Resp. 8-9) that the interpretation of "determination" in *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991), and *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43 (1993), is controlling in all contexts is obviously wrong. *See Ramos*, 975 F.3d at 889. Because the statute in *McNary* barred judicial review of "*a determination* respecting an application" for SAW status, the Supreme Court concluded that the statute did not bar "collateral challenges to unconstitutional practices and policies[.]" *Id.* at 896 (quoting former 8 U.S.C. § 1160(e)(1)) (emphasis added); *see Reno*, 509 U.S. at 64 (interpreting "the phrase 'a determination respecting an application for adjustment of status'"). However, *McNary* emphasized that Congress *could* bar judicial review of collateral challenges if it used more expansive language. *Id.* at 494 (citing 8 U.S.C. § 1329 as an example).

Congress did just that in § 1254a(b)(5)(A), barring review of "*any determination* of the [Secretary] *with respect to* the designation, or termination or extension of a designation" of TPS—and thus foreclosing review of the Secretary's 2025 Vacatur and Termination determinations. Appellees' (and the district court's) reading of § 1254a(b)(5)(A) ignores key broadening language ("any" and "with respect to"). *See, e.g.*, Resp. 10 (ellipses omitting "with respect to"). That reading would also convert the statute into a one-way street, barring review if an action benefits TPS beneficiaries, but permitting sweeping litigation if an action narrows the availability of TPS benefits.

3

Dkt. 93 at 52-53 (purporting to identify a "significant" difference between "a decision to *terminate* a TPS designation" and "a decision to *extend* a TPS designation"). That interpretation flouts § 1254a(b)(5)(A)'s text and context.

Appellees continue to attempt to invoke a purported concession by the government. *See* Resp. 7. But no party can concede jurisdiction, *Wilkins v. United States*, 598 U.S. 152, 157-58 (2023), and the government made no such concession in any event. *See* Mot. 9. Neither case that Appellees cite in this context is relevant, because neither involved a jurisdictional challenge. *See United States v. Yidiz*, 355 F.3d 80, 82 (2d Cir. 2004) (regarding admissibility of hearsay statements); *Magallanes-Damian v. INS*, 783 F.2d 931, 933-34 (9th Cir. 1986) (regarding deportability).

Resorting to rhetoric, Appellees characterize Appellant's argument as "extreme" because it bars legal and constitutional challenges to TPS determinations. (Resp. 1-2, 10). But Appellees overlook Congress's plenary authority to regulate immigration and circumscribe the jurisdiction of courts through clear language. U.S. Const. Art. I, § 8, cl. 18, Art. III, § 1, cl. 1; *see Patchak v. Zinke*, 583 U.S. 244, 253 (2018) ("So long as Congress does not violate other constitutional provisions, its control over the jurisdiction of the federal courts is plenary.") (quotation marks omitted); *see also, e.g.*, *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1148, 1155 (9th Cir. 2022) (in expedited removal context, "Congress has chosen to explicitly bar nearly all judicial review," including "review of constitutional claims or questions of law") (quotation marks omitted).

Moreover, contradicting Appellees' view that this result would be "extreme," this Court has respected Congress's comparable limitations on judicial review in other contexts. *See Reeb v. Thomas*, 636 F.3d 1224, 1226-27 (9th Cir. 2011) (holding that 28 U.S.C. § 3625's bar on review of "any determination" under certain statutes barred APA challenges to federal officials' operation of prison programs); *Nicholas v. United States*, 633 F.2d 829, 830 (9th Cir. 1980) (holding that 26 U.S.C. § 7429(f) barred "constitutional and evidentiary" review of certain tax assessments). Congress's exercise of its authority over federal courts' jurisdiction is not "extreme," and Appellants are likely to prevail on appeal. A stay pending appeal is warranted.

**B.    The Secretary has inherent authority to reconsider past determinations implicating the national interest**

Appellees offer no textual support for their sweeping conclusion that the Secretary lacks inherent authority here.[1] (Resp. 11-12). And their reliance on *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1143 (9th Cir. 2024) (*CUA*) is unavailing because the TPS statute gives the Secretary discretion over the length of TPS designations *and* the timing of the Secretary's periodic review, 8 U.S.C. § 1254a(b)(3)(A)-(C). As *CUA* put it, "there is no statutory procedure for revocation

---

[1] The district court issued its universal postponement order before receiving an administrative record, even though an administrative record is a prerequisite for review. 5 U.S.C. § 706. Appellants are preserving any related APA merits arguments until that issue is ripe. Resp. 13-15; *see Pac. NW Generating Co-op v. Bonneville Power Admin.*, 596 F.3d 1065, 1086 (9th Cir. 2010) (review ripe after "an appropriate administrative record" is generated).

that the agency could be said to be evading by relying on implied authority[.]" *CUA*, 124 F.4th at 1150; *see Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014). Notably, *CUA* reasoned that the FCC's inherent revocation authority was supported by the requirement to consider "national defense" in consultation with the State and Defense Departments—a feature strikingly similar to the Secretary's "national interest" assessment, reached after consultation with the State Department, here. 124 F.4th at 1150. Thus, Appellees' reliance on *CUA*'s holding that the FCC *has* inherent authority to reconsider to account for statutory criteria relevant to the issuance of a license, *id.* at 1150, provides no basis to conclude that the Secretary *lacked* equivalent inherent authority here.

Appellees are simply wrong to assert (at Resp. 12) that Secretary Mayorkas's January 17 extension was immediately effective. 90 Fed. Reg. 5961, 6962 ("The 18-month extension . . . begins on April 3, 2025"), 5966 (same); 8 U.S.C. § 1254a(b)(2)(A). And there is minimal reliance interest in a not-yet-effective TPS extension, particularly where the TPS statute mandates periodic review and termination if the Secretary determines (as she did here) that a TPS designation is contrary to the national interest. Dkt. 93 at 53; *cf. Bahr v. Regan*, 6 F.4th 1059, 1074 (9th Cir. 2021). Appellees' contrary argument (Resp. 11-13) conflates the Secretary's authority over TPS registration, 8 U.S.C. § 1254a(b)(3)(C), and ignores that fact that under the statute, once a TPS designation is made, it continues until terminated. 8 U.S.C. § 1254a(b)(3)(A)–(C).

6

**C.      The Secretary's determinations did not violate Equal Protection principles**

The district court's remarkable conclusion that discrimination was a motivating factor behind the Secretary's determinations is unlikely to survive appeal. *See* Mot. 11-14. Appellees' contrary claim (Resp. 15) is baseless.

First, the district court applied the wrong standard. Mot. 11-13. Appellees resist the application of *Trump v. Hawaii*, 566 U.S. 667 (2018), not because TPS determinations do not involve sensitive foreign, immigration, and national security considerations and policies, but because they cannot muster any evidence that Secretary Noem's TPS determinations were anything other than facially legitimate. *See* Resp. 18; *2025 Termination*, 90 Fed. Reg. 9040, 9042-43. Appellees' attempt (Resp. 18) to distinguish *Hawaii* on the basis that it involved people outside the United States ignores that fact that the only people who actually need the district court's ordered relief have no lawful right to indefinitely remain in the United States. *See DHS v. Thuraissigiam*, 591 U.S. 103, 119 (2020).

Regardless, the district court's conclusions cannot stand even on their own terms. Mot. 13-14. The district court's animus finding was plainly an abuse of discretion because it was made without *any* administrative record. Even now, Appellees can point only to statements without any direct connection to the Secretary's TPS determinations—which this Court previously found insufficient to establish an Equal Protection claim even under *Arlington Heights. See* Resp. 17-18; *Ramos*, 975 F.3d

7

at 896-99. The district court's factual findings were likewise clearly erroneous because they relied on statements taken out of context and without direct links to the Secretary's determinations. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34-35 (2020) (explaining that disparate impact, unusual recission history, and pre- and post-election statements failed "to raise a plausible inference that the recission was motivated by animus").

This Court is likely to correct these legal and factual errors, and it should stay the district court's order while considering the appeal.

### D. The District Court's order violates 8 U.S.C. § 1252(f)(1)

Appellees try to sidestep § 1252(f)(1)'s jurisdiction-stripping provision by labelling the relief ordered here as something other than injunctive relief. Resp. 21. They do not attempt to argue that the TPS statute falls outside § 1252(f)(1)'s scope or that the "individual proceedings" exception applies here. *See* Mot. 14-15.

Instead, Appellees argue that the order was not really an injunction. Resp. 20-21. But regardless of its label, in substance, the order impermissibly "restrain[s]" the Secretary from exercising her authority under the TPS statute. It compels the Secretary to expend resources implementing a TPS designation contrary to the national interest and precludes officials from enforcing immigration law how they deem appropriate. *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 549 (2022) ("restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action) (cleaned up); *Biden v. Texas*, 597 U.S. 785, 788 (2022). The district court's reliance on the injunction factors, Dkt. 93 at 31-37,

8

underscores that no matter its label, the order was an injunction in substance—another ground for staying this sweeping order.

Appellees suggest (Resp. 21) that because TPS holders still had status when the district court ruled, this Court should ignore that the district court lacked postponement authority when it issued the order. But the fact remains that the 2025 Vacatur became "effective immediately"—2025 Vacatur, 90 Fed. Reg. at 8,806—and the district court could not postpone an action that had already occurred. *See* Mot. 15-16.

Last, Appellees say the applicability of § 1252(f)(1) is "inappropriate for resolution on the emergency docket" because the Supreme Court has previously reserved the question. Resp. 21. But threshold jurisdictional problems cannot be left on the back burner, especially when a court is ordering universal relief. And in any event, Appellees' contention cuts in favor of the government. The district court already resolved the issue on *its* emergency docket. The government simply asks this Court for equivalent emergency treatment here.

The "postponement" ordered was in fact an injunction, improperly issued to restrain the government from its lawful exercise of authority.

## III.    The Balance of Equities Favor a Stay Pending Appeal

Finally, Appellees have failed to demonstrate that the balance of equities tips in their favor (Resp. 26). *See Nken v. Holder*, 556 U.S. 418, 435 (2009). The district court's order irreparably harms the government by undermining the TPS statute and supplanting the Secretary's discretion-laden determination of the national interest. *See*

9

*Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Appellees'

attempts to second-guess the Secretary's unreviewable national-interest determination

and identify mechanisms to address her rational policy concerns underscores the extent

of the district court's "improper intrusion by a federal court into the workings of a

coordinate branch of the Government." *INS v. Legalization Assist. Project*, 510 U.S. 1301,

1305-06 (1993) (O'Connor, J., in chambers) (granting a stay).

Appellees continue to rely on just two declarations to draw sweeping

generalizations about harms that are inherent in the statutory scheme and, by their own

admission, do not apply to all TPS beneficiaries. Resp. 22-23; 8 U.S.C.

§ 1254a(b)(1)(B)(i)-(ii), (b)(1)(C), (g). Appellees' concerns categorically fail to establish

irreparable harm because they are present in *any* removal case and "the burden of

removal alone cannot constitute the requisite irreparable injury." *Nken*, 556 U.S. at 434;

*see Sampson*, 415 U.S. at 90 ("Mere injuries, however substantial, in terms of money, time

and energy expended in the absence of a stay, are not enough."). Ultimately, Appellees'

effort to recast their lack of immigration status as irreparable injury fails because it is

incompatible with Congress's and the Executive's sovereign prerogative over

immigration. *See* Mot. 18-19; *Dep't of State v. Munoz*, 602 U.S. 899, 915-16 (2024); *Nken*,

556 U.S. at 435.

## IV.   At Minimum, the District Court's Chosen Relief Was Overbroad

If nothing else, this Court should narrow the district court's nationwide order,

particularly where Appellees have not demonstrated irreparable harm to their own

members, much less *tried* to show irreparable harm to *every* TPS recipient under the 2023 Designation. *See E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) (granting a stay "insofar as the injunction applies outside the Ninth Circuit, because the nationwide scope of the injunction is not supported by the record as it stands"). Appellees' rejoinder that nationwide postponement is warranted (Resp. 23-24) because the rule applies nationwide could be said about nearly *any* rule; disregards the preliminary stage of this case by relying on final decisions setting aside agency action under 5 U.S.C. § 706; and ignores the heavy burden on a party seeking emergency relief to show why *universal* relief is necessary.

## CONCLUSION

The district court evaded two jurisdictional bars to review the Secretary's determinations and badly erred on the merits. This Court should issue a stay pending appeal or, at minimum, vacate the district court's order with instructions to narrow the relief to Plaintiffs and their associated members.

Respectfully submitted,

YAAKOV M. ROTH
    *Acting Assistant Attorney General*

DREW C. ENSIGN
    *Deputy Assistant Attorney General*

SARAH L. VUONG
    *Assistant Director*

WILLIAM H. WEILAND
    *Senior Litigation Counsel*

/s/ Jeffrey Hartman
JEFFREY HARTMAN
    *Trial Attorney*
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C., 20044
(202)-532-4404
Jeffrey.M.Hartman@usdoj.gov

ANNA DICHTER
ERIC SNYDERMAN
LAUREN BRYANT
AMANDA SAYLOR
CATHERINE ROSS
LUZ MARIA RESTREPO
    *Trial Attorneys*

12

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(1), I certify that the text of this motion is in double-spaced, proportionally spaced 14-point Times New Roman type, and the motion contains 2657 words in compliance with Ninth Circuit Rule 27-1(d) and 32-3(2).

/s/ Jeffrey Hartman
JEFFREY HARTMAN
Trial Attorney
Office of Immigration Litigation

Dated: April 14, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2025, counsel for Appellants electronically filed this reply with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system and that service will be accomplished via the ACMS system.

/s/ Jeffrey Hartman
JEFFREY HARTMAN
Trial Attorney
Office of Immigration Litigation

Dated: April 14, 2025