**No. 25-2120**
**(calendared for oral argument in July 2025 by ACMS No. 18)**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**NATIONAL TPS ALLIANCE, et al.,**
Appellees,

v.

**KRISTI NOEM, et al.,**
Appellants.

---

On Appeal from the United States District Court
for the Northern District of California
District Court Case No. 3:25-cv-1766

---

## BRIEF FOR APPELLANTS

---

**YAAKOV M. ROTH**
**Acting Assistant Attorney General**
**Civil Division**

**DREW C. ENSIGN**
**Deputy Assistant Attorney General**
**Office of Immigration Litigation**

**SARAH L. VUONG**
**Assistant Director**
**Office of Immigration Litigation**

**WILLIAM H. WEILAND**
**Senior Litigation Counsel**
**Office of Immigration Litigation**

**ANNA DICHTER**
**ERIC SNYDERMAN**
**LAUREN BRYANT**
**CARLTON F. SHEFFIELD**
**CATHERINE ROSS**
**LUZ MARIA RESTREPO**
**AMANDA SAYLOR**
**JEFFREY M. HARTMAN**
**Trial Attorneys**
**Office of Immigration Litigation**
**P.O. Box 868, Ben Franklin Station**
**Washington, DC 20044**
**Telephone: (202) 532-4404**
**Jeffrey.M.Hartman@usdoj.gov**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION........................................................3

ISSUES PRESENTED........................................................................4

STATEMENT OF THE CASE AND RELEVANT FACTS .....................5

    A.    The TPS Statute ................................................................5

    B.    Secretary Mayorkas's Venezuela TPS Designations.............6

    C.    Secretary Noem's TPS Determinations ................................8

    D.    The District Court Postponed Secretary Noem's TPS Determinations on a Nationwide Basis ...............................10

SUMMARY OF ARGUMENT ...........................................................11

STANDARD OF REVIEW ...............................................................12

ARGUMENT ..................................................................................12

I.    THE TPS STATUTE BARS JUDICIAL REVIEW OF PLAINTIFFS' CLAIMS ................................................................12

II.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR APA CLAIMS. ................................................................................19

III.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR EQUAL PROTECTION CLAIMS ...............................................26

    A.    To The Extent Plaintiffs' Constitutional Claim is Reviewable at All, Rational Basis Review Applies............................................26

    B.    Plaintiffs' Constitutional Claim Fails Even Under the *Arlington Heights* Standard Employed By the District Court ..............33

i

IV. SECTION 1252(f)(1) DEPRIVES THE DISTRICT COURT OF JURISDICTION TO ENTER ITS ORDER ......................................................39

    A.    The TPS Statute is Covered by Section 1252(f)(1) ............................... 39

    B.    Section 1252(f)(1) Barred Postponement ............................................... 41

V. THE DISTRICT COURT ABUSED ITS DISCRETION BY GRANTING UNIVERSAL RELIEF ...................................................................... 45

    A.    The Balance of Equities Weigh Against Postponement ........................ 45

    B.    Universal Relief Was Unwarranted ....................................................... 48

CONCLUSION ...................................................................................................53

BRIEF FORMAT CERTIFICATION

STATEMENT OF RELATED CASES

CERTIFICATE OF SERVICE

ADDENDUM

## TABLE OF AUTHORITIES
## CASES

*Abbott v. Perez*,
  585 U.S. 579 (2018)................................................................3, 42

*Albertson v. FCC*,
  182 F.2d 397 (D.C. Cir. 1950)..................................................21

*Ali v. Fed. Bureau of Prisons*,
  552 U.S. 214 (2008).................................................................14

*Amgen, Inc. v. Smith*,
  357 F.3d 103 (D.C. Cir. 2004)..................................................13

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006).................................................................19

*Augustine v. United States*,
  704 F.2d 1074 (9th Cir. 1983) ..................................................19

*Baird v. Bonta*,
  81 F.4th 1036 (9th Cir. 2023) ...................................................46

*Biden v. Texas*,
  597 U.S. 785 (2022).................................................................43

*Bouarfa v. Mayorkas*,
  604 U.S. 6 (2024)....................................................................18

*Britkovyy v. Mayorkas*,
  60 F.4th 1024 (7th Cir. 2023) ...................................................18

*Brnovich v. Democratic National Committee*,
  594 U.S. 647 (2021).................................................................37

*Burgess v. United States*,
  553 U.S. 124 (2008).................................................................17

iii

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ................................................................50

*California v. Grace Brethren Church,*
457 U.S. 393 (1982) ................................................................43

*California v. Texas,*
593 U.S. 659 (2021) ................................................................49

*China Unicom (Ams.) Ops. Ltd. v. FCC,*
124 F.4th 1128 (9th Cir. 2024) ............................... 20, 23, 24

*City and Cnty. of S.F. v. USCIS,*
944 F.3d 773 (9th Cir. 2019) ................................................47

*Ctr. for Biological Diversity v. Regan,*
597 F. Supp. 3d 173 (D.D.C. 2022) ......................................44

*Dan's City Used Cars, Inc. v. Pelkey,*
569 U.S. 251 (2013) ................................................................14

*Dep't of Educ. v. California,*
145 S. Ct. 966 (2025) ...............................................................3

*Dep't of State v. Munoz,*
602 U.S. 899 (2024) ................................................................49

*Department of Homeland Security v. Regents,*
591 U.S. 1 (2020) ................................................ 31, 35, 36, 38

*DHX Inc. v. Allianz AGF MAT, Ltd.,*
425 F.3d 1169 (9th Cir. 2005) ..............................................15

*Durning v. Citibank, N.A.,*
950 F.2d 1419 (9th Cir. 1991) ..............................................15

*E. Bay Sanctuary Covenant v. Barr,*
934 F.3d 1026 (9th Cir. 2019) ............................... 49, 52, 53

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) .................................................................50

*Fiallo v. Bell*,
    430 U.S. 787 (1977) .................................................................26

*Galvan v. Press*,
    347 U.S. 522 (1954) .................................................................30

*Galvez v. Jaddou*,
    52 F.4th 821 (9th Cir. 2022) ....................................................41

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022) ...........................................................40, 43

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) .............................................................49

*Graddick v. Newman*,
    453 U.S. 928 (1981) .................................................................44

*Gun South, Inc. v. Brady*,
    877 F.2d 858 (11th Cir. 1989) ..................................................22

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) .................................................................27

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) .....................................................................27

*INS v. Legalization Assist. Project*,
    510 U.S. 1301 (1993) ...............................................................48

*Ivy Sports Medicine, LLC v. Burwell*,
    767 F.3d 81 (D.C. Cir. 2014) ....................................................21

*Kelch v. Dir., Nev. Dep't of Prisons*,
    10 F.3d 684 (9th Cir. 1993) ......................................................20

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ................................................................ 32, 33

*Lamar, Archer & Cofrin, LLP v. Appling*,
    584 U.S. 709 (2018) .....................................................................14

*Last Best Beef, LLC v. Dudas*,
    506 F.3d 333 (4th Cir. 2007) ......................................................21

*Lewis v. Casey*,
    518 U.S. 343 (1996) .....................................................................49

*Loper Bright Enterp. v. Raimondo*,
    603 U.S. 369 (2024) .....................................................................12

*Macktal v. Chao*,
    286 F.3d 822 (5th Cir. 2002) ......................................................21

*Make the Road N.Y. v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) ....................................................53

*Maryland v. King*,
    567 U.S. 1301 (2012) ..................................................................47

*Mathews v. Diaz*,
    426 U.S. 67 (1976) ................................................................ 27, 29

*Mazaleski v. Treusdell*,
    562 F.2d 701 (D.C. Cir. 1977) ....................................................20

*McNary v. Haitian Refugee Center, Inc.*,
    498 U.S. 479 (1991) ................................................................ 18, 19

*Mendiola-Martinez v. Arpaio*,
    836 F.3d 1239 (9th Cir. 2016) ....................................................36

*Montana Wildlife Fed'n v. Haaland*,
    127 F.4th 1 (9th Cir. 2025) .................................................. 3, passim

vi

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
  463 U.S. 29 (1984) ............................................................... 37

*Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*,
  467 F.3d 999 (6th Cir. 2006) ............................................ 44

*Nicholas v. United States*,
  633 F.2d 829 (9th Cir. 1980) ............................................ 15

*Nishimura Ekiu v. United States*,
  142 U.S. 651 (1892) .......................................................... 48

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................. 44, 45, 47, 49

*Nobert v. City and County of S.F.*,
  10 F.4th 918 (9th Cir. 2021) ............................................ 12

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*,
  473 U.S. 1301 (1985) ........................................................ 44

*Patel v. Garland*,
  596 U.S. 328 (2022) .......................................................... 14

*Poursina v. USCIS*,
  936 F.3d 868 (9th Cir. 2019) ............................................ 25

*Rajah v. Mukasey*,
  544 F.3d 427 (2d Cir. 2008) ............................................. 30

*Ramos v. Nielsen*,
  321 F. Supp. 3d 1083 (N.D. Cal. 2018) ............................. 29

*Ramos v. Wolf*,
  975 F.3d 872 (9th Cir. 2020) .............................. 15, passim

*Reeb v. Thomas*,
  636 F.3d 1224 (9th Cir. 2011) .......................................... 15

vii

*Reno v. Catholic Social Services, Inc.*,
   509 U.S. 43 (1993) .................................................................18

*Shaughnessy v. Mezei*,
   345 U.S. 206 (1953) ....................................................... 26, 49

*SKF USA Inc. v. U.S.*,
   254 F.3d 1022 (Fed. Cir. 2001) ...........................................21

*Thoung v. United States*,
   913 F.3d 999 (10th Cir. 2019) .............................................17

*Trump v. Hawaii*,
   585 U.S. 667 (2018)................................................. 25, passim

*City and Cnty. of S.F. v. Trump*,
897 F.3d 1225 (9th Cir. 2018) ..............................................47

*United States v. Carillo-Lopez*,
   68 F.4th 1133 (9th Cir. 2023) ..............................................39

*United States, ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950)..............................................................48

*United States v. Tohono O'odham Nation*,
   563 U.S. 307, 312 (2011)......................................................14

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
   429 U.S. 252 (1977)....................................................... 33, 36

*Washington v. Trump*,
   847 F.3d 1151 (9th Cir. 2017) .............................................48

*Zadvydas v. Davis*,
   533 U.S. 678 (2001)....................................................... 31, 32

## **STATUTES**

5 U.S.C. § 701(a)(1) ...........................................................................13

5 U.S.C. § 705 ....................................................................................51

5 U.S.C. § 706 ....................................................................................51

5 U.S.C. § 706(2)(A) ..........................................................................12

6 U.S.C. § 202 ....................................................................................26

6 U.S.C. § 557 ......................................................................................5

8 U.S.C. § 1101(a)(47) .......................................................................47

8 U.S.C. § 1103(a)(1) .........................................................................26

8 U.S.C. § 1103(a)(3) .........................................................................26

8 U.S.C. § 1160(e)(1) .........................................................................18

8 U.S.C. § 1229a(a)(3) .......................................................................47

8 U.S.C. § 1252(a)(5) ............................................................... 11, passim

8 U.S.C. § 1252(f)(1) ................................................................. 2, passim

8 U.S.C. § 1252a(a)(4) ........................................................................52

8 U.S.C. § 1252a(b)(5)(A) ..................................................................28

8 U.S.C. § 1252a(d)(1)-(3) ..................................................................52

8 U.S.C. § 1254a(a)(5) ........................................................................47

8 U.S.C. § 1254a(b)(1)(C) .......................................................... 1, passim

8 U.S.C. § 1254a(b)(3)(A) ............................................................ 22, 24

8 U.S.C. § 1254a(b)(3)(C) .....................................................................6

8 U.S.C. § 1254a(b)(5)(A) ............................................................. 2, passim

8 U.S.C. § 1329 ....................................................................................19

26 U.S.C. § 7429(f) ..............................................................................15

28 U.S.C. § 1292(a)(1) ...........................................................................3

28 U.S.C. § 1331 .....................................................................................3

28 U.S.C. § 1341 ...................................................................................43

28 U.S.C. § 3625 ...................................................................................15

## **RULES**

Fed. R. App. P. 4(a)(1)(B) .......................................................................3

Fed. R. Civ. P. 23 ..............................................................................4, 45

x

## STATUTES

Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 ..............................5

Homeland Security Act of 2002, Pub. L. No. 107-296, § 1517,
116 Stat. 2135, 2311 ......................................................................................5

REAL ID Act of 2005, Pub. L. No. 109-13, § 106, 119 Stat. 231, ........................17

## FEDERAL REGISTER NOTICES

*Designation of Venezuela for Temp. Protected Status and Implementation of
Employment Authorization for Venezuelans Covered by Deferred Enforced
Departure*, 86 Fed. Reg. 13,574 (Mar. 9, 2021) ....................................................6

*Extension of the Designation of Venezuela for Temporary Protected Status*,
87 Fed. Reg. 55,024 (Sept. 8, 2022). ...................................................................7

*2023 Extension and Redesignation of Venezuela for Temporary Protected Status*,
88 Fed. Reg. 68,130 (Oct. 3, 2023)......................................................................7

*Extension of the 2023 Designation of Venezuela for Temporary Protected Status*,
90 Fed. Reg. 5,961 (Jan. 17, 2025).................................................................7,8

*Vacatur of 2025 TPS Decision for Venezuela*,
90 Fed. Reg. 8,805 (Feb. 3, 2025) .....................................................................8

*Termination of the October 3, 2023 Designation of Venezuela for Temporary
Protected Status*, 90 Fed. Reg. 9,040 (Feb. 5, 2025)............................................9

*Consideration and Recission of Termination of the Designation of El Salvador for
Temporary Protected Status; Extension of the Temporary Protected Status
Extension for El Salvador*, 88 Fed. Reg. 40,282 (June 21, 2023) .......................22

## **OTHER AUTHORITY**

Exec. Order No. 14159, *Protecting the American People Against Invasion*,
§ 16(b), 90 Fed. Reg. 8443 (Jan. 20, 2025) ..................................................... 25, 48

## **DICTIONARIES**

*The American Heritage Dictionary* (2022)............................................................13

*Black's Law Dictionary* (6th ed. 1990)................................................................13

*Merriam-Webster's Dictionary* (2025)..................................................................13

*Webster's Encyclopedic Unabridged Dictionary* (1990)........................................14

*Webster's New Collegiate Dictionary* (1990)........................................................14

**INTRODUCTION**

The Secretary of Homeland Security has discretion to designate a foreign country for temporary protected status (TPS), which permits aliens from that country who are in the United States at the time to receive both work authorization and a reprieve from removal during the designation period. By statute, the Secretary must periodically review each TPS designation and decide whether to extend or terminate it. This case involves the 2021 and 2023 TPS designations for Venezuela.

In the last days of the Biden Administration, former Secretary Mayorkas took action to combine and extend both TPS designations for as long as statutorily possible, even though Venezuela's 2021 TPS designation did not expire until September 10, 2025. Months before former Secretary Mayorkas's actions would have become effective, Secretary Noem vacated them, meaning that Venezuela's 2023 TPS designation required review (for extension or termination) by February 1, 2025. After evaluating national security and other policy considerations, the Secretary then took the additional statutorily authorized action of terminating Venezuela's 2023 TPS designation as contrary to the "national interest." 8 U.S.C. § 1254a(b)(1)(C), (b)(3)(B). The 2021 TPS designation was left in place and will be reviewed in due course.

The district court, however, entered nationwide preliminary relief to prevent DHS from implementing Secretary Noem's determinations. That decision relied

heavily on the same district court's 2018 decision regarding a similar TPS action—even though a panel of this Court *reversed* that decision before the litigation ultimately became moot. The same result is warranted here.

The district court's decision was deeply flawed. At the outset, the district court brushed aside two independent jurisdictional bars, both of which squarely precluded its order. *First*, the court bypassed the TPS statute's explicit prohibition against "judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). *Second*, the court erred in dismissing the separate bar on orders that "enjoin or restrain" the operation of certain immigration laws, including the TPS statute. *Id.* § 1252(f)(1).

On the merits, the district court incorrectly concluded that Secretary Noem lacked authority to reconsider her predecessor's determination, despite the bedrock administrative law principle permitting such reconsideration. And the district court badly erred by applying the wrong legal standard to conclude that Plaintiffs were likely to succeed on an Equal Protection claim that relied on a patchwork of "evidence" remote in time or considered out of context.

Lastly, the district court abused its discretion by entering relief against DHS, because the other injunction factors militate against overriding Secretary Noem's policy determinations. The district court's order forces the United States to continue

to permit over 300,000 Venezuelans to remain in the country, even though the Secretary has determined that this is contrary to the national interest and even though (on the other side of the scale) TPS is inherently time-limited and discretionary. The equities thus favor the government, reinforcing that this Court should reverse.

## STATEMENT OF JURISDICTION

The district court had federal question jurisdiction under 28 U.S.C. § 1331. The Secretary timely appealed on April 1, 2025, within sixty days of the district court's March 31, 2025 order. Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction to review the district court's postponement order under 28 U.S.C. § 1292(a)(1), which grants jurisdiction over "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, refusing or dissolving injunctions or refusing to dissolve or modify injunctions[.]"

Although Section 1292(a)(1) refers to "injunctions," "district courts [cannot] shield their orders from appellate review by avoiding the label injunction." *Abbott v. Perez*, 585 U.S. 579, 595 (2018); *see Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (staying order styled as temporary restraining order because it "carries many of the hallmarks of a preliminary injunction"). To evaluate whether an order is appealable, the Court looks "to its substantial effect rather than its terminology." *Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 27 (9th Cir. 2025). Here, the district court's universal postponement order is reviewable because (1) it has the

3

"practical effect" of an injunction and was issued after explicitly applying a legal standard used for issuing injunctions; (2) it has "serious, perhaps irreparable, consequences" on the Secretary's administration of the TPS statute; and (3) an "immediate appeal is the only effective way to challenge" the order. *Id*.

## **ISSUES PRESENTED**

I.      Did the district court err in concluding that it could review Secretary Noem's TPS determinations, even though 8 U.S.C. § 1254a(b)(5)(A) specifies that any action "with respect to" a determination is unreviewable?

II.      Did the district court err in concluding that the Secretary lacked authority to reconsider TPS determinations before they took effect?

III.      Did the district court err in concluding that Plaintiffs were likely to succeed on their Equal Protection claim, when the Secretary's determinations were facially valid and Plaintiffs produced no persuasive evidence of animus?

IV.      Did the district court err in issuing an order that barred the Secretary from taking actions to enforce, implement, or otherwise carry out her TPS determinations, even though 8 U.S.C. § 1252(f)(1) forbids such orders?

V.      Did the district court abuse its discretion by entering universal preliminary relief, where the balance of equities favored the government, Plaintiffs did not certify a class under Fed. R. Civ. P. 23, and Plaintiffs failed to demonstrate the requisite degree of irreparable harm to every TPS beneficiary?

4

## STATEMENT OF THE CASE AND RELEVANT FACTS

### A. The TPS Statute

The Immigration Act of 1990 established a program for providing temporary shelter in the United States on a discretionary basis for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent aliens' safe return or, in the case of environmental disasters, temporarily render the country unable to adequately handle the return of its nationals. Pub. L. No. 101-649, 104 Stat. 4978.

As relevant here, the statute authorizes the Secretary,[1] "after consultation with appropriate agencies of the Government," to designate countries for TPS if she finds there are:

> extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

§ 1254a(b)(1)(C).[2]

---

[1] Congress transferred the Attorney General's authority to administer TPS to the Secretary. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 1517, 116 Stat. 2135, 2311 (codified at 6 U.S.C. § 557); 8 U.S.C. § 1103(a)

[2] Unless otherwise noted, all statutory citations in this brief refer to Title 8.

5

Aliens with TPS are eligible for work authorization and may not be removed while their TPS status is in effect. *Id*. § 1254a(a)(1)(A)-(B). Initial TPS designations are discretionary, *id*. § 1254a(b)(1), and the Secretary must conduct periodic reviews to determine whether the conditions underlying a country's TPS designation continue to be met. *Id*. § 1254a(b)(2), (b)(3)(A). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id*. § 1254a(b)(3)(C). If the foreign state "no longer continues to meet the conditions for designation," however, the Secretary "shall terminate the designation[.]" *Id*. § 1254a(b)(3)(B).

Importantly: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id*. § 1254a(b)(5)(A).

**B.    Secretary Mayorkas's Venezuela TPS Designations**

In 2021, former Secretary Mayorkas designated Venezuela for TPS based on extraordinary and temporary conditions that prevented Venezuelan nationals from returning in safety. 6-ER-1376-83, *Designation of Venezuela for Temp. Protected Status and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 Fed. Reg. 13,574 (Mar. 9, 2021) ("2021

6

Designation"). Secretary Mayorkas extended Venezuela's 2021 designation in 2022 and 2023. 6-ER-1367-75, *Extension of the Designation of Venezuela for Temporary Protected Status*, 87 Fed. Reg. 55,024 (Sept. 8, 2022); 6-ER-1357-66, *2023 Extension and Redesignation of Venezuela for Temporary Protected Status*, 88 Fed. Reg. 68,130 (Oct. 3, 2023).

In 2023, at the same time as he extended the 2021 Designation through September 2025, Secretary Mayorkas also redesignated Venezuela for TPS, based on a new finding of extraordinary and temporary conditions under § 1254a(b)(1)(C) (the "2023 Designation"). The 2023 Designation was effective through April 2, 2025. 6-ER-1357. To facilitate those dual designations, the Secretary established procedures for initial applicants registering for TPS under the 2023 Designation, and he also allowed Venezuelan nationals who had previously registered for TPS under the 2021 Designation to re-register for TPS and renew their employment documents. 6-ER-1357, 6-ER-1361-62.

On January 17, 2025, months before the 2023 Designation was set to expire but just three days before the end of the Biden administration, DHS published notice of Secretary Mayorkas' determination to extend the 2023 Designation for 18 months and establish a consolidated filing process such that all current Venezuela TPS beneficiaries (whether under the 2021 or 2023 designations) could obtain TPS through October 2, 2026 (the "2025 Extension"). 6-ER-1345-56, *Extension of the*

7

*2023 Designation of Venezuela for Temporary Protected Status*, 90 Fed. Reg. 5,961 (Jan. 17, 2025). Secretary Mayorkas's extension was set to become effective on April 3, 2025. 6-ER-1345.

### C. Secretary Noem's TPS Determinations

On January 28, 2025, Secretary Noem vacated the 2025 Extension, restoring the previously separate 2021 and 2023 designations—the "2025 Vacatur." 6-ER-1342-44, *Vacatur of 2025 TPS Decision for Venezuela*, 90 Fed. Reg. 8,805 (Feb. 3, 2025). Secretary Noem explained that the 2025 Extension "did not acknowledge the novelty of its approach" or "explain how it is consistent with the TPS statute." 6-ER-1344. Secretary Noem also determined that vacatur was warranted to "untangle the confusion" caused by the separate designation tracks and "provide an opportunity for informed determinations regarding the TPS designations and clear guidance." 6-ER-1344. In considering putative reliance interests, Secretary Noem provided that "Venezuela 2023 registrants will retain their temporary protected status under the pre-existing designation at least until April 2, 2025," and "[w]ith respect to any Venezuela 2021 registrants who elected, pursuant to the 2025 Extension, to register under the Venezuela 2023 designation, USCIS will restore their Venezuela 2021 registration." 6-ER-1344. The Vacatur was effective immediately. 6-ER-1343.

On February 1, 2025, after consulting with relevant agencies, Secretary Noem terminated Venezuela's 2023 Designation—the "2025 Termination"—because she determined it was "contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States." 6-ER-1337-44, *Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status*, 90 Fed. Reg. 9,040 (Feb. 5, 2025); 8 U.S.C. § 1254a(b)(1)(C), (3)(B). The 2025 Termination was to become effective on April 7, 2025. 6-ER-1338.

In particular, Secretary Noem determined that "it is contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States." 6-ER-1338. In making this determination, she stated that "there are notable improvements in several areas, such as the economy, public health, and crime," that allow for Venezuelan nationals to be "safely returned to their home country." 6-ER-1339. However, Secretary Noem concluded that even under the assumption that the conditions in Venezuela remain both "extraordinary" and "temporary," the termination of the 2023 Designation was "required." 6-ER-1339. She explained that "national interest is an expansive standard that may encompass an array of broad considerations" which "calls upon the Secretary's expertise and discretionary judgment." 6-ER-1339.

Secretary Noem further explained that the significant population of TPS holders resulted in "associated difficulties in local communities where local

9

resources have been inadequate to meet the demands caused by increased numbers," and underscored that, across the United States, "city shelters, police stations and aid services are at maximum capacity." 6-ER-1339. In considering national and immigration interests, she found that this population included members of Tren de Aragua (TdA), a transnational criminal organization recently determined to "pos[e] threats to the United States," and that there was real risk of a potential "magnet effect" drawing Venezuelans to the border. 6-ER-1339-40. Secretary Noem also observed that "U.S. foreign policy interests, particularly in the Western Hemisphere, are best served and protected by curtailing policies that facilitate or encourage illegal and destabilizing migration." 6-ER-1340. Secretary Noem's termination of the 2023 TPS Designation  was set to become effective on April 7, 2025. 6-ER-1338.

### D. The District Court Postponed Secretary Noem's TPS Determinations on a Nationwide Basis

On February 19, 2025, the National TPS Alliance (NTPSA) and seven individual Plaintiffs challenged the Secretary's 2025 Vacatur and Termination determinations under the Administrative Procedure Act (APA) and moved to postpone the effective date of both of the Secretary's determinations. 1-ER-263-300. In a 78-page decision, the district court granted Plaintiffs' motion and entered an order postponing both the 2025 Vacatur and the 2025 Termination on a nationwide basis. 1-ER-1-78.

On April 1, 2025, the Secretary filed an interlocutory appeal. ACMS No. 1. The Secretary also moved for an emergency stay of the district court order pending appeal, ACMS No. 3, which this Court denied on April 18, 2025, citing a lack of irreparable harm to the government. ACMS No. 18.

## SUMMARY OF ARGUMENT

This Court should vacate the district court's order granting preliminary relief. To begin, the district court lacked jurisdiction to review the Secretary's TPS determinations because § 1252(a)(5) and § 1254a(b)(5)(A) eliminate jurisdiction over statutory and nonstatutory challenges to "any determination" made "with respect to" a TPS designation, or extension or termination thereof. That encompasses the actions at issue here.

Even if the district court had jurisdiction, its merits analysis could not support nationwide postponement because the Secretary has inherent authority to reconsider a TPS determination, particularly one that had not even taken effect. The district court's Equal Protection analysis—conducted on an expedited basis without *any* administrative record—was equally flawed because it failed to apply the applicable rational basis test and impugned the Secretary's motives by relying on out-of-context statements with no connection to these TPS determinations.

Moreover, the district court's remedy is barred by § 1252(f)(1), which expressly forbids district courts from restraining or enjoining the operation of

11

specified provisions of the INA—including the TPS statute. And even if it were not, the district court abused its discretion by entering sweeping nationwide relief for every Venezuelan TPS recipient, effectively stifling ongoing litigation in other districts addressing the same issues.

For these reasons, and because the balance of equities favors the government, this Court should vacate the district court's order below.

## STANDARD OF REVIEW

This Court reviews "an order regarding preliminary . . . relief for abuse of discretion, but review[s] any underlying issue of law de novo." *Nobert v. City and County of S.F.*, 10 F.4th 918, 927 (9th Cir. 2021) (citation omitted). The "district court's choice of equitable remedy" is reviewed for abuse of discretion. *Montana Wildlife Fed'n*, 127 F.4th at 50.

## ARGUMENT

## I.   THE TPS STATUTE BARS JUDICIAL REVIEW OF PLAINTIFFS' CLAIMS

This Court should reverse the district court's legally erroneous postponement order. *See San Francisco*, 10 F.4th at 927. The APA generally authorizes courts to review final agency actions and to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (quoting 5 U.S.C. § 706(2)(A)). However, APA review is unavailable if another statute precludes judicial review.

5 U.S.C. § 701(a)(1); *see Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004) ("If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective.").

The TPS statute provides that *"[t]here is no judicial review of any determination* of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). Jurisdictional bars can scarcely be any clearer—or more explicit—than this. This provision bars all of Plaintiffs' claims, whether statutory or constitutional, each of which challenges Secretary Noem's vacatur and termination. *Id.*; *see also* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review.") (emphasis added).

The statute's broad terms confirm its broad sweep. The term "determination" covers the Secretary's decisions regarding TPS designations. *See Merriam-Webster's Dictionary* (2025), Determination ("the act of deciding definitely and firmly"), *The American Heritage Dictionary* (2022), Determination ("The act of making or arriving at a decision[;] The decision reached[;] The settling of a question by an authoritative decision or pronouncement"); *Black's Law Dictionary* 450 (6th ed. 1990) (defining determination as "[t]o settle or decide by choice of alternatives

or possibilities."); *Webster's New Collegiate Dictionary* 346 (1990) ("the act of deciding definitively and firmly"); *Webster's Encyclopedic Unabridged Dictionary* 393 (1990) ("the act of coming to a decision or of fixing or settling a purpose").

The word "any," in the phrase "any determination," carries an expansive meaning. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("of whatever kind"). And the phrase "with respect to" similarly "has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018); *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (the similar phrase "related to" means "having a connection with or reference to . . . whether directly or indirectly"); *see* Webster's New Collegiate Dictionary 1004 (defining "respect" as "a relation to or concern with something usually specified"). Indeed, the Supreme Court held that materially similar jurisdiction-stripping language in the Immigration and Nationality Act precludes a whole category of judicial review. *Patel v. Garland*, 596 U.S. 328, 337-40 (2022) (statute barring review of "any judgment regarding the granting of relief" covers "any authoritative decision" on the matter); *see also United States v. Tohono O'odham Nation*, 563 U.S. 307, 312 (2011) (observing that when Congress has stripped a court of jurisdiction "in respect to" particular claims, it is to be construed as a "broad prohibition").

This Court has enforced comparable limitations on judicial review where Congress used analogous language. For example, in *Reeb v. Thomas*, this Court held that 28 U.S.C. § 3625's bar on APA review of "any determination, decision, or order" related to the Bureau of Prisons' operation of prison programs stripped a district court of jurisdiction to consider a prisoner's habeas petition, challenging his removal from a rehabilitation program. 636 F.3d 1224, 1226-28 (9th Cir. 2011). Similarly, in *Nicholas v. United States*, this Court held that 26 U.S.C. § 7429(f)—which provided that "[a]ny determination made by a district court under this section shall be final and conclusive and shall not be reviewed by any other Court"—barred "constitutional and evidentiary" review of certain tax assessments. 633 F.2d 829, 830 (9th Cir. 1980). And with regard to this statute in particular, this Court directly held (in a since-vacated decision) that the TPS statute "preclude[s] direct review of the Secretary's country-specific TPS determinations." *Ramos v. Wolf*, 975 F.3d 872, 889-91 (9th Cir. 2020), *vacated*, 59 F.4th 1010, 1011 (9th Cir. 2023).[3]

Applying the jurisdictional bar here is straightforward. The bar applies to the Secretary's 2025 Termination because it is a "determination . . . with respect to . . . the termination" of the 2023 TPS designation for Venezuela. *See* 6-ER-1342. The

---

[3] The *Ramos* decision was vacated and has no precedential effect. *See, e.g., Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) ("[A] decision that has been vacated has no precedential authority whatsoever."). However, it "still carries informational and perhaps even persuasive precedential value." *DHX Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1176 (9th Cir. 2005).

statute equally precludes judicial review of the Secretary's 2025 Vacatur because it is a determination regarding the "extension of a designation." 8 U.S.C. § 1254a(b)(5)(A); 6-ER-1342-44. Thus, Plaintiffs are not likely to succeed on the merits because the Secretary's determinations are not subject to judicial review—full stop.

The district court's contrary conclusion erroneously conflated the Secretary's analytically separate Vacatur and Termination decisions. 1-ER-23-27. Specifically, the district court never analyzed the reviewability of the 2025 Termination, despite concluding that postponement was effectual because Plaintiffs ultimately sought "postponement of . . . the actual termination of the 2023 TPS Designation[.]" 1-ER-28. From that (erroneous) premise, the district court reasoned that it could postpone the Secretary's 2025 Termination during the sixty-day notice period, provided by the Secretary pursuant to § 1254a(b)(3)(B), because the termination of TPS status had not yet become effective. 1-ER-28. That is obvious legal error because the review of the Secretary's "termination" is expressly forbidden, 8 U.S.C. § 1254a(b)(5)(A), and, indeed, this Court previously reversed the district court on precisely this issue. *Ramos*, 975 F.3d at 889-91.

As to the 2025 Vacatur, the district court's postponement rationale is irreconcilable with the statutory text. 1-ER-25. The court reasoned that a "decision to vacate" is not "literally and textually" a "designation, or termination or extension

16

of a designation." 1-ER-25. Although true, that observation is legally irrelevant. The statute bars review as to a determination "with respect to" a TPS designation. 8 U.S.C. § 1254a(b)(5)(A). Because vacating an extension is plainly a determination "with respect to" the 2023 TPS Designation, this part of the district court's analysis was also flawed.

Moreover, the district court's analysis cannot be squared with the scope of § 1254a(b)(5)(A)'s prohibition on "judicial review." *See* 1-ER-1-23-27. In the REAL ID Act of 2005, Pub. L. No. 109-13, § 106, 119 Stat. 231, 310-11, Congress, in § 1252(a)(5), defined the term "judicial review" as used in the INA:

> For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5); *see Burgess v. United States*, 553 U.S. 124, 129 (2008) ("Statutory definitions control the meaning of statutory words in the usual case.") (cleaned up). Read together, there can be no doubt that 8 U.S.C. §1254a(b)(5)(A) and § 1252(a)(5) bar Plaintiffs' APA challenge because Congress unequivocally foreclosed any "statutory or nonstatutory" challenge to "*any determination* of the [Secretary] *with respect to* the determination, or termination or extension of a designation" of TPS. 8 U.S.C. §§ 1252(a)(5), 1254a(b)(5)(A) (emphasis added); *see Thoung v. United States*, 913 F.3d 999, 1005 (10th Cir. 2019) (reading "'judicial

17

review' under § 1252(a) as referring only to appellate review" is incorrect because that reading "is foreclosed by the text of the Act itself.") (citing 8 U.S.C. § 1252(a)(5)).

This broad statutory definition of "judicial review" further distances this case from *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), and *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43 (1993), on which the district court relied. 1-ER-25. "Both of those cases involved challenges that fell outside the scope of [§ 1252(a)(5)'s] jurisdiction-stripping provision," and the provision became effective *after* those decisions. *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1030 (7th Cir. 2023) (emphasizing that "Congress's intent to preclude judicial review other than through the process outlined in § 1252 is clear."). Moreover, *McNary*'s conclusion that litigants could raise "collateral challenges to unconstitutional practices and policies," *McNary*, 498 U.S. at 479, to the administration of the Special Agricultural Worker program was expressly predicated on the fact that Congress only barred judicial review of "*a determination* respecting *an application.*" *Ramos*, 975 F.3d at 889 (quoting former 8 U.S.C. § 1160(e)(1)) (emphasis added); *see Reno*, 509 U.S. at 64 (interpreting "the phrase 'a determination respecting an application for adjustment of status'").

Critically, *McNary* emphasized that Congress *could* bar judicial review of collateral challenges if it used more expansive language. 498 U.S. at 494 (citing

8 U.S.C. § 1329 as an example). And Congress used more expansive language here, barring any "statutory or nonstatutory" challenge to "*any determination* of the [Secretary] *with respect to* the determination, or termination or extension of a designation" of TPS. 8 U.S.C. §§ 1252(a)(5), 1254a(b)(5)(A) (emphasis added); *see Bouarfa v. Mayorkas*, 604 U.S. 6, 19 (2024) (holding that INA provisions limiting judicial review provide "clear and convincing evidence of congressional intent to preclude judicial review"). Thus, the district court's reliance on *McNary* and *Reno*'s reasoning, as well as this Court's cases applying it, was misplaced.

Finally, the district court's reliance, 1-ER-23, on a purported "concession" was also error: "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (same). Nor was there any concession. The government expressly argued that "Secretary Noem's Vacatur of the 2025 Extension falls well within the statute's 'any determination' language" and thus "§ 1254a(b)(5)(A) eliminates . . . jurisdiction." 1-ER-248. At the postponement hearing, the government reiterated that the Secretary's "decision to vacate" is "swept up under 1254a(b)(5)(A)." 1-ER-128. Subsequent exchanges with the court addressed why Plaintiffs' claims failed even under the district court's prior ruling in *Ramos*, but the government did not concede that any review of the 2025 Vacatur is permissible. On that point, the statute could

19

not be clearer: there is "no judicial review" of determinations related to a TPS designation. 8 U.S.C. § 1254a(b)(5)(A). Accordingly, this Court should vacate the district court's order with instructions to dismiss.

## II.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR APA CLAIMS.

If the Court reaches the issue, it should reverse the district court's merits analysis. To avoid the bar on judicial review of the Secretary's TPS determinations, the district court's analysis focused on the 2025 Vacatur, concluding that review was permissible as to whether the Secretary has the authority to vacate past actions in the first instance. 1-ER-23, 1-ER-26-27. The court erred by concluding that Secretary Noem lacked authority to reconsider Secretary Mayorkas's unreasoned 2025 Extension, which effectively consolidated and extended Venezuela's TPS designations for all Venezuelan TPS holders. 1-ER 50-51.

As this Court has recognized, statutory authorization to issue a benefit "must be understood as carrying with it an implied incidental authority" to revoke the benefit. *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1143 (9th Cir. 2024) (*CUA*). Courts have long recognized that principle as a general matter: An administrative agency has inherent or statutorily implicit authority to "reconsider and change a decision if it does so within a reasonable period of time" if Congress has not foreclosed this authority by requiring other procedures. *Mazaleski v. Treusdell*, 562 F.2d 701, 720 (D.C. Cir. 1977); *see, e.g.*, *Kelch v. Dir., Nev. Dep't of*

*Prisons*, 10 F.3d 684, 687 (9th Cir. 1993) (applying Nevada law holding "administrative agencies have an inherent authority to reconsider their own decision, since the power to decide in the first instance carries with it the power to reconsider"); *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide."); *Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (collecting cases and explaining that "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions, at least if done in a timely fashion."); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (holding agency acted lawfully by exercising inherent authority to reconsider decisions) (collecting cases); *see also The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) ("[F]ederal agencies . . . have broad authority to correct their prior errors.").

Permitting reconsideration is especially warranted when an agency seeks to correct an error in its former action. In that context, reconsideration serves judicial economy and the separation of powers by permitting agencies to correct their own errors, without the need for judicial intrusion. *Cf. SKF USA Inc. v. U.S.*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (an agency may remand its own decision because "it had doubts about the correctness of its decision or that decision's relationship to the agency's other policies."); *The Last Best Beef, LLC*, 506 F.3d at 340 (discussing the "inherent discretion [of the Patent Office] to correct its own errors and manage its

21

own docket"); *Gun South, Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration.").

Nothing in the TPS statute forecloses this inherent authority to reconsider. Under the statute, the Secretary has discretion over both the length of a TPS designation and the timing of periodic review. 8 U.S.C. § 1254a(b)(3)(A)-(C). Former Secretary Mayorkas himself recognized as much when he reconsidered an earlier TPS determination during his tenure. *See* 6-ER-1384-96, *Consideration and Recission of Termination of the Designation of El Salvador for [TPS]; Extension of the [TPS] Extension for El Salvador*, 88 Fed. Reg. 40,282, 40,285 & n.16 (June 21, 2023). The TPS statute imposes no deadlines or timeframes for modifying or vacating a deficient extension, especially an extension that is not yet in effect. *See* 8 U.S.C. § 1254a(b). Nor does the statute provide any timeframe relevant to consolidation of two different TPS designations that could prevent reconsideration of a consolidation decision. *Id*. The statute does not discuss such a consolidation at all, which was among the Secretary's animating concerns. 6-ER-1344.

Here, the Secretary permissibly exercised her reconsideration authority. She acted promptly to reconsider and vacate Secretary Mayorkas's hasty TPS extension a mere 17 days after Secretary Mayorkas announced his decision to extend TPS for

Venezuelans, and months before the extension's effective date of April 3, 2025. *See* 6-ER-1342, 6-ER-1345, 6-ER-1459. Not only was the Secretary's determination timely, it was necessary in order to "untangle the confusion" caused by the 2025 Extension, which wove together two separate designations of Venezuela for TPS with different effective dates, "provid[ing] an opportunity for . . . clear guidance." 6-ER-1344. After consultation with the appropriate entities, the Secretary issued a notice terminating one of the two Venezuela TPS designations, based on her finding that the presence of the covered persons *is* "contrary to the national interest of the United States." 6-ER-1339 ("[T]ermination of the 2023 Venezuela TPS designation is required because it is contrary to the national interest to permit the Venezuelan nationals … to remain temporarily in the United States.") (cleaned up). That was an entirely permissible exercise of the Secretary's reconsideration authority.

The district court relied on *CUA*, 124 F.4th at 1148, to suggest that the implied power to reconsider a decision is inconsistent with the TPS statute because the statute includes specific time periods for terminations and extensions. 1-ER-51. What is more instructive from *CUA*, however, is the Court's reasoning that the FCC's inherent revocation authority was supported by the requirement to consider "national defense" in consultation with the State and Defense Departments—a process and determination strikingly similar to the Secretary's "national interest" assessment here, reached after consultation with the State Department. 124 F.4th

at 1150. The district court's reasoning that the presence of a temporal limitation forecloses authority to reconsider any decisions, 1-ER-50-52, simply does not withstand scrutiny and leads to absurd and extreme results—no Secretary would be empowered to vacate a designation or extension of a designation no matter how grave the threat to national security, U.S. foreign policy, or border security interests, or how considerable the error or legal defect in the prior determination. Contrary to the district court's reasoning, nothing in the statute implicitly limits the Secretary's inherent power in this regard.

The inherently temporary, discretion-laden, national-interest-focused features of the TPS scheme reinforce the conclusion that the Secretary has reconsideration authority. The Secretary is authorized by statute to terminate a designation if she "determine[s]" that a foreign state "*no longer continues* to meet the conditions for designation." 8 U.S.C. § 1254a(b)(3)(A) (emphasis added). The statute requires the Secretary to review conditions within foreign states designated for TPS, but any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C. § 1254a(b)(3)(A)-(C).

The TPS statute explicitly requires the Secretary to determine whether continuing to permit the temporary presence of TPS beneficiaries from a foreign state designated under 8 U.S.C. § 1254a(b)(1)(C) is "contrary to the national interest of the United States," and she has done so. 6-ER-1339-40. This national interest

finding is authorized by statute, clearly tied to foreign policy, and how the Secretary weighs the factors under consideration is committed to her discretion. *See* 8 U.S.C. § 1254a(b)(1)(C); *cf. Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019) (observing, in an analogous INA context, "that the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts" (citing *Trump v. Hawaii*, 585 U.S. 667, 684-86 (2018))).

Finally, the district court's conclusion that the 2025 Vacatur is impermissible due to the failure to account for alternatives short of termination was erroneous. 1-ER-58-59. In issuing the Vacatur, the Secretary indicated that the decision to vacate provided "an opportunity for informed determinations regarding the TPS designations and clear guidance." 6-ER-1344 (citing Exec. Order No. 14159, *Protecting the American People Against Invasion*, § 16(b), 90 Fed. Reg. 8443 (Jan. 20, 2025)). Thus, the proffered alternative, 1-ER-58-59, of simply deconsolidating the re-registration periods would not meet the 2025 Vacatur's stated objectives. The Secretary's 2025 Vacatur of the 2025 Extension complied with the statute, was issued in accordance with her authority to make a determination that reconsiders a prior determination, and was consistent with her continuing obligation to safeguard the border and national security of the United States and to administer and enforce the immigration laws.

Former Secretary Mayorkas's entangling of the 2021 and 2023 Venezuela designations was not irrevocably binding. The TPS statute itself does not mandate such a severe and unworkable limitation of the Secretary's ability to fulfill her border and national security responsibilities and exercise her broad authority to administer and enforce the immigration laws, *see, e.g.*, 6 U.S.C. § 202(1)-(5), 8 U.S.C. § 1103(a)(1), (a)(3), and to do so consistent with the President's Executive Orders.

## III. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR EQUAL PROTECTION CLAIMS

Plaintiffs also challenge the 2025 Vacatur and 2025 Termination as discriminatory. They are unlikely to succeed on the merits of that argument, whether under the highly deferential standard that the district court should have applied to the claim or even under the heightened form of scrutiny it incorrectly applied instead.

### A    To the Extent Plaintiffs' Constitutional Claim is Reviewable at All, Rational Basis Review Applies

The district court erroneously applied a heightened level of scrutiny to Plaintiffs' constitutional challenge. That contravened nearly a century of Supreme Court precedent recognizing that "the power to expel or exclude aliens [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)). More recently, in *Trump v. Hawaii*, the Court reiterated that rational basis review governs Equal

26

Protection Clause challenges to immigration policy choices because "'[a]ny rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution.'" 585 U.S. at 704 (quoting *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976)).

Reviewing immigration policy decisions under rational basis review also accords with the well-established principle that the government's treatment of "aliens differently from citizens does not in itself imply that such disparate treatment is 'invidious.'" *Mathews*, 426 U.S. at 80. Indeed, "a host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other; and the class of aliens is itself a heterogenous multitude of persons with a wide-ranging variety of ties to this country." *Id*. at 78.

At most, TPS determinations are subject to deferential rational basis review. Such determinations are precisely the kind of immigration policy decisions where there is a "lack of competence on the part of the courts," *Hawaii*, 585 U.S. at 704 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010)), to probe the Executive Branch's decision making. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 591 (1952) ("However desirable worldwide amelioration of the lot of aliens, we think it is peculiarly a subject for international diplomacy. It should not be initiated by judicial decision . . . [and] must be entrusted to the branches of the Government

in control of our international relations and treaty-making powers."). TPS determinations involve unique, country-specific analysis that "implicate[s] relations with foreign powers" and "involve[s] classifications defined in the light of changing political and economic circumstances." *Hawaii*, 585 U.S. at 702. Congress's decision to shield TPS determinations from judicial review underscores the conclusion that the courts have limited competence in this area. *See* 8 U.S.C. § 1252a(b)(5)(A).

Deferential review of the TPS determinations at issue here is especially sensible. The 2025 Termination was explicitly based on an assessment of the national interest, including concerns relating to national security and public safety. *See id*. at 704 (the "narrow standard of review has particular force in admission and immigration cases that overlap with the area of national security") (internal quotation marks omitted).

The district court evaded these principles by questioning whether the Secretary's determinations were really "based on national security interests." 1-ER-60. The district court then incorrectly suggested that the government was trying to get "a free pass to deferential review" by claiming to be pursuing a national security interest. 1-ER-61. Not so. The Secretary pointed to specific national security concerns discussed in the 2025 Termination. 1-ER-253-54; *see* 6-ER-1339-40. For example, the Secretary explicitly cited the concern expressed in the 2025

28

Termination that "[a]mong [the] Venezuelan nationals who have crossed into the United States are members of the Venezuelan gang known as [TdA]," which has "been blamed for sex trafficking, drug smuggling, police shootings, kidnappings, and the exploitation of migrants." 1-ER-254 (citing 6-ER-1339).

The district court also reasoned that the deferential standard articulated in *Hawaii* does not apply because unlike the aliens in that case, TPS recipients already reside in the United States, meaning that "the broad judicial deference to executive action in excluding aliens does not apply." 1-ER-60. In so doing, the district court reprised its own analysis from a prior decision regarding several TPS termination decisions in 2017 and 2018, *Ramos v. Nielsen*, 321 F. Supp. 3d 1083 (N.D. Cal. 2018), as well as a later-vacated panel decision by this Court in the same case, *Ramos*, 975 F.3d at 895-96. 1-ER-60-61. But that attempted distinction is immaterial. The Plaintiffs in *Hawaii* were indeed seeking entry. But the Supreme Court did not hint that the standard of review applied only in that circumstance. 585 U.S. at 702-05. To the contrary, in summarizing the "upshot of [its] cases" on this issue, *Hawaii*, 585 U.S. at 704, the Court quoted directly from *Mathews*, a case in which *resident* aliens challenged the constitutionality of limitations on eligibility for federal medical insurance, and where the Court upheld the constitutionality of the limitations because they were not "wholly irrational." *Mathews*, 426 U.S. at 83. *Hawaii* also approvingly cited a Second Circuit case which rejected an equal

protection claim brought by aliens of certain nationalities *from within the United States* who were required to register in the wake of the terrorist attacks on September 11, 2001. 585 U.S. at 704 (citing *Rajah v. Mukasey*, 544 F.3d 427, 433 (2d Cir. 2008)). In that case, the Second Circuit held that "[d]istinctions on the basis of nationality may be drawn in the immigration field by the Congress or the Executive . . . and must be upheld so long as they are not wholly irrational." *Rajah*, 544 F.3d at 433. In earlier constitutional challenges brought by aliens *already within* the United States as well, the Supreme Court repeatedly cautioned against applying a rigorous standard of review. *See Galvan v. Press*, 347 U.S. 522, 531 (1954) (upholding the Internal Security Act of 1950 while noting that "the formulation of these policies is entrusted exclusively to Congress"); *Harisiades*, 342 U.S. at 590 ("[N]othing in the structure of our Government or the text of our Constitution would warrant judicial review by standards which would require us to equate our political judgment with that of Congress").

In the subsequently-vacated panel decision in *Ramos*, on which the district court relied, 1-ER-60-61, the panel did not acknowledge much of the foregoing precedent and instead cited *Zadvydas v. Davis* for the proposition that "the distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Ramos*, 975 F.3d at 896 (citing 533 U.S. 678, 693 (2001)). *Zadvydas* involved a challenge to indefinite

30

detention under a post-removal-period statute and did not speak to the appropriate standard of review for an Equal Protection Clause challenge to an immigration status determination for a group of individuals, much less hold that strict scrutiny should apply to such challenges. 533 U.S. at 682. Instead, it recognized that, even in the context of aliens with removal orders, "the nature of [due process] protection may vary depending on the status and circumstance." *Id*. Accordingly, it does not follow from the "distinction" recognized in *Zadvydas* that aliens challenging policy decisions in the realm of immigration should be similarly situated for equal protection purposes as individuals who challenge non-immigration related government action.[4]

In sum, the notion that review under *Arlington Heights* should effectively apply to any termination of TPS so long as Plaintiffs invoke the specter of racial animus is fundamentally at odds with Supreme Court precedent recognizing the limited role of the judiciary in such cases. To the extent the Secretary's TPS decision is subject to a constitutional challenge at all, rational basis review applies.

---

[4] *Ramos* also noted that in *DHS v. Regents*, 591 U.S. 1, 33-34 (2020), the Supreme Court applied *Arlington Heights* while considering plaintiffs' claim that a decision to end the Deferred Action for Childhood arrivals program was motivated by racial animus. 975 F.3d at 896. Importantly, the Court in *Regents* did not state that the *Arlington Heights* framework *should* apply to plaintiffs' claim but simply rejected the claim because their allegations were "insufficient" even assuming their claim was cognizable. 591 U.S. at 34.

31

The Secretary's TPS determinations easily pass rational basis review because they are "plausibly related" to the government's "stated objectives." *Hawaii*, 585 U.S. at 704-05. Like the Proclamation at issue in *Hawaii*, the Secretary's determinations are "premised on legitimate purposes," 585 U.S. at 706, including "national security, border enforcement, public safety, immigration policy, and economic and public welfare." 6-ER-1340. The determinations are also fully consistent with Congress's goal of providing TPS to eligible aliens until the Secretary determines that the conditions for the country's TPS designation no longer continue to exist, 8 U.S.C. § 1254a(b)(3), including, in this instance, where permitting such aliens to remain in the United States is "contrary to the national interest," *id.* § 1254a(b)(1)(C). While Plaintiffs may disagree with the "effectiveness and wisdom" of the Secretary's determinations, the Court "cannot substitute [its] own assessment for the Executive's predictive judgments on such matters, all of which are delicate, complex, and involve large elements of prophecy." *Hawaii*, 585 U.S. at 707-08 (internal quotation marks omitted).

That should be the end of the analysis. Courts cannot look behind facially legitimate actions to hunt for illicit purposes. *See Hawaii*, 585 U.S. at 703-04. Decisions by the political branches about which classes of aliens to exclude or expel will generally be upheld against constitutional challenges so long they satisfy deferential rational-basis review. *Id*. at 704-05; *see also Kleindienst v. Mandel*, 408

U.S. 753, 769-70 (1972) (judicial review of "[p]olicies pertaining to the entry of aliens and their right to remain here" is limited to whether the Executive gave a "facially legitimate and bona fide" reason for its action).

### B. Plaintiffs' Constitutional Claim Fails Even Under the *Arlington Heights* Standard Employed By the District Court

Even if the district court were correct that the *Arlington Heights* standard applies, Plaintiffs would still be unlikely to prevail on the merits. That standard requires a showing that a "racially discriminatory purpose has been a motivating factor in the [government's] decision." *Village of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 265 (1977).

In finding in favor of Plaintiffs' equal protection claim, the district court relied primarily on what it characterized as a series of "discriminatory statements" by either the Secretary or President Trump. 1-ER-64-68. Although the district court acknowledged in passing that the Secretary's actions were focused on "the nation of Venezuela, and not the race of its people," it nevertheless interpreted Plaintiffs' claim as based on "animus and generalized stereotypes," and the allegation that the Secretary's decisions were "infected by racial animus." 1-ER-62. Notwithstanding the district court's observation that "there can be overlap between national origin and race," 1-ER-62, in the specific context of a challenge to termination of TPS, it would make little sense if the government's statements pertaining to national origin could independently support an equal protection challenge because national origin

33

is inherently part of TPS. Plaintiffs thus must do more than show that the challenged TPS determination draws lines based on "national origin"; every TPS decision does that. Instead, Plaintiffs must support their equal protection challenge with evidence of genuine racial or ethnic animus.

Plaintiffs and the district court attributed racial animus to the Secretary based on four public statements, none of which shows racial or ethnic animus toward Venezuelans. 1-ER-64-66. To the contrary, each of the statements in question tracks reasons set forth in the TPS Termination notice, including public safety concerns relating to crime and national security concerns arising from the documented presence in the United States of the violent Venezuelan Tren de Aragua gang. 6-ER-1339-40.

For example, the district court cited a social media post by the Secretary stating that "Venezuela didn't send us their best." 1-ER-64. But it ignored the fact that this post did not occur in isolation and was in response to a specific news report with the headline "Venezuelan migrant illegally in US charged for sexual assault against minor in Virginia." 3-ER-642.

By the same measure, in each of the other three public statements cited by the district court, 1-ER-65, the Secretary said nothing whatsoever about the racial or ethnic character of people from Venezuela and simply expressed concern that at least *some* of the Venezuelans who have come to the United States are members of the

TdA gang. *See* 4-ER-977, 4-ER-1062, 4-ER-1076. Most prominently, the district court credited Plaintiffs' claim that the Secretary referred to Venezuelans as "dirt bags" during an interview with Fox and Friends. 1-ER-65. The interview transcript, however, makes clear that the Secretary was referring specifically to "members of [TdA]" and not to Venezuelans writ large. 4-ER-1062. Indeed, almost immediately after stating that "the people of this country want these dirt bags out," the Secretary referenced the fact that DHS "picked up one of the ringleaders of TdA" as he was "trying to buy grenades." 4-ER-1062. The Court should firmly reject the district court's ill-founded attempt to infer racism from statements that say absolutely nothing about race or ethnicity. *Regents*, 591 U.S. at 35 (plaintiffs failed to identify statements by either the Acting Secretary of Homeland Security or the Attorney General that "would give rise to an inference of discriminatory motive").

To the extent Plaintiffs, and by extension the district court, attempted to locate racial animus in the statements of President Trump, they are attempting to resuscitate an argument that was rejected by the Supreme Court in *Regents*, 591 U.S. at 35, as well as the vacated panel decision in *Ramos*, 975 F.3d at 896-99. In *Regents*, the plaintiffs argued that "President Trump made critical statements about Latinos that evince discriminatory intent," and that such statements supported their claim that the government rescinded DACA in violation of equal protection. *Id*. The Court disagreed and held that "even as interpreted by [the plaintiffs], these statements—

35

remote in time and made in unrelated contexts—do not qualify as 'contemporary statements' probative of the decision at issue." *Id.* (citing *Arlington Heights*, 429 U.S. at 268). Applying *Regents*, the panel decision in *Ramos* likewise noted the lack of evidence that any of the allegedly discriminatory statements by the President "played any role in the TPS decision making process." 975 F.3d at 898 (citing *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1261 (9th Cir. 2016)).

Similarly, here, none of the statements of President Trump cited by the district court are "contemporary statements" probative of the Secretary's motivations for the challenged TPS determinations. 1-ER-66-68. Indeed, all of the statements cited by the district court either date back to President Trump's first term, *see* 4-ER-1105, 4-ER-1122, or were made during the recent presidential campaign, before the President took office. *See* 3-ER-782-84, 3-ER-842, 3-ER-877, 5-ER-1215. Moreover, to the extent these statements discussed Venezuela at all, it is clear that the President was speaking specifically about the risks posed by criminals and gang members, not any particular racial or ethnic characteristic of the Venezuelan people. *See* 3-ER-782-84, 3-ER-842.

The district court's continued reliance on the "cat's paw" theory to connect the President's statements to the Secretary's TPS decisions is also squarely at odds with the Supreme Court's decision in *Regents*. Again, in *Regents*, the Court rejected plaintiffs' reliance upon allegedly discriminatory statements that were not

36

"contemporary statements probative of the decision at issue." 591 U.S. at 35. Moreover, the "cat's paw" doctrine typically applies in the context of employer liability, and there is no basis for extending "such a theory of liability" to "governmental decisions in the foreign policy and national security realm." *Ramos*, 975 F.3d at 898; *see Brnovich v. Democratic National Committee*, 594 U.S. 647, 689 (2021) (holding that "'cat's paw' theory has no application to legislative bodies").

In addition to analyzing the allegedly discriminatory statements of Secretary Noem and President Trump, the district court considered the "historical background," the "sequence of events," and the "disparate impact of the agency's action" as part of its analysis under *Arlington Heights*. 1-ER-72-75. As to the "historical background" and "sequence of events," the district court relied primarily on its own prior decision, which was later reversed by the panel decision in *Ramos*, as well as the fact that the Secretary's vacatur and termination decisions were made shortly after she was confirmed. 1-ER-72. The fact that the Secretary acted promptly to address the issue of TPS for Venezuela is hardly evidence of racial or ethnic animus and is instead fully consistent with the Secretary's determination that termination was in the "national interest" based on "serious national security, border enforcement, public safety, immigration policy, and economic and public welfare concerns." 6-ER-1340; *see Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 59 (1984) (Rehnquist, J. concurring in part) ("A

change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive's reappraisal of the costs and benefits of its programs and regulations.").

The district court also cited a supposed "lack of evidentiary" support for the 2025 Termination. 1-ER-73-74. In so doing, the district court engaged in precisely the kind of reweighing of the evidence that Congress barred in 8 U.S.C. § 1254a(b)(5)(A). In any event, the fact that the district court disagreed with the Secretary's assessment of the risks to "national security, border enforcement, public safety, immigration policy, and economic and public welfare," 6-ER-1340, is not a basis for ascribing racial animus to the Secretary's facially neutral determination that TPS for the 2023 Designation of Venezuela is no longer in the national interest.

Finally, as to "disparate impact," the district court acknowledged that this factor is less probative here because "a TPS decision by country will have an inherent disparate impact based on national origin." 1-ER-74. It nevertheless ruled that the "relevance of disparate impact in this context is instead rooted in the racially charged historical context." 1-ER-74-75. But as discussed above, the statements relied on by the district court only reflect concern about the documented fact that at least some Venezuelans in the United States are members of TdA.

In any event, the Supreme Court rejected a nearly identical disparate impact claim in *Regents*, observing that "because Latinos make up a large share of the

38

unauthorized alien population, one would expect them to make up an outsized share of recipients of any cross-cutting immigration relief program" such that "any generally applicable immigration policy could be challenged on equal protection grounds." 591 U.S. at 34; *see United States v. Carillo-Lopez*, 68 F.4th 1133, 1151-54 (9th Cir. 2023) (rejecting claim by Mexican national that criminal prohibition against illegal reentry has a disproportionate impact on "Mexicans and other Central and South Americans"); *see also Ramos*, 975 F.3d at 899 (rejecting race-based disparate impact analysis as to TPS termination while observing that "virtually every country that has been designated for TPS since its inception has been 'non-European.'").

For the reasons explained above, the district court erred in concluding that Plaintiffs established a likelihood of success on their equal protection claim.

## IV. SECTION 1252(F)(1) DEPRIVES THE DISTRICT COURT OF JURISDICTION TO ENTER ITS ORDER

The relief ordered by the district court obviously enjoined or restrained the government's implementation of the TPS statute. But 8 U.S.C. § 1252(f)(1) explicitly bars such relief. The court sidestepped this jurisdictional limitation first by incorrectly concluding that the TPS statute is not a provision covered by Section 1252, then by repackaging its injunction as a stay.

### A. The TPS Statute is Covered by Section 1252(f)(1)

Section 1252(f)(1) provides: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the

Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter . . . other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1) (emphasis added). As the Supreme Court held, section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022).

The district court doubted whether § 1252(f)(1) applies to the TPS statute at all, but its reasoning is unpersuasive. It reasoned that the U.S. Code places the TPS statute in Part V, titled "Adjustment and Change of Status" rather than Part IV, titled "Inspection, Apprehension, Examination, Exclusion, and Removal," and that no court has yet to find the § 1252(f)(1) bar applicable to TPS. 1-ER-15. The district court considered this interpretation reasonable, concluding that TPS is more akin to an adjustment of status than a deportation proceeding, so its codification in Part V *may* have been consistent with IIRIRA and the INA. 1-ER-15. But that reasoning failed to recognize that "the text of the United States Code 'cannot prevail over the Statutes at Large when the two are inconsistent" and that Congress's placement of

40

TPS in chapter 4 of title II of the INA, as amended therefore prevails. As this Court

has stated,

> [T]he jurisdictional bar of § 242(f)(1) of the INA, as enacted by § 306(a)(2) of the [Illegal Immigration Reform and Immigrant Responsibility Act of 1996,] applies to the provisions of chapter 4 of title II of the INA, as amended by IIRIRA of 1996. The reference in § 306(a)(2) … of the IIRIRA to 'the provisions of chapter 4 of title II' was changed to 'the provisions of part IV of this subchapter' in the U.S. Code version of the law. But the text of the United States Code 'cannot prevail over the Statutes at Large when the two are inconsistent.

*Galvez v. Jaddou*, 52 F.4th 821, 830 (9th Cir. 2022).

Indeed, tellingly, Plaintiffs have never contested that point. *See* 1-ER-203-26,

261-398. And historical editor's codification notes lend further support to this

interpretation.

> Renumbering and transfer . . . of the sections of the Immigration and Nationality Act that are set out as sections 1251 to 1254a of this title, together with the amendment of the table of contents of the Immigration and Nationality Act . . . suggests a Congressional intent to move these renumbered and transferred sections into chapter 4 of title III of the Act . . . without actually making such chapter change pursuant to specific directory language. Such a Congressional intent . . . would serve to restructure this subchapter by moving

41

sections 1251 through 1254a of this title into Part IV of this subchapter as shown above and have Part V begin with section 1255 of this title.").

8 U.S.C. § Ch. 12, Subch. II, Pt. V, Refs & Annos.

Accordingly, §1252(f)(1) applies to the TPS statute.

## B.    Section 1252(f)(1) Barred Postponement

The remaining question is whether the district court's order, styled as a postponement under section 705 of the APA, is one of the orders that Section 1252(f)(1) forbids. It is.

Section 1252(f)(1) bars any court other than the Supreme Court from entering an order that "enjoin[s] or restrain[s] the operation of" the statutes it covers. The district court's order bars the Secretary or DHS from acting on the 2025 Vacatur or 2025 Termination. 1-ER-77. Those determinations were made to carry the TPS statute, a covered provision, into effect. The district court's order thus enjoins or restrains the operation of the covered TPS statute.

The district court reached the opposite conclusion by reading "enjoin or restrain" as though it barred only orders labeled "preliminary injunction" or "injunction." 1-ER-21-22. That is wrong for two reasons.

*First*, courts readily look past an order's label to its underlying function, and the order here functioned like an injunction. *Cf. Abbott*, 585 U.S. at 595 ("[W]e have not allowed district courts to shield their orders from appellate review by avoiding the label injunction") (cleaned up). In effect, if not in name, the district

42

court enjoined the Secretary's ability to terminate the 2023 TPS designation. *See* 1-ER-28. The district court even applied the injunction factors to evaluate whether its order was appropriate. 1-ER-28, 30-31.

*Second*, the district court's approach ignores the statute's text, which bars orders that "enjoin *or restrain*" covered statutes' operation. 8 U.S.C. §1252(f)(1) (emphasis added). That language is far-reaching. For example, interpreting analogous language, the Supreme Court held that the Tax Injunction Act, 28 U.S.C. § 1341, which barred orders that "suspend or restrain" tax collection, stripped courts of jurisdiction to enter not just injunctive relief, but also declaratory relief. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982). The district court's order impermissibly "restrain[s]" the Secretary from exercising her authority under the TPS statute, compels the Secretary to expend finite governmental resources implementing a TPS designation that is contrary to the national interest, and precludes Executive officials from enforcing immigration laws how they deem appropriate. *See Biden v. Texas*, 597 U.S. 785, 788 (2022) (explaining that a district court injunction requiring the government to take action "violated" § 1252(f)); *Aleman Gonzalez*, 596 U.S. at 549 ("restrain" means to "check, hold back, or prevent (a person or thing) from some course of action"). The district court ignored those effects, which obviated its attempts to distinguish between injunctions and stays. 1-ER-19-20.

Even if district courts could enter a Section 705 postponement without running afoul of § 1252(f)(1), the district court's order cannot be understood as a postponement. The 2025 Vacatur became "effective immediately." 6-ER-1343. That means it could not be postponed. *See Graddick v. Newman*, 453 U.S. 928, 936 (1981) (Powell, J., opinion regarding a stay denial) ("I believe that Graddick's request for a 'stay' is now moot. Ordinary linguistic usage suggested that an order, once executed, cannot be 'stayed.'"); *Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 204-05 (D.D.C. 2022) (concluding that postponement is inapposite, for courts or agencies, "once a rule has taken effect"). Thus, while purporting to stay agency action, the district court affirmatively *altered* the status quo. *See, e.g.*, *Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1305 (1985) (had the district court issued an order stopping rule from taking effect that would alter the "status quo"); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006) (explaining an order "preventing the implementation of new regulations" would "disturb[]" rather than preserve "the status quo").

The district court's reliance on *Nken v. Holder*, 556 U.S. 418, 423 (2009), further underscores its disregard of § 1252(f)(1). 1-ER-20-21. *Nken* straightforwardly held that a noncitizen with a pending petition for review could seek a judicial stay of removal under a court's inherent authority and that

§ 1252(f)(2) did not bar such a stay. *Nken*, 556 U.S. at 426-33. In contrast, the district court's postponement order did not arise in removal proceedings, *applied* the injunction factors, and coerced the Secretary into extending the 2023 TPS designation. *See* 8 U.S.C. § 1252(f)(1); 1-ER 30-31. Plainly, *Nken*'s analysis of a different statute in a different context gave the district court no warrant to ignore § 1252(f)(1)'s unequivocal prohibition on orders enjoining or restraining TPS statute.

Ultimately, the application of § 1252(f)(1) turns on whether an order "enjoins or restrains the operation of" the TPS statute and does so outside the context of a petition for review. Because the district court's postponement order obviously does, its order was improper and must be vacated.

## V. THE DISTRICT COURT ABUSED ITS DISCRETION BY GRANTING UNIVERSAL RELIEF

The district court also abused its discretion by ordering universal relief, where the balance of equities favored the government, Plaintiffs did not certify a class under Fed. R. Civ. P. 23, and Plaintiffs failed to demonstrate the requisite degree of irreparable harm to every TPS beneficiary. *See Montana Wildlife Fed'n*, 127 F.4th at 50. Accordingly, the district court's order should be vacated outright or, at minimum, it should be narrowed to apply only to the parties in accordance with traditional equitable principles.

### A.     The Balance of Equities Weigh Against Postponement

The district court erred because postponement is appropriate only where the balance of equities favors the Plaintiffs. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). In concluding that the balance of equities favored Plaintiffs, the district court reasoned that if Plaintiffs lost TPS, they would "no longer have authorization to work in the United States and thus will lose their jobs," and "will no longer have legal status, which means not only loss of, *e.g.*, driver's licenses and educational opportunities, but also—and most significantly—the prospect of removal from the United States." 1-ER-31. But the court's analysis failed to acknowledge that any such difficulties flow from the statute itself, which requires periodic review at least every 18 months and empowers the Secretary to terminate a TPS designation that no longer satisfies the applicable statutory criteria. *See* 8 U.S.C. §§ 1254a(b)(1)(C) ("extraordinary and temporary"), (g) ("remain in the United States temporarily"). And while the court relied heavily on declarations purporting to identify concrete harms stemming from TPS—1-ER-34—it failed to consider that those harms can only be remedied through legislative action.

For example, the court also speculated that the loss of TPS could result in Plaintiffs' separation from family members in the United States or require individuals to bring their U.S. citizen children to an unknown country. *Id.* at 32-33. But "the burden of removal alone cannot constitute the requisite irreparable injury."

*Nken*, 556 U.S. at 435; *see Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (finding that the potential irreparable harm of separating families did not justify a stay). And the court's emphasis on the possibility of removal also failed to recognize that neither the vacatur nor the termination result in the entry of a removal order for a former TPS recipient. 8 U.S.C. §§ 1101(a)(47), 1229a(a)(3); *City and Cnty. of S.F. v. USCIS*, 944 F.3d 773, 806 (9th Cir. 2019) ("this analysis focuses on irreparability, irrespective of the magnitude of the injury.") (cleaned up). After all, TPS recipients may have other immigrant or nonimmigrant status or potential paths to status, as the court recognized. 8 U.S.C. § 1254a(a)(5); *see also* 1-ER-37 n.15 (noting that, according to Plaintiffs' counsel "some TPS holders have, *e.g.*, asylum applications pending"). At bottom, Plaintiffs cannot demonstrate that the balance of equities tips in their favor because their alleged harms are an outgrowth of the temporary status afforded by the TPS statute itself. *See Nken*, 556 U.S. at 435 (harm associated with removal is not irreparable).

In contrast, the impact of the district court's order on the government is significant. It injures the Executive and the public interest by supplanting the Secretary's discretion-laden judgment about whether extending TPS was in the national interest, where doing so, *inter alia*, posed serious public safety concerns, strained local resources, and encouraged illegal immigration. 6-ER-1339-40; *see Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (noting

47

that the government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people."). That injury is especially acute here because rules and policies governing immigration "implement[] an inherent executive power." *United States, ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). The district court's order "is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assist. Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (granting a stay). That is particularly true because the Secretary's analysis sought "to prioritize the safety, security, and financial and economic well-being of Americans." *Protecting the American People Against Invasion*, Exec. Order No. 14159, § 1, 90 Fed. Reg. at 8443.

The nature of the injury inflicted by the district court's order underscores its irreparable character here. "It is an accepted maxim of international law that every sovereign nation has the power, as *inherent in sovereignty, and essential to self-preservation*, to forbid the entrance of foreigners within its dominions, or to admit them only *in such cases and upon such conditions as it may see fit to prescribe*." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892) (emphasis added). Compelling the United States to continue to accept the presence of aliens for whom the Secretary has exercised statutory authority to remove their temporary protected

48

status thus inflicts sovereign injury upon the government.

Ultimately, the district court's analysis is incompatible with Congress's and the Executive's sovereign prerogative over immigration. A continuing violation of immigration law harms the public, not those without any claim to lawful status in the United States (however sympathetic they may appear). *See Dep't of State v. Munoz*, 602 U.S. 899, 915-16 (2024); *Nken*, 556 U.S. at 435; *Shaughnessy*, 345 U.S. at 212, 222-23.

## B. Universal Relief Was Unwarranted

For the reasons discussed above, the district court's order was erroneous. But even if postponement were within the district court's authority, issuing it on a universal basis was an abuse of discretion, and this Court should narrow it. *See E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1028 (9th Cir. 2019) (granting a stay "insofar as the injunction applies outside the Ninth Circuit, because the nationwide scope of the injunction is not supported by the record as it stands").

Under settled constitutional and equitable principles, a court may not issue relief that is broader than necessary to remedy actual harm shown by specific plaintiffs. *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018); *Lewis v. Casey*, 518 U.S. 343, 358 n.5 (1996) ("[S]tanding is not dispensed in gross[.]"). A valid remedy "operate[s] with respect to specific parties," not with respect to a law "in the abstract" *California v. Texas*, 593 U.S. 659, 672 (2021) (cleaned up). By contrast,

remedies that reach beyond the parties—such as those ordered here—impose a serious "toll on the federal court system." *Hawaii,* 585 U.S. at 713 (Thomas, J., concurring), *see Califano v. Yamasaki,* 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs").

Here, Plaintiffs made no class claims in their Complaint, nor did they move to certify a class under Federal Rule of Civil Procedure 23. 6-ER-1398-1444. Moreover, Plaintiff NTPSA made no showing of actual, concrete injury in fact to all of its own members—much less to every TPS recipient under the 2023 Designation across the country—and the court's expansive order is therefore a clear abuse of discretion. *Cf. FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 399 (2024) (Thomas, J., concurring) (noting the conflict between associational standing—which permits an association to assert its members' injuries rather than its own—and Article III of the U.S. Constitution which "does not allow a plaintiff to seek to vindicate someone else's injuries.").

The challenged order exemplifies the significant problem created when an organization—like Plaintiff NTPSA—litigates based on speculative harms or generalized grievances rather than *actual injury*. The court's conclusion that "the agency actions here have had a uniform and nationwide impact on all Venezuelan TPS holders located across the United States"—1-ER-76—disregarded the

preliminary stage of this case by relying on merits-based decisions setting aside agency action under 5 U.S.C. § 706, ignored the heavy burden on a party seeking emergency relief to show why universal relief is necessary to alleviate their individual harm, and failed to appreciate that nationwide impact is commonplace with *any* Rule. That error is particularly stark because the final clause of 5 U.S.C. § 705 provides that a reviewing court, "may issue all necessary or appropriate process to postpone the effective date of an agency action *or* to preserve status or rights pending completion of the review proceedings." *Id*. (emphasis added). The statute's use of the disjunctive "or" illustrates that courts have two options to address agency actions and that, contrary to the district court's conclusion that § 705 authorizes postponement "without limitation," 1-ER-75, interim relief should only be granted "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705. Because only a subset of Plaintiffs' members were affected by the Secretary's determinations, postponing the effective date of those actions on a universal basis was not "necessary and appropriate." *Id*.; *see* 6-ER-1453-54 (amended complaint listing only five Plaintiffs affected by the termination of the 2023 TPS designation).

By minimizing 5 U.S.C. § 705's text, the court's order effectively sidestepped the requirement to limit relief to the parties. *See City and Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1245 (9th Cir. 2018) (vacating a nationwide injunction and remanding "to the district court for a more searching inquiry into the whether [the] case justifies

51

the breadth of the injunction imposed"). And its suggestion that the Secretary failed to explain how relief could be afforded to some members and not others—1-ER-76—gave it no warrant to disregard ordinary equitable principles and failed to acknowledge the Secretary's statutory authority to manage multiple TPS designations and wind down TPS designations in an orderly manner. *See Montana Wildlife Fed'n*, 127 F.4th at 50 (recognizing the "equitable discretion" of courts "to remand a decision without vacatur while the agency corrects [any identified] errors."); 8 U.S.C. § 1252a(a)(4), (d)(1)-(3). The district court also ignored the nature of this case—which contains no request for class certification—and its relief should have been limited to the parties of the lawsuit.

Notably, the district court's sweeping nationwide order impermissibly stifled "novel legal challenges and robust debate arising in different judicial districts," *E. Bay*, 934 F.3d at 1029-30 (cleaned up), because district courts in Maryland and Massachusetts subsequently denied similar postponement motions as moot in light of the challenged order. *See Haitian Americans United v. Trump*, No. 25-cv-10498 (D. Mass), ECF No. 39; *Casa, Inc. v. Noem*, No. GLR-25-0525 (D. Md.), ECF No. 49. The resulting "lack of percolation has serious consequences for judicial decisionmaking" and made the district court, not the Secretary, the final arbiter of TPS determinations. *Ramos,* 975 F.3d. at 903-04 (Nelson, J., concurring).

Finally, the universal scope of the order is especially problematic here given 8 U.S.C. § 1252(f)(1)'s unambiguous foreclosure of any injunctive relief outside a proceeding against an individual alien. *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 647 n.16 (D.C. Cir. 2020) (Rao, J., dissenting). Thus, if this Court declines to vacate the district court's order outright, it should at least limit the order to apply only to the parties. *E. Bay*, 934 F.3d at 1029.

## <u>CONCLUSION</u>

This Court should vacate the district court's postponement order and remand with instructions to dismiss this case.

Respectfully submitted,
YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH L. VUONG
*Assistant Director*

WILLIAM H. WEILAND
*Senior Litigation Counsel*

<u>/s/ Jeffrey M. Hartman</u>
*Trial Attorney*
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4404
Email: Jeffrey.M.Hartman@usdoj.gov

ANNA DICHTER
ERIC SNYDERMAN
CARLTON F. SHEFFIELD
LAUREN BRYANT
AMANDA SAYLOR
CATHERINE ROSS
LUZ MARIA RESTREPO
*Trial Attorneys*

54

## <u>BRIEF FORMAT CERTIFICATION</u>

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Ninth Circuit

Rule 32-1(a), I certify that Respondent's Brief:

(1) was prepared using 14-point Times New Roman type;

(2) is proportionally spaced; and,

(3) contains 12,260 words, exclusive of tables of contents and authorities,

and certificates of counsel.

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6(b), I certify that the following district court cases raise the same or related challenges to the Secretary's administration of the TPS statute:

- *Haitian Evangelical Clergy Association et al. v. Donald J. Trump, et al.*, 1:25-cv-01464 (S.D.N.Y.).

- *CASA Inc., et al., v. Kristi Noem, et al.*, 8:25-cv-00525 (D. Md.).

- *Haitian Americans United, Inc., et al. v. Donald J. Trump, et al.*, 1:25-cv-10498 (D. Mass.).

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 30, 2025, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the ACMS system. All parties were served electronically through the ACMS system.

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation

## ADDENDUM

## 8 U.S.C. § 1254a Temporary Protected Status

(a) Granting of status

(1) In general -- In the case of an alien who is a national of a foreign state designated under subsection (b) (or in the case of an alien having no nationality, is a person who last habitually resided in such designated state) and who meets the requirements of subsection (c), the Attorney General, in accordance with this section--

(A) may grant the alien temporary protected status in the United States and shall not remove the alien from the United States during the period in which such status is in effect, and

(B) shall authorize the alien to engage in employment in the United States and provide the alien with an "employment authorized" endorsement or other appropriate work permit.

(2) Duration of work authorization -- Work authorization provided under this section shall be effective throughout the period the alien is in temporary protected status under this section.

(3) Notice

(A) Upon the granting of temporary protected status under this section, the Attorney General shall provide the alien with information concerning such status under this section.

(B) If, at the time of initiation of a removal proceeding against an alien, the foreign state (of which the alien is a national) is designated under subsection (b), the Attorney General shall promptly notify the alien of the temporary protected status that may be available under this section.

(C) If, at the time of designation of a foreign state under subsection (b), an alien (who is a national of such state) is in a removal proceeding under this subchapter, the Attorney General shall promptly notify the alien of the temporary protected status that may be available under this section.

(D) Notices under this paragraph shall be provided in a form and

i

language that the alien can understand.

(4) Temporary treatment for eligible aliens

(A) In the case of an alien who can establish a prima facie case of eligibility for benefits under paragraph (1), but for the fact that the period of registration under subsection (c)(1)(A)(iv) has not begun, until the alien has had a reasonable opportunity to register during the first 30 days of such period, the Attorney General shall provide for the benefits of paragraph (1).

(B) In the case of an alien who establishes a prima facie case of eligibility for benefits under paragraph (1), until a final determination with respect to the alien's eligibility for such benefits under paragraph (1) has been made, the alien shall be provided such benefits.

(5) Clarification -- Nothing in this section shall be construed as authorizing the Attorney General to deny temporary protected status to an alien based on the alien's immigration status or to require any alien, as a condition of being granted such status, either to relinquish nonimmigrant or other status the alien may have or to execute any waiver of other rights under this chapter. The granting of temporary protected status under this section shall not be considered to be inconsistent with the granting of nonimmigrant status under this chapter.

(b) Designations

(1) In general -- The Attorney General, after consultation with appropriate agencies of the Government, may designate any foreign state (or any part of such foreign state) under this subsection only if--

(A) the Attorney General finds that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety;

(B) the Attorney General finds that--

(i) there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected,

ii

(ii) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and

(iii) the foreign state officially has requested designation under this subparagraph; or

(C) the Attorney General finds that there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the Attorney General finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

A designation of a foreign state (or part of such foreign state) under this paragraph shall not become effective unless notice of the designation (including a statement of the findings under this paragraph and the effective date of the designation) is published in the Federal Register. In such notice, the Attorney General shall also state an estimate of the number of nationals of the foreign state designated who are (or within the effective period of the designation are likely to become) eligible for temporary protected status under this section and their immigration status in the United States.

(2) Effective period of designation for foreign states -- The designation of a foreign state (or part of such foreign state) under paragraph (1) shall--

(A) take effect upon the date of publication of the designation under such paragraph, or such later date as the Attorney General may specify in the notice published under such paragraph, and

(B) shall remain in effect until the effective date of the termination of the designation under paragraph (3)(B).

For purposes of this section, the initial period of designation of a foreign state (or part thereof) under paragraph (1) is the period, specified by the Attorney General, of not less than 6 months and not more than 18 months.

(3) Periodic review, terminations, and extensions of designations

(A) Periodic review -- At least 60 days before end of the initial period of designation, and any extended period of designation, of a foreign state (or part thereof) under this section the Attorney General, after consultation with appropriate agencies of the Government, shall review the conditions in the foreign state (or part of such foreign state) for which a designation is in effect under this subsection and shall determine whether the conditions for such designation under this subsection continue to be met. The Attorney General shall provide on a timely basis for the publication of notice of each such determination (including the basis for the determination, and, in the case of an affirmative determination, the period of extension of designation under subparagraph (C)) in the Federal Register.

(B) Termination of designation -- If the Attorney General determines under subparagraph (A) that a foreign state (or part of such foreign state) no longer continues to meet the conditions for designation under paragraph (1), the Attorney General shall terminate the designation by publishing notice in the Federal Register of the determination under this subparagraph (including the basis for the determination). Such termination is effective in accordance with subsection (d)(3), but shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension under subparagraph (C).

(C) Extension of designation -- If the Attorney General does not determine under subparagraph (A) that a foreign state (or part of such foreign state) no longer meets the conditions for designation under paragraph (1), the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the Attorney General, a period of 12 or 18 months).

(4) Information concerning protected status at time of designations -- At the time of a designation of a foreign state under this subsection, the Attorney General shall make available information respecting the temporary protected status made available to aliens who are nationals of such designated foreign state.

(5) Review

(A) Designations -- There is no judicial review of any determination of the Attorney General with respect to the designation, or termination or

iv

extension of a designation, of a foreign state under this subsection.

(B) Application to individuals -- The Attorney General shall establish an administrative procedure for the review of the denial of benefits to aliens under this subsection. Such procedure shall not prevent an alien from asserting protection under this section in removal proceedings if the alien demonstrates that the alien is a national of a state designated under paragraph (1).

(c) Aliens eligible for temporary protected status

(1) In general

(A) Nationals of designated foreign states -- Subject to paragraph (3), an alien, who is a national of a state designated under subsection (b)(1) (or in the case of an alien having no nationality, is a person who last habitually resided in such designated state), meets the requirements of this paragraph only if--

(i) the alien has been continuously physically present in the United States since the effective date of the most recent designation of that state;

(ii) the alien has continuously resided in the United States since such date as the Attorney General may designate;

(iii) the alien is admissible as an immigrant, except as otherwise provided under paragraph (2)(A), and is not ineligible for temporary protected status under paragraph (2)(B); and

(iv) to the extent and in a manner which the Attorney General establishes, the alien registers for the temporary protected status under this section during a registration period of not less than 180 days.

(B) Registration fee -- The Attorney General may require payment of a reasonable fee as a condition of registering an alien under subparagraph (A)(iv) (including providing an alien with an "employment authorized" endorsement or other appropriate work permit under this section). The amount of any such fee shall not exceed $50. In the case of aliens registered pursuant to a designation under this section made after July 17, 1991, the Attorney General may impose a separate, additional fee

for providing an alien with documentation of work authorization. Notwithstanding section 3302 of Title 31, all fees collected under this subparagraph shall be credited to the appropriation to be used in carrying out this section.

(2) Eligibility standards

(A) Waiver of certain grounds for inadmissibility -- In the determination of an alien's admissibility for purposes of subparagraph (A)(iii) of paragraph (1)--

(i) the provisions of paragraphs (5) and (7)(A) of section 1182(a) of this title shall not apply;

(ii) except as provided in clause (iii), the Attorney General may waive any other provision of section 1182(a) of this title in the case of individual aliens for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest; but

(iii) the Attorney General may not waive--

(I) paragraphs (2)(A) and (2)(B) (relating to criminals) of such section,

(II) paragraph (2)(C) of such section (relating to drug offenses), except for so much of such paragraph as relates to a single offense of simple possession of 30 grams or less of marijuana, or

(III) paragraphs (3)(A), (3)(B), (3)(C), and (3)(E) of such section (relating to national security and participation in the Nazi persecutions or those who have engaged in genocide).

(B) Aliens ineligible -- An alien shall not be eligible for temporary protected status under this section if the Attorney General finds that--

(i) the alien has been convicted of any felony or 2 or more misdemeanors committed in the United States, or

(ii) the alien is described in section 1158(b)(2)(A) of this title.

(3) Withdrawal of temporary protected status -- The Attorney General shall

vi

withdraw temporary protected status granted to an alien under this section if-

> (A) the Attorney General finds that the alien was not in fact eligible for such status under this section,

> (B) except as provided in paragraph (4) and permitted in subsection (f)(3), the alien has not remained continuously physically present in the United States from the date the alien first was granted temporary protected status under this section, or

> (C) the alien fails, without good cause, to register with the Attorney General annually, at the end of each 12-month period after the granting of such status, in a form and manner specified by the Attorney General.

(4) Treatment of brief, casual, and innocent departures and certain other absences

> (A) For purposes of paragraphs (1)(A)(i) and (3)(B), an alien shall not be considered to have failed to maintain continuous physical presence in the United States by virtue of brief, casual, and innocent absences from the United States, without regard to whether such absences were authorized by the Attorney General.

> (B) For purposes of paragraph (1)(A)(ii), an alien shall not be considered to have failed to maintain continuous residence in the United States by reason of a brief, casual, and innocent absence described in subparagraph (A) or due merely to a brief temporary trip abroad required by emergency or extenuating circumstances outside the control of the alien.

(5) Construction -- Nothing in this section shall be construed as authorizing an alien to apply for admission to, or to be admitted to, the United States in order to apply for temporary protected status under this section.

(6) Confidentiality of information -- The Attorney General shall establish procedures to protect the confidentiality of information provided by aliens under this section.

(d) Documentation

> (1) Initial issuance -- Upon the granting of temporary protected status to an alien under this section, the Attorney General shall provide for the issuance

of such temporary documentation and authorization as may be necessary to carry out the purposes of this section.

(2) Period of validity -- Subject to paragraph (3), such documentation shall be valid during the initial period of designation of the foreign state (or part thereof) involved and any extension of such period. The Attorney General may stagger the periods of validity of the documentation and authorization in order to provide for an orderly renewal of such documentation and authorization and for an orderly transition (under paragraph (3)) upon the termination of a designation of a foreign state (or any part of such foreign state).

(3) Effective date of terminations -- If the Attorney General terminates the designation of a foreign state (or part of such foreign state) under subsection (b)(3)(B), such termination shall only apply to documentation and authorization issued or renewed after the effective date of the publication of notice of the determination under that subsection (or, at the Attorney General's option, after such period after the effective date of the determination as the Attorney General determines to be appropriate in order to provide for an orderly transition).

(4) Detention of alien -- An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States.

(e) Relation of period of temporary protected status to cancellation of removal

With respect to an alien granted temporary protected status under this section, the period of such status shall not be counted as a period of physical presence in the United States for purposes of section 1229b(a) of this title, unless the Attorney General determines that extreme hardship exists. Such period shall not cause a break in the continuity of residence of the period before and after such period for purposes of such section.

(f) Benefits and status during period of temporary protected status

During a period in which an alien is granted temporary protected status under this section--

(1) the alien shall not be considered to be permanently residing in the United States under color of law;

(2) the alien may be deemed ineligible for public assistance by a State (as defined in section 1101(a)(36) of this title) or any political subdivision thereof which furnishes such assistance;

(3) the alien may travel abroad with the prior consent of the Attorney General; and

(4) for purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.

(g) Exclusive remedy -- Except as otherwise specifically provided, this section shall constitute the exclusive authority of the Attorney General under law to permit aliens who are or may become otherwise deportable or have been paroled into the United States to remain in the United States temporarily because of their particular nationality or region of foreign state of nationality.

(h) Limitation on consideration in Senate of legislation adjusting status

(1) In general -- Except as provided in paragraph (2), it shall not be in order in the Senate to consider any bill, resolution, or amendment that--

(A) provides for adjustment to lawful temporary or permanent resident alien status for any alien receiving temporary protected status under this section, or

(B) has the effect of amending this subsection or limiting the application of this subsection.

(2) Supermajority required -- Paragraph (1) may be waived or suspended in the Senate only by the affirmative vote of three-fifths of the Members duly chosen and sworn. An affirmative vote of three-fifths of the Members of the Senate duly chosen and sworn shall be required in the Senate to sustain an appeal of the ruling of the Chair on a point of order raised under paragraph (1).

(3) Rules -- Paragraphs (1) and (2) are enacted--

(A) as an exercise of the rulemaking power of the Senate and as such they are deemed a part of the rules of the Senate, but applicable only with respect to the matters described in paragraph (1) and supersede other rules of the Senate only to the extent that such paragraphs are

inconsistent therewith; and

(B) with full recognition of the constitutional right of the Senate to change such rules at any time, in the same manner as in the case of any other rule of the Senate.

(i) Annual report and review

(1) Annual report -- Not later than March 1 of each year (beginning with 1992), the Attorney General, after consultation with the appropriate agencies of the Government, shall submit a report to the Committees on the Judiciary of the House of Representatives and of the Senate on the operation of this section during the previous year. Each report shall include--

(A) a listing of the foreign states or parts thereof designated under this section,

(B) the number of nationals of each such state who have been granted temporary protected status under this section and their immigration status before being granted such status, and

(C) an explanation of the reasons why foreign states or parts thereof were designated under subsection (b)(1) and, with respect to foreign states or parts thereof previously designated, why the designation was terminated or extended under subsection (b)(3).

(2) Committee report -- No later than 180 days after the date of receipt of such a report, the Committee on the Judiciary of each House of Congress shall report to its respective House such oversight findings and legislation as it deems appropriate.

## 8 U.S.C. § 1252 Judicial Review of Orders of Removal

(a)Applicable provisions

(1) General orders of removal -- Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 1225(b)(1) of this title) is governed only by chapter 158 of title 28, except as provided in subsection (b) and except that the court may not order the taking of additional evidence under section 2347(c) of such title.

(2) Matters not subject to judicial review

(A) Review relating to section 1225(b)(1) -- Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—

(i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,

(ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,

(iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or

(iv) except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

(B) Denials of discretionary relief -- Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

xi

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

(C) Orders against criminal aliens -- Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

(D) Judicial review of certain legal claims -- Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

(3) Treatment of certain decisions -- No alien shall have a right to appeal from a decision of an immigration judge which is based solely on a certification described in section 1229a(c)(1)(B) of this title.

(4) Claims under the United Nations Convention -- Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e).

(5) Exclusive means of review -- Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition

xii

for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

(b) Requirements for review of orders of removal -- With respect to review of an order of removal under subsection (a)(1), the following requirements apply:

(1) Deadline -- The petition for review must be filed not later than 30 days after the date of the final order of removal.

(2) Venue and forms -- The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings. The record and briefs do not have to be printed. The court of appeals shall review the proceeding on a typewritten record and on typewritten briefs.

(3) Service

(A) In general -- The respondent is the Attorney General. The petition shall be served on the Attorney General and on the officer or employee of the Service in charge of the Service district in which the final order of removal under section 1229a of this title was entered.

(B) Stay of order -- Service of the petition on the officer or employee does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise.

(C) Alien's brief -- The alien shall serve and file a brief in connection with a petition for judicial review not later than 40 days after the date on which the administrative record is available, and may serve and file a reply brief not later than 14 days after service of the brief of the Attorney General, and the court may not extend these deadlines except upon motion for good cause shown. If an alien fails to file a brief within the time provided in this paragraph, the court shall dismiss the appeal unless a manifest injustice would result.

xiii

(4) Scope and standard for review -- Except as provided in paragraph (5)(B)—

(A) the court of appeals shall decide the petition only on the administrative record on which the order of removal is based,

(B) the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary,

(C) a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law, and

(D) the Attorney General's discretionary judgment whether to grant relief under section 1158(a) of this title shall be conclusive unless manifestly contrary to the law and an abuse of discretion.

No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence, as described in section 1158(b)(1)(B), 1229a(c)(4)(B), or 1231(b)(3)(C) of this title, unless the court finds, pursuant to subsection (b)(4)(B), that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.

(5) Treatment of nationality claims

(A) Court determination if no issue of fact -- If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.

(B) Transfer if issue of fact -- If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of title 28.

(C) Limitation on determination -- The petitioner may have such nationality claim decided only as provided in this paragraph.

(6) Consolidation with review of motions to reopen or reconsider -- When a

xiv

petitioner seeks review of an order under this section, any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order.

(7) Challenge to validity of orders in certain criminal proceedings

(A) In general -- If the validity of an order of removal has not been judicially decided, a defendant in a criminal proceeding charged with violating section 1253(a) of this title may challenge the validity of the order in the criminal proceeding only by filing a separate motion before trial. The district court, without a jury, shall decide the motion before trial.

(B) Claims of United States nationality -- If the defendant claims in the motion to be a national of the United States and the district court finds that—

(i) no genuine issue of material fact about the defendant's nationality is presented, the court shall decide the motion only on the administrative record on which the removal order is based and the administrative findings of fact are conclusive if supported by reasonable, substantial, and probative evidence on the record considered as a whole; or

(ii) a genuine issue of material fact about the defendant's nationality is presented, the court shall hold a new hearing on the nationality claim and decide that claim as if an action had been brought under section 2201 of title 28.

The defendant may have such nationality claim decided only as provided in this subparagraph.

(C) Consequence of invalidation -- If the district court rules that the removal order is invalid, the court shall dismiss the indictment for violation of section 1253(a) of this title. The United States Government may appeal the dismissal to the court of appeals for the appropriate circuit within 30 days after the date of the dismissal.

(D) Limitation on filing petitions for review -- The defendant in a criminal proceeding under section 1253(a) of this title may not file a petition for review under subsection (a) during the criminal proceeding.

xv

(8) Construction -- This subsection—

(A) does not prevent the Attorney General, after a final order of removal has been issued, from detaining the alien under section 1231(a) of this title;

(B) does not relieve the alien from complying with section 1231(a)(4) of this title and section 1253(g) [1] of this title; and

(C) does not require the Attorney General to defer removal of the alien.

(9) Consolidation of questions for judicial review

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

(c) Requirements for petition -- A petition for review or for habeas corpus of an order of removal—

(1) shall attach a copy of such order, and

(2) shall state whether a court has upheld the validity of the order, and, if so, shall state the name of the court, the date of the court's ruling, and the kind of proceeding.

(d) Review of final orders -- A court may review a final order of removal only if—

(1) the alien has exhausted all administrative remedies available to the alien as of right, and

(2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

(e) Judicial review of orders under section 1225(b)(1)

(1) Limitations on relief -- Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may—

(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection, or

(B) certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection.

(2) Habeas corpus proceedings -- Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of—

(A) whether the petitioner is an alien,

(B) whether the petitioner was ordered removed under such section, and

(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

(3) Challenges on validity of the system

(A) In general -- Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under

the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

(B) Deadlines for bringing actions -- Any action instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented.

(C) Notice of appeal -- A notice of appeal of an order issued by the District Court under this paragraph may be filed not later than 30 days after the date of issuance of such order.

(D) Expeditious consideration of cases -- It shall be the duty of the District Court, the Court of Appeals, and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any case considered under this paragraph.

(4) Decision -- In any case where the court determines that the petitioner—

(A) is an alien who was not ordered removed under section 1225(b)(1) of this title, or

(B) has demonstrated by a preponderance of the evidence that the alien is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with section 1229a of this title. Any alien who is provided a hearing under section 1229a of this title pursuant to this paragraph may thereafter obtain judicial review of any resulting final order of removal pursuant to subsection (a)(1).

(5) Scope of inquiry -- In determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

(f) Limit on injunctive relief

xviii

(1) In general -- Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

(2) Particular cases -- Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

(3) Certain actions -- Paragraph (1) shall not apply to an action brought pursuant to section 1225(b)(3) of this title, subsections (e) or (f) of section 1226 of this title, or section 1231(a)(2)(B) of this title.

(g) Exclusive jurisdiction -- Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

## <u>8 U.S.C. § 1103(a)(1), (a)(3) – Powers and duties of the Secretary</u>

(a) Secretary of Homeland Security

(1) The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers: *Provided, however*, That determination and ruling by the Attorney General with respect to all questions of law shall be controlling.

…

(3) He shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter.

## 6 U.S.C. § 202 Border, Maritime, and Transportation Responsibilities

The Secretary shall be responsible for the following:

(1) Preventing the entry of terrorists and the instruments of terrorism into the United States.

(2) Securing the borders, territorial waters, ports, terminals, waterways, and air, land, and sea transportation systems of the United States, including managing and coordinating those functions transferred to the Department at ports of entry.

(3) Carrying out the immigration enforcement functions vested by statute in, or performed by, the Commissioner of Immigration and Naturalization (or any officer, employee, or component of the Immigration and Naturalization Service) immediately before the date on which the transfer of functions specified under section 251 of this title takes effect.

(4) Establishing and administering rules, in accordance with section 236 of this title, governing the granting of visas or other forms of permission, including parole, to enter the United States to individuals who are not a citizen or an alien lawfully admitted for permanent residence in the United States.

(5) Establishing national immigration enforcement policies and priorities.

(6) Except as provided in part C of this subchapter, administering the customs laws of the United States.

(7) Conducting the inspection and related administrative functions of the Department of Agriculture transferred to the Secretary of Homeland Security under section 231 of this title.

(8) In carrying out the foregoing responsibilities, ensuring the speedy, orderly, and efficient flow of lawful traffic and commerce.

## 5 U.S.C. §705 - Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

### <u>5 U.S.C. §701 – Judicial Review - Application; definitions</u>

(a) This chapter applies, according to the provisions thereof, except to the extent that—

    (1) statutes preclude judicial review; or

    (2) agency action is committed to agency discretion by law.

(b) For the purpose of this chapter—

    (1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

        (A) the Congress;

        (B) the courts of the United States;

        (C) the governments of the territories or possessions of the United States;

        (D) the government of the District of Columbia;

        (E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

        (F) courts martial and military commissions;

        (G) military authority exercised in the field in time of war or in occupied territory; or

        (H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II of chapter 471 of title 49; or sections 1884, 1891–1902, and former section 1641(b)(2), of title 50, appendix;  and

    (2) "person", "rule", "order", "license", "sanction", "relief", and "agency action" have the meanings given them by section 551 of this title.

# Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546

62

*that is legally enforceable by any party against the United States or its agencies or officers or any other person.".*

*(b) REENTRY OF ALIEN REMOVED PRIOR TO COMPLETION OF TERM OF IMPRISONMENT.—Section 276(b) (8 U.S.C. 1326(b)), as amended by section 321(b), is amended—*

*(1) by striking "or" at the end of paragraph (2),*

*(2) by adding "or" at the end of paragraph (3), and*

*(3) by inserting after paragraph (3) the following new paragraph:*

*"(4) who was removed from the United States pursuant to section 241(a)(4)(B) who thereafter, without the permission of the Attorney General, enters, attempts to enter, or is at any time found in, the United States (unless the Attorney General has expressly consented to such alien's reentry) shall be fined under title 18, United States Code, imprisoned for not more than 10 years, or both.*

*(c) MISCELLANEOUS CONFORMING AMENDMENT.—Section 212(a)(4) (8 U.S.C. 1182(a)(4)), as amended by section 621(a), is amended by striking "241(a)(5)(B)" each place it appears and inserting "237(a)(5)(B)".*

**SEC. 306. APPEALS FROM ORDERS OF REMOVAL (NEW SECTION 242).**

*(a) IN GENERAL.—Section 242 (8 U.S.C. 1252) is amended—*

*(1) by redesignating subsection (j) as subsection (i) and by moving such subsection and adding it at the end of section 241, as inserted by section 305(a)(3); and*

*(2) by amending the remainder of section 242 to read as follows:*

*"JUDICIAL REVIEW OF ORDERS OF REMOVAL*

*"SEC. 242. (a) APPLICABLE PROVISIONS.—*

*"(1) GENERAL ORDERS OF REMOVAL.—Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 235(b)(1)) is governed only by chapter 158 of title 28 of the United States Code, except as provided in subsection (b) and except that the court may not order the taking of additional evidence under section 2347(c) of such title.*

*"(2) MATTERS NOT SUBJECT TO JUDICIAL REVIEW.—*

*"(A) REVIEW RELATING TO SECTION 235(b)(1).—Notwithstanding any other provision of law, no court shall have jurisdiction to review—*

*"(i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 235(b)(1),*

*"(ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,*

*"(iii) the application of such section to individual aliens, including the determination made under section 235(b)(1)(B), or*

xxiv

63

"(iv) except as provided in subsection (e), proce-
dures and policies adopted by the Attorney General to
implement the provisions of section 235(b)(1).

"(B) DENIALS OF DISCRETIONARY RELIEF.—Notwith-
standing any other provision of law, no court shall have ju-
risdiction to review—

"(i) any judgment regarding the granting of relief
under section 212(h), 212(i), 240A, 240B, or 245, or

"(ii) any other decision or action of the Attorney
General the authority for which is specified under this
title to be in the discretion of the Attorney General,
other than the granting of relief under section 208(a).

"(C) ORDERS AGAINST CRIMINAL ALIENS.—Notwith-
standing any other provision of law, no court shall have ju-
risdiction to review any final order of removal against an
alien who is removable by reason of having committed a
criminal offense covered in section 212(a)(2) or
237(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by
section 237(a)(2)(A)(ii) for which both predicate offenses
are, without regard to their date of commission, otherwise
covered by section 237(a)(2)(A)(i).

"(3) TREATMENT OF CERTAIN DECISIONS.—No alien shall
have a right to appeal from a decision of an immigration judge
which is based solely on a certification described in section
240(c)(1)(B).

"(b) REQUIREMENTS FOR REVIEW OF ORDERS OF REMOVAL.—
With respect to review of an order of removal under subsection
(a)(1), the following requirements apply:

"(1) DEADLINE.—The petition for review must be filed not
later than 30 days after the date of the final order of removal.

"(2) VENUE AND FORMS.—The petition for review shall be
filed with the court of appeals for the judicial circuit in which
the immigration judge completed the proceedings. The record
and briefs do not have to be printed. The court of appeals shall
review the proceeding on a typewritten record and on type-
written briefs.

"(3) SERVICE.—

"(A) IN GENERAL.—The respondent is the Attorney Gen-
eral. The petition shall be served on the Attorney General
and on the officer or employee of the Service in charge of
the Service district in which the final order of removal
under section 240 was entered.

"(B) STAY OF ORDER.—Service of the petition on the of-
ficer or employee does not stay the removal of an alien
pending the court's decision on the petition, unless the court
orders otherwise.

"(C) ALIEN'S BRIEF.—The alien shall serve and file a
brief in connection with a petition for judicial review not
later than 40 days after the date on which the administra-
tive record is available, and may serve and file a reply brief
not later than 14 days after service of the brief of the Attor-
ney General, and the court may not extend these deadlines
except upon motion for good cause shown. If an alien fails
to file a brief within the time provided in this paragraph,

64

the court shall dismiss the appeal unless a manifest injustice would result.

"(4) SCOPE AND STANDARD FOR REVIEW.—Except as provided in paragraph (5)(B)—

"(A) the court of appeals shall decide the petition only on the administrative record on which the order of removal is based,

"(B) the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary,

"(C) a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law, and

"(D) the Attorney General's discretionary judgment whether to grant relief under section 208(a) shall be conclusive unless manifestly contrary to the law and an abuse of discretion.

"(5) TREATMENT OF NATIONALITY CLAIMS.—

"(A) COURT DETERMINATION IF NO ISSUE OF FACT.—If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.

"(B) TRANSFER IF ISSUE OF FACT.—If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of title 28, United States Code.

"(C) LIMITATION ON DETERMINATION.—The petitioner may have such nationality claim decided only as provided in this paragraph.

"(6) CONSOLIDATION WITH REVIEW OF MOTIONS TO REOPEN OR RECONSIDER.—When a petitioner seeks review of an order under this section, any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order.

"(7) CHALLENGE TO VALIDITY OF ORDERS IN CERTAIN CRIMINAL PROCEEDINGS.—

"(A) IN GENERAL.—If the validity of an order of removal has not been judicially decided, a defendant in a criminal proceeding charged with violating section 243(a) may challenge the validity of the order in the criminal proceeding only by filing a separate motion before trial. The district court, without a jury, shall decide the motion before trial.

"(B) CLAIMS OF UNITED STATES NATIONALITY.—If the defendant claims in the motion to be a national of the United States and the district court finds that—

65

"(i) no genuine issue of material fact about the defendant's nationality is presented, the court shall decide the motion only on the administrative record on which the removal order is based and the administrative findings of fact are conclusive if supported by reasonable, substantial, and probative evidence on the record considered as a whole; or

"(ii) a genuine issue of material fact about the defendant's nationality is presented, the court shall hold a new hearing on the nationality claim and decide that claim as if an action had been brought under section 2201 of title 28, United States Code.

The defendant may have such nationality claim decided only as provided in this subparagraph.

"(C) CONSEQUENCE OF INVALIDATION.—If the district court rules that the removal order is invalid, the court shall dismiss the indictment for violation of section 243(a). The United States Government may appeal the dismissal to the court of appeals for the appropriate circuit within 30 days after the date of the dismissal.

"(D) LIMITATION ON FILING PETITIONS FOR REVIEW.— The defendant in a criminal proceeding under section 243(a) may not file a petition for review under subsection (a) during the criminal proceeding.

"(8) CONSTRUCTION.—This subsection—

"(A) does not prevent the Attorney General, after a final order of removal has been issued, from detaining the alien under section 241(a);

"(B) does not relieve the alien from complying with section 241(a)(4) and section 243(g); and

"(C) does not require the Attorney General to defer removal of the alien.

"(9) CONSOLIDATION OF QUESTIONS FOR JUDICIAL REVIEW.— Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this title shall be available only in judicial review of a final order under this section.

"(c) REQUIREMENTS FOR PETITION.—A petition for review or for habeas corpus of an order of removal—

"(1) shall attach a copy of such order, and

"(2) shall state whether a court has upheld the validity of the order, and, if so, shall state the name of the court, the date of the court's ruling, and the kind of proceeding.

"(d) REVIEW OF FINAL ORDERS.—A court may review a final order of removal only if—

"(1) the alien has exhausted all administrative remedies available to the alien as of right, and

"(2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

66

"(e) JUDICIAL REVIEW OF ORDERS UNDER SECTION 235(b)(1).—

"(1) LIMITATIONS ON RELIEF.—Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may—

"(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 235(b)(1) except as specifically authorized in a subsequent paragraph of this subsection, or

"(B) certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection.

"(2) HABEAS CORPUS PROCEEDINGS.—Judicial review of any determination made under section 235(b)(1) is available in habeas corpus proceedings, but shall be limited to determinations of—

"(A) whether the petitioner is an alien,

"(B) whether the petitioner was ordered removed under such section, and

"(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 207, or has been granted asylum under section 208, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 235(b)(1)(C).

"(3) CHALLENGES ON VALIDITY OF THE SYSTEM.—

"(A) IN GENERAL.—Judicial review of determinations under section 235(b) and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

"(i) whether such section, or any regulation issued to implement such section, is constitutional; or

"(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this title or is otherwise in violation of law.

"(B) DEADLINES FOR BRINGING ACTIONS.—Any action instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented.

"(C) NOTICE OF APPEAL.—A notice of appeal of an order issued by the District Court under this paragraph may be filed not later than 30 days after the date of issuance of such order.

"(D) EXPEDITIOUS CONSIDERATION OF CASES.—It shall be the duty of the District Court, the Court of Appeals, and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any case considered under this paragraph.

67

"(4) DECISION.—In any case where the court determines that the petitioner—

"(A) is an alien who was not ordered removed under section 235(b)(1), or

"(B) has demonstrated by a preponderance of the evidence that the alien is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 207, or has been granted asylum under section 208,

the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with section 240. Any alien who is provided a hearing under section 240 pursuant to this paragraph may thereafter obtain judicial review of any resulting final order of removal pursuant to subsection (a)(1).

"(5) SCOPE OF INQUIRY.—In determining whether an alien has been ordered removed under section 235(b)(1), the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

"(f) LIMIT ON INJUNCTIVE RELIEF.—

"(1) IN GENERAL.—Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of chapter 4 of title II, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such chapter have been initiated.

"(2) PARTICULAR CASES.—Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

"(g) EXCLUSIVE JURISDICTION.—Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.".

(b) REPEAL OF SECTION 106.—Section 106 (8 U.S.C. 1105a) is repealed.

(c) EFFECTIVE DATE.—

(1) IN GENERAL.—Subject to paragraph (2), the amendments made by subsections (a) and (b) shall apply to all final orders of deportation or removal and motions to reopen filed on or after the date of the enactment of this Act and subsection (g) of section 242 of the Immigration and Nationality Act (as added by subsection (a)), shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act.

(2) LIMITATION.—Paragraph (1) shall not be considered to invalidate or to require the reconsideration of any judgment or

68

*order entered under section 106 of the Immigration and Nation-
ality Act, as amended by section 440 of Public Law 104–132.*

*(d) TECHNICAL AMENDMENT.—Effective as if included in the en-
actment of the Antiterrorism and Effective Death Penalty Act of
1996 (Public Law 104–132), subsections (a), (c), (d), (g), and (h) of
section 440 of such Act are amended by striking "any offense covered
by section 241(a)(2)(A)(ii) for which both predicate offenses are cov-
ered by section 241(a)(2)(A)(i)" and inserting "any offense covered by
section 241(a)(2)(A)(ii) for which both predicate offenses are, without
regard to the date of their commission, otherwise covered by section
241(a)(2)(A)(i)".*

**SEC. 307. PENALTIES RELATING TO REMOVAL (REVISED SECTION 243).**

*(a) IN GENERAL.—Section 243 (8 U.S.C. 1253) is amended to
read as follows:*

*"PENALTIES RELATED TO REMOVAL*

*"SEC. 243. (a) PENALTY FOR FAILURE TO DEPART.—*

*"(1) IN GENERAL.—Any alien against whom a final order of
removal is outstanding by reason of being a member of any of
the classes described in section 237(a), who—*

*"(A) willfully fails or refuses to depart from the United
States within a period of 90 days from the date of the final
order of removal under administrative processes, or if judi-
cial review is had, then from the date of the final order of
the court,*

*"(B) willfully fails or refuses to make timely applica-
tion in good faith for travel or other documents necessary
to the alien's departure,*

*"(C) connives or conspires, or takes any other action,
designed to prevent or hamper or with the purpose of pre-
venting or hampering the alien's departure pursuant to
such, or*

*"(D) willfully fails or refuses to present himself or her-
self for removal at the time and place required by the Attor-
ney General pursuant to such order,*

*shall be fined under title 18, United States Code, or imprisoned
not more than four years (or 10 years if the alien is a member
of any of the classes described in paragraph (1)(E), (2), (3), or
(4) of section 237(a)), or both.*

*"(2) EXCEPTION.—It is not a violation of paragraph (1) to
take any proper steps for the purpose of securing cancellation
of or exemption from such order of removal or for the purpose
of securing the alien's release from incarceration or custody.*

*"(3) SUSPENSION.—The court may for good cause suspend
the sentence of an alien under this subsection and order the
alien's release under such conditions as the court may prescribe.
In determining whether good cause has been shown to justify
releasing the alien, the court shall take into account such fac-
tors as—*

*"(A) the age, health, and period of detention of the
alien;*

*"(B) the effect of the alien's release upon the national
security and public peace or safety;*

xxx

69

"(C) the likelihood of the alien's resuming or following a course of conduct which made or would make the alien deportable;

"(D) the character of the efforts made by such alien himself and by representatives of the country or countries to which the alien's removal is directed to expedite the alien's departure from the United States;

"(E) the reason for the inability of the Government of the United States to secure passports, other travel documents, or removal facilities from the country or countries to which the alien has been ordered removed; and

"(F) the eligibility of the alien for discretionary relief under the immigration laws.

"(b) WILLFUL FAILURE TO COMPLY WITH TERMS OF RELEASE UNDER SUPERVISION.—An alien who shall willfully fail to comply with regulations or requirements issued pursuant to section 241(a)(3) or knowingly give false information in response to an inquiry under such section shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

"(c) PENALTIES RELATING TO VESSELS AND AIRCRAFT.—

"(1) CIVIL PENALTIES.—

"(A) FAILURE TO CARRY OUT CERTAIN ORDERS.—If the Attorney General is satisfied that a person has violated subsection (d) or (e) of section 241, the person shall pay to the Commissioner the sum of $2,000 for each violation.

"(B) FAILURE TO REMOVE ALIEN STOWAWAYS.—If the Attorney General is satisfied that a person has failed to remove an alien stowaway as required under section 241(d)(2), the person shall pay to the Commissioner the sum of $5,000 for each alien stowaway not removed.

"(C) NO COMPROMISE.—The Attorney General may not compromise the amount of such penalty under this paragraph.

"(2) CLEARING VESSELS AND AIRCRAFT.—

"(A) CLEARANCE BEFORE DECISION ON LIABILITY.—A vessel or aircraft may be granted clearance before a decision on liability is made under paragraph (1) only if a bond approved by the Attorney General or an amount sufficient to pay the civil penalty is deposited with the Commissioner.

"(B) PROHIBITION ON CLEARANCE WHILE PENALTY UNPAID.—A vessel or aircraft may not be granted clearance if a civil penalty imposed under paragraph (1) is not paid.

"(d) DISCONTINUING GRANTING VISAS TO NATIONALS OF COUNTRY DENYING OR DELAYING ACCEPTING ALIEN.—On being notified by the Attorney General that the government of a foreign country denies or unreasonably delays accepting an alien who is a citizen, subject, national, or resident of that country after the Attorney General asks whether the government will accept the alien under this section, the Secretary of State shall order consular officers in that foreign country to discontinue granting immigrant visas or nonimmigrant visas, or both, to citizens, subjects, nationals, and residents of that country until the Attorney General notifies the Secretary that the country has accepted the alien.".

70

### SEC. 308. REDESIGNATION AND REORGANIZATION OF OTHER PROVISIONS; ADDITIONAL CONFORMING AMENDMENTS.

(a) CONFORMING AMENDMENT TO TABLE OF CONTENTS; OVERVIEW OF REORGANIZED CHAPTERS.—The table of contents, as amended by sections 123(b) and 851(d)(1), is amended—

(1) by striking the item relating to section 106, and

(2) by striking the item relating to chapter 4 of title II and all that follows through the item relating to section 244A and inserting the following:

"CHAPTER 4—INSPECTION, APPREHENSION, EXAMINATION, EXCLUSION, AND REMOVAL

"Sec. 231.   Lists of alien and citizen passengers arriving or departing; record of resident aliens and citizens leaving permanently for foreign country.
"Sec. 232.   Detention of aliens for physical and mental examination.
"Sec. 233.   Entry through or from foreign territory and adjacent islands; landing stations.
"Sec. 234.   Designation of ports of entry for aliens arriving by civil aircraft.
"Sec. 235.   Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing.
"Sec. 235A.  Preinspection at foreign airports.
"Sec. 236.   Apprehension and detention of aliens not lawfully in the United States.
"Sec. 237.   General classes of deportable aliens.
"Sec. 238.   Expedited removal of aliens convicted of committing aggravated felonies.
"Sec. 239.   Initiation of removal proceedings.
"Sec. 240.   Removal proceedings.
"Sec. 240A.  Cancellation of removal; adjustment of status.
"Sec. 240B.  Voluntary departure.
"Sec. 240C.  Records of admission.
"Sec. 241.   Detention and removal of aliens ordered removed.
"Sec. 242.   Judicial review of orders of removal.
"Sec. 243.   Penalties relating to removal.
"Sec. 244.   Temporary protected status.

"CHAPTER 5—ADJUSTMENT AND CHANGE OF STATUS".

(b) REORGANIZATION OF OTHER PROVISIONS.—Chapters 4 and 5 of title II are amended as follows:

(1) AMENDING CHAPTER HEADING.—Amend the heading for chapter 4 of title II to read as follows:

"CHAPTER 4—INSPECTION, APPREHENSION, EXAMINATION, EXCLUSION, AND REMOVAL".

(2) REDESIGNATING SECTION 232 AS SECTION 232(a).—Amend section 232 (8 U.S.C. 1222)—

(A) by inserting "(a) DETENTION OF ALIENS.—" after "SEC. 232.", and

(B) by amending the section heading to read as follows:

"DETENTION OF ALIENS FOR PHYSICAL AND MENTAL EXAMINATION".

(3) REDESIGNATING SECTION 234 AS SECTION 232(b).—Amend section 234 (8 U.S.C. 1224)—

(A) by striking the heading,

(B) by striking "SEC. 234." and inserting the following: "(b) PHYSICAL AND MENTAL EXAMINATION.—", and

(C) by moving such provision to the end of section 232.

(4) REDESIGNATING SECTION 238 AS SECTION 233.—Redesignate section 238 (8 U.S.C. 1228) as section 233 and move the section to immediately follow section 232.

(5) REDESIGNATING SECTION 242A AS SECTION 238.—Redesignate section 242A as section 238, strike "DEPORTATION" in its

71

heading and insert "REMOVAL", and move the section to immediately follow section 237 (as redesignated by section 305(a)(2)).

(6) STRIKING SECTION 242B.—Strike section 242B (8 U.S.C. 1252b).

(7) STRIKING SECTION 244 AND REDESIGNATING SECTION 244A AS SECTION 244.—Strike section 244 (8 U.S.C. 1254) and redesignate section 244A as section 244.

(8) AMENDING CHAPTER HEADING.—Amend the heading for chapter 5 of title II to read as follows:

"CHAPTER 5—ADJUSTMENT AND CHANGE OF STATUS".

(c) ADDITIONAL CONFORMING AMENDMENTS.—

(1) EXPEDITED PROCEDURES FOR AGGRAVATED FELONS (FORMER SECTION 242A).—Section 238 (which, previous to redesignation under section 308(b)(5), was section 242A) is amended—

(A) in subsection (a)(1), by striking "section 242" and inserting "section 240";

(B) in subsection (a)(2), by striking "section 242(a)(2)" and inserting "section 236(c)"; and

(C) in subsection (b)(1), by striking "section 241(a)(2)(A)(iii)" and inserting "section 237(a)(2)(A)(iii)".

(2) TREATMENT OF CERTAIN HELPLESS ALIENS.—

(A) CERTIFICATION OF HELPLESS ALIENS.—Section 232 (8 U.S.C. 1222), as amended by section 308(b)(2), is further amended by adding at the end the following new subsection:

"(c) CERTIFICATION OF CERTAIN HELPLESS ALIENS.—If an examining medical officer determines that an alien arriving in the United States is inadmissible, is helpless from sickness, mental or physical disability, or infancy, and is accompanied by another alien whose protection or guardianship may be required, the officer may certify such fact for purposes of applying section 212(a)(10)(B) with respect to the other alien.".

(B) GROUND OF INADMISSIBILITY FOR PROTECTION AND GUARDIANSHIP OF ALIENS DENIED ADMISSION FOR HEALTH OR INFANCY.—Subparagraph (B) of section 212(a)(10) (8 U.S.C. 1182(a)(10)), as redesignated by section 301(a)(1), is amended to read as follows:

"(B) GUARDIAN REQUIRED TO ACCOMPANY HELPLESS ALIEN.—Any alien—

"(i) who is accompanying another alien who is inadmissible and who is certified to be helpless from sickness, mental or physical disability, or infancy pursuant to section 232(c), and

"(ii) whose protection or guardianship is determined to be required by the alien described in clause (i),

is inadmissible.".

(3) CONTINGENT CONSIDERATION IN RELATION TO REMOVAL OF ALIENS.—Section 273(a) (8 U.S.C. 1323(a)) is amended—

(A) by inserting "(1)" after "(a)", and

(B) by adding at the end the following new paragraph:

72

"(2) It is unlawful for an owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel or aircraft who is bringing an alien (except an alien crewmember) to the United States to take any consideration to be kept or returned contingent on whether an alien is admitted to, or ordered removed from, the United States.".

(4) CLARIFICATION.—(A) Section 238(a)(1), which, previous to redesignation under section 308(b)(5), was section 242A(a)(1), is amended by adding at the end the following: "Nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.".

(B) Section 225 of the Immigration and Nationality Technical Corrections Act of 1994 (Public Law 103–416), as amended by section 851(b)(15), is amended by striking "and nothing in" and all that follows up to "shall".

(d) ADDITIONAL CONFORMING AMENDMENTS RELATING TO EXCLUSION AND INADMISSIBILITY.—

(1) SECTION 212.—Section 212 (8 U.S.C. 1182(a)) is amended—

(A) in the heading, by striking "EXCLUDED FROM" and inserting "INELIGIBLE FOR";

(B) in the matter in subsection (a) before paragraph (1), by striking all that follows "(a)" and inserting the following: "CLASSES OF ALIENS INELIGIBLE FOR VISAS OR ADMISSION.—Except as otherwise provided in this Act, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:";

(C) in subsection (a), by striking "is excludable" and inserting "is inadmissible" each place it appears;

(D) in subsections (a)(5)(C) (before redesignation by section 343(c)(1), (d)(1), (k), by striking "exclusion" and inserting "inadmissibility";

(E) in subsections (b), (d)(3), (h)(1)(A)(i), and (k), by striking "excludable" each place it appears and inserting "inadmissible";

(F) in subsection (b)(2), by striking "or ineligible for entry";

(G) in subsection (d)(7), by striking "excluded from" and inserting "denied"; and

(H) in subsection (h)(1)(B), by striking "exclusion" and inserting "denial of admission".

(2) SECTION 241.—Section 241 (8 U.S.C. 1251), before redesignation as section 237 by section 305(a)(2), is amended—

(A) in subsection (a)(1)(H), by striking "excludable" and inserting "inadmissible";

(B) in subsection (a)(4)(C)(ii), by striking "excludability" and inserting "inadmissibility";

(C) in subsection (c), by striking "exclusion" and inserting "inadmissibility"; and

(D) effective upon enactment of this Act, by striking subsection (d), as added by section 414(a) of the

73

Antiterrorism and Effective Death Penalty Act of 1996 (P.L.
104–132).

(3) OTHER GENERAL REFERENCES.—The following provisions are amended by striking "excludability" and "excludable"
each place each appears and inserting "inadmissibility" and
"inadmissible", respectively:

(A) Sections 101(f)(3), 213, 234 (before redesignation by
section 308(b)), 241(a)(1) (before redesignation by section
305(a)(2)), 272(a), 277, 286(h)(2)(A)(v), and 286(h)(2)(A)(vi).

(B) Section 601(c) of the Immigration Act of 1990.

(C) Section 128 of the Foreign Relations Authorization
Act, Fiscal Years 1992 and 1993 (Public Law 102–138).

(D) Section 1073 of the National Defense Authorization
Act for Fiscal Year 1995 (Public Law 103–337).

(E) Section 221 of the Immigration and Nationality
Technical Corrections Act of 1994 (Public Law 103–416).

(4) RELATED TERMS.—

(A) Section 101(a)(17) (8 U.S.C. 1101(a)(17)) is amended by striking "or expulsion" and inserting "expulsion, or
removal".

(B) Section 102 (8 U.S.C. 1102) is amended by striking
"exclusion or deportation" and inserting "removal".

(C) Section 103(c)(2) (8 U.S.C. 1103(c)(2)) is amended
by striking "been excluded or deported" and inserting "not
been admitted or have been removed".

(D) Section 206 (8 U.S.C. 1156) is amended by striking
"excluded from admission to the United States and deported" and inserting "denied admission to the United
States and removed".

(E) Section 216(f) (8 U.S.C. 1186a) is amended by
striking "exclusion" and inserting "inadmissibility".

(F) Section 217 (8 U.S.C. 1187) is amended by striking
"excluded from admission" and inserting "denied admission at the time of arrival" each place it appears.

(G) Section 221(f) (8 U.S.C. 1201) is amended by striking "exclude" and inserting "deny admission to".

(H) Section 232(a) (8 U.S.C. 1222(a)), as redesignated
by subsection (b)(2), is amended by striking "excluded by"
and "the excluded classes" and inserting "inadmissible
under" and "inadmissible classes", respectively.

(I)(i) Section 272 (8 U.S.C. 1322) is amended—

(I) by striking "EXCLUSION" in the heading and inserting "DENIAL OF ADMISSION",

(II) in subsection (a), by striking "excluding condition" and inserting "condition causing inadmissibility",
and

(III) in subsection (c), by striking "excluding".

(ii) The item in the table of contents relating to such
section is amended by striking "exclusion" and inserting
"denial of admission".

(J) Section 276(a) (8 U.S.C. 1326(a)) is amended—

(i) in paragraph (1), as amended by section
324(a)—

74

(I) by striking "arrested and deported, has been excluded and deported," and inserting "denied admission, excluded, deported, or removed", and

(II) by striking "exclusion or deportation" and inserting "exclusion, deportation, or removal"; and
(ii) in paragraph (2)(B), by striking "excluded and deported" and inserting "denied admission and removed".
(K) Section 286(h)(2)(A)(vi) (8 U.S.C. 1356(h)(2)(A)(vi)) is amended by striking "exclusion" each place it appears and inserting "removal".
(L) Section 287 (8 U.S.C. 1357) is amended—
(i) in subsection (a), by striking "or expulsion" each place it appears and inserting "expulsion, or removal", and

(ii) in subsection (c), by striking "exclusion from" and inserting "denial of admission to".
(M) Section 290(a) (8 U.S.C. 1360(a)) is amended by striking "admitted to the United States, or excluded therefrom" each place it appears and inserting "admitted or denied admission to the United States".
(N) Section 291 (8 U.S.C. 1361) is amended by striking "subject to exclusion" and inserting "inadmissible" each place it appears.
(O) Section 292 (8 U.S.C. 1362) is amended by striking "exclusion or deportation" each place it appears and inserting "removal".
(P) Section 360 (8 U.S.C. 1503) is amended—
(i) in subsection (a), by striking "exclusion" each place it appears and inserting "removal", and
(ii) in subsection (c), by striking "excluded from" and inserting "denied".
(Q) Section 507(b)(2)(D) (8 U.S.C. 1537(b)(2)(D)) is amended by striking "exclusion because such alien is excludable" and inserting "removal because such alien is inadmissible".
(R) Section 301(a)(1) of the Immigration Act of 1990 is amended by striking "exclusion" and inserting "inadmissibility".
(S) Section 401(c) of the Refugee Act of 1980 is amended by striking "deportation or exclusion" and inserting "removal".
(T) Section 501(e)(2) of the Refugee Education Assistance Act of 1980 (Public Law 96–422) is amended—
(i) by striking "exclusion or deportation" each place it appears and inserting "removal", and
(ii) by striking "deportation or exclusion" each place it appears and inserting "removal".
(U) Section 4113(c) of title 18, United States Code, is amended by striking "exclusion and deportation" and inserting "removal".
(5) REPEAL OF SUPERSEDED PROVISION.—Effective as of the date of the enactment of the Antiterrorism and Effective Death

xxxvi

75

Penalty Act of 1996, section 422 of such Act is repealed and the Immigration and Nationality Act shall be applied as if such section had not been enacted.

(e) REVISION OF TERMINOLOGY RELATING TO DEPORTATION.—

(1) Each of the following is amended by striking "deportation" each place it appears and inserting "removal":

(A) Subparagraphs (A)(iii)(II), (A)(iv)(II), and (B)(iii)(II) of section 204(a)(1) (8 U.S.C. 1154(a)(1)).

(B) Section 212(d)(1) (8 U.S.C. 1182(d)(1)).

(C) Section 212(d)(11) (8 U.S.C. 1182(d)(11)).

(D) Section 214(k)(4)(C) (8 U.S.C. 1184(k)(4)(C)), as redesignated by section 851(a)(3)(A).

(E) Section 241(a)(1)(H) (8 U.S.C. 1251(a)(1)(H)), before redesignation as section 237 by section 305(a)(2).

(F) Section 242A (8 U.S.C. 1252a), before redesignation as section 238 by subsection (b)(5).

(G) Subsections (a)(3) and (b)(5)(B) of section 244A (8 U.S.C. 1254a), before redesignation as section 244 by subsection (b)(7).

(H) Section 246(a) (8 U.S.C. 1256(a)).

(I) Section 254 (8 U.S.C. 1284).

(J) Section 263(a)(4) (8 U.S.C. 1303(a)(4)).

(K) Section 276(b) (8 U.S.C. 1326(b)).

(L) Section 286(h)(2)(A)(v) (8 U.S.C. 1356(h)(2)(A)(v)).

(M) Section 287(g) (8 U.S.C. 1357(g)) (as added by section 122).

(N) Section 291 (8 U.S.C. 1361).

(O) Section 318 (8 U.S.C. 1429).

(P) Section 130005(a) of the Violent Crime Control and Law Enforcement Act of 1994 (Public Law 103–322).

(Q) Section 4113(b) of title 18, United States Code.

(2) Each of the following is amended by striking "deported" each place it appears and inserting "removed":

(A) Section 212(d)(7) (8 U.S.C. 1182(d)(7)).

(B) Section 214(d) (8 U.S.C. 1184(d)).

(C) Section 241(a) (8 U.S.C. 1251(a)), before redesignation as section 237 by section 305(a)(2).

(D) Section 242A(c)(2)(D)(iv) (8 U.S.C. 1252a(c)(2)(D)(iv)), as amended by section 851(b)(14) but before redesignation as section 238 by subsection (b)(5).

(E) Section 252(b) (8 U.S.C. 1282(b)).

(F) Section 254 (8 U.S.C. 1284).

(G) Subsections (b) and (c) of section 266 (8 U.S.C. 1306).

(H) Section 301(a)(1) of the Immigration Act of 1990.

(I) Section 4113 of title 18, United States Code.

(3) Section 101(g) (8 U.S.C. 1101(g)) is amended by inserting "or removed" after "deported" each place it appears.

(4) Section 103(c)(2) (8 U.S.C. 1103(c)(2)) is amended by striking "suspension of deportation" and inserting "cancellation of removal".

(5) Section 201(b)(1)(D) (8 U.S.C. 1151(b)(1)(D)) is amended by striking "deportation is suspended" and inserting "removal is canceled".

76

(6) Section 212(l)(2)(B) (8 U.S.C. 1182(l)(2)(B)) is amended by striking "deportation against" and inserting "removal of".

(7) Subsections (b)(2), (c)(2)(B), (c)(3)(D), (c)(4)(A), and (d)(2)(C) of section 216 (8 U.S.C. 1186a) are each amended by striking "DEPORTATION", "deportation", "deport", and "deported" each place each appears and inserting "REMOVAL", "removal", "remove", and "removed", respectively.

(8) Subsections (b)(2), (c)(2)(B), (c)(3)(D), and (d)(2)(C) of section 216A (8 U.S.C. 1186b) are each amended by striking "DEPORTATION", "deportation", "deport", and "deported" and inserting "REMOVAL", "removal", "remove", and "removed", respectively.

(9) Section 217(b)(2) (8 U.S.C. 1187(b)(2)) is amended by striking "deportation against" and inserting "removal of".

(10) Section 242A (8 U.S.C. 1252a), before redesignation as section 238 by subsection (b)(6), is amended, in the headings to various subdivisions, by striking "DEPORTATION" and "DEPORTATION" and inserting "REMOVAL" and "REMOVAL", respectively.

(11) Section 244A(a)(1)(A) (8 U.S.C. 1254a(a)(1)(A)), before redesignation as section 244 by subsection (b)(8), is amended—

(A) in subsection (a)(1)(A), by striking "deport" and inserting "remove", and

(B) in subsection (e), by striking "SUSPENSION OF DEPORTATION" and inserting "CANCELLATION OF REMOVAL".

(12) Section 254 (8 U.S.C. 1284) is amended by striking "deport" each place it appears and inserting "remove".

(13) Section 273(d) (8 U.S.C. 1323(d)) is repealed.

(14)(A) Section 276 (8 U.S.C. 1326) is amended by striking "DEPORTED" and inserting "REMOVED".

(B) The item in the table of contents relating to such section is amended by striking "deported" and inserting "removed".

(15) Section 318 (8 U.S.C. 1429) is amended by striking "suspending" and inserting "canceling".

(16) Section 301(a) of the Immigration Act of 1990 is amended by striking "DEPORTATION" and inserting "REMOVAL".

(17) The heading of section 130005 of the Violent Crime Control and Law Enforcement Act of 1994 (Public Law 103–322) is amended by striking "**DEPORTATION**" and inserting "**REMOVAL**".

(18) Section 9 of the Peace Corps Act (22 U.S.C. 2508) is amended by striking "deported" and all that follows through "Deportation" and inserting "removed pursuant to chapter 4 of title II of the Immigration and Nationality Act".

(19) Section 8(c) of the Foreign Agents Registration Act (22 U.S.C. 618(c)) is amended by striking "deportation" and all that follows and inserting "removal pursuant to chapter 4 of title II of the Immigration and Nationality Act.".

(f) REVISION OF REFERENCES TO ENTRY.—

(1) The following provisions are amended by striking "entry" and inserting "admission" each place it appears:

(A) Section 101(a)(15)(K) (8 U.S.C. 1101(a)(15)(K)).

(B) Section 101(a)(30) (8 U.S.C. 1101(a)(30)).

(C) Section 212(a)(2)(D) (8 U.S.C. 1182(a)(2)(D)).

(D) Section 212(a)(6)(C)(i) (8 U.S.C. 1182(a)(6)(C)(i)).

xxxviii

77

*(E) Section 212(h)(1)(A)(i) (8 U.S.C. 1182(h)(1)(A)(i)).*

*(F) Section 212(j)(1)(D) (8 U.S.C. 1182(j)(1)(D)).*

*(G) Section 214(c)(2)(A) (8 U.S.C. 1184(c)(2)(A)).*

*(H) Section 214(d) (8 U.S.C. 1184(d)).*

*(I) Section 216(b)(1)(A)(i) (8 U.S.C. 1186a(b)(1)(A)(i)).*

*(J) Section 216(d)(1)(A)(i)(III) (8 U.S.C. 1186a(d)(1)(A)(i)(III)).*

*(K) Subsection (b) of section 240 (8 U.S.C. 1230), before redesignation as section 240C by section 304(a)(2).*

*(L) Subsection (a)(1)(G) of section 241 (8 U.S.C. 1251), before redesignation as section 237 by section 305(a)(2).*

*(M) Subsection (a)(1)(H) of section 241 (8 U.S.C. 1251), before redesignation as section 237 by section 305(a)(2), other than the last time it appears.*

*(N) Paragraphs (2) and (4) of subsection (a) of section 241 (8 U.S.C. 1251), before redesignation as section 237 by section 305(a)(2).*

*(O) Section 245(e)(3) (8 U.S.C. 1255(e)(3)).*

*(P) Section 247(a) (8 U.S.C. 1257(a)).*

*(Q) Section 601(c)(2) of the Immigration Act of 1990.*

*(2) The following provisions are amended by striking "enter" and inserting "be admitted":*

*(A) Section 204(e) (8 U.S.C. 1154(e)).*

*(B) Section 221(h) (8 U.S.C. 1201(h)).*

*(C) Section 245(e)(2) (8 U.S.C. 1255(e)(2)).*

*(3) The following provisions are amended by striking "enters" and inserting "is admitted to":*

*(A) Section 212(j)(1)(D)(ii) (8 U.S.C. 1154(e)).*

*(B) Section 214(c)(5)(B) (8 U.S.C. 1184(c)(5)(B)).*

*(4) Subsection (a) of section 238 (8 U.S.C. 1228), before redesignation as section 233 by section 308(b)(4), is amended by striking "entry and inspection" and inserting "inspection and admission".*

*(5) Subsection (a)(1)(H)(ii) of section 241 (8 U.S.C. 1251), before redesignation as section 237 by section 305(a)(2), is amended by striking "at entry".*

*(6) Section 7 of the Central Intelligence Agency Act of 1949 (50 U.S.C. 403h) is amended by striking "that the entry", "given entry into", and "entering" and inserting "that the admission", "admitted to", and "admitted to".*

*(7) Section 4 of the Atomic Weapons and Special Nuclear Materials Rewards Act (50 U.S.C. 47c) is amended by striking "entry" and inserting "admission".*

*(g) CONFORMING REFERENCES TO REORGANIZED SECTIONS.—*

*(1) REFERENCES TO SECTIONS 232, 234, 238, 239, 240, 241, 242A, AND 244A.—Any reference in law in effect on the day before the date of the enactment of this Act to section 232, 234, 238, 239, 240, 241, 242A, or 244A of the Immigration and Nationality Act (or a subdivision of such section) is deemed, as of the title III–A effective date, to refer to section 232(a), 232(b), 233, 234, 234A, 237, 238, or 244 of such Act (or the corresponding subdivision of such section), as redesignated by this subtitle. Any reference in law to section 241 (or a subdivision of such section) of the Immigration and Nationality Act in an amend-*

78

ment made by a subsequent subtitle of this title is deemed a reference (as of the title III–A effective date) to section 237 (or the corresponding subdivision of such section), as redesignated by this subtitle.

(2) REFERENCES TO SECTION 106.—

(A) Sections 242A(b)(3) and 242A(c)(3)(A)(ii) (8 U.S.C. 1252a(b)(3), 1252a(c)(3)(A)(ii)), as amended by section 851(b)(14) but before redesignation as section 238 by subsection (b)(5), are each amended by striking "106" and inserting "242".

(B) Sections 210(e)(3)(A) and 245A(f)(4)(A) (8 U.S.C. 1160(e)(3)(A), 1255a(f)(4)(A)) are amended by inserting "(as in effect before October 1, 1996)" after "106".

(C) Section 242A(c)(3)(A)(iii) (8 U.S.C. 1252a(c)(3)(A)(iii)), as amended by section 851(b)(14) but before redesignation as section 238 by subsection (b)(5), is amended by striking "106(a)(1)" and inserting "242(b)(1)".

(3) REFERENCES TO SECTION 236.—

(A) Sections 205 and 209(a)(1) (8 U.S.C. 1155, 1159(a)(1)) are each amended by striking "236" and inserting "240".

(B) Section 4113(c) of title 18, United States Code, is amended by striking "1226 of title 8, United States Code" and inserting "240 of the Immigration and Nationality Act".

(4) REFERENCES TO SECTION 237.—

(A) Section 209(a)(1) (8 U.S.C. 1159(a)(1)) is amended by striking "237" and inserting "241".

(B) Section 212(d)(7) (8 U.S.C. 1182(d)(7)) is amended by striking "237(a)" and inserting "241(c)".

(C) Section 280(a) (8 U.S.C. 1330(a)) is amended by striking "237, 239, 243" and inserting "234, 243(c)(2)".

(5) REFERENCES TO SECTION 242.—

(A)(i) Sections 214(d), 252(b), and 287(f)(1) (8 U.S.C. 1184(d), 1282(b), 1357(f)(1)) are each amended by striking "242" and inserting "240".

(ii) Subsection (c)(4) of section 242A (8 U.S.C. 1252a), as amended by section 851(b)(13) but before redesignation as section 238 by subsection (b)(5), are each amended by striking "242" and inserting "240".

(iii) Section 245A(a)(1)(B) (8 U.S.C. 1255a(a)(1)(B)) is amended by inserting "(as in effect before October 1, 1996)" after "242".

(iv) Section 4113 of title 18, United States Code, is amended—

(I) in subsection (a), by striking "section 1252(b) or section 1254(e) of title 8, United States Code," and inserting "section 240B of the Immigration and Nationality Act"; and

(II) in subsection (b), by striking "section 1252 of title 8, United States Code," and inserting "section 240 of the Immigration and Nationality Act".

xl

79

*(B) Section 130002(a) of Public Law 103–322, as amended by section 345, is amended by striking "242(a)(3)(A)" and inserting "236(d)".*

*(C) Section 242A(b)(1) (8 U.S.C. 1252a(b)(1)), before redesignation as section 238 by section 308(b)(5), is amended by striking "242(b)" and inserting "240".*

*(D) Section 242A(c)(2)(D)(ii) (8 U.S.C. 1252a(c)(2)(D)(ii)), as amended by section 851(b)(14) but before redesignation as section 238 by subsection (b)(5), is amended by striking "242(b)" and inserting "240".*

*(E) Section 1821(e) of title 28, United States Code, is amended by striking "242(b)" and inserting "240".*

*(F) Section 130007(a) of Public Law 103–322 is amended by striking "242(i)" and inserting "239(d)".*

*(G) Section 20301(c) of Public Law 103–322 is amended by striking "242(j)(5)" and "242(j)" and inserting "241(h)(5)" and "241(h)", respectively.*

(6) REFERENCES TO SECTION 242B.—

*(A) Section 303(d)(2) of the Immigration Act of 1990 is amended by striking "242B" and inserting "240(b)(5)".*

*(B) Section 545(g)(1)(B) of the Immigration Act of 1990 is amended by striking "242B(a)(4)" and inserting "239(a)(4)".*

(7) REFERENCES TO SECTION 243.—

*(A) Section 214(d) (8 U.S.C. 1184(d)) is amended by striking "243" and inserting "241".*

*(B) Section 504(k)(2) (8 U.S.C. 1534(k)(2)) is amended by striking "withholding of deportation under section 243(h)" and inserting "by withholding of removal under section 241(b)(3)".*

*(C)(i) Section 315(c) of the Immigration Reform and Control Act of 1986 is amended by striking "243(g)" and "1253(g)" and inserting "243(d)" and "1253(d)" respectively.*

*(ii) Section 702(b) of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1988 is amended by striking "243(g)" and inserting "243(d)".*

*(iii) Section 903(b) of Public Law 100–204 is amended by striking "243(g)" and inserting "243(d)".*

*(D)(i) Section 6(f)(2)(F) of the Food Stamp Act of 1977 (7 U.S.C. 2015(f)(2)(F)) is amended by striking "243(h)" and inserting "241(b)(3)".*

*(ii) Section 214(a)(5) of the Housing and Community Development Act of 1980 (42 U.S.C. 1436a(a)(5)) is amended by striking "243(h)" and inserting "241(b)(3)".*

*(E)(i) Subsection (c)(2)(B)(ii) of section 244A (8 U.S.C. 1254a), before redesignated as section 244 by section 308(b)(7), is amended by striking "243(h)(2)" and inserting "208(b)(2)(A)".*

*(ii) Section 301(e)(2) of the Immigration Act of 1990 is amended by striking "243(h)(2)" and inserting "208(b)(2)(A)".*

*(F) Section 316(f) (8 U.S.C. 1427(f)) is amended by striking "subparagraphs (A) through (D) of paragraph*

xli

80

243(h)(2)" and inserting "clauses (i) through (v) of section 208(b)(2)(A)".

(8) REFERENCES TO SECTION 244.—

(A)(i) Section 201(b)(1)(D) (8 U.S.C. 1151(b)(1)(D)) and subsection (e) of section 244A (8 U.S.C. 1254a), before redesignation as section 244 by section 308(b)(7), are each amended by striking "244(a)" and inserting "240A(a)".

(ii) Section 304(c)(1)(B) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 (Public Law 102–232) is amended by striking "244(a)" and inserting "240A(a)".

(B) Section 504(k)(3) (8 U.S.C. 1534(k)(3)) is amended by striking "suspension of deportation under subsection (a) or (e) of section 244" and inserting "cancellation of removal under section 240A".

(C) Section 304(c)(1)(B) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 (Public Law 102–232) is amended by striking "244(b)(2)" and inserting "240A(b)(2)".

(D) Section 364(a)(2) of this Act is amended by striking "244(a)(3)" and inserting "240A(a)(3)".

(9) REFERENCES TO CHAPTER 5.—

(A) Sections 266(b), 266(c), and 291 (8 U.S.C. 1306(b), 1306(c), 1361) are each amended by striking "chapter 5" and inserting "chapter 4".

(B) Section 6(b) of the Act of August 1, 1956 (50 U.S.C. 855(b)) is amended by striking "chapter 5, title II, of the Immigration and Nationality Act (66 Stat. 163)" and inserting "chapter 4 of title II of the Immigration and Nationality Act".

(10) MISCELLANEOUS CROSS-REFERENCE CORRECTIONS FOR NEWLY ADDED PROVISIONS.—

(A) Section 212(h), as amended by section 301(h), is amended by striking "section 212(c)" and inserting "paragraphs (1) and (2) of section 240A(a)".

(B) Section 245(c)(6), as amended by section 332(d), is amended by striking "241(a)(4)(B)" and inserting "237(a)(4)(B)".

(C) Section 249(d), as amended by section 332(e), is amended by striking "241(a)(4)(B)" and inserting "237(a)(4)(B)".

(D) Section 274C(d)(7), as added by section 212(d), is amended by striking "withholding of deportation under section 243(h)" and inserting "withholding of removal under section 241(b)(3)".

(E) Section 3563(b)(21) of title 18, United States Code, as inserted by section 374(b), is amended by striking "242A(d)(5)" and inserting "238(d)(5)".

(F) Section 130007(a) of the Violent Crime Control and Law Enforcement Act of 1994 (Public Law 103–322), as amended by section 671(a)(6), is amended by striking "242A(a)(3)" and inserting "238(a)(3)".

(G) Section 386(b) of this Act is amended by striking "excludable" and "EXCLUDABLE" and inserting "inadmis-

81

sible" and "INADMISSIBLE", respectively, each place each appears.

(H) Subsections (a), (c), (d), (g), and (h) of section 440 of the Antiterrorism and Effective Death Penalty Act of 1996 (Public Law 104–132), as amended by section 306(d), are amended by striking "241(a)(2)(A)(ii)" and "241(a)(2)(A)(i)" and inserting "237(a)(2)(A)(ii)" and "237(a)(2)(A)(i)", respectively.

**SEC. 309. EFFECTIVE DATES; TRANSITION.**

(a) IN GENERAL.—Except as provided in this section and sections 303(b)(2), 306(c), 308(d)(2)(D), or 308(d)(5), this subtitle and the amendments made by this subtitle shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act (in this title referred to as the "title III–A effective date").

(b) PROMULGATION OF REGULATIONS.—The Attorney General shall first promulgate regulations to carry out this subtitle by not later than 30 days before the title III–A effective date.

(c) TRANSITION FOR ALIENS IN PROCEEDINGS.—

(1) GENERAL RULE THAT NEW RULES DO NOT APPLY.—Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings as of the title III–A effective date—

(A) the amendments made by this subtitle shall not apply, and

(B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

(2) ATTORNEY GENERAL OPTION TO ELECT TO APPLY NEW PROCEDURES.—In a case described in paragraph (1) in which an evidentiary hearing under section 236 or 242 and 242B of the Immigration and Nationality Act has not commenced as of the title III–A effective date, the Attorney General may elect to proceed under chapter 4 of title II of such Act (as amended by this subtitle). The Attorney General shall provide notice of such election to the alien involved not later than 30 days before the date any evidentiary hearing is commenced. If the Attorney General makes such election, the notice of hearing provided to the alien under section 235 or 242(a) of such Act shall be valid as if provided under section 239 of such Act (as amended by this subtitle) to confer jurisdiction on the immigration judge.

(3) ATTORNEY GENERAL OPTION TO TERMINATE AND REINITIATE PROCEEDINGS.—In the case described in paragraph (1), the Attorney General may elect to terminate proceedings in which there has not been a final administrative decision and to reinitiate proceedings under chapter 4 of title II the Immigration and Nationality Act (as amended by this subtitle). Any determination in the terminated proceeding shall not be binding in the reinitiated proceeding.

(4) TRANSITIONAL CHANGES IN JUDICIAL REVIEW.—In the case described in paragraph (1) in which a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this Act, notwithstanding any provision of

xliii