No. 25-2120

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NATIONAL TPS ALLIANCE; MARIELA GONZALEZ; FREDDY ARAPE
RIVAS; M.H.; CECILIA GONZALEZ HERRERA; ALBA PURICA
HERNANDEZ; E. R.; HENDRINA VIVAS CASTILLO; VILES
DORSAINVIL; A.C.A.; SHERIKA BLANC,

Plaintiffs - Appellees,

v.

KRISTI NOEM, in her official capacity as Secretary of Homeland Security;
UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
UNITED STATES OF AMERICA,

Defendants - Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRIEF FOR *AMICUS CURIAE* IMMIGRATION REFORM
LAW INSTITUTE IN SUPPORT OF
DEFENDENTS-APPELLANTS AND REVERSAL

MATT A. CRAPO
CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorneys for *Amicus Curiae*
Immigration Reform Law Institute

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

DATED: May 7, 2025          Respectfully submitted,

/s/ Matt Crapo

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF *AMICUS CURIAE* ...............................................................1

SUMMARY OF ARGUMENT ......................................................................1

ARGUMENT ............................................................................................2

    A. Secretary Noem's 2025 Vacatur and 2025 Termination were exercises of presidential authority and are unreviewable under the APA .................4

    B. This Court should harmonize the TPS statute with the President's inherent constitutional authority ..................................................6

CONCLUSION ..........................................................................................8

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ariz. Dream Act Coalition v. Brewer*,
    855 F.3d 957 (9th Cir. 2017) ...................................................................1

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948)................................................................................3

*Crowell v. Benson*,
    285 U.S. 22 (1932)..................................................................................7

*Dalton v. Specter*,
    511 U.S. 462 (1994).........................................................................4, 5, 6

*Detroit Int'l Bridge Co. v. Gov't of Can.*,
    189 F. Supp. 3d 85 (D.D.C. 2016).......................................................... 5

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018)................................................................................7

*Nishimura Ekiu v. United States*,
    142 U.S. 651 (1892)................................................................................2

*Matter of Silva-Trevino*,
    26 I. & N. Dec. 826 (B.I.A. 2016) ..........................................................1

*Trump v. Hawaii*,
    585 U.S. 667 (2018)................................................................................1

*Tulare Cty. v. Bush*,
    185 F. Supp. 2d 18 (D.D.C. 2001)..........................................................5

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950)................................................................................3

*United States v. Hansen*,
    599 U.S. 762 (2023)................................................................................6

*United States v. Texas*,
  599 U.S. 670 (2023)..................................................................................1

*Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*,
  50 F.4th 164 (D.C. Cir. 2022).................................................................1

## STATUTES

8 U.S.C. § 1182(f).........................................................................................3

8 U.S.C. § 1254a...........................................................................................4

## MISCELLANEOUS

Executive Order 14159, "Protecting the American People Against Invasion,"
  90 Fed. Reg. 8443 (Jan. 29, 2025).........................................................4

iii

## INTEREST OF *AMICI CURIAE*

*Amicus curiae* Immigration Reform Law Institute ("IRLI") filed this brief with the written consent of all parties.[1] IRLI is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

## SUMMARY OF ARGUMENT

Secretary Noem's vacatur of the extension of temporary protected status (TPS) for Venezuela (2025 Vacatur) and her termination of Venezuela's 2023 designation (2025 Termination) were exercises of inherent Executive power under Article II of the Constitution and were not dependent upon a delegation of power from Congress through the TPS statute. Indeed, her actions were directed by the

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

President, and because Secretary Noem's actions were at the behest of the President, her actions are unreviewable under the Administrative Procedure Act (APA).

Furthermore, the district court's reading of the statute introduces a conflict between it and the President's inherent authority. The district court read the TPS statute to preclude the Executive Branch from reconsidering its prior determinations, but that reading intrudes upon the President's inherent and independent authority to oversee foreign affairs and immigration policy. And, as the government shows, another reading of the statute is, at the very least, permissible, according to which the statute does permit reconsideration of prior agency decisions. Accordingly, to avoid constitutional conflict, this Court should harmonize the TPS statute with Secretary Noem's exercise of inherent Executive authority by adopting the government's interpretation.

## ARGUMENT

There is no question that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of aliens. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu*

*v. United States*, 142 U.S. 651, 659 (1892). It is well-established that the President has independent authority in the areas of foreign policy and national security. *See e.g., Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in [both Congress and] the executive department of the sovereign"); *see also id.* at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing *an inherent executive power*.") (emphasis added). Indeed, Congress has acknowledged the President's inherent authority to exclude aliens in the nation's interest. *See* 8 U.S.C. § 1182(f) (implementing the President's authority, in the interests of the United States, to "suspend the entry of all aliens or any class of aliens" or "impose on the entry of aliens any restrictions he may deem to be appropriate"). And, granted the president's inherent constitutional power, as Commander-in-Chief, to exclude aliens, it cannot be a nullity even if exercised outside of the precise form of its implementation by Congress in 8 U.S.C. § 1182(f).

By reason of this power, as explained below, Plaintiffs are unlikely to succeed on the merits of their action, and this Court accordingly should vacate the district court's order postponing agency action.

## A.   Secretary Noem's 2025 Vacatur and 2025 Termination were exercises of presidential authority and are unreviewable under the APA

On January 20, 2025, President Trump directed Secretary Noem to "rescind the policy decisions of the previous administration that led to the increased or continued presence of illegal aliens in the United States," including "ensuring that designations of Temporary Protected Status are consistent with the provisions of section 244 of the INA (8 U.S.C. 1254a), and that such designations are appropriately *limited in scope* and *made for only so long as may be necessary* to fulfill the textual requirements of that statute." Executive Order 14159 at § 16, "Protecting the American People Against Invasion," 90 Fed. Reg. 8443, 8446 (Jan. 29, 2025) (emphasis added).

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA reviewability, hinges not on whether agency personnel help perform a given action, but on whether the authority to take that action is presidential or delegated by Congress to an agency. *See, a fortiori, Dalton v. Specter,* 511 U.S. 462, 477 (1994) ("Where a statute … commits decisionmaking to the discretion of the President,

4

judicial review of the President's decision is not available."). Here, authority for

Secretary Noem's action came directly from the President in the exercise of his

inherent constitutional authority over foreign affairs and immigration policy, and

she issued the 2025 Vacatur and 2025 Termination pursuant to his executive order.

As the U.S. District Court for the District of Columbia has explained:

> [A]n unreviewable presidential action must involve the exercise of
> discretionary authority vested in the President; an agency acting on
> behalf of the President is not sufficient by itself. Since the Constitution
> vests the powers of the Executive Branch in one unitary chief executive
> officer, *i.e.*, the President, an agency always acts on behalf of the
> President. Nonetheless, there is a difference between actions involving
> discretionary authority delegated by Congress to the President and
> actions involving authority delegated by Congress to an agency. Courts
> lack jurisdiction to review an APA challenge in the former
> circumstances, regardless of whether the President or the agency takes
> the final action. However, "[w]hen the challenge is to an action
> delegated to an agency head but directed by the President, a different
> situation obtains: then, the President effectively has stepped into the
> shoes of an agency head, and the review provisions usually applicable
> to that agency's action should govern." Elena Kagan, *Presidential
> Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85, 101-04 (D.D.C.

2016). *See also, e.g., Tulare Cty. v. Bush,* 185 F. Supp. 2d 18, 28 (D.D.C. 2001)

("A court has subject-matter jurisdiction to review an agency action under the APA

only when a final agency action exists. Because the President is not a federal

agency within the meaning of the APA, presidential actions are not subject to

review pursuant to the APA.") (citing *Dalton,* 511 U.S. at 470) (other internal

citations omitted).

Here, Secretary Noem acted at the direction of the President and implemented his executive order when she reconsidered and vacated Secretary Mayorkas's 2025 Extension and terminated the 2023 Designation. Accordingly, the district court lacked jurisdiction to review her actions under the APA. *Dalton,* 511 U.S. at 477. It is, of course, not to the prejudice of the un-reviewability of the secretary's action that it was pursuant to an order that the President had inherent constitutional authority to issue. Obviously, if actions committed to the President's discretion by a statute are unreviewable under the APA, actions he takes pursuant to his authority under the Constitution are at least equally so.

**B.     This Court should harmonize the TPS statute with the President's inherent constitutional authority**

In any event, the district court's reading of the TPS statute to preclude the Executive from reconsidering its prior determination intrudes on the President's inherent and independent authority to oversee foreign affairs and immigration policy. A reviewing court should seek to harmonize Congress's enactments with the President's inherent constitutional authority to terminate TPS designations. *See United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict."). "When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which

the question may be avoided.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (quoting *Crowell v. Benson*, 285 U. S. 22, 62 (1932)).

Of course, the "canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id.* (internal quotation omitted). Here, the government has persuasively established one such permissible construction— that the TPS statute implicitly permits the Executive Branch to reconsider its prior determinations. *See* Brief for Appellants at 20-24. Thus, to avoid the conflict between the TPS statute, as interpreted by the district court, and the Executive's inherent constitutional authority to protect the nation from foreign threats, this Court should construe the statute as permitting reconsideration of prior agency decisions.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's order postponing agency action.

DATED: May 7, 2025                    Respectfully submitted,

                                      /s/ Matt A. Crapo
                                      Matt A. Crapo
                                      Christopher J. Hajec
                                      Immigration Reform Law Institute
                                      25 Massachusetts Ave., NW, Suite 335
                                      Washington, DC 20001
                                      Telephone: (202) 232-5590

                                      Attorneys for *Amicus Curiae*

8

## CERTIFICATE OF COMPLIANCE

1.     The foregoing brief complies with the type-volume limitation of Fed.

Fed. R. App. P. 29(a)(5) because:

This brief contains 1,622 words, including footnotes, but excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

DATED: May 7, 2025                      Respectfully submitted,

                                        /s/ Matt Crapo

## CERTIFICATE OF SERVICE

I certify that on May 7, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. All parties were served electronically through the ACMS system.

/s/ Matt Crapo