**No. 25-2120**

**In the
United States Court of Appeals for the Ninth Circuit**

_____

NATIONAL TPS ALLIANCE, *et al.*,
*Appellees*,
v.
KRISTI NOEM, *et al.*,
*Appellants.*

_____

**On Appeal from the United States District Court
for the Northern District of California**

_____

**Corrected Brief *Amicus Curiae* of
America's Future,
Citizens United, and
Conservative Legal Defense and Education Fund
in Support of Appellants and Reversal**

_____

MICHAEL BOOS
 CITIZENS UNITED
 1006 Pennsylvania Ave., SE
 Washington, DC  20003

PATRICK M. MCSWEENEY
 3358 John Tree Hill Road
 Powhatan, VA  23139

RICK BOYER
 INTEGRITY LAW FIRM
 P.O. Box 10953
 Lynchburg, VA  24506

JEREMIAH L. MORGAN*
WILLIAM J. OLSON
 WILLIAM J. OLSON, P.C.
 370 Maple Avenue W., Suite 4
 Vienna, VA  22180-5615
 (703) 356-5070
*Attorney of Record
*Attorneys for Amici Curiae*

May 20, 2025

## DISCLOSURE STATEMENT

The *amici curiae* herein, America's Future, Citizens United, and Conservative Legal Defense and Education Fund, through their undersigned counsel, submit this Disclosure Statement pursuant to Federal Rules of Appellate Procedure 26.1, 29(c).

All of these *amici curiae* are non-stock, nonprofit corporations, none of which has any parent company, and no person or entity owns them or any part of them. The *amici curiae* are represented herein by Jeremiah L. Morgan, who is counsel of record, and William J. Olson, of William J. Olson, P.C., 370 Maple Avenue West, Suite 4, Vienna, Virginia 22180-5615.

*s/Jeremiah L. Morgan*
Jeremiah L. Morgan

i

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT

I.    THE DISTRICT COURT HAD NO AUTHORITY WHATSOEVER TO REVIEW
      THE SECRETARY'S TPS DETERMINATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.   THE DISTRICT COURT ERRED IN FINDING A VIOLATION OF EQUAL
      PROTECTION PRINCIPLES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      A.    Judge Chen Makes Political and Baseless Charges of Animus,
            Recycled from His 2018 *Ramos I* Decision. . . . . . . . . . . . . . . . . . . 17

      B.    Judge Chen Misapprehends the Application of the Equal
            Protection Principles to Immigration. . . . . . . . . . . . . . . . . . . . . . . 18

      C.    Courts May Not Look Behind Facially Legitimate Executive
            Justifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      D.    The District Court Disregarded the Supreme Court's
            Instruction that Equal Protection Is Not a Basis for a Judicial
            Takeover of Immigration Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

<u>Constitution</u>
Amendment V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Statutes</u>
8 U.S.C. 1254a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, *passim*

<u>Cases</u>
*Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224 (9th Cir. 2023) . . . . . . . . 12, 13
*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11
*Bolling v. Sharpe,* 347 U.S. 497 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) . . . . . . . . . . . . . 19
*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) . . . . . 23
*Johnson v. Eisentrager*, 339 U.S. 763 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . 19
*Kerry v. Din,* 576 U.S. 86 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
*Kleindienst v. Mandel*, 408 U.S. 753 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*Lamar, Archer & Cofrin, LLP v. Appling,* 584 U.S. 709 (2018) . . . . . . . . . . . . . 14
*Mathews v. Diaz*, 426 U.S. 67 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25
*Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020) . . . . . . 11
*Ramos v. Nielsen*, 336 F. Supp. 3d 1075 (2018) . . . . . . . . . . . . . . . . . . . 5, *passim*
*Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . 5, *passim*

<u>Miscellaneous</u>
90 *Fed. Reg.* 8805 (Feb. 3, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
90 *Fed. Reg.* 9040 (Feb. 5, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 20, 21
B. Blankley, "Venezuelan Prison Gang Crime, Arrests Confirmed in 22 U.S.
  States," *Homeland Security News Wire* (Dec. 31, 2024) . . . . . . . . . . . . . . 21
S. Hankinson and E. Schniederjan, "Tren de Aragua Is the Latest
  Transnational Criminal Organization to Establish Itself in the U.S.,"
  *Heritage Foundation* (Oct. 15, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
B. Vigers, *et al.*, "Americans Pass Judgment on Their Courts: Sharp decline
  in confidence in judiciary is among the largest Gallup has ever
  measured," *Gallup* (Dec. 17, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* America's Future, Citizens United, and Conservative Legal Defense and Education Fund are nonstock, not-for-profit organizations, exempt from federal income taxation under sections 501(c)(3) or 501(c)(4) of the Internal Revenue Code.  Each is dedicated, *inter alia*, to the correct construction, interpretation, and application of law.  *Amici* participate actively in the public policy process and have filed numerous *amicus curiae* briefs in federal and state courts.

## STATEMENT OF THE CASE

The Immigration Act of 1990 established the Temporary Protected Status ("TPS") program.  *See* 8 U.S.C. 1254a.  The TPS program authorizes the Secretary of the Department of Homeland Security ("DHS") to "designate a foreign country for TPS when individuals from that country cannot safely return due to armed conflict, natural disaster, or other extraordinary and temporary circumstances."  *Nat'l TPS All. v. Noem*, 2025 U.S. Dist. LEXIS 61630 at *6 (N.D. Cal. Mar. 31,

---

[1] Counsel for the parties have consented to the filing of this brief *amicus curiae*.  No party's counsel authored the brief in whole or in part.  No party or party's counsel contributed money that was intended to fund preparing or submitting the brief.  No person other than these *amici curiae*, their members or their counsel contributed money that was intended to fund preparing or submitting this brief.

1

2025) ("*NTA*").  After the country "is given a TPS designation, individuals from that country may apply for immigration status.  If granted, they may not be removed from the United States and are given authorization to work in the United States."  *Id.*  TPS designations are temporary, but can be extended for a maximum of 18 months at a time.  *Id.* at *6, *8.  If the "Secretary determines 'that a foreign state ... no longer continues to meet the conditions for designation' the Secretary 'shall terminate the designation by publishing a notice in the Federal Register.'"  *Id.* at *92.

The statute provides that "**[t]here is no judicial review** of any determination of the [Secretary] **with respect to** the designation, or **termination** or extension of a designation, of a foreign state under this subsection."  *Id* at *42 (emphasis added).

On March 9, 2021, shortly after President Biden took office, then-DHS Secretary Alejandro Mayorkas designated Venezuela for TPS status.  *See id.* at *9. On "September 8, 2022 ... DHS **extended** the 2021 Designation for 18 months - *i.e.*, from September 10, 2022, through March 10, 2024."  *Id* at *10.  Then, on October 3, 2023, Mayorkas "**extended** the 2021 Designation ... for another 18 months ... from March 11, 2024 ... to September 10, 2025" and "also **redesignated** Venezuela for TPS ... through April 2, 2025."  *Id.* at *11.

2

On January 17, 2025, just days before President Trump was sworn in, Mayorkas sought to tie the hands of the new Administration by issuing an order to become effective on April 3, 2025 — after the end of the Biden Administration — extending his Venezuela TPS status for the maximum 18 months, until October 2, 2026. *See id.* at *13.

On January 28, 2025, DHS Secretary Kristi Noem **vacated** Mayorkas' January 17, 2025 order to extend the 2023 designation, by publishing notice of the vacatur on February 3, 2025. *See* 90 *Fed. Reg.* 8805 (Feb. 3, 2025); *id.* at *16. On February 1, 2025, Noem **terminated** "the 2023 designation, effective in April 2025 (*i.e.*, 60 days after publication of the termination notice)" with a notice published on February 5, 2025. *See* 90 *Fed. Reg.* 9040 (Feb. 5, 2025); *id.* at *20.

The National TPS Alliance and several individual Venezuelan and Haitian plaintiffs filed suit in the Northern District of California against Secretary Noem, principally arguing that her decisions violated the Administrative Procedure Act ("APA"). On March 31, 2025, the district court granted what was styled as plaintiffs' "motion to postpone" Noem's determinations. The court imposed its determination nationwide. *Id.* at *141. The district court determined that the bar to judicial review in section 1254a(b)(5)(A) was ineffective to preclude APA review (*id.* at *45-49) or the review of constitutional claims (*id.* at *50). The court

3

began its analysis with 10 pages about the harms the court believed were being inflicted on plaintiffs. *Id.* at *57-67. It ruled that the public interest supported relief and that the balance of hardships favored plaintiffs. *Id.* at *70-81. Finally, it found that the plaintiffs had demonstrated likelihood of success on the merits. *Id.* at *81-82.

The court's ruling appeared to be founded solely on equal protection grounds, based largely on its assertion that "there is evidence of discriminatory animus by the decisionmaker at issue, Secretary Noem" as well as "evidence of discriminatory animus by President Trump and that his intent and actions bore a direct nexus to the actions taken by Secretary Noem...." *Id.* at *117-18.

The district court on April 4, 2025, denied the government's motion to stay its order. *Nat'l TPS All. v. Noem,* 2025 U.S. Dist. LEXIS 65363 (N.D. Cal. 2025). A panel of this court refused to stay the order, ruling in a one-paragraph opinion on April 18 that "Appellants have not demonstrated that they will suffer irreparable harm absent a stay." *Nat'l TPS All. v. Noem*, 2025 U.S. App. LEXIS 9436 (9th Cir. 2025). The government has sought a stay from the U.S. Supreme Court, which is pending.

4

## STATEMENT

The injunction issued by the district court cannot properly be viewed in isolation, but rather as the latest chapter in a war being waged — largely successfully — by one district court judge to prevent both the first and second Trump Administrations from lawfully exercising the discretion given by Congress to the Executive Branch to administer the TPS program. These circumstances are extraordinary, date back over a six-year period, and if they are ignored by this Court, they will contribute mightily to the diminishing lack of public confidence in the federal judiciary.

Within the first year of President Trump's first term (between September 2017 and January 2018), the DHS Secretary terminated TPS status for Haiti, Sudan, Nicaragua, and El Salvador. *See Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1082-85 (2018) ("*Ramos I*").[2] On October 3, 2018, Judge Chen granted plaintiffs' Motion for Preliminary Injunction, enjoining these four termination orders, summarizing his reasons as follows:

> [T]he Acting Secretary or Secretary of DHS, in deciding to terminate the TPS status of Haiti, El Salvador, Nicaragua and Sudan, **changed**

---

[2] *Ramos I* was reversed by *Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020) ("*Ramos II*"), which was vacated by grant of rehearing *en banc*, *Ramos v. Wolf*, 59 F.4th 1010 (2023). That appeal was voluntarily dismissed after President Biden took office. *Ramos v. Mayorkas*, 2023 U.S. App. LEXIS 16518 (9th Cir. 2023).

5

**the criteria applied by the prior administrations**, and did so without any explanation or justification in violation of the Administrative Procedure Act. There is also evidence that this may have been done in order to implement and justify a **preordained result desired by the White House**. Plaintiffs have also raised **serious questions** whether the actions taken by the Acting Secretary or Secretary was **influenced by the White House and based on animus against non-white, non-European immigrants** in violation of **Equal Protection** guaranteed by the Constitution. The issues are at least serious enough to preserve the status quo. [*Ramos I* at 1080-81 (emphasis added).]

To summarize, Judge Chen[3] objected to the Trump Administration (i) changing the policies of the Obama Administration (ii) in order to carry out the policies of President Trump. Judge Chen grounded his decision on the Equal Protection component of the Fifth Amendment based on his perceived "serious questions" that someone in the Trump Administration harbored "animus against non-white, non-European immigrants." A Ninth Circuit panel reversed Judge Chen's injunction, but that decision was vacated when *en banc* review was ordered, allowing the injunction to stay in effect, which "ran out the clock" until President Biden was able to take over from President Trump. Thus, Judge Chen's

---

[3] Judge Chen was nominated by President Obama to the bench four times before being confirmed by the Senate, in 2009, twice in 2010, and finally in 2011.

6

injunction prevented the Trump Administration from changing these TPS policies during the President's entire first four-year term.[4]

Judge Chen, according to [Wikipedia](), served for 16 years as a staff attorney for the American Civil Liberties Union ("ACLU") from September 1985 to April 2001, "specializing in language discrimination cases."  In the *Ramos* litigation, the plaintiffs were represented, *inter alia*, by the ACLU of Southern California and the ACLU Foundation of Northern California. The NTA plaintiffs are represented by the ACLU Foundation of Northern California, the ACLU Foundation of Southern California, and two other organizations.

Judge Chen essentially recycled his opinion in *Ramos*, including his circumvention of the statute which provided for "no judicial review" of TPS orders, and imputations of animus to the Trump Administration to keep in place the Biden Administration's policies, as he previously had acted to keep in place the Obama Administration's policies.  Judge Chen's injunction is one of approximately 84 that have been issued against the Trump Administration in just over three months.  *See* Appendix.  The matters reported on here require investigation by this Court to ensure that elements of the federal judiciary are not

_____

[4]  In the *Ramos* case, the government — unlike here — stipulated to leaving the TPS designations in effect during the appeal of the district court's injunction.  *See Ramos II* at 887 n.11.

7

working to "run out the clock" to block the very changes that the American People

elected President Trump to implement.[5]

## ARGUMENT

### I.   THE DISTRICT COURT HAD NO AUTHORITY WHATSOEVER TO REVIEW THE SECRETARY'S TPS DETERMINATIONS.

In crafting the Immigration Act of 1990, Congress erected a complete bar to

any judicial review of any aspect of the DHS Secretary's decisions relating to TPS

designation:

> There is **no** judicial review of **any** determination of the [Secretary] **with respect to** the designation, or **termination** or extension of a designation, of a foreign state under this subsection [TPS]. [8 U.S.C. § 1254a(b)(5)(A) (emphasis added).]

Accordingly, District Judge Chen's opinion below purporting to postpone the

DHS Secretary's actions constituted nothing less than a judicial usurpation of the

unreviewable authority Congress granted the Executive Branch in 8 U.S.C.

§ 1254a(b)(5)(a).

Congress could not have been more plain. It did not say there is no judicial

review "except" or "but." There is no judicial review "period." There is no

---

[5] It is no secret that the American People are losing confidence in courts. *See* B. Vigers, *et al.*, "Americans Pass Judgment on Their Courts: Sharp decline in confidence in judiciary is among the largest Gallup has ever measured," *Gallup* (Dec. 17, 2024).

8

review "with respect to" "any" such "determination."  Even if Judge Chen

somehow could view the Secretary's vacatur of the TPS designation for Venezuela

as not a "termination" — an absurd proposition — it still fell into the category of

"any determination" "with respect to" a "termination."  Thus, as properly applied

here, the statute provides that the district court had "no" authority, and "no"

jurisdiction, to hear and rule on "any" challenge brought by Plaintiffs to the

Secretary's decision.  Thus, Plaintiffs' challenge should have been dismissed out

of hand by Judge Chen.  With Judge Chen having failed to honor the "no judicial

review" statute, the challenge should now be dismissed out of hand and without

further delay by this Circuit Court.

　　　　This is not the first time that Judge Chen exercised judicial authority where

Congress declared that he had none, and he was unfazed by the fact that a panel of

this Court of Appeals previously recognized the weakness of his reasoning in a

similar case brought during the first Trump Administration.  *See Ramos II* (later

vacated, as explained *supra*).  Judge Chen refused to believe that Congress could

possibly have stripped federal courts of the authority to decide critical matters of

public policy.  When this Court reversed the district court's decision in *Ramos I*, it

found that:

> the district court committed legal error when it deemed Plaintiffs'
> APA claim reviewable, despite 8 U.S.C. § 1254a's bar to judicial
> review of challenges to the Secretary's TPS determinations.  [*Ramos
> II* at 899.]

The panel's opinion may have been vacated upon the grant of *en banc* review, and

the case was dismissed due to a change in administrations, but the panel's decision

was well reasoned.  Nevertheless, because this Circuit never had the opportunity

to perform its *en banc* review, Judge Chen felt at liberty to "adhere[] to its prior

views" (*NTA* at *44) and rule that the Administration's TPS designations were

subject to "collateral challenges" such as Plaintiffs' APA challenge.

Here, the district court went to extreme lengths to work its way around the

clear language of the statute with a string of linguistic gymnastics exercises.  The

court first argued that since, as a general proposition, the APA favors

reviewability of agency actions, a court's default position should be that of

reviewability.  The court cited to *Abbott Labs. v. Gardner*, 387 U.S. 136, 141

(1967), an APA case dealing with reviewability under the APA.  But *Abbott Labs*

utterly fails to support the district court's position, as the Supreme Court made

clear, that the APA simply "embodies the basic presumption of judicial review"

but provides that rule applies only "**so long as no statute precludes such relief** or

the **action is not one committed by law to agency discretion**."  *Abbott Labs* at

10

140 (emphasis added). Here, both conditions appear to be met. Applied here, *Abbott Labs* does not support Judge Chen's position, but undermines it.

The district court argued that Congress "designed [§ 1254a(b)(5)(A)] to bar judicial review of substantive country-specific conditions in service of TPS designations, terminations, or extensions of a foreign state — not judicial review of general procedures or collateral practices related to such." *NTA* at *45. But the statute's language is painstakingly clear, barring review of "any determination of the Attorney General **with respect to** the designation, or termination or extension of a designation." 8 U.S.C. § 1254a(b)(5)(A). This would necessarily include "practices related to" such designation. Indeed, in the context of a different statute, this Court has previously "held that the phrase 'with respect to' ... is synonymous with 'relating to.'" *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1030 (9th Cir. 2020). There is no textual support in the judicial bar statute in question here to suggest the district court's creative reading.

The district court sought to explain its assertion of jurisdiction as follows:

> Plaintiffs' contention that the decision to vacate was arbitrary or capricious — and thus should be set aside — does not dictate how the Secretary should ultimately rule on a TPS designation, termination, or extension. Indeed, Secretary Noem's vacatur decision was based purely on **procedural concerns** (*e.g.,* whether Secretary Mayorkas had taken a "novel approach" or caused confusion) and **did not turn, *e.g.,* on country conditions in Venezuela or a concern about U.S.**

11

**interests**.  Therefore, Plaintiffs are simply making **a collateral challenge, not a direct one**, and § 1254a(b)(5)(A) is not implicated. [*NTA* at \*47 (emphasis added).]

The district court attempts to read *Ramos II* to support its decision.  It cited this Court's language, "[t]o the extent a claim purports to challenge an agency 'pattern or practice' rather than a specific TPS determination, we may review it only if the challenged 'pattern or practice' is indeed collateral to, and distinct from, the specific TPS decisions and their underlying rationale." *Id*. at \*46 (citing *Ramos II* at 891-92).  Then the district court labels Secretary Noem's rationale for the TPS terminations as "collateral" to the terminations themselves.  The district court states that "Secretary Noem's vacatur decision was based purely on procedural concerns (*e.g.*, whether Secretary Mayorkas had taken a 'novel approach' or caused confusion." *NTA* at \*47.  This is illogical.  What Judge Chen calls "procedural concerns" were part of the Secretary's exercise of discretion and are in no sense "collateral to, and distinct from, the specific TPS decisions and their underlying rationale."  Indeed, they provided the "underlying rationale" for the vacatur.

As this Court has ruled, "'**with respect to**,' when used 'in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject.'" *Aargon Agency, Inc. v.*

12

*O'Laughlin*, 70 F.4th 1224, 1247 (9th Cir. 2023) (emphasis added) (quoting

*Lamar, Archer & Cofrin, LLP v. Appling,* 584 U.S. 709, 717 (2018)).  In *Lamar*,

the Supreme Court stated, "As a matter of ordinary usage, 'respecting' means 'in

view of: considering; with regard or relation to: regarding; concerning.'"  *Id.* at

716.

> Indeed, when asked to interpret statutory language including the
> phrase "relating to," which is one of the meanings of "respecting,"
> this Court has typically read the relevant text expansively.  *See, e.g.,*
> *Coventry Health Care of Mo., Inc. v. Nevils,* 581 U.S. 87, 95-96, ...
> (2017) (describing "'relate to'" as "expansive" and noting that
> "Congress characteristically employs the phrase to reach any subject
> that has 'a connection with, or reference to,' the topics the statute
> enumerates.").  [*Id.* at 717-18.]

Thus, the district court's attempt to divorce the Secretary's reasoning from

her decision, and then claim the authority to review her reasoning, although not

her decision, utterly fails.  The district court's second gymnastics exercise fares no

better than its first.

Finally, the district court explains that "there does not appear to be any other

forum where Secretary Noem's decision to vacate could be challenged."  Judge

Chen explains:  "[t]he Court, therefore, holds that § 1254a(b)(5)(A) does not bar

judicial review of Plaintiffs' challenge to the Secretary's decision to vacate."  *Id.*

at *49.  The circularity of the court's reasoning is notable:  since the statute

13

prevents judicial review, the district court should exercise judicial review because there was no other means of judicial review.

This Court in *Ramos II* expressly rejected the district court's idea that the lack of administrative review can override a statutory bar on judicial review:

> The statute not only bars from judicial review APA challenges to specific TPS determinations, but more broadly, it provides no administrative avenue whatsoever for individual aliens, or foreign states, to apply for TPS designation.  In light of this critical distinction between the TPS statute and the provisions in ... many other immigration statutes, we do not find the lack of an alternative review forum particularly critical to our analysis.  [*Ramos II* at 894-95.]

In *Ramos II*, this Court made crystal clear that the language of § 1254a(b)(5)(A) establishes a clear bar to judicial review on any non-constitutional grounds.  This Court noted, "[t]o begin, the authority to designate a foreign country for TPS is vested solely with the Secretary 'after consultation with the appropriate agencies of the Government.'  8 U.S.C. § 1254a(b)(1)."  *Ramos II* at 890.

This Court then noted that the TPS statute, by its terms, intends TPS status to be temporary, which militates against an interpretation that the Secretary's termination of TPS status is reviewable:

> The word "may" indicates that, even if the Secretary finds one of these three requisite criteria is met, she retains the discretion not to

14

designate a country for TPS.  In contrast, once a country has been designated for TPS, the Secretary "shall" periodically review the country conditions and **"shall" terminate TPS if she finds the requisite criteria are no longer met**.... [*Id*. at 890-91 (emphasis added).]

Thus, this Court ruled, the statute preserves the Secretary's discretion from judicial review:

The TPS statute also does not dictate any substantive guidelines or restrictions on the manner by which the Secretary may reach her TPS determinations, other than setting forth the three possible findings that the Secretary must make before designating a country for TPS. *See* 8 U.S.C. § 1254a(b)(1).  Nor does the statute set forth or define the "conditions in the foreign state" that the Secretary must consider in her periodic review, or how she should weigh these conditions. *See id.* § 1254a(b)(1).  Read in the context of these provisions, section 1254a(b)(5)(A) makes clear that **the Secretary's discretion** to consider and weigh various conditions in a foreign country in reaching her TPS determinations is not only broad, but **unreviewable**.  [*Id*. at 891 (emphasis added).]

This Court then neatly dispensed with the district court's attempt to argue that, even if the Secretary's final TPS designation is not reviewable, her allegedly racist motivations can be.  "Logically then, section 1254a(b)(5)(A) generally **precludes courts from inquiring into the underlying considerations and reasoning employed by the Secretary** in reaching her country-specific TPS determinations." *Id.* (emphasis added).

To review Plaintiffs' claim, we must accept that — even though the TPS statute affords the Secretary **full discretion** as to whether she

15

considers intervening events (or any other factors) when making her TPS determinations — the **APA's prohibition** on "arbitrary and capricious" changes in practice may nonetheless require her to ... explain herself.... We must also presuppose that — even though section 1254a precludes us from reviewing the Secretary's TPS determinations **and her underlying considerations** — the APA may independently form the basis of a justiciable challenge and thereby allow such a claim to elude the statute's judicial review bar. This cannot be so.... To conclude otherwise would **render section 1254a(b)(5)(A) virtually meaningless** and would **contradict the APA's express language on the limits of the statute's applicability**. [*Id*. at 893-94 (emphasis added).]

The district court simply disregards this Court's opinion in *Ramos II* "[b]ecause the Ramos panel decision was vacated and no en banc ruling ever issued, this Court's decision in Ramos has not been overturned.... Given these circumstances, the Court adheres to its prior views on the scope of § 1254a(b)(5)(A)." *NTA* at *44.

But it is this Court's opinion in *Ramos II*, not the desperate linguistic exercises of the district court here, that is faithful to the text of § 1254a(b)(5)(A). This Court should follow the careful interpretation of *Ramos II*, and the clear text of the statute, and should vacate the ruling of the court below.

16

## II.  THE DISTRICT COURT ERRED IN FINDING A VIOLATION OF EQUAL PROTECTION PRINCIPLES.

### A.  Judge Chen Makes Political and Baseless Charges of Animus, Recycled from His 2018 *Ramos I* Decision.

Judge Chen found that the Plaintiffs were likely to prevail on their equal protection challenge based almost entirely on his perception of the racial "animus" of President Trump and Secretary Noem.  *NTA* at *110.  Judge Chen relied on Plaintiffs' accusation that "'Secretary Noem called Venezuelans "dirt bags."'"  *Id.* at *120.  However, Secretary Noem was clearly referencing violent Tren de Aragua ("TdA") gang members when she stated, "we are going to follow the process, evaluate all of these individuals that are in our country, including the Venezuelans that are here and members of [TdA].  Listen, I was in New York City yesterday and the people of this country want these dirt bags out."  *Id.*

Judge Chen embraced Plaintiffs' assertion that "'America first' was 'a code word for removal of immigrants who are non-white and/or non-European.'"  *Id.* at *126.  The court deemed that the removal of TPS status from Venezuela "continues a pattern of the Trump administration's targeting of non-white, non-European TPS holders."  *Id.* at *132-33.  Judge Chen called President Trump's statement that he planned on "ending TPS designations to put 'America first'" a "discriminatory statement."  *Id.* at *122.  Again and again, Judge Chen

17

charged the Trump Administration with animus.  *Id.* at *6, *110, *116, *118, *131, *134, *137, and *138.

These charges are not new, as they are recycled from Judge Chen's 2018 accusations against President Trump in *Ramos I*, invalidating different TPS actions made by a different DHS Secretary during President Trump's first term.  In *Ramos I*, Judge Chen declared that "President Trump harbors an **animus** against non-white, non-European aliens which influenced his (and thereby the Secretary's) decision to end the TPS designation."  *Ramos I* at 1100 (emphasis added).  As he has here, Judge Chen adopted the *Ramos* plaintiffs' claim that "America First" is "a code word for removal of immigrants who are non-white and/or non-European."  *Id.* at 1104.  Judge Chen determined that racial "animus" infected the TPS terminations and found that equal protection had been violated.  *Id*. at 1098.

## B.    Judge Chen Misapprehends the Application of the Equal Protection Principles to Immigration.

Judge Chen disregards the principle articulated by the Supreme Court that "equal protection of the laws" does not and cannot mean that the law operates with precise equality upon every activity of every human being in every circumstance. Rather, Equal Protection "is essentially a direction that all persons similarly

situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, Equal Protection has minimal utility at best in the immigration context, as the Supreme Court has long recognized for a number of reasons.

First, constitutional rights are personal to individuals and do not attach to foreign nations.[6] Unlike a determination on an individual deportation, the determination made by Secretary Noem here — that Venezuela should no longer receive Temporary Protected Status — was a determination that a foreign country no longer met the statutory factors that permit its citizens to remain here via a TPS designation.

Second, citizens of one foreign nation will seldom be "similarly situated" to citizens of another nation, which the TPS statute recognizes. For a nation to receive TPS status, there must be either (i) "an ongoing armed conflict" there, (ii) an "environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions," or (iii) "exist extraordinary and temporary

---

[6] *See, e.g., Johnson v. Eisentrager*, 339 U.S. 763, 784-85 (1950) ("extraterritorial application of organic law would have been so significant an innovation in the practice of governments that, if intended or apprehended [at ratification], it could scarcely have failed to excite contemporary comment. Not one word can be cited. No decision of this Court supports such a view.... None of the learned commentators on our Constitution has even hinted at it. The practice of every modern government is opposed to it").

19

conditions ... that prevent aliens ... from returning to the state in safety." Aliens from non-TPS countries cannot claim the advantage of an extended period in the United States. If a country does not meet these statutory factors, those foreign nationals are no longer protected by the statute.

### C. Courts May Not Look Behind Facially Legitimate Executive Justifications.

The Supreme Court deemed the concept of "equal protection" to be part of due process protection in *Bolling v. Sharpe,* 347 U.S. 497 (1954), where the Court stated that discrimination by the federal government cannot be "so unjustifiable as to be violative of due process." *Id.* at 499. The extent of the application of equal protection to executive enforcement of immigration law is exceedingly narrow:

> [P]lenary congressional power to make policies and rules for exclusion of aliens has long been firmly established.... Congress has delegated conditional exercise of this power to the Executive. We hold that **when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against [constitutional] interests**.... [*Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972) (emphasis added).]

DHS' February 5, 2025 notice of termination provided several clear, bona fide reasons, including:

> TPS has allowed a significant population of inadmissible or illegal aliens without a path to lawful immigration status to settle in the

20

> interior of the United States, and the sheer numbers have resulted in associated difficulties in local communities where local resources have been inadequate to meet the demands caused by increased numbers....  mayors from cities across the United States are attempting to accommodate Venezuelan illegal aliens, city shelters, police stations, and aid services are at a maximum capacity.  [*NTA* at *22-24, citing 90 *Fed. Reg.* 9040 at 9042-43.]

As the Government brief in district court explains, the Secretary's decision included a reassessment of conditions in Venezuela.  *See* Brief of Appellants ("In making this determination, she stated that 'there are notable improvements in several areas, such as the economy, public health, and crime,' that allow for Venezuelan nationals to be 'safely returned to their home country.'  6-ER-1339.").

Secretary Noem's notice also found that the TPS program had a potential "magnet effect," attracting additional Venezuelan nationals even beyond the current TPS beneficiaries.  "Among the[] Venezuelan nationals who have crossed into the United States are members of the Venezuela gang known as Tren de Aragua," and the Secretary therefore considered the "potential nexus to criminal gang membership" and "public safety" concerns as part of her determination.  90 *Fed. Reg.* 9040 at 9042.  Multiple news outlets have also reported extensively on the crimes committed by TdA gang members against U.S. citizens on U.S. soil.[7]

---

[7]  *See, e.g.,* B. Blankley, "Venezuelan Prison Gang Crime, Arrests Confirmed in 22 U.S. States," *Homeland Security News Wire* (Dec. 31, 2024) (collecting news stories relating to Tren de Aragua crimes against American

The Secretary has clearly proffered "a facially legitimate and bona fide" rational basis for her decisions.  Judge Chen had no justification whatsoever to look behind this decision and then to impute animus.

In his eagerness to find a pattern of discrimination against non-white persons, Judge Chen fails to recognize that few "white European" nations are likely to receive TPS status.  Few have been engaged in "armed conflict" since the TPS program was created.  Few have suffered "disaster ... resulting in a substantial, but temporary, disruption of living conditions" and been "unable, temporarily, to handle adequately the return to the state of aliens who are nationals...."  Few have endured "extraordinary ... conditions ... that prevent aliens who are nationals of the state from returning to the state in safety."  Accordingly, most nations with TPS status, and thus most nations whose TPS status will terminate, will necessarily be "non-white, non-European" nations.  For this reason, a judicial finding of discrimination against "non-white" persons is an fabrication.  This Court recognized this reality in *Ramos II*:

> **[V]irtually every country** that has been designated for TPS since its inception has been "**non-European**" (with the exception of Bosnia

---

citizens); S. Hankinson and E. Schniederjan, "Tren de Aragua Is the Latest Transnational Criminal Organization to Establish Itself in the U.S.," *Heritage Foundation* (Oct. 15, 2024) (collecting news stories of Tren de Aragua violent crimes).

22

and the Province of Kosovo) and most have majority "non-white" populations. Under the district court's logic, almost any TPS termination in the history of the program would bear "more heavily" on "non-white, non-European" populations and thereby give rise to a potential equal protection claim. This cannot be the case.... [*Ramos II* at 898 (emphasis added).]

The Supreme Court has also rejected similar claims, noting that "because Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsized share of recipients of any cross-cutting immigration relief program," and this does not "establish[] a plausible equal protection claim." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*., 591 U.S. 1, 34 (2020). The Court added, "[w]ere this fact sufficient to state a claim, **virtually any generally applicable immigration policy could be challenged on equal protection grounds**." *Id.* (emphasis added).

According to U.S. Citizenship and Immigration Services, the following countries currently have TPS designations: Afghanistan, Burma (Myanmar), Cameroon, El Salvador, Ethiopia, Haiti, Honduras, Lebanon, Nepal, Nicaragua, Somalia, South Sudan, Sudan, Syria, Ukraine, Venezuela, and Yemen.[8] The only remotely "white European" nation on the list is Ukraine.

---

[8] U.S. Citizenship and Immigration Services, "Temporary Protected Status." (last updated May 6, 2025).

If racial "animus" were the motivating factor, Secretary Noem would have terminated all TPS designations, as virtually all involve nations with majority "non-white, non-European" populations. Instead, she has cited factors such as high crime levels and strains on U.S. resources created by aliens of specified countries, while leaving TPS designations in place for other countries — all but one of which are "non-white, non-European" nations.

### D. The District Court Disregarded the Supreme Court's Instruction that Equal Protection Is Not a Basis for a Judicial Takeover of Immigration Law.

For all these reasons, equal protection is ill-suited as a basis to impede the Executive's enforcement of immigration law. The Supreme Court has recognized this reality:

> The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship or, indeed, to the conclusion that all aliens must be placed in a single homogeneous legal classification.... In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens. The exclusion of aliens and the reservation of the power to deport have no permissible counterpart in the Federal Government's power to regulate the conduct of its own citizenry. The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is "invidious." [*Mathews v. Diaz*, 426 U.S. 67, 78-80 (1976).]

24

Equal protection jurisprudence is a poor fit as a metric for judging immigration law, precisely because the Constitution places authority for foreign relations and immigration exclusively with the political branches, not the courts:

> For reasons long recognized as valid, **the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches** of the Federal Government.  Since decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, **such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary**.  This very case illustrates **the need for flexibility in policy choices rather than the rigidity often characteristic of constitutional adjudication**....  Any rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution.  The reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization.  [*Mathews* at 81-82 (emphasis added).]

Thus, "it is not 'political hypocrisy' to recognize that **the Fourteenth Amendment's limits on state powers are substantially different from the constitutional provisions applicable to the federal power over immigration** and naturalization."  *Id.* at 86-87 (emphasis added).

Since the Secretary has provided facially legitimate reasons for vacating Venezuela's TPS status, Congress' delegation of authority is sufficient, and courts

25

are not to "look behind" the determination in search of presumed illegitimate

motivations:

> [U]pon due consideration of the congressional power to make rules
> for the exclusion of aliens, and the ensuing power to delegate
> authority to [an executive official] to exercise substantial discretion in
> that field. [*Kleindienst v.*] *Mandel* held that an executive officer's
> decision denying a visa that burdens **a citizen's** own constitutional
> rights is valid when it is made "on the basis of a facially legitimate
> and bona fide reason." ... Once this standard is met, **"courts will
> neither look behind the exercise of that discretion, nor test it by
> balancing its justification against"** the constitutional interests of
> citizens the visa denial might implicate. [*Kerry v. Din,* 576 U.S. 86,
> 103-04 (2015) (Kennedy, J., concurring).]

Judge Chen's equal protection finding is unauthorized, unmoored from the

facts and the law, and must be reversed.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's

decision.

Respectfully submitted,

  /s/ Jeremiah L. Morgan

| | |
|---|---|
| MICHAEL BOOS | JEREMIAH L. MORGAN* |
| CITIZENS UNITED | WILLIAM J. OLSON |
| 1006 Pennsylvania Ave., SE | WILLIAM J. OLSON, P.C. |
| Washington, DC  20003 | 370 Maple Avenue W., Suite 4 |
| | Vienna, VA  22180-5615 |
| PATRICK M. MCSWEENEY | (703) 356-5070 |
| 3358 John Tree Hill Road | *Attorney of Record |
| Powhatan, VA  23139 | *Attorneys for Amici Curiae* |

26

RICK BOYER                                    May 20, 2025
  INTEGRITY LAW FIRM
  P.O. Box 10953
  Lynchburg, VA  24506

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-2120

I am the attorney or self-represented party.

**This brief contains** | 5,920 | **words,** including | 0 | words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Jeremiah L. Morgan | **Date** | 5/20/25

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Corrected Brief

*Amicus Curiae* of America's Future, *et al.*, in Support of Appellants and Reversal

was made, this 20th day of May 2025, by the Court's Appellate Case Management

System upon the attorneys for the parties.

/s/ Jeremiah L. Morgan

_____

Jeremiah L. Morgan
Attorney for *Amici Curiae*

APPENDIX

## NATIONAL TPS ALLIANCE v. TRUMP
### Appendix to Amicus Brief.

## FEDERAL COURT INJUNCTIONS AGAINST
## THE TRUMP ADMINISTRATION
(January 20, 2025 through May 6, 2025)

### BIRTHRIGHT CITIZENSHIP

1. *New Hampshire Indonesian Community Support v. Trump*, No. 1:25-cv-00038 — Judge Joseph N. Laplante (G.W. Bush) of the District of New Hampshire enjoined any enforcement of Trump's birthright citizenship EO within the state.

2. *Washington v. Trump*, No. 2:25-cv-00127 — Judge John C. Coughenour (Reagan) of the District of Washington enjoined any enforcement of Trump's birthright citizenship EO nationwide. The case was appealed to the Ninth Circuit and the Supreme Court, where it is pending.

3. *New Jersey v. Trump; Doe v. Trump*, No. 1:25-cv-10139 — Judge Leo T. Sorokin (Obama) of the District of Massachusetts enjoined any enforcement of Trump's birthright citizenship EO within the state. The case was appealed to the First Circuit and the Supreme Court, where it is pending.

4. *CASA Inc. v. Trump*, No. 8:25-cv-00201 — Judge Deborah L. Boardman (Biden) of the District of Maryland enjoined any enforcement of Trump's birthright citizenship EO nationwide. The case was appealed to the Fourth Circuit and the Supreme Court, where it is pending.

### IMMIGRATION

5. *J.G.G. v. Trump*, No. 1:25-cv-00766 — Judge James E. Boasberg (Obama) of the District of D.C. ordered flights of gang members and terrorists rerouted back to the United States, and then ordered that Trump cannot deport anyone under the Alien Enemies Act without a hearing. This was upheld by D.C. Circuit, then on April 7, the Supreme Court vacated the district court's TROs. Judge Boasberg on April 16 threatened the Trump administration with criminal contempt charges, but on April 18 the DC Circuit issued an administrative stay in the appeal from Judge

Boasberg's Apr. 16 contempt-related order.  Plaintiffs filed an April 24 amended complaint including a habeas petition for a class of individuals and an April 25 motion for a permanent injunction.

6. *Chung v. Trump*, No. 1:25-cv-02412 — Judge Naomi R. Buchwald (Clinton) of the Southern District of New York issued a temporary restraining order preventing Trump from deporting a Columbia University student for pro-Hamas activism.

7. *Phila. Yearly Meeting of The Religious Soc'y of Friends v. U.S. Dep't of Homeland Sec.*, No. 8:2025-cv-00243 — Judge Theodore D. Chuang (Obama) of the District of Maryland enjoined ICE raids in houses of worship.

8. *M.K. v. Joyce*, No. 1:25-cv-01935 — Judge Jesse M. Furman (Obama) of the Southern District of New York issued a temporary restraining order forbidding the removal of a prisoner from the U.S. to Venezuela until the court could rule on the merits of the removal.  This case was transferred on March 19 as *Khalil v. Joyce*, 2:25-cv-01963 — Judge Michael E. Farbiarz (Biden) of the District of New Jersey ordered on that same day that "Petitioner shall not be removed from the United States unless and until the Court issues a contrary Order."

9. *Parra v. Castro*, No. 1:24-cv-00912 — Judge Kenneth J. Gonzales (Obama) of the District of New Mexico issued a temporary restraining order on February 9 blocking the transfer of three Venezuelans to Gitmo.  They were then removed to their home country instead and voluntarily dismissed their case.

10. *Vizguerra-Ramirez v. Choate*, No. 1:25-cv-00881 — Judge Nina Y. Wang (Biden) of the District of Colorado enjoined the ICE deportation of a Mexican citizen.

11. *National TPS Alliance v. Noem*, No. 3:25-cv-01766 — Judge Edward M. Chen (Obama) of the Northern District of California enjoined ending Temporary Protected Status ("TPS") for 350,000 to 600,000 Venezuelans.

12. *Pacito v. Trump*, No. 2:25-cv-00255 — Judge Jamal N. Whitehead (Biden) of the Western District of Washington granted a nationwide preliminary injunction on February 28 blocking President Trump's Executive Order indefinitely halting entry through the U.S. Refugee Admissions Program (USRAP).  On appeal, the

App.2

Ninth Circuit partially granted the Trump administration's emergency motion to stay, and filed an order clarifying their stay on April 21.

13. *City and County of San Francisco v. Donald J. Trump*, No. 3:25-cv-01350 — Judge William H. Orrick III (Obama) of the Northern District of California granted a preliminary injunction April 24 enjoining President Trump's efforts to have the Department of Justice investigate and prosecute "sanctuary cities" policies and government officials interfering with immigration enforcement.

14. *D.V.D. v. U.S. Department of Homeland Security*, No. 1:25-cv-10676 — Judge Brian E. Murphy (Biden) of the District of Massachusetts enjoined the Trump administration over the recent policy of deporting non-citizens with final removal orders to a third country, specifically El Salvador, without first providing an opportunity to contest removal.

15. *Community Legal Services in East Palo Alto v. U.S. Dep't of HHS*, No. 3:25-cv-02847 — Judge Araceli Martinez-Olguin (Biden) of the Northern District of California issued a temporary restraining order on April 1 blocking Defendants from terminating funding for Department of Health and Human Services' (HHS) Office of Refugee Resettlement (ORR) funding for legal representation services for unaccompanied immigrant children through April 16, then on April 10 extended the TRO through April 30. Defendants' appeal of the TRO to the Ninth Circuit was denied, as was a petition for rehearing en banc. On April 29, the District Court granted a preliminary injunction blocking Defendants from withdrawing the services or funds provided by ORR until a final judgment in the matter is issued. Defendants appealed the PI to the 9th Circuit on Apr. 30.

16. *J.A.V. v. Trump*, No. 1:25-cv-00072 — Judge Fernando Rodriguez (Trump) of the Southern District of Texas on April 9 temporarily enjoined the Trump administration from deporting Venezuelans outside of the district under the Alien Enemies Act. On May 1, Judge Rodriguez certified a class and granted a permanent injunction.

17. *G.F.F. v. Trump*, No. 1:25-cv-02886 — Judge Alvin Hellerstein (Clinton) of the Southern District of New York granted a temporary restraining order on April 9 on behalf of a class of all persons in the district subject to deportation under the Alien Enemies Act. A Preliminary Injunction was granted May 6.

18. *Doe v. Noem*, No. 1:25-cv-10495 — Judge Indira Talwani (Obama) of the District of Massachusetts, on April 14, granted a motion to stay the Department of Homeland Security's blanket revocation of Cuba, Haiti, Nicaragua, and Venezuela parole programs (the "CHNV parole programs") and ordering case-by-case review of any termination of work authorization permits to remain in the United States.

19. *Viloria Aviles v. Trump*, No. 2:25-cv-00611 — Judge Gloria Maria Navarro (Obama) of the District of Nevada issued a preliminary injunction on April 17 prohibiting the government from removing the Petitioner from the United States under the Alien Enemies Act until after his merits hearing.

20. *D.B.U. v. Trump*, No. 1:25-cv-01163 — Judge Charlotte Sweeney (Biden) of the District of Colorado issued a temporary restraining order on April 22 forbidding the administration from removing Venezuelan illegal aliens from Colorado for deportation under the Aliens Enemies Act. A motion for a preliminary injunction is pending. On appeal to the 10th Circuit, a panel on April 29 denied an emergency motion for stay.

21. *A.S.R. v. Trump*, No. 3:25-cv-00113 — Judge Stephanie Haines (Trump) of the Western District of Pennsylvania granted a temporary restraining order on April 25 on behalf of a class of all persons in the district subject to deportation under the Alien Enemies Act that they must be given 14 days' notice and hearing before any removal from the district, pursuant to the Supreme Court's decision in *J.G.G. v. Trump*.

22. *Mahdawi v. Trump*, No. 2:25-cv-00389 — Judge Geoffrey W. Crawford (Obama) of the District of Vermont extended a temporary restraining order on April 24 "for a period of 90 days or until dismissal of this case or grant of a preliminary injunction, whichever is earliest ... no respondent... shall remove [Mohsen Mahdawi, a Palestinian] from Vermont without further order from this court."

23. *Yostin Sleiker Gutierrez-Contreras v. Warden Desert View Annex*, No. 5:25-cv-00911 — Judge Sunshine S. Sykes (Biden) of the Central District of California, issued a temporary restraining order on April 16 preventing the government from removing a Venezuelan at risk of being deported to El Salvador

under the Alien Enemies Act.  On April 28, the TRO was dissolved since the Plaintiff was in Texas when the petition was filed.

*NOTE: According to *Politico*, there have been over 100 lawsuits and 50 restraining orders related to the F-1 visas and the Student and Exchange Visitor Information System (SEVIS) in 23 states.  The Trump Administration is working to resolve this situation, so these cases are not included here.

### TRANSGENDER

24. *Talbott v. Trump*, No. 1:25-cv-00240 — Judge Ana C. Reyes (Biden) of the District of D.C., a lesbian, enjoined Trump's rule preventing "transgender" persons from serving in the military.  The case is on appeal to the D.C. Circuit.

25. *PFLAG v. Trump*, No. 8:25-cv-00337 — Judge Brendan A. Hurson (Biden) of the District of Maryland granted an injunction against Trump's order denying federal funding to institutions performing chemical or surgical "transgender" mutilation on minors.

26. *Washington v. Trump*, No. 2:25-cv-00244 — Judge Lauren J. King (Biden) of the Western District of Washington enjoined Trump's order denying federal funding to institutions performing chemical or surgical "transgender" mutilation on minors.  The case is on appeal to the Ninth Circuit.

27. *Ireland v. Hegseth*, No. 1:25-cv-01918 — Judge Christine P. O'Hearn (Biden) of the District of New Jersey enjoined the Air Force from removing two "transgender" service members pursuant to Trump's order banning "transgender" service members.

28. *Doe v. McHenry; Doe v. Bondi*, No. 1:25-cv-00286 — Judge Royce C. Lamberth (Reagan) of the District of D.C. enjoined the transfer of twelve "transgender women" to men's prisons under Trump's order, and terminating their taxpayer-funded hormone treatments.  The injunction has been appealed to the D.C. Circuit.

App.5

29. *Moe v. Trump*, No. 1:25-cv-10195 — Senior Judge George A. O'Toole Jr. (Clinton) of the District of Massachusetts enjoined the transfer of a "transgender woman" to a men's prison under Trump's order. This case has been transferred to another, unidentified, district.

30. *Jones v. Trump*, No. 1:25-cv-401 — Judge Royce C. Lamberth (Reagan) of the District of D.C. enjoined the transfer of three "transgender women" to men's prisons and termination of their taxpayer-funded hormone treatments under Trump's order.

31. *Shilling v. Trump*, No. 2:25-cv-00241 — Judge Benjamin H. Settle (G.W. Bush) of the Western District of Washington enjoined Trump's order to remove "transgender" service members. The Ninth Circuit denied a request for a stay of the injunction; an Application for Stay filed at the Supreme Court (24A1030), and the stay was granted May 6.

32. *Maine v. Department of Agriculture*, No. 1:25-cv-00131 — Judge John Woodcock (G.W. Bush) of the District of Maine granted a temporary restraining order on April 11 on behalf of Maine, in its lawsuit against Trump's federal education funding freeze to Maine for its refusal to ban boys from girls' teams.

## GOVERNMENT OPERATIONS

33. *Dellinger v. Bessent*, No. 1:25-cv-00385 — Judge Amy B. Jackson (Obama) of the District of D.C. issued a restraining order invalidating Trump's firing of U.S. special counsel Hampton Dellinger. The order was upheld by the D.C. Circuit Court of Appeals and the Supreme Court, then was temporarily lifted by the Court of Appeals on March 5; on March 6, Dellinger announced that he was dropping his case.

34. *American Federation of Government Employees, AFL-CIO v. U.S. Office of Personnel Management*, No. 3:25-cv-01780 — Judge William H. Alsup (Clinton) of the Northern District of California enjoined Trump's order for six federal agencies to dismiss thousands of probationary employees. The injunction was upheld by the Ninth Circuit, but the Supreme Court issued a stay based on standing.

App.6

35. *Wilcox v. Trump*, No. 1:25-cv-00334 — Judge Beryl A. Howell (Obama) of the District of D.C. enjoined Trump's firing of National Labor Relations Board member Gwynne Wilcox, a Democrat, and ordered her reinstated to finish her term. The D.C. Circuit stayed the injunction, then reinstated it, and an application for a stay has been filed at the Supreme Court, and the district court decision stayed by Chief Justice Roberts.

36. *Harris v. Bessent*, No. 1:25-cv-00412 — Judge Rudolph Contreras (Obama) of the District of D.C. enjoined Trump's firing of Merit Systems Protection Board member Cathy Harris and ordered her reinstated. The D.C. Circuit stayed the injunction, then reinstated it, an application for a stay has been filed at the Supreme Court, and the district court decision stayed by Chief Justice Roberts.

37. *American Foreign Service Association v. Trump*, No. 1:25-cv-00352 — Judge Carl J. Nichols (Trump) of the District of D.C. issued a temporary restraining order against Trump's firing of USAID employees. He later vacated the TRO and denied a preliminary injunction against the firings.

38. *Does 1-9 v. Department of Justice*, No. 1:25-cv-00325 — Judge Jia M. Cobb (Biden) of the District of D.C. enjoined Trump from releasing the names of any FBI agents who worked on the January 6 investigation.

39. *Doctors for America v. U.S. Office of Personnel Management*, No. 1:25-cv-00322 — Judge John D. Bates (G.W. Bush) of the District of D.C. ordered that CDC and FDA webpages that "inculcate or promote gender ideology" be restored after Trump ordered them removed.

40. *Perkins Coie v. DOJ*, No. 1:25-cv-00716 — Judge Beryl A. Howell (Obama) of the District of D.C. enjoined Trump's directive barring government agencies doing business with Perkins Coie and banning PC attorneys from federal buildings.

41. *Jenner Block v. DOJ*, No. 1:25-cv-00916 — Judge John D. Bates (G.W. Bush) of the District of D.C. enjoined Trump's directive barring government agencies from doing business with Jenner Block and banning that firm's attorneys from federal buildings.

42. *Wilmer Cutler Pickering Hale and Dorr LLP v. Executive Office of the President*, No. 1:25-cv-00917 — Judge Richard J. Leon (G.W. Bush) of the District of D.C. enjoined Trump's directive barring government agencies from doing business with Wilmer and banning that firm's attorneys from federal buildings.

43. *Susman Godfrey LLP v. Executive Office of the President*, No. 1:25-cv-01107 — Judge Loren L. AliKhan (Biden) of the District of D.C. on April 15 enjoined Trump's directive barring government agencies from doing business with Susman Godfrey and banning that firm's attorneys from federal buildings.

44. *American Federation of Government Employees, AFL-CIO v. Ezell*, No. 1:25-cv-10276 — Senior Judge George A. O'Toole Jr. (Clinton) of the District of Massachusetts issued a temporary restraining order against Trump's buyout of federal employees. The judge later lifted the TRO and denied an injunction, allowing the buyout to go forward.

45. *Maryland v. US Dept. of Agriculture*, No. 1:25-cv-00748 — James K. Bredar (Obama) of the District of Maryland issued a TRO ordering 38 agencies to stop firing employees and reinstate fired employees. On April 9, the Fourth Circuit stayed the district court injunction, noting the Supreme Court's stay in *AFGE, AFL-CIO v. OPM and Ezell*).

46. *Does 1-26 v. Musk*, No. 8:25-cv-00462 — Judge Theodore D. Chuang (Obama) of the District of Maryland ordered DOGE to reinstate email access for fired USAID employees.

47. *American Federation of Teachers v. Bessent*, No. 8:25-cv-00430 — Judge Deborah L. Boardman (Biden) of the District of Maryland enjoined DOE and Office of Personnel Management from disclosing personal information of employees to DOGE. On April 7, the Fourth Circuit granted a stay to the Defendants pending the appeal.

48. *American Federation of State, County and Municipal Employees, AFL-CIO v. Social Security Administration*, No. 1:25-cv-00596 — Judge Ellen L. Hollander (Obama) of the District of Maryland granted an injunction forbidding the Social

App.8

Security Administration from providing personal information to DOGE. The Fourth Circuit dismissed an appeal for lack jurisdiction.

49. *Brehm v. Marocco*, No. 1:25-cv-00660 — Judge Richard J. Leon (G.W. Bush) of the District of D.C. issued a temporary restraining order forbidding Trump from removing Brehm from, and appointing Marocco to, the U.S. African Development Foundation.

50. *American Oversight v. Hegseth*, No. 1:25-cv-00883 — Judge James E. Boasberg (Obama) of the District of D.C. issued an order "as agreed by the parties," for the government to preserve all Signal communications related to the leak to an *Atlantic* editor of DoD conversations in Houthi strike.

51. *National Treasury Employees Union v. Trump*, No. 1:25-cv-00935 — Judge Paul Friedman (Clinton) of the District of D.C., on April 25, enjoined agencies from implementing Trump's executive order limiting collective bargaining rights for many federal employees, but specifically did not enjoin President Trump.

52. *Woonasquatucket River Watershed Council v. Department of Agriculture*, No. 1:25-cv-00097 — Judge Mary McElroy (Trump) of the District of Rhode Island issued a preliminary injunction against Trump's federal funding freeze for various departments including the EPA. The Trump administration appealed to the 1st Circuit on May 1.

53. *Associated Press v. Budowich*, No. 1:25-cv-00532 — Judge Trevor McFadden (Trump) of the District of D.C. on April 8 enjoined the White House from keeping AP reporters out of the White House press briefings until it agrees to refer to the "Gulf of America."

54. *Novedades Y Servicios, Inc. v. FinCEN*, 3:25-cv-00886 — Judge Janis L. Sammartino (G.W. Bush) of the Southern District of California granted a temporary restraining order on April 22 against Department of Treasury FinCEN's Geographic Targeting Order which requires businesses along the southern border to file Currency Transaction Reports with FinCEN at a $200 threshold.

55. *New York, et al. v. Donald J. Trump*, No. 1:25-cv-01144 — Judge Jeannette A. Vargas (Biden) of the Southern District of New York issued a preliminary

App.9

injunction on February 21 blocking DOGE's access to certain Treasury Department payment records. Then on April 11, Judge Vargas partially dissolved her preliminary injunction since "based on existing record" mitigation, training and vetting procedures were adequate to satisfy her concerns.

## FUNDING

56. *National Treasury Employees Union v. Vought*, No. 1:25-cv-00381 — Judge Amy B. Jackson (Obama) of the District of D.C. halted Trump's budget cuts and layoffs at the Consumer Financial Protection Bureau. On March 31, the government appealed Judge Jackson's preliminary injunction order to the D.C. Circuit; which on April 11 ordered a partial stay of the preliminary injunction.

57. *AIDS Vaccine Advocacy Coalition v. Department of State*, No. 1:25-cv-00400 — Judge Amir H. Ali (Biden) of the District of D.C. ordered Trump to unfreeze and spend $2 billion in USAID funds. The Supreme Court, in a 5-4 ruling with Justices Alito, Thomas, Kavanaugh, and Gorsuch dissenting, left the order in place. On Apr. 2, defendants appealed Judge Ali's Mar. 10 preliminary injunction order to the D.C. Circuit.

58. *Colorado v. US Dept. of Health and Human Services*, No. 1:25-cv-00121 — Judge Mary S. McElroy (Trump) of the District of Rhode Island, issued a temporary restraining order on April 5 reinstating payments to a coalition of states which sued the Trump administration over the cancellation of $11 billion in public health funding.

59. *National Council of Nonprofits v. OMB*, No. 1:25-cv-00239 — Judge Loren L. AliKhan (Biden) of the District of D.C. blocked Trump's order to pause federal aid while reviewing to determine if it aligned with administration policy. Appeal to the D.C. Circuit docketed April 25.

60. *Massachusetts v. NIH*, No. 1:25-cv-10338 — Judge Angel Kelley (Biden) of the District of Massachusetts issued a preliminary injunction on March 5 prohibiting implementation of the NIH Guidance "in any form with respect to institutions nationwide."

61. *New York v. Trump*, No. 1:25-cv-00039 — Judge John J. McConnell Jr. (Obama) of the District of Rhode Island enjoined Trump's order to freeze federal spending while reviewing to determine that it aligned with administration policy. The First Circuit, on March 26, denied defendants' motion for a stay pending appeal of the district court's preliminary injunction order.

62. *RFE/RL, Inc. v. Lake*, No. 1:25-cv-00799 — Judge Royce C. Lamberth (Reagan) of the District of D.C. issued a temporary restraining order forbidding Trump from cutting funds to Voice of America.

63. *Widakuswara v. Lake*, No. 1:25-cv-01015 — Judge Royce C. Lamberth (Reagan) of the District of D.C. issued a preliminary injunction on April 22 requiring the reinstatement of employment positions and funding for Voice of America and U.S. Agency for Global Media.  The government appealed to the DC Circuit April 24.

64. *Radio Free Asia v. United States of America*, No. 1:25-cv-00907 — Judge Royce C. Lamberth (Reagan) of the District of D.C. issued a preliminary injunction requiring restoration of funding of Radio Free Asia and Middle East Broadcasting Networks on April 25.  The government immediately filed an appeal to the D.C. Circuit, which granted a stay pending appeal on May 3.

65. *Massachusetts Fair Housing Ctr. v. HUD*, No. 3:25-cv-30041 — Judge Richard G. Stearns (Clinton) of the District of Massachusetts enjoined Trump's cuts to HUD grant funding and ordered spending reinstated.

66. *Climate United Fund v. Citibank, N.A.*, No. 1:25-cv-00698 — Judge Tanya S. Chutkan (Obama) of the District of D.C. issued a temporary restraining order enjoining EPA's Termination of Greenhouse Gas Reduction Fund Grants.

67. *Association of American Medical Colleges v. NIH*, No. 1:25-cv-10340 — Judge Angel Kelley (Biden) of the District of Massachusetts enjoined Trump's NIH grant funding cuts.  The Case has been appealed to the First Circuit.

68. *American Association of Colleges for Teacher Education v. McMahon*, No. 1:25-cv-00702 — Judge Julie R. Rubin (Biden) of the District of Maryland issued an injunction requiring reinstatement of terminated education grant funds.

App.11

Defendants appealed the preliminary injunction to the Fourth Circuit.  On April 1, the Fourth Circuit denied Plaintiffs' motion to place the case in abeyance, and on April 10, granted the defendants' motion for stay pending appeal.

69. *Mayor and City Council of Baltimore et al. v. Vought*, No. 1:25-cv-00458 — Judge Matthew J. Maddox (Biden) of the District of Maryland issued a TRO preventing Trump from defunding the CFPB.

70. *Association of American Universities v. Department of Health and Human Services*, No. 1:25-cv-10346 — Judge Angel Kelley (Biden) of the District of Massachusetts issued a nationwide injunction against Trump's NIH funding cuts. Defendants appealed to the First Circuit on April 9.

71. *Association of American Universities v. Dept. of Energy*, No. 1:25-cv-10912 — Judge Allison D. Burroughs (Obama) of the District of Massachusetts issued a temporary restraining order on April 16 against the cap instituted on reimbursements for indirect costs for federal research grants from the Department of Energy.

72. *American Library Association v. Sonderling*, No. 1:25-cv-01050 — Judge Richard J. Leon of the District of D.C. granted a temporary restraining order on May 1 against the executive order which requires spending reduction of the Institute for Museum and Library Services.

73. *Rhode Island v. Trump*, No. 1:25-cv-00128 — Chief Judge John J. McConnell, Jr. (Obama) of the District of Rhode Island, granted a preliminary injunction on May 6 to a coalition of states which sued over an Executive Order which requires 7 agencies to reduce their functions.

74. *State of New York v. U.S. Dep't of Education*, No. 1:25-cv-02990 — Judge Edgardo Ramos (Obama) of the Southern District of New York granted a preliminary injunction that prohibits the U.S. Department of Education from cancelling over $1 billion in unspent COVID-19 pandemic funding grants extended past the original deadline by the prior administration.

75. *San Fransico U.S.D. v. AmeriCorps*, 3:25-cv-02425 — Judge Edward M. Chen (Obama) of the Northern District of California granted a temporary

restraining order on March 31 after San Francisco Unified School District sued over actions taken to fire employees and freeze grant funding at AmeriCorps.

76. *Citizens for Responsibility and Ethics in Washington v. U.S. DOGE Service*, 1:25-cv-00511 — Judge Christopher R. Cooper (Obama) of the District of D.C. issued a preliminary injunction on March 10 in a lawsuit against DOGE and Elon Musk regarding compliance with FOIA and the Federal Records Act.

## ELECTIONS

77. *League of United Latin American Citizens v. EOP*, No. 1:25-cv-00946 — Judge Colleen Kollar-Kotelly (Clinton) of the District of D.C. granted a universal injunction on April 24 against Executive Order 14,248, requiring documentary proof of United States citizenship to vote in Federal elections. This case consolidates three suits brought by racial minority associations and by Democrat Party, campaigns, and elected officials.

## DEI-RELATED PROGRAMS

78. *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 1:25-cv-00333 — Judge Adam B. Abelson (Biden) of the District of Maryland enjoined Trump's order blocking federal funding for DEI programs. On March 14, the Fourth Circuit granted the government's motion for a stay of the preliminary injunction pending appeal.

79. *California v. Department of Education*, No. 1:25-cv-10548 — Judge Myong J. Joun (Biden) of the District of Massachusetts granted a temporary restraining order blocking Trump's withdrawal of funds to schools teaching DEI. The First Circuit denied a motion for stay pending appeal. On April 4, the Supreme Court granted a stay pending appeal, writing "the Government is likely to succeed in showing the District Court lacked jurisdiction" and that the case may need to be brought in the Court of Federal Claims.

80. *Chicago Women in Trades v. Trump*, No. 1:25-cv-02005 — Senior Judge Matthew F. Kennelly (Clinton) of the Northern District of Illinois entered a temporary restraining order commanding the reinstatement of DEI grants.

81. *Doe 1 v. Office of the Director of National Intelligence*, No. 1:25-cv-00300 — Judge Anthony J. Trenga (G.W. Bush) of the Eastern District of Virginia issued an "administrative stay" against firing DEI employees with CIA and DNI. The court then considered and rejected imposing a TRO to the same effect. On March 31, Judge Trenga granted a preliminary injunction enjoining the defendants. On May 6, defendants filed notice of appeal to the 4th Circuit.

82. *American Federation of Teachers v. U.S. Department of Education*, No. 1:25-cv-00628 — Judge Stephanie A. Gallagher (Trump) of the District of Maryland enjoined the U.S. Department of Education's February 14, 2025 "Dear Colleague Letter" ending diversity, equity, and inclusion practices in schools by threatening to withhold federal funding from those that refuse to comply.

83. *National Education Association v. US Department of Education*, No. 1:25-cv-00091 — Judge Landya B. McCafferty (Obama) of the District of New Hampshire enjoined the U.S. Department of Education's February 14, 2025 "Dear Colleague Letter" ending diversity, equity, and inclusion practices in schools by threatening to withhold federal funding from those that refuse to comply.

84. *NAACP v. U.S. Department of Education*, No. 1:25-cv-01120 — Judge Dabney L. Friedrich (Trump) of the District of D.C. enjoined the U.S. Department of Education's February 14, 2025 "Dear Colleague Letter" ending diversity, equity, and inclusion practices in schools by threatening to withhold federal funding from those that refuse to comply.