DOCUMENT 1.16

(2 of 13), Page 2 of 13    Case: 25-2120, 05/28/2025, DktEntry: 49.17, Page 2 of 13
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 1 of 28

**66062** Federal Register / Vol. 81, No. 186 / Monday, September 26, 2016 / Notices

• Are a national of Liberia (or an alien having no nationality who last habitually resided in Liberia);
• Received an EAD under the last designation of TPS for Liberia; and
• Have an EAD with a marked expiration date of November 21, 2016, bearing the notation ''A–12'' or ''C–19'' on the face of the card under ''Category.''

*When hired, what documentation may I show to my employer as proof of employment authorization and identity when completing Employment Eligibility Verification (Form I–9)?*

You can find a list of acceptable document choices on the ''Lists of Acceptable Documents'' for Form I–9. You can find additional detailed information on the USCIS I–9 Central Web page at *http://www.uscis.gov/I-9Central.* Employers are required to verify the identity and employment authorization of all new employees by using *Employment Eligibility Verification* (Form I–9). Within 3 days of being hired, you must present proof of identity and employment authorization to your employer.

You may present any document from List A (reflecting both your identity and employment authorization) or one document from List B (reflecting identity) together with one document from List C (reflecting employment authorization). An EAD is an acceptable document under ''List A.'' Or you may present an acceptable receipt for a List A, List B, or List C document as described in the Form I–9 Instructions. An acceptable receipt includes a document that shows an employee has applied to replace a required document that was lost, stolen, or damaged. If you present an acceptable receipt for the application of a replacement document, you must present your employer with the actual document within 90 days. Employers may not reject a document based on a future expiration date.

If your EAD has an expiration date of November 21, 2016, and states ''A–12'' or ''C–19'' under ''Category,'' it has been extended automatically for 6 months by virtue of this **Federal Register** Notice and you may choose to present your EAD to your employer as proof of identity and employment authorization for Form I–9 through May 20, 2017 (see the subsection titled ''*How do my employer and I complete the Employment Eligibility Verification (Form I–9) using an automatically extended EAD for a new job?*'' for further information). To minimize confusion over this extension at the time of hire, you should explain to your employer that USCIS has automatically extended your EAD through May 20, 2017. You may also show your employer a copy of this **Federal Register** Notice confirming the automatic extension of employment authorization through May 20, 2017. As an alternative to presenting your automatically extended EAD, you may choose to present any other acceptable document from List A, a combination of one selection from List B and one selection from List C, or a valid receipt.

*What documentation may I show my employer if I am already employed but my current TPS-related EAD is set to expire?*

Even though EADs with an expiration date of November 21, 2016, that state ''A–12'' or ''C–19'' under ''Category'' have been automatically extended for 6 months by this **Federal Register** Notice, your employer will need to ask you about your continued employment authorization once November 21, 2016, is reached to meet its responsibilities for *Employment Eligibility Verification* (Form I–9). Your employer may need to re-inspect your automatically extended EAD to check the expiration date and code to record the updated expiration date on your *Employment Eligibility Verification* (Form I–9) if he or she did not keep a copy of this EAD at the time you initially presented it. You and your employer must make corrections to the employment authorization expiration dates in Section 1 and Section 2 of *Employment Eligibility Verification* (Form I–9) (see the subsection titled ''*What corrections should my current employer and I make to Employment Eligibility Verification (Form I–9) if my EAD has been automatically extended?*'' for further information). You are also strongly encouraged, although not required, to show this **Federal Register** Notice to your employer to explain what to do for *Employment Eligibility Verification* (Form I–9).

By May 20, 2017, the expiration date of the automatic extension, your employer must reverify your employment authorization. If you are employment authorized beyond the expiration date of the automatic extension, you must present any unexpired document from List A or any unexpired document from List C on *Employment Eligibility Verification* (Form I–9) to reverify employment authorization, or an acceptable List A or List C receipt described in the *Employment Eligibility Verification* (Form I–9) instructions. Your employer is required to reverify on *Employment Eligibility Verification* (Form I–9) the employment authorization of current employees no later than the automatically extended expiration date of a TPS-related EAD, which is May 20, 2017, in this case. Your employer should use either Section 3 of the *Employment Eligibility Verification* (Form I–9) originally completed for you or, if this section has already been completed or if the version of *Employment Eligibility Verification* (Form I–9) is no longer valid (check the date in the upper right-hand corner of the form), complete Section 3 of a new *Employment Eligibility Verification* (Form I–9) using the most current version. Note that your employer may not specify which List A or List C document employees must present, and cannot reject an acceptable receipt. An acceptable receipt is described in the *Employment Eligibility Verification* (Form I–9) Instructions and includes one that shows an employee has applied to replace a required document that was lost, stolen or damaged.

*Can my employer require that I produce any other documentation to prove my current TPS status, such as proof of my Liberian citizenship?*

No. When completing *Employment Eligibility Verification* (Form I–9), including reverifying employment authorization, employers must accept any documentation that appears on the ''Lists of Acceptable Documents'' for *Employment Eligibility Verification* (Form I–9) that reasonably appears to be genuine and that relates to you or an acceptable List A, List B, or List C receipt. Employers may not request documentation that does not appear on the ''Lists of Acceptable Documents.'' Therefore, employers may not request proof of Liberian citizenship or proof of re-registration for TPS when completing *Employment Eligibility Verification* (Form I–9) for new hires or reverifying the employment authorization of current employees. Refer to the *Note to Employees* section of this Notice for important information about your rights if your employer rejects lawful documentation, requires additional documentation, or otherwise discriminates against you based on your citizenship or immigration status, or your national origin.

*What happens after May 20, 2017, for purposes of employment authorization?*

After May 20, 2017, employers may no longer accept the EADs that this **Federal Register** Notice automatically extended.

(3 of 13), Page 3 of 13      Case: 25-2120, 05/28/2025, DktEntry: 49.17, Page 3 of 13
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 2 of 28

Federal Register / Vol. 81, No. 186 / Monday, September 26, 2016 / Notices    66063

*How do my employer and I complete Employment Eligibility Verification (Form I–9) using an automatically extended EAD for a new job?*

When using an automatically extended EAD to complete Employment Eligibility Verification (Form I–9) for a new job before May 20, 2017, you and your employer should do the following:

1. For Section 1, you should:
   a. Check "An alien authorized to work;"
   b. Write the automatically extended EAD expiration date (May 20, 2017) in the first space; and
   c. Write your alien number (USCIS number or A-number) in the second space (your EAD or other document from DHS will have your USCIS number or A-number printed on it; the USCIS number is the same as your A-number without the A prefix).

2. For Section 2, employers should record the:
   a. Document title;
   b. Issuing authority;
   c. Document number; and
   d. Automatically extended EAD expiration date (May 20, 2017).

No later than May 20, 2017, employers must reverify your employment authorization in Section 3 of Form I–9.

*What corrections should my current employer and I make to Employment Eligibility Verification (Form I–9) if my EAD has been automatically extended?*

If you are an existing employee who presented a TPS-related EAD that was valid when you first started your job, but that EAD has now been automatically extended, your employer may need to reinspect your automatically extended EAD if your employer does not have a photocopy of the EAD on file, and you and your employer should correct your previously completed Form I–9 as follows:

1. For Section 1, you should:
   a. Draw a line through the expiration date in the first space;
   b. Write "May 20, 2017," above the previous date;
   c. Write "TPS Ext." in the margin of Section 1; and
   d. Initial and date the correction in the margin of Section 1.

2. For Section 2, employers should:
   a. Draw a line through the expiration date written in Section 2;
   b. Write "May 20, 2017" above the previous date;
   c. Write "EAD Ext." in the margin of Section 2; and
   d. Initial and date the correction in the margin of Section 2.

No later than May 20, 2017, when the automatic extension of EADs expires, employers must reverify your employment authorization in Section 3.

*As an employer, what are my Employment Eligibility Verification (Form I–9) obligations after May 20, 2017?*

Employers are required to reverify an employee's employment authorization in Section 3 of Employment Eligibility Verification (Form I–9) by the expiration date of an automatically extended EAD. Your employee must present unexpired documentation from either List A or List C (or an acceptable Form I–9 receipt) showing he or she is still authorized to work. Employers may not ask for specific documents; employees choose which List A or List C documents to present from the Lists of Acceptable Documents.

*If I am an employer enrolled in E-Verify, what do I do when I receive a "Work Authorization Documents Expiration" alert for an automatically extended EAD?*

If you have an employee who is a TPS beneficiary who provided a TPS-related EAD when he or she first started working for you, you will receive a "Work Authorization Documents Expiring" case alert when the auto-extension period for this EAD is about to expire. E-Verify will not send an alert for the original November 21, 2016 expiration date. By May 20, 2017, employment authorization must be reverified in Section 3. Employers should not use E-Verify for reverification.

**Note to All Employers**

Employers are reminded that the laws requiring proper employment eligibility verification and prohibiting unfair immigration-related employment practices remain in full force. This **Federal Register** Notice does not supersede or in any way limit applicable employment verification rules and policy guidance, including those rules setting forth reverification requirements. For general questions about the employment eligibility verification process, employers may call USCIS at 888–464–4218 (TTY 877–875–6028) or email *I-9Central@dhs.gov*. Calls and emails are accepted in English and many other languages. For questions about avoiding discrimination during the employment eligibility verification process, employers may also call the U.S. Department of Justice, Office of Special Counsel for Immigration-Related Unfair Employment Practices (OSC) Employer Hotline, at 800–255–8155 (TTY 800–237–2515), which offers language interpretation in numerous languages, or email OSC at *osccrt@usdoj.gov*.

**Note to Employees**

For general questions about the employment eligibility verification process, you may call USCIS at 888–897–7781 (TTY 877–875–6028) or email *I-9Central@dhs.gov*. Calls are accepted in English and many other languages. You may also call the OSC Worker Information Hotline at 800–255–7688 (TTY 800–237–2515) for information regarding employment discrimination based upon citizenship status, immigration status, or national origin, including discrimination related to *Employment Eligibility Verification* (Form I–9) and E-Verify. The OSC Worker Information Hotline provides language interpretation in numerous languages.

To comply with the law, employers must accept any document or combination of documents from the Lists of Acceptable Documents if the documentation reasonably appears to be genuine and to relate to the employee, or an acceptable receipt described in the *Employment Eligibility Verification* (Form I–9) Instructions. Employers may not require extra or additional documentation beyond what is required for *Employment Eligibility Verification* (Form I–9) completion. Further, employers participating in E-Verify who receive an E-Verify case result of "Tentative Nonconfirmation" (TNC) must promptly inform employees of the TNC and give such employees an opportunity to contest the TNC. A TNC case result means that the information entered into E-Verify from *Employment Eligibility Verification* (Form I–9) differs from Federal or State government records.

Employers may not terminate, suspend, delay training, withhold pay, lower pay, or take any adverse action against you based on your decision to contest a TNC or because the case is still pending with E-Verify. A Final Nonconfirmation (FNC) case result is received when E-Verify cannot verify your employment eligibility. An employer may terminate employment based on a case result of FNC. Work-authorized employees who receive an FNC may call USCIS for assistance at 888–897–7781 (TTY 877–875–6028). If you believe you were discriminated against by an employer in the E-Verify process based on citizenship, immigration status, or national origin, you may contact OSC's Worker Information Hotline at 800–255–7688 (TTY 800–237–2515). Additional

(4 of 13), Page 4 of 13      Case: 25-2120, 05/28/2025, DktEntry: 49.17, Page 4 of 13
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 3 of 28

**66064** Federal Register / Vol. 81, No. 186 / Monday, September 26, 2016 / Notices

information about proper nondiscriminatory *Employment Eligibility Verification* (Form I–9) and E-Verify procedures is available on the OSC Web site at *http://www.justice.gov/crt/about/osc/* and the USCIS Web site at *http://www.dhs.gov/E-verify.*

**Note Regarding Federal, State, and Local Government Agencies (Such as Departments of Motor Vehicles)**

While Federal Government agencies must follow the guidelines laid out by the Federal Government, State and local government agencies establish their own rules and guidelines when granting certain benefits. Each State may have different laws, requirements, and determinations about what documents you need to provide to prove eligibility for certain benefits. Whether you are applying for a Federal, State, or local government benefit, you may need to provide the government agency with documents that show you are a TPS beneficiary and/or show you are authorized to work based on TPS. Examples are:

(1) Your unexpired EAD;
(2) A copy of this **Federal Register** Notice if your EAD is automatically extended under this Notice;
(3) A copy of your Application for Temporary Protected Status Notice of Action (Form I–797);
(4) A copy of your past or current Application for Temporary Protected Status Approval Notice (Form I–797), if you received one from USCIS; and/or
(5) If there is an automatic extension of work authorization, a copy of the fact sheet from the USCIS TPS Web site that provides information on the automatic extension.

Check with the government agency regarding which document(s) the agency will accept. You may also provide the agency with a copy of this **Federal Register** Notice.

Some benefit-granting agencies use the USCIS Systematic Alien Verification for Entitlements Program (SAVE) to confirm the current immigration status of applicants for public benefits. In most cases, SAVE provides an automated electronic response to benefit granting agencies within seconds but occasionally verification can be delayed. You can check the status of your SAVE verification by using CaseCheck at the following link: *https://save.uscis.gov/casecheck/,* then by clicking the "Check Your Case" button. CaseCheck is a free service that lets you follow the progress of your SAVE verification using your date of birth and one immigration identifier number. If such an agency has denied your application based solely or in part on a SAVE response, the agency must offer you the opportunity to appeal the decision in accordance with the agency's procedures. If the agency has received and acted upon or will act upon a SAVE verification and you do not believe the response is correct, you may make an InfoPass appointment for an in-person interview at a local USCIS office. Detailed information on how to make corrections, make an appointment, or submit a written request to correct records under the Freedom of Information Act can be found at the SAVE Web site at *http://www.uscis.gov/save,* then by choosing "For Benefit Applicants" from the menu on the left and selecting "Questions about your Records?".

[FR Doc. 2016–23250 Filed 9–22–16; 4:15 pm]
**BILLING CODE 9111–97–P**

---

**DEPARTMENT OF HOMELAND SECURITY**

**U.S. Citizenship and Immigration Services**

[CIS No. 2587–16; DHS Docket No. USCIS–2014–0010]

**RIN 1615–ZB55**

**Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before Termination of Guinea's Designation for Temporary Protected Status**

**AGENCY:** U.S. Citizenship and Immigration Services, Department of Homeland Security.
**ACTION:** Notice.

**SUMMARY:** The designation of Guinea for Temporary Protected Status (TPS) is set to expire on November 21, 2016. After reviewing country conditions and consulting with the appropriate U.S. Government (Government) agencies, the Secretary of the Department of Homeland Security (Secretary) has determined that conditions in Guinea no longer support its designation for TPS and is therefore extending TPS benefits for 6 months for the purpose of orderly transition before the TPS designation of Guinea terminates. This termination will be effective May 21, 2017, 6 months following the end of the current designation.

To provide for an orderly transition, nationals of Guinea (and aliens having no nationality who last habitually resided in Guinea) who have been granted TPS under the Guinea designation will automatically retain their TPS and have their current tps-based Employment Authorization Documents (EAD) extended through May 20, 2017. However, an individual's TPS may still be withdrawn because of ineligibility for TPS. On May 21, 2017, nationals of Guinea (and aliens having no nationality who last habitually resided in Guinea) who have been granted TPS under the Guinea designation will no longer have TPS.

**DATES:** The designation of Guinea for TPS is terminated effective at 12:01 a.m., local time, on May 21, 2017.

**FOR FURTHER INFORMATION CONTACT:**
• For further information on TPS, please visit the U.S. Citizenship and Immigration Services (USCIS) TPS Web page at *http://www.uscis.gov/tps.* You can find specific information about the termination of Guinea's TPS designation by selecting "Guinea" from the menu on the left side of the TPS Web page.
• You can also contact Jerry Rigdon, Chief of the Waivers and Temporary Services Branch, Service Center Operations Directorate, U.S. Citizenship and Immigration Services, Department of Homeland Security, 20 Massachusetts Avenue NW., Washington, DC 20529–2060; or by phone at 202–272–1533 (this is not a toll-free number). Note: The phone number provided here is solely for questions regarding this TPS Notice. It is not for individual case status inquires.
• Applicants seeking information about the status of their individual cases can check Case Status Online, available at the USCIS Web site at *http://www.uscis.gov,* or call the USCIS National Customer Service Center at 800–375–5283 (TTY 800–767–1833).
• Further information will also be available at local USCIS offices upon publication of this Notice.

**SUPPLEMENTARY INFORMATION:**

**Table of Abbreviations**

DHS—Department of Homeland Security
DOS—Department of State
EAD—Employment Authorization Document
EVD—Ebola Virus Disease
FNC—Final Nonconfirmation
Government—U.S. Government
INA—Immigration and Nationality Act
OSC—Department of Justice, Office of Special Counsel for Immigration-Related Unfair Employment Practices
SAVE—USCIS Systematic Alien Verification for Entitlements Program
Secretary—Secretary of Homeland Security
TNC—Tentative Nonconfirmation
TPS—Temporary Protected Status
TTY—Text Telephone
USCIS—U.S. Citizenship and Immigration Services
WHO—World Health Organization

**What is Temporary Protected Status (TPS)?**

• TPS is a temporary immigration status granted to eligible nationals of a

Federal Register / Vol. 68, No. 170 / Wednesday, September 3, 2003 / Notices     52407

(4) Be both admissible as an immigrant, except as provided under section 244(c)(2)(A) of the Act, and not ineligible under section 244(c)(2)(B) of the Act.

Additionally, the applicant must be able to demonstrate that during the registration period for the initial designation (from November 4, 1997 to November 3, 1998), or during the registration period for the redesignation (from November 9, 1999 to November 2, 2000), he or she:

(1) Was a nonimmigrant or had been granted voluntary departure status or any relief from removal;

(2) Had an application for change of status, adjustment of status, asylum, voluntary departure, or any relief from removal or change of status pending or subject to further review or appeal;

(3) Was a parolee or had a pending request for reparole; or

(4) Was the spouse or child of an alien currently eligible to be a TPS registrant.

An applicant for late initial registration must file an application for late registration no later than 60 days after the expiration or termination of the conditions described above. 8 CFR 244.2(g).

**What Happens When This Extension of TPS Expires on November 2, 2004?**

At least 60 days before this extension of TPS expires on November 2, 2004, the Secretary of DHS will review conditions in Burundi and determine whether the conditions for designation under the TPS program continue to be met at that time, or whether the TPS designation should be terminated. Notice of that determination, including the basis for the determination, will be published in the **Federal Register**.

If the TPS designation is extended at that time, an alien who has received TPS benefits must re-register under the extension in order to maintain TPS benefits. If, however, the Secretary of DHS terminates the TPS designation, TPS beneficiaries will maintain the immigration status they had before TPS (unless that status had since expired or been terminated) or any other status they may have acquired while registered for TPS. Accordingly, if an alien had no lawful immigration status prior to receiving TPS and did not obtain any status during the TPS period, he or she will revert to that unlawful status upon termination of the TPS designation.

**Notice of Extension of Designation of Burundi Under the TPS Program**

By the authority vested in me as Secretary of DHS under sections 244(b)(1)(A), (b)(3)(A), and (b)(3)(C) of the Act, I have consulted with the appropriate government agencies and determine that the conditions that prompted designation of Burundi for TPS continue to be met. 8 U.S.C. 1254a(b)(3)(A). Accordingly, I order as follows:

(1) The designation of Burundi under section 244(b)(1)(A) of the Act is extended for an additional 12-month period from November 2, 2003, to November 2, 2004. 8 U.S.C. 1254a(b)(3)(C).

(2) There are approximately 30 nationals of Burundi (or aliens having no nationality who last habitually resided in Burundi) who have been granted TPS and who are eligible for re-registration.

(3) To maintain TPS, a national of Burundi (or an alien having no nationality who last habitually resided in Burundi) who was granted TPS during the initial designation period or redesignation period must re-register for TPS during the 60-day re-registration period from September 3, 2003 until November 3, 2003.

(4) To re-register, the applicant must file the following: (1) Form I–821, Application for Temporary Protected Status; (2) Form I–765, Application for Employment Authorization; and (3) two identification photographs (1½ inches by 1½ inches). Applications submitted without the required fee and/or photos will be returned to the applicant. There is no fee for filing a Form I–821 for re-registration application. If the applicant requests employment authorization, he or she must submit one hundred and twenty dollars ($120) or a properly documented fee waiver request, pursuant to 8 CFR 244.20, with the Form I–765. An applicant who does not request employment authorization must nonetheless file Form I–765 along with Form I–821, but is not required to submit the fee. The fifty-dollar ($50) fingerprint fee is required only for children beneficiaries of TPS who have reached the age of 14 but were not previously fingerprinted. Failure to re-register without good cause will result in the withdrawal of TPS. 8 CFR 244.17(c). Some persons who had not previously applied for TPS may be eligible for late initial registration under 8 CFR 244.2.

(5) At least 60 days before this extension terminates on November 2, 2004, the Secretary will review the designation of Burundi under the TPS program and determine whether the conditions for designation continue to be met. 8 U.S.C. 1254a(b)(3)(A). Notice of that determination, including the basis for the determination, will be published in the **Federal Register**. 8 U.S.C. 1254a(b)(3)(A).

(6) Information concerning the extension of designation of Burundi under the TPS program will be available at local BCIS offices upon publication of this notice and on the BCIS Web site at *http://www.bcis.gov*.

Dated: August 28, 2003.

**Tom Ridge,**
*Secretary of Homeland Security.*
[FR Doc. 03–22508 Filed 8–29–03; 12:00 pm]
**BILLING CODE 4410–10–P**

---

**DEPARTMENT OF HOMELAND SECURITY**

**Bureau of Citizenship and Immigration Services**

[CIS No. 2294–03]

RIN 1650–AB06

**Termination of the Designation of Sierra Leone Under the Temporary Protected Status Program; Extension of Employment Authorization Documentation**

**AGENCY:** Bureau of Citizenship and Immigration Services, Homeland Security.

**ACTION:** Notice.

---

**SUMMARY:** The designation of Sierra Leone under the Temporary Protected Status (TPS) Program will expire on November 2, 2003. After reviewing country conditions and consulting with the appropriate Government agencies, the Secretary of Homeland Security has determined that conditions in Sierra Leone no longer support TPS designation and is therefore terminating the TPS designation of Sierra Leone. This termination is effective May 3, 2004, six months from the end of the current extension. To provide for an orderly transition, nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) who have been granted TPS under the Sierra Leone designation or redesignation will automatically retain their temporary protected status and have their current Employment Authorization Documents (EADs) extended until the termination date. However, an individual's TPS may still be withdrawn because of ineligibility for TPS, prior failure to timely re-register if there was not good cause for such failure, or failure to maintain continuous physical presence in the United States. On May 3, 2004, nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) who have been granted TPS under the Sierra

(6 of 13), Page 6 of 13   Case: 25-2120, 05/28/2025, DktEntry: 49.17, Page 6 of 13
Case 3:25-cv-01766-EMC   Document 103-4   Filed 04/07/25   Page 5 of 28

**52408** **Federal Register** / Vol. 68, No. 170 / Wednesday, September 3, 2003 / Notices

Leone designation or redesignation will no longer have TPS status.

**EFFECTIVE DATE:** The TPS designation of Sierra Leone is terminated effective May 3, 2004.

**FOR FURTHER INFORMATION CONTACT:** Jonathan Mills, Residence and Status Services, Office of Programs and Regulations, Bureau of Citizenship and Immigration Services, Department of Homeland Security, 425 ''I'' Street, NW., Room 3040, Washington, DC 20536, telephone (202) 514–4754.

**SUPPLEMENTARY INFORMATION:**

**What Authority Does the Secretary of the Department of Homeland Security Have To Terminate the Designation of Sierra Leone Under the TPS Program?**

On March 1, 2003, the functions of the Immigration and Naturalization Service (Service) transferred from the Department of Justice to the Department of Homeland Security (DHS) pursuant to the Homeland Security Act of 2002, Public Law 107–296. The responsibilities for administering the TPS program held by the Service were transferred to the Bureau of Citizenship and Immigration Services (BCIS).

Under section 244 of the Immigration and Nationality Act (Act), 8 U.S.C. 1254a, the Secretary of DHS, after consultation with appropriate agencies of the Government, is authorized to designate a foreign state or (part thereof) for TPS. The Secretary of DHS may then grant TPS to eligible nationals of that foreign state (or aliens having no nationality who last habitually resided in that state).

Section 244(b)(3)(A) of the Act requires the Secretary of DHS to review, at least 60 days before the end of the TPS designation or any extension thereof, the conditions in a foreign state designated under the TPS program to determine whether the conditions for a TPS designation continue to be met and, if so, the length of an extension of TPS. 8 U.S.C. 1254a(b)(3)(A). If the Secretary of DHS determines that the foreign state no longer meets the conditions for TPS designation, he shall terminate the designation, but such termination may not take effect earlier than 60 days after the date the **Federal Register** notice of termination is published. 8 U.S.C. 1254a(b)(3)(B). The Secretary of DHS may determine the appropriate effective date of the termination in order to provide an orderly transition. 8 U.S.C. 1254a(d)(3).

**Why Did the Secretary of DHS Decide To Terminate the TPS Designation for Sierra Leone as of May 3, 2004?**

On November 4, 1997, the Attorney General published a notice in the **Federal Register** designating Sierra Leone under the TPS program based upon ongoing armed conflict occurring within the country. 62 FR 59736. The Attorney General extended this TPS designation annually and re-designated Sierra Leone by publishing a notice on November 9, 1999, determining in each instance that the conditions warranting such designation continued to be met. 64 FR 61125.

Since the date of the last extension, the Departments of Homeland Security and State have continued to review conditions in Sierra Leone. It is determined that termination of the TPS designation of Sierra Leone is warranted because there is no longer an ongoing armed conflict within Sierra Leone that would pose a serious threat to the personal safety of returning nationals of Sierra Leone (or aliens having no nationality who last habitually resided in Sierra Leone). 8 U.S.C. 1254a(b)(1)(A) and (B).

The Department of State (DOS) notes that the armed conflict that provided the basis for the Sierra Leone TPS designation is over. DOS Recommendation (June 19, 2003). Most of Sierra Leone has been at peace for nearly three years. *Id.* More than 66,000 ex-combatants have entered into a program of disarmament, demobilization, and reintegration into society. *Id.* Disarmament was largely complete by January 2002, and there has been no fighting since that time. *Id.* Peaceful multiparty presidential and parliamentary elections took place in May 2002. *Id.*

A year ago, the overall political situation was fragile. *Id.* Since then, however, human rights abuses have decreased dramatically nationwide. *Id.* The United Nations High Commissioner for Refugees (UNHCR) considers no area of the country unsafe to return. *Id.* More than 400,000 refugees have returned home to participate in the reconstruction of their country. *Id.* Of the approximately 45,000 refugees remaining in neighboring countries, two-thirds are expected to return home by December 2003. *Id.* In addition, reintegration of the 300,000 internally displaced persons (IDPs) is nearly complete. *Id.*

While there are approximately 60,000 Liberian refugees in Sierra Leone, they are concentrated along the eastern border with Liberia and have not caused any instability in Sierra Leone. *Id.* Furthermore, there have been no recent cross-border attacks from Liberia into Sierra Leone. *Id.*

The BCIS Resource Information Center (RIC) notes additional indications of stability. RIC Report (July 10, 2003). A special court has been created to bring to justice those most responsible for war crimes and other major human rights violations. *Id.* A Truth and Reconciliation Commission has been established to establish a record of the conflict and promote reconciliation. *Id.* Humanitarian and economic conditions have improved markedly. *Id.*

The newly elected government enjoys significant international support and has extended police control across the country. DOS Recommendation. A British-trained police force is in place. RIC Report. The British government continues to assist and train Sierra Leone's 10,000-member armed forces and has committed to providing significant support for at least six years. DOS Recommendation. The United Nations (U.N.) Security Council has determined that security conditions have improved so much that the international U.N. peacekeeping force, which once numbered 17,500 troops, can be phased out. *Id.* The peacekeeping force currently numbers 14,000, and will further decrease to about 9,000 by year's end. *Id.*

Based upon this review, the Secretary of DHS, after consultation with appropriate government agencies, finds that the conditions that prompted designation of Sierra Leone under the TPS program no longer exist. 8 U.S.C. 1254a(b)(3). There is not an ongoing armed conflict within Sierra Leone that would pose a serious threat to the personal safety of returning aliens who are nationals of Sierra Leone (or aliens having no nationality who last habitually resided in Sierra Leone). 8 U.S.C. 1254a(b)(1)(A). Based upon these findings, the Secretary of DHS is terminating the TPS designation for Sierra Leone as of May 3, 2004. 8 U.S.C. 1254a(b)(3)(B).

To provide for an orderly transition, nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) who have been granted TPS under the Sierra Leone designation or redesignation will automatically retain TPS status and have their current employment authorization documents (EADs) extended until the termination date. 8 U.S.C. 1254a(a)(2) and (d)(3). These persons are urged to use the time before termination of their TPS to apply for any other immigration benefits they are eligible for or, in the alternative, prepare

for and arrange their return to Sierra Leone.

**If I Currently Have TPS Through the Sierra Leone TPS Program, Do I Need to Re-Register To Keep My TPS Until May 3, 2004, the Termination Date?**

No. If you already have been granted TPS benefits through the Sierra Leone TPS program, you do not have to re-register to keep your TPS benefits. You will automatically retain TPS until the termination date. However, your TPS status may still be withdrawn pursuant to section 244(c)(3) of the Act because of ineligibility for TPS, prior failure to timely re-register if there was not good cause for such failure, or failure to maintain continuous physical presence in the United States. 8 U.S.C. 1254a(c)(3), 8 CFR 244.14. When termination occurs on May 3, 2004, you will no longer have TPS.

**Why Is the Secretary of DHS Automatically Extending the Validity of EADs From November 2, 2003, to May 3, 2004?**

The Secretary of DHS has decided to extend automatically the validity of EADs to provide for an orderly transition leading up to the effective date for the termination of the Sierra Leone TPS designation. Therefore, the validity of the applicable EADs is extended for a period of 6 months, to May 3, 2004. 8 U.S.C. 1254a(a)(2) and (d)(3).

**Who Is eligible To Receive an Automatic Extension of His or Her EAD?**

To receive an automatic extension of his or her EAD, an individual must be a national of Sierra Leone (or an alien having no nationality who last habitually resided in Sierra Leone) who has applied for and received an EAD under the TPS designation or redesignation of Sierra Leone. This automatic extension is limited to EADs issued on either Form I–766, Employment Authorization Document, or Form I–688B, Employment Authorization Card, bearing an expiration date of November 2, 2003. The EAD must also be either (1) a Form I–766 bearing the notation "A–12" or "C–19" on the face of the card under "Category"; or (2) a Form I–688B bearing the notation "274A.12(A)(12)" or "274A.12(C)(19)" on the face of the card under "Provision of Law".

**Must Qualified Individuals Apply for the Automatic Extension of Their TPS–Related EADs Until May 3, 2004?**

No. Qualified individuals do not have to apply for this extension of their TPS-related EADs to May 3, 2004.

**What Documents May a Qualified Individual Show to His or Her Employer as Proof of Employment Authorization and Identity When Completing the Employment Eligibility Verification Form (Form I–9)?**

For completion of the Form I–9 at the time of hire or re-verification, qualified individuals who have received an extension of their EADs by virtue of this **Federal Register** notice may present to their employer a TPS-related EAD as proof of identity and employment authorization until May 3, 2004. To minimize confusion over this extension at the time of hire or re-verification, qualified individuals may also present to their employer a copy of this **Federal Register** notice regarding the automatic extension of employment authorization documentation to May 3, 2004. In the alternative, any legally acceptable document or combination of documents listed in List A, List B, or List C of the Form I–9 may be presented as proof of identity and employment eligibility; it is the choice of the employee.

**How May Employers Determine Whether an EAD Has Been Automatically Extended Through May 3, 2004 and Is Therefore Acceptable for Completion of the Form I–9?**

For purposes of verifying identity and employment eligibility or re-verifying employment eligibility on the Form I–9 until May 3, 2004, employers of Sierra Leone TPS class members whose EADs have been automatically extended by this notice must accept such EAD if presented. An EAD that has been automatically extended by this notice will contain an expiration date of November 2, 2003, and must be either (1) a Form I–766 bearing the notation "A–12" or "C–19" on the face of the card under "Category", or (2) a Form I–688B bearing the notation "274A.12(A)(12)" or "274A.12(C)(19)" on the face of the card under "Provision of Law". New EADs or extension stickers showing the May 3, 2004 expiration date will not be issued.

Employers should not request proof of Sierra Leone citizenship. Employers presented with an EAD that this **Federal Register** notice has extended automatically, that appears to be genuine and appears to relate to the employee should accept the document as a valid "List A" document and should not ask for additional Form I–9 documentation. This action by the Secretary of the DHS through this **Federal Register** notice does not affect the right of an employee to present any legally acceptable document as proof of identity and eligibility for employment.

Employers are reminded that the laws prohibiting unfair immigration-related employment practices remain in full force. For questions, employers may call the BCIS Office of Business Liaison Employer Hotline at 1–800–357–2099 to speak to a BCIS representative. Also, employers may call the U.S. Department of Justice Office of Special Counsel for Immigration Related Unfair Employment Practices (OSC) Employer Hotline at 1–800–255–8155 or 1–800–362–2735 (TDD). Employees or applicants may call the OSC Employee Hotline at 1–800–255–7688 or 1–800–237–2515 (TDD) for information regarding the automatic extension. Additional information is available on the OSC Web site at *http://www.usdoj.gov/crt/osc/index.html*.

**What May I Do if I Believe That Returning to Sierra Leone Would Be Unsafe?**

This notice terminates the designation of Sierra Leone for TPS. For nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) in the United States who believe that their particular circumstances make return to Sierra Leone unsafe, there may be avenues of immigration relief and protection available. Such avenues may include, but are not limited to, asylum, withholding of removal, or protection under Article 3 of the Torture Convention.

Eligibility for these and other immigration benefits is determined individually on a case-by-case basis. For information on eligibility and how to apply, visit the BCIS web site at *http://www.bcis.gov* or call the BCIS National Customer Service Center at 1–800–375–5283.

**How Does the Termination of TPS Affect Former TPS Beneficiaries?**

After the designation of Sierra Leone for TPS is terminated on May 3, 2004, former TPS beneficiaries will maintain the same immigration status they held prior to TPS (unless that status has since expired or been terminated) or any other status they may have acquired while registered for TPS. Accordingly, if an alien held no lawful immigration status prior to receiving TPS benefits and did not obtain any other status during the TPS period, he or she will maintain that

(8 of 13), Page 8 of 13    Case: 25-2120, 05/28/2025, DktEntry: 49.17, Page 8 of 13
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 7 of 28

**52410** **Federal Register** / Vol. 68, No. 170 / Wednesday, September 3, 2003 / Notices

unlawful status upon the termination of the TPS designation.

Former TPS beneficiaries will no longer be eligible for a stay of removal or an EAD pursuant to the TPS program. TPS-related EADs will expire on May 3, 2004, and will not be renewed.

Termination of the TPS designation for Sierra Leone does not necessarily affect pending applications for other forms of immigration relief or protection, though former TPS beneficiaries will begin to accrue unlawful presence as of May 3, 2004, if they have not been granted any other immigration status or protection or if they have no pending application for certain benefits.

### Notice of Termination of Designation of Sierra Leone Under the TPS Program

By the authority vested in me as Secretary of the Department of Homeland Security under section 244(b)(3) of the Act, I have consulted with the appropriate agencies of government concerning conditions in Sierra Leone. 8 U.S.C. 1254a(b)(3). Based on these consultations, I have determined that Sierra Leone no longer meets the conditions for designation of TPS under section 244(b)(1) of the Act. 8 U.S.C. 1254a(b)(1).

Accordingly, I order as follows:

(1) Pursuant to sections 244(b) of the Act, the TPS designation of Sierra Leone for TPS terminated effective May 3, 2004, six months from the end of the current extension.

(2) I estimate that there are approximately 2,700 nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) who currently receive TPS benefits.

(3) To provide for an orderly transition, nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) who have been granted TPS under the Sierra Leone designation or redesignation will automatically retain temporary protected status until the termination date. However, an individual's TPS may still be withdrawn pursuant to section 244(c)(3) of the Immigration and Nationality Act and 8 CFR 244.14 because of ineligibility for TPS, prior failure to timely re-register if there was not good cause for such failure, or failure to maintain continuous physical presence in the United States.

(4) TPS-related Employment Authorization Documents that expire on November 2, 2003, are extended automatically until May 3, 2004, for qualified nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone).

(5) Information concerning the termination of the TPS program for nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) will be available at local BCIS offices upon publication of this notice and through the BCIS National Customer Service Center at 1–800–375–5283. This information will also be published on the BCIS Web site at *http://www.bcis.gov*.

Dated: August 28, 2003.

**Tom Ridge,**
*Secretary of Homeland Security.*
[FR Doc. 03–22488 Filed 8–29–03; 11:16 am]
**BILLING CODE 4410–10–P**

---

## DEPARTMENT OF HOMELAND SECURITY

### Bureau of Citizenship and Immigration Services

**[CIS No. 2293–03]**

**RIN 1650–AB06**

### Extension of the Designation of Sudan Under Temporary Protected Status Program

**AGENCY:** Bureau of Citizenship and Immigration Services, Homeland Security.

**ACTION:** Notice.

---

**SUMMARY:** The designation of Sudan under the Temporary Protected Status (TPS) Program will expire on November 2, 2003. This notice extends the Secretary of Homeland Security's designation of Sudan for 12 months until November 2, 2004, and sets forth procedures necessary for nationals of Sudan (or aliens having no nationality who last habitually resided in Sudan) with TPS to re-register and to apply for an extension of their employment authorization documentation for the additional 12-month period. Re-registration is limited to persons who registered no later than November 3, 1998, under the initial designation and also timely re-registered under each subsequent extension of the designation, or who registered under the re-designation no later than November 2, 2000, and also timely re-registered under the extension of the re-designation. Certain nationals of Sudan (or aliens having no nationality who last habitually resided in Sudan) who previously have not applied for TPS may be eligible to apply under the late initial registration provisions.

**EFFECTIVE DATES:** The extension of Sudan's TPS designation is effective November 2, 2003, and will remain in effect until November 2, 2004. The 60-day re-registration period begins September 3, 2003, and will remain in effect until November 3, 2003.

**FOR FURTHER INFORMATION CONTACT:** Jonathan Mills, Residence and Status Services, Office of Programs and Regulations, Bureau of Citizenship and Immigration Services, Department of Homeland Security, 425 "I" Street, NW., Room 3040, Washington, DC 20536, telephone (202) 514–4754.

**SUPPLEMENTARY INFORMATION:**

### What Authority Does the Secretary of the Department of Homeland Security Have To Extend The Designation of Sudan Under the TPS Program?

On March 1, 2003, the functions of the Immigration and Naturalization Service (Service) transferred from the Department of Justice to the Department of Homeland Security (DHS) pursuant to the Homeland Security Act of 2002, Pub. L. 107–296. The responsibilities for administering the TPS program held by the Service were transferred to the Bureau of Citizenship and Immigration Services (BCIS).

Under section 244 of the Immigration and Nationality Act (Act), 8 U.S.C. 1254a, the Secretary of DHS, after consultation with appropriate agencies of the Government, is authorized to designate a foreign state or (part thereof) for TPS. The Secretary of DHS may then grant TPS to eligible nationals of that foreign state (or aliens having no nationality who last habitually resided in that state).

Section 244(b)(3)(A) of the Act requires the Secretary of DHS to review, at least 60 days before the end of the TPS designation or any extension thereof, the conditions in a foreign state designated under the TPS program to determine whether the conditions for a TPS designation continue to be met and, if so, the length of an extension of TPS. 8 U.S.C. 1254a(b)(3)(A). If the Secretary of DHS determines that the foreign state no longer meets the conditions for TPS designation, he shall terminate the designation, as provided in section 244(b)(3)(B) of the Act. 8 U.S.C. 1254a(b)(3)(B). Finally, if the Secretary of DHS does not determine that a foreign state (or part thereof) no longer meets the conditions for designation at least 60 days before the designation or extension is due to expire, section 244(b)(3)(C) of the Act provides for an automatic extension of TPS for an additional period of 6 months (or, in the discretion of the Secretary of DHS, a

(9 of 13), Page 9 of 13    Case: 25-2120, 05/28/2025, DktEntry: 49.17, Page 9 of 13
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 8 of 28

Federal Register / Vol. 63, No. 61 / Tuesday, March 31, 1998 / Notices    15437

## V. Procedures Available for Modification of the Proposed Judgment

The proposed judgment is subject to a stipulation between the government and the defendant which provides that the government may withdraw its consent to the proposed judgment any time before the Court has found that entry of the judgment is in the public interest. By it's terms, the proposed judgment provides for the Court's retention of jurisdiction of this action in order to permit any of the parties to apply to the Court for such orders as may be necessary or appropriate for the modification of the judgment, including the demonstration of retail market conditions outlined in Section VI of the decree.

As provided by the APPA (15 U.S.C. 16), any person wishing to comment upon the proposed judgment may, for a sixty-day (60) period subsequent to the publishing of this document in the Federal Register, submit written comments to the United States Department of Justice, Antitrust Division, Attention: Roger W. Fones, 325 Seventh Street, N.W., Washington, D.C. 20530. Such comments and the government's response to them will be filed with the Court and published in the Federal Register. The government will evaluate all such comments to determine whether there is any reason for withdrawal of its content to the proposed judgment.

## VI. Alternative to the Proposed Judgment

The alternative to the proposed judgment considered by the Antitrust Division was a full trial of the issues on the merits and on relief. The Division considered the substantive language of the proposed judgment to be of sufficient scope and effectiveness to make litigation on the issues unnecessary, as the judgment provides all of the relief sought against the violations alleged in the compliant.

## VII. Determinative Materials and Documents

No materials or documents were considered determination by the United States in formulating the proposed judgment. Therefore, none are being filed pursuant to the APPA, 15 U.S.C. 16(b).

Department of Justice Antitrust Division

By:

Jade Alice Eaton,
*Transportation, Energy, and Agriculture Section, 325 Seventh Street, N.W., Suite 500, Washington, D.C. 20530, (202) 307–6316.*

[FR Doc. 98–8398 Filed 3–30–98; 8:45 am]
BILLING CODE 4410–11–M

## DEPARTMENT OF JUSTICE

### Antitrust Division

### Notice Pursuant to the National Cooperative Research and Production Act of 1993—Network Management Forum

Notice is hereby given that, on November 19, 1997, pursuant to Section 6(a) of the National Cooperative Research and Production Act of 1993, 15 U.S.C. 4301 *et seq.* ("the Act"), the Network Management Forum ("the Forum") has filed written notifications simultaneously with the Attorney General and the Federal Trade Commission disclosing additions to its membership. The notifications were filed for the purpose of extending the Act's provisions limiting the recovery of antitrust plaintiffs to actual damages under specified circumstances. Specifically, the identities of the new members to the venture are as follows: DMR TRECOM, Milford, CT; and Technology & Process Consulting, Inc., Birmingham, AL are Corporate Members. Bouygues Telecom, Velizy, Cedex, France; Call Technologies, Inc., Reston, VA; CELOGIC, Trappes Cedex, France; Clear Communications Corporation, Lincolnshire, IL; CommTech Corporation, Westerville, OH; ILOG, Inc., Mountain View, CA; Infinet Software, Inc., Boulder, CO; ITTI, Ltd., Poznan, Poland; Minacom International, Inc., Montreal, Quebec, Canada; NCR Corporation, Iselin, NJ; O.TEL.O Communications, Koln, Germany; Positron Fiber Systems, Montreal, Quebec, Canada; RTS Limited, Hemel Hempstead, Hertfordshire, England; Scopus Technology, Inc., Emeryville, CA: Spazio ZeroUno S.p.A., Vimodrone, Italy; Sprint PCS, Lenexa, KS; S.W.I.F.T., La Hulpe, Belgium; Sybase, Inc., Dallas, TX; Tellium, Inc., Edison, NJ; Unique Data Ltd. (UDI), Rishon, Letzion, Israel; Vision In Business, London, England; and Worldbridge Broadband Services, Inc., Nashville, TN are Associate Members. Cohen Communications Group, New York, NY; CRIEPI, Tokyo, Japan; DNA Enterprise, Inc., Richardson, TX; GRC International, Inc., Vienna, VA; and National Communications System, Arlington, VA are Affiliate Members.

No other changes have been made since the last notification filed with the Department in either the membership or planned activity of the group research project. Membership in this group research project remains open, and the Forum intends to file additional written notifications disclosing all changes in membership.

On October 21, 1988, the Forum filed its original notification pursuant to Section 6(a) of the Act. The Department of Justice published a notice in the **Federal Register** pursuant to Section 6(b) of the Act on December 8, 1988 (53 FR 49615).

The last notification was filed with the Department on August 8, 1997. A notice was published in the **Federal Register** pursuant to Section 6(b) of the Act on November 10, 1997 (62 FR 60531).

**Constance K. Robinson,**
*Director of Operations, Antitrust Division.*
[FR Doc. 98–8337 Filed 3–30–98; 8:45 am]
BILLING CODE 4410–11–M

## DEPARTMENT OF JUSTICE

### Immigration and Naturalization Service

[INS No. 1910–98; AG Order No. 2146–98]

RIN 1115–AE26

### Termination of Designation of Liberia Under Temporary Protected Status Program After Final 6-Month Extension

**AGENCY:** Immigration and Naturalization Service, Justice.
**ACTION:** Notice.

**SUMMARY:** This notice terminates the Attorney General's designation of Liberia under the Temporary Protected Status (TPS) program provided for in section 244 of the Immigration and Nationality Act, as amended (Act). Eligible aliens who are national of Liberia (and eligible aliens who have no nationality and last habitually resided in Liberia) may re-register for TPS and extension of employment authorization for a final 6-month period.

**EFFECTIVE DATES:** Termination of the Temporary Protected Status designation for Liberia is effective September 28, 1998, and the TPS designation for Liberia is extended for a final 6-month period, from March 29, 1998, to September 28, 1998. The main re-registration procedures become effective on March 31, 1998, and will remain in effect until April 29, 1998.

**FOR FURTHER INFORMATION CONTACT:**
Ronald Chirlin, Adjudications Officer, Immigration and Naturalization Service, Room 3214, 425 I Street, NW., Washington, DC 20536, telephone (202) 514–5014.

**SUPPLEMENTARY INFORMATION:** Under section 244 of the Act, 8 U.S.C. 1254, the Attorney General is authorized to grant TPS to eligible aliens who are nationals of a foreign state designated by

**15438**      **Federal Register** / Vol. 63, No. 61 / Tuesday, March 31, 1998 / Notices

the Attorney General (or who have no nationality and last habitually resided in that state). The Attorney General may designate a state upon finding that the state is experiencing ongoing armed conflict, environmental disaster, or other extraordinary and temporary conditions that prevent nationals or residents of the country from returning to it in safety.

On March 27, 1991, the Attorney General designated Liberia for Temporary Protected Status for a period of 12 months, 56 FR 12746. the Attorney General subsequently extended the designation of Liberia under the TPS program of six additional 12-month periods, with the last extension valid until March 28, 1998, 62 FR 16608. While extending the designation of Liberia under the TPS program, the Attorney General also concurrently redesignated Liberia under the TPS program. This concurrent extension and redesignation, which was published on April 7, 1997, made TPS available to eligible Liberian TPS applicants who have "continuously resided in the United States" since June 1, 1996, and who had been "continuously present in the United states" since April 7, 1997.

Section 244(b)(3)(A) of the Act requires the Attorney General to review, at least 60 days before the end of the initial period of designation or any extended period of designation, the conditions in a foreign state designated under section 244(b)(1) of the Act. The section also requires the Attorney General to determine whether the conditions for such a designation continue to be met, and to terminate the state's designation when the Attorney General determines that the foreign state no longer continues to meet those conditions.

This notice terminates the designation of Liberia under the TPS program. There may be other avenues of immigration relief, such as asylum, withholding of removal, and cancellation of removal, available to Liberians in the United States who believe that their particular circumstances make return to Liberia unsafe. Those Liberians who have not applied for asylum, withholding of removal, or cancellation of removal, or who are not eligible to apply for permanent residence under any of the established employment or family-based categories, must depart the United States to avoid accruing any periods of unlawful presence that would later subject them to the 3- or 10-year bars to admission under section 212(a)(9)(B)(i) of the Act.

In accordance with section 244(B)(3)(B) and (C) of the Act, this termination will be effective on September 28, 1998, following the final 6-month extension granted by this notice. This notice also describes the procedures with which eligible aliens who are nationals of Liberia (or who have no nationality and who last habitually resided in Liberia) must comply in order to re-register for TPS during this final 6-month period.

In addition to timely re-registrations and late re-registrations authorized by this notice's extension of Liberia's TPS designation, late initial registrations are possible for some Liberians under 8 CFR 244.2(f)(2), formerly 8 CFR 240.2(f)(2). Such late initial registrants must have been "continuously physically present" in the United States since June 1, 1996, must have had a valid immigrant or non-immigrant status during the original registration period, and must register no later than 30 days from the expiration of such status.

The Immigration and Naturalization Service requires all TPS registrants to submit Form I–765, Application for Employment Authorization, for data-gathering purposes. Therefore, a Form I–765 must always be submitted with the Application for Temporary Protected Status, Form I–821, as part of either a re-registration or late initial registration, even if employment authorization is not requested. The appropriate filing fee must accompany Form I–765 unless a properly documented fee waiver request, pursuant to 8 CFR 244.20, is submitted to the Immigration and Naturalization Service or unless the applicant does not request employment authorization.

**Notice of Termination of Designation of Liberia Under the TPS Program**

By the authority vested in me as Attorney General under section 244 of the Act, as amended (8 U.S.C. 1254), and pursuant to section 244(b)(3) of the Act, I have had consultations with the appropriate agencies of the U.S. Government concerning (a) the conditions in Liberia; and (b) whether permitting nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) to remain temporarily in the United States is contrary to the national interest of the United States.

As a result of these consultations, I have determined that Liberia no longer continues to meet the conditions for designation of TPS under section 244(b)(1) of the Act. This determination has been based on the understanding that the Department of State will review security conditions in Liberia prior to the September 28, 1998, expiration date of the TPS designation for Liberia. The Department of State could, therefore, provide additional information regarding the possible redesignation for Liberia.

According to information supplied to me by the Department of State, I understand that overall security conditions in Liberia have improved during the past year. Elections were held and the new Liberian Government's policy is to welcome back Liberian refugees. Improved stability and security throughout most of Liberia has led the U.S. Government to support the repatriation of Liberian refugees in neighboring countries.

In view of the Department of State's recommendation for termination, I have determined that TPS is no longer appropriate for Liberia in general. Accordingly, it is ordered as follows:

(1) The TPS designation of Liberia under section 244(b)(3) of the Act is extended for a final 6-month period starting March 29, 1998, and terminating September 28, 1998.

(2) I estimate that there are approximately 8,000 nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) who have been granted Temporary Protected Status and are eligible for the final 6-month period of re-registration.

(3) In order to maintain current registration for TPS, a national of Liberia (or an alien having no nationality who last habitually resided in Liberia) who received a grant of TPS based upon the initial March 27, 1991, designation, or based upon the April 7, 1997, redesignation, must comply with the re-registration requirements contained in 8 CFR 244.17, formerly 8 CFR 240.17, which are described in pertinent part in paragraphs (4) and (5) of this notice.

(4) A national of Liberia (or an alien having no nationality who last habitually resided in Liberia) who has been granted TPS and wishes to maintain that status must re-register by filing a new Form I–821, Application For Temporary Protected Status, together with a Form I–865, Application for Employment Authorization, within the 30-day period beginning on March 31, 1998, and ending April 30, 1998, in order to be eligible for TPS during the period from March 29, 1998 to September 28, 1998. Late re-registration applications will be allowed pursuant to 8 CFR 244.17(c), formerly 8 CFR 240.17(c).

(5) There is no fee for Form I–821 filed as part of the re-registration application. A Form I–765 must be filed at the same time. If the alien requests employment authorization for the 6-month extension period, the fee prescribed in 8 CFR 103.7(b)(1),

(11 of 13), Page 11 of 13    Case: 25-2120, 05/28/2025, DktEntry: 49.17, Page 11 of 13
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 10 of 28

Federal Register / Vol. 63, No. 61 / Tuesday, March 31, 1998 / Notices    15439

currently seventy dollars ($70), must accompany the Form I–765. An alien who does not request employment authorization must nonetheless file Form I–765, together with Form I–821, but in such cases no fee will be charged.

(6) Information concerning the TPS program for nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) will be available at local Immigration and Naturalization Service offices upon publication of this notice.

Dated: March 25, 1998.

**Janet Reno,**
*Attorney General.*
[FR Doc. 98–8336 Filed 3–30–98; 8:45 am]
**BILLING CODE 4410–10–M**

## DEPARTMENT OF LABOR

### Office of the Secretary

### Submission for OMB Review; Comment Request

March 26, 1998.

The Department of Labor (DOL) has submitted the following public information collection requests (ICRs) to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995 (Pub. L. 104–13, 44 U.S.C. Chapter 35). A copy of each individual ICR, with applicable supporting documentation, may be obtained by calling the Department of Labor, Departmental Clearance Officer, Todd R. Owen ((202) 219–5096 ext. 143) or by E-Mail to Owen-Todd@dol.gov. Individuals who use a telecommunications device for the deaf (TTY/TDD) may call (202) 219–4720 between 1 p.m. and 4 p.m. Eastern time, Monday–Friday.

Comments should be sent to Office of Information and Regulatory Affairs, Attn: OMB Desk Officer for BLS, DM, ESA, ETA, MSHA, OSHA, PWBA, or VETS, Office of Management and Budget, Room 10235, Washington, DC 20503 ((202) 395–7316), on or before April 30, 1998.

The OMB is particularly interested in comments which:

• Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

• Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

• Enhance the quality, utility, and clarity of the information to be collected; and

• Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, e.g., permitting electronic submission of responses.

*Agency:* Bureau of Labor Statistics.

*Title:* International Price Program—U.S. Export Price Indexes.

*OMB Number:* 1220–0025 (Revision).

*Affected Public:* Business or other for-profit.

| Form No. | Frequency | Number of respondents | Average time per respondent (hours) |
|---|---|---|---|
| 2894B | Annually | 1,613 | .75 |
| 3008 | Annually | 1,613 | .25 |
| 3007D | Monthly/Quarterly | 3,235 | .53 |

*Total Burden Hours:* 22,039.
*Total annualized capital/startup costs:* 0.
*Total annual costs (operating/maintaining systems or purchasing services):* 0.
*Description:* The International Price Program Indexes, a primary economic indicator, are used as measures of movement in international prices, indicators of inflationary trends in the economy, and sources of information used to determine U.S. monetary, fiscal, trade, and commercial policies. They are also used to deflate the Gross Domestic Product.

*Agency:* Bureau of Labor Statistics.
*Title:* International Price Program—U.S. Import Price Indexes.
*OMB Number:* 1220–0026 (Revision).
*Affected Public:* Businesses and other for-profit.

| Form No. | Frequency | Number of respondents | Average time per respondent (hours) |
|---|---|---|---|
| 3007B | Annually | 1,725 | 1 |
| 3008 | Annually | 1,725 | .334 |
| 3007D | Monthly/Quarterly | 3,235 | .56 |

*Total Burden Hours:* 23,884.
*Total annualized capital/startup costs:* 0.
*Total annual costs (operating/maintaining systems or purchasing services):* 0.
*Description:* The International Price Program Indexes, a primary economic indicator, are used as measures of movement in international prices, indicators of inflationary trends in the economy, and sources of information used to determine U.S. monetary, fiscal, trade, and commercial policies. They are also used to deflate the Gross Domestic Product.

*Agency:* Employment and Training Administration.
*Title:* NAFTA Customer Survey Data Request.
*OMB Number:* 1205–0337 (extension).
*Freqency:* Three survey submitted.
*Affected Public:* Businesses and other for-profit.
*Total Respondents:* 350.
*Estimated Time Per Respondent:* 2 hours.
*Total Burden Hours:* 2,100.
*Total annualized capital/startup costs:* 0.
*Total annual costs (operating/maintaining systems or purchasing services):* 0.

**3896** Federal Register / Vol. 68, No. 17 / Monday, January 27, 2003 / Notices

information may be exempt from contesting record procedures as described in the section entitled "Systems Exempted from Certain Provisions of the Act." An individual who is the subject of a record in this system may amend those records that are not exempt. A determination whether a record may be amended will be made at the time a request is received.

RECORD SOURCE CATEGORIES:

(1) DEA intelligence and investigative records; (2) reports, investigative and intelligence reports from other participating and associated federal and state member agencies; and (3) records and reports of foreign law enforcement and regulatory agencies.

SYSTEM EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:

The Attorney General has exempted this system from subsections (c)(3) and (4); (d)(1), (2), (3) and (4); (e)(1), (2) and (3), (e)(5) and (e)(8); and (g), of the Privacy Act pursuant to 5 U.S.C. 552a (j) and (k). The exemptions will be applied only to the extent that information in a record is subject to exemption pursuant to 5 U.S.C. 552a(j) and (k). A determination as to exemption shall be made at the time a request for access or amendment is received. Rules have been promulgated in accordance with the requirements of 5 U.S.C. 553(b), (c) and (e) and have been published in the **Federal Register**.

[FR Doc. 03–1671 Filed 1–24–03; 8:45 am]
BILLING CODE 4410–09–P

---

**DEPARTMENT OF JUSTICE**

**Immigration and Naturalization Service**

[INS No. 2229–02; AG Order No. 2651–2003]

RIN 1115—AE26

**Termination of Designation of Angola Under the Temporary Protected Status Program**

**AGENCY:** Immigration and Naturalization Service, Justice.
**ACTION:** Notice.

**SUMMARY:** The Attorney General's most recent designation of Angola under the Temporary Protected Status program (TPS) expires on March 29, 2003. After reviewing country conditions and consulting with the appropriate Government agencies, the Attorney General has determined that conditions in Angola no longer support a TPS designation. Accordingly, the designation of Angola for TPS is terminated effective March 29, 2003.

After that date, aliens who are nationals of Angola (and aliens having no nationality who last habitually resided in Angola) who have had TPS under the Angola program will no longer have such status. This notice contains information regarding the termination of the TPS designation for Angola.

**DATES:** The termination of the TPS designation for Angola is effective March 29, 2003.

**FOR FURTHER INFORMATION CONTACT:** Naheed A. Qureshi, Office of Adjudications, Residence and Status Branch, Immigration and Naturalization Service, Room 3040, 425 I Street, NW., Washington, DC 20536, telephone (202) 514–4754.

**SUPPLEMENTARY INFORMATION:**

**What Is the Statutory Authority for the Designation and Termination of TPS?**

Under section 244 of the Immigration and Nationality Act (INA or "the Act"), 8 U.S.C. 1254a, the Attorney General is authorized to designate a foreign state (or part of a state) for TPS. The Attorney General may then grant TPS to eligible nationals of that foreign state (or aliens having no nationality who last habitually resided in that state). Section 244(b)(3)(A) of the Act requires the Attorney General to review, at least 60 days before the end of the TPS designation, the conditions in a foreign state designated under section 244(b)(1) of the Act. 8 U.S.C. 1254a(b)(3)(A).

Section 244(b)(3) of the Act further requires the Attorney General to determine whether the conditions for such a designation continue to be met, and to terminate the state's designation when the Attorney General determines conditions are no longer met. 8 U.S.C. 1254a(b)(3)(B). The Attorney General must then publish a notice of termination in the **Federal Register**.

**Why Did the Attorney General Decide To Terminate TPS for Angola?**

On March 29, 2000, the Attorney General published a notice in the **Federal Register** at 65 FR 16634 designating Angola for TPS for a period of one year, based upon conditions in Angola at that time. That TPS designation was extended twice and is scheduled to expire on March 29, 2003. See 66 FR 18111 (April 5, 2001 (extension and redesignation); 67 FR 4997 (Feb. 1, 2002) (extension). Based upon a recent review of conditions within Angola by the Departments of Justice and State, the Attorney General finds that conditions in Angola no longer support a TPS designation.

A recent Department of State report indicates that the National Union for the Total Independence of Angola (UNITA) and the Government of Angola were able to recommit to the Lusaka Peace Process following the February 2002 death of rebel leader Jonas Savimbi. Department of State Report (Nov. 13, 2002). The Resource Information Center (RIC) of the Immigration and Naturalization Service (INS/Service) observed that "[t]he peace accords ended the 27-year battle between the UNITA forces and the Angolan ruling party." RIC Report (Nov. 29, 2002). The peace agreement committed the parties to continued discussions regarding future elections and a power sharing approach to governance. Since the peace accord was signed, fighting has ceased and 84,000 UNITA combatants have been disarmed and decommissioned, effectively dismantling UNITA's military capability. Department of State Report. The United Nations estimates that approximately 5,000 of the demobilized soldiers have joined the Angolan government forces, while approximately 80,000 have reunited with their families in reception centers. RIC Report.

A separate insurgency led by the separatist guerrilla forces of the Front for the Liberation of the Enclave of Cabinda/Armed Forces of Cabinda (FLEC/FAC) continues in the northern province of Cabinda, and the Angolan Armed Forces has increased its military campaign against rebels in this area. Given the geographic isolation of Cabinda from the rest of Angola, however, the Department of State concludes that conditions in that province do not impact Angolans elsewhere. Department of State Report.

The Department of State report notes that in addition to the humanitarian needs of 380,000 UNITA members and their families, the Government of Angola faces the challenge of assisting an estimated 4 million displaced Angolan nationals. The RIC Report expresses concern that Angola lacks housing, medical services, water systems, and other basic services destroyed by a 27-year-long war.

There are as many as 8 million landmines planted in Angolan soil. Department of State Report. At least 10 provinces, accounting for 40 percent of Angola's countryside, are heavily mined, rendering large areas of arable land and pasture unfit for use. RIC Report. Nevertheless, the Department of State concludes that the risks associated with existing landmines are not sufficient to potential returnees to warrant an extension of TPS.

Despite these challenging circumstances, the United Nations High Commissioner for Refugees (UNHCR)

VZ Vacatur_0293

(13 of 13), Page 13 of 13    Case: 25-2120, 05/28/2025, DktEntry: 49.17, Page 13 of 13
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 12 of 28

Federal Register/Vol. 68, No. 17/Monday, January 27, 2003/Notices    3897

estimates that 70,000 refugees and 860,000 internally displaced persons have spontaneously returned to their home areas since February 2002. Department of State Report. In the spring of 2003, UNHCR intends to begin the organized repatriation of 470,000 refugees from Zambia, the Democratic Republic of Congo and Namibia. *Id.* The Government of Angola continues to work with the international community to return 4 million internally displaced persons to their homes in Angola.

Based on these findings, the Attorney General has determined that conditions warranting TPS designation no longer exist, and that the TPS designation for Angola must be terminated. Section 244(b)(3)(B) of the Act provides that the Attorney General ''shall'' terminate a designation if he determines that Angola ''no longer continues to meet the conditions for designation * * *'' A statutory condition common to designations under paragraphs (A) and (C) of section 244(b)(1) of the Act is a threat to the personal safety of potential returnees. Whether the precipitating condition is an ''ongoing armed conflict,'' INA § 244(b)(1)(A), or other ''extraordinary and temporary conditions,'' INA § 244(b)(1)(C), this shared condition—threat to returnees' safety—must ''continue to be met'' or the Attorney General ''shall'' terminate the designation. INA §§ 244(b)(3)(A), (B). The disarmament, demobilization, and ongoing reintegration of ex-combatants, the formal end to war, and the discussions regarding planned elections are all positive developments and an indication that internal armed conflict no longer threatens returning Angolans. Furthermore, efforts by the United Nations and non-governmental organizations to resettle Angolan citizens signify the improvement of humanitarian and socioeconomic conditions in Angola. For the foregoing reasons, the Attorney General determines that Angolan TPS beneficiaries may return safely to Angola at this time and, therefore, terminates the TPS designation for Angola.

### What May I Do if I Believe That My Return to Angola Is Unsafe?

This notice terminates the designation of Angola for TPS. There may be avenues of immigration relief and protection available to aliens who are nationals of Angola (and aliens having no nationality who last habitually resided in Angola) in the United States who believe that their particular circumstances make return to Angola unsafe. Such avenues may include, but are not limited to, asylum, withholding of removal, or protection under Article 3 of the Torture Convention.

### How Does the Termination of TPS Affect Former TPS Beneficiaries?

After the designation of Angola for TPS is terminated on March 29, 2003, former TPS beneficiaries will maintain the same immigration status they held prior to TPS (unless that status has since expired or been terminated) or any other status they may have acquired while registered for TPS. Accordingly, if an alien held no lawful immigration status prior to receiving TPS benefits and did not obtain any other status during the TPS period, he or she will maintain that unlawful status upon the termination of the TPS designation.

Former TPS beneficiaries will no longer be eligible for a stay of removal or a work authorization document pursuant to the TPS program. TPS-related work authorization documents expire on March 29, 2003, and will not be renewed.

Termination of the TPS designation for Angola does not necessarily affect pending applications for other forms of immigration relief or protection, though former TPS beneficiaries will begin to accrue unlawful presence as of March 29, 2003, if they have not been granted any other immigration status or protection or if they have no pending application for certain benefits.

### Notice of Termination of Designation of Angola Under the TPS Program

By the authority vested in me as Attorney General under section 244(b)(3) of the Act, I have consulted with the appropriate agencies of government concerning conditions in Angola. 8 U.S.C. 1254a(b)(3). Based on these consultations, I have determined that Angola no longer meets the conditions for designation of TPS under section 244(b)(1) of the Act. *See* 8 U.S.C. 1254a(b)(1).

Accordingly, I order as follows:

(1) The designation of Angola for TPS under section 244(b) of the Act is terminated effective March 29, 2003.

(2) I estimate that there are approximately 316 nationals of Angola (and aliens having no nationality who last habitually resided in Angola) who currently receive TPS benefits.

(3) Information concerning the termination of the TPS program for nationals of Angola (and aliens having no nationality who last habitually resided in Angola) will be available at local Service offices upon publication of this notice and through the INS National Customer Service Center at 1–800–375–5283. This information will also be published on the INS web site at *http://www.ins.usdoj.gov*.

Dated: January 23, 2003.

**John Ashcroft,**
*Attorney General.*
[FR Doc. 03–1994 Filed 1–24–03; 8:45 am]
**BILLING CODE 4410–10–P**

# DEPARTMENT OF LABOR

## Mine Safety and Health Administration

### Petitions for Modification

The following parties have filed petitions to modify the application of existing safety standards under section 101(c) of the Federal Mine Safety and Health Act of 1977.

### 1. Double M Mining, Inc.

[Docket No. M–2002–123–C]

Double M Mining, Inc., P.O. Box 14, Rt. 624, Amonate, Virginia 24610 has filed a petition to modify the application of 30 CFR 77.214(a) (Refuse piles; general) at its Auger #2 Mine (MSHA I.D. No. 46–08915) located in McDowell County, West Virginia. This standard requires refuse piles constructed on or after July 1, 1971, to be located in areas that are a safe distance from all underground mine airshafts, preparation plants, tipples or other surface installations and such piles shall not be located over abandoned openings or streamlines. The petitioner proposes to cover the coal seam with inert material, backfill and eliminate the highwall with refuse on a 2 to 1 slope and cover with soil in order to reclaim the site. The petitioner states that: (i) The face up and the adjacent areas of the mine have been augered and the areas now needs to be reclaimed; (ii) that there will be no mine drainage from the mine openings in the area because the original mine entries were developed down dip and seals have been built that isolate the active mining from the area to be reclaimed from the active mining of the Vica Coal Company who is mining from a different set of portals. The petitioner further states that the Auger #2 Mine was faced up in the area of an old refuse pile by removing the refuse and then taking a small cut to create the highwall. The petitioner asserts that the proposed alternative method would provide at least the same measure of protection as the existing standard.

### 2. Freeman United Coal Company

[Docket No. M–2002–124–C]

Freeman United Coal Company, P.O. Box 4630, Springfield, Illinois 62708