DOCUMENT 1.17

(2 of 11), Page 2 of 11    Case: 25-2120, 05/28/2025, DktEntry: 49.18, Page 2 of 11
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 13 of 28

Federal Register / Vol. 58, No. 24 / Monday, February 8, 1993 / Notices    7581

DC; Eastman Kodak Company, Rochester, NY; Electronic Data Systems, Warren, MI; Emerson Electric, St. Louis, MO; Ernst & Young, Cleveland, OH; General Dynamics-Ft. Worth Div., Ft. Worth, TX; General Electric, Schenectady, NY; Goldstar, Changwon City, KOREA; Grumman Aerospace, Bethpage, NY; Harris Corporation, Melbourne, FL; Honeywell, Inc., Minneapolis, MN; Hughes Aircraft Co., El Segundo, CA; IBM Corporation, Boca Raton, FL; KPMG Peat Marwick, Palo Alto, CA; LTV Aerospace & Defense Co., Dallas, TX; Martin Marietta Energy Sys., Oak Ridge, TN; McDonnell Douglas Corp., St. Louis, MO; National SemiConductor, Santa Clara, CA; NIES, Canberra City, AUSTRALIA; Northrop Corp., Hawthorne, CA; Price Waterhouse, Cleveland, OH; Procter & Gamble Co., Cincinnati, OH; Texas Instruments, Plano, TX; U.S. Air Force, Dayton, OH; U.S. Navy, Alexandria, VA; and Westinghouse Electric Corporation, Columbia, MD. The current industrial member companies in Europe are: Aerospatiale, Paris, FRANCE; Groupe Bull, Paris, FRANCE; CTE/ITM, Genoa, ITALY; Coopers & Lybrand, Deloitte, London, ENGLAND; Eurosept, Boulogne, FRANCE; Finmeccanica, Rome, ITALY; IBM Eurocoordination, Parris, FRANCE; IPL-TNO, Apeldoorn, THE NETHERLANDS; IVF Swedish Institute, Goteborg, SWEDEN; Lucas Engineering, Solihull, West Midlands, ENGLAND; Messerschmitt-Bolkow-Blohm, Munich, GERMANY; Nuove Pignone, Florence, ITALY; Phillips International, Eindhoven, THE NETHERLANDS; Telos Management, Milan, ITALY; and Valmet Corporation, Helsinki, FINLAND. Current industrial member companies in the Pacific region are: Fuji Electric, Tokyo, JAPAN; Fujitsu, Ltd., Kawasaki, JAPAN; Hitachi, Ltd., Yokohama, JAPAN; and Honda Engineering, Sayama City, JAPAN. Current educational members in the United States are: Arizona State Univ., Tempe, AZ; Brigham Young Univ., Provo, UT; California Polytechnic, San Luis Obispo, CA; Carnegie Mellon Univ., Pittsburgh, PA; Illinois Institute of Technology, Chicago, IL; Massachusetts Inst. of Tech., Cambridge, MA; Merrick School of Business, Baltimore, MD; North Carolina State, Raleigh, NC; North Texas State, Denton, TX; Oklahoma State Univ., Stillwater, OK; Portland State Univ., Portland, OR; Purdue Univ., Ft. Wayne, IN; Rensselaer Polytechnic, Troy, NY; Stanford Univ., Stanford, CA; Univ. California (UCLA), Los Angeles, CA; Univ. of Maryland, Baltimore, MD; Univ. of Massachusetts, Amherst, MA; Univ. of Minnesota, Minneapolis, MN; Univ. of Missouri-Rolla, Rolla, MO; Univ. of New Hampshire, Durham, NH; Univ. of San Francisco, San Francisco, CA; Univ. of Southern California, Los Angeles, CA; Univ. of Texas, Arlington, Arlington, TX; Univ. of Texas, Austin, Austin, TX; Univ. of Texas, El Paso, El Paso, TX; and Univ. of Waterloo, Waterloo, CANADA. Current educational members in Europe are: Cranfield Institute of Tech., Poole, ENGLAND; Groupe H.E.C., Jouy-en-Josas, FRANCE; Helsinki Univ. of Technology, Espoo, FINLAND; Katholieke Universiteit Leuven, Heverlee, BELGIUM; Loughborough Univ. of Tech., Leicestershire, ENGLAND; Politechnico di Milano, Milan, ITALY; Royal Institute of Stockholm, Stockholm, SWEDEN; Tech. Institute of Aachen, Aachen, GERMANY; Univ. Frederciana Karlsruhe, Karlsruhe, GERMANY; Univ. of Trondheim, Norway, Trondheim, NORWAY; and Univ. of Twente, Twente, THE NETHERLANDS. The current educational members in the Pacific region are Kyoto Univ., Kyoto, JAPAN; and Kobe Univ., Kobe, JAPAN.

The Intelligent Manufacturing Management Program has been discontinued, and the Quality Customer/Quality Supplier Program (QCQS) has been added.

No other changes have been made in either the membership or planned activity of the group research project. Membership in this group research project remains open and the Consortium for Advanced Manufacturing-International, Inc. intends to file additional written notification disclosing all changes in membership.

On December 28, 1984, Computer Aided Manufacturing-International, Inc. (CAM-I), now known as Consortium for Advanced Manufacturing-International, Inc., filed its original notification pursuant to section 6(a) of the Act. The Department of Justice published a notice in the Federal Register pursuant to section 6(b) of the Act on January 24, 1985 (50 FR 3425-3426).

The last notification was filed with the Department on January 2, 1992. A notice was published in the Federal Register pursuant to section 6(b) of the Act on April 2, 1992 (57 FR 11337).

Joseph H. Widmar,
*Director of Operations, Antitrust Division.*
[FR Doc. 93-2856 Filed 2-5-93; 8:45 am]
BILLING CODE 4410-01-M

### Notice Pursuant to the National Cooperative Research Act of 1984— Smart House Project

Notice is hereby given that, on January 5, 1993, pursuant to section 6(a) of the National Cooperative Research Act of 1984, 15 U.S.C. 4301 et seq. ("the Act"), Smart House, L.P., has filed written notifications simultaneously with the Attorney General and the Federal Trade Commission disclosing changes in membership of the Smart House Project ("the Project"). The notifications were filed for the purpose of extending the Act's provisions limiting the recovery of antitrust plaintiffs to actual damages under specified circumstances.

The following party is now participating in the Project: Xantech Corporation, Sylmar, CA. The following parties are no longer involved in the Project: Arkla, Inc.; BellSouth Services; Columbia Gas Distribution Companies; Consolidated Natural Gas Company; Consumers Power Company; Delmarva Power & Light Company; Florida Power & Light Company; Halstead Industries; Houston Lighting & Power Company; National Rural Electric Cooperative Association; Northern Illinois Gas Company; Oglethorpe Power Corporation; Oklahoma Natural Gas Company; Pacific Gas & Electric Company; Pittway Corporation; Portland General Electric Company; Public Service Company of Colorado; Sears, Roebuck & Co.; Southern California Edison Company; Universal Electronics Inc.; Virginia Power Company; WaterFurnace International Inc.; Wisconsin Electric Power Company. No other changes have been made in either the membership or planned activity of the Project.

Participants of the Project are developing a coordinated home control and energy distribution system containing integral telecommunications and advanced safety features.

On June 14, 1985, the predecessor in interest to Smart House, L.P., filed its original notification pursuant to section 6(a) of the Act. The Department of Justice published a notice in the Federal Register pursuant to section 6(b) of the Act on October 10, 1985 (50 FR 41428).

The last notification was filed with the Department on October 5, 1992. A notice was published in the Federal Register pursuant to section 6(b) of the Act on December 17, 1992 (57 FR 60005).

Joseph H. Widmar,
*Director of Operations, Antitrust Division.*
[FR Doc. 93-2857 Filed 2-5-93; 8:45 am]
BILLING CODE 4410-01-M

(3 of 11), Page 3 of 11    Case: 25-2120, 05/28/2025, DktEntry: 49.18, Page 3 of 11
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 14 of 28

7582    Federal Register / Vol. 58, No. 24 / Monday, February 8, 1993 / Notices

## Notice Pursuant to the National Cooperative Research Act of 1984—Spray Drift Task Force

Notice is hereby given that, on January 13, 1993, pursuant to section 6(a) of the National Cooperative Research Act of 1984, 15 U.S.C. 4301 et seq. ("the Act"), the Spray Drift Task Force has filed written notifications simultaneously with the Attorney General and the Federal Trade Commission disclosing a change in the membership of the Spray Drift Task Force Joint Data Development Agreement. The notice was filed for the purpose of invoking the Act's provisions limiting the recovery of antitrust plaintiffs to actual damages under specified circumstances. Specifically, the change consists of the addition of Agro-Gor Corporation, a division of Agrico Chemical Company, New Orleans, LA.

No other changes have been made in either the membership, corporate name or planned activities of the venture.

On May 15, 1990, the Spray Drift Task Force filed its original notification pursuant to section 6(a) of the Act. The Department of Justice published a notice in the **Federal Register** pursuant to section 6(b) of the Act of July 5, 1990 (55 FR 27701). The last notification was filed with the Department on April 27, 1992. A notice was published in the **Federal Register** on May 22, 1992 (57 FR 21824).

Joseph H. Widmar,
*Director of Operations, Antitrust Division.*
[FR Doc. 93-2858 Filed 2-5-93; 8:45 am]
BILLING CODE 4410-01-M

## Immigration And Naturalization Service

[AG Order No. 1680-93]

### Termination of Designation of Lebanon Under Temporary Protected Status Program

**AGENCY:** Immigration and Naturalization Service, Justice.
**ACTION:** Notice.

**SUMMARY:** This notice terminates the Attorney General's designation of Lebanon under the Temporary Protected Status program provided for in section 244A of the Immigration and Nationality Act (Act). Accordingly, eligible aliens who are nationals of Lebanon, or who have no nationality and who last habitually resided in Lebanon, will lose their eligibility for Temporary Protected Status.

**EFFECTIVE DATE:** The termination of the Temporary Protected Status designation for Lebanon is effective April 9, 1993.

**FOR FURTHER INFORMATION CONTACT:** Kathryn A. Kazalonis, Senior Immigration Examiner, Immigration and Naturalization Service, room 7223, 425 I Street, NW, Washington, DC 20536, telephone (202) 514-5014.

**SUPPLEMENTARY INFORMATION:** Under section 244A of the Act, as amended by section 302(a) of Public Law 101-649 and section 304(b) of Public Law 102-232, (8 U.S.C. 1254a), the Attorney General is authorized to grant Temporary Protected Status in the United States to eligible aliens who are nationals of a foreign state designated by the Attorney General, or who have no nationality and last habitually resided in that state. The Attorney General so designates a state, or a part thereof, upon finding that the state is experiencing ongoing armed civil strife, environmental disaster, or certain other extraordinary and temporary conditions.

On March 21, 1991, the Attorney General designated Lebanon for Temporary Protected Status for a period of 12 months. 56 FR 12746. On January 20, 1992, the Attorney General extended the designation of Lebanon under the Temporary Protected Status program for an additional 12 months until March 28, 1993. 57 FR 2931.

Section 244A(b)(3) of the Act requires the Attorney General to review, at least 60 days before the end of the initial period of designation or any extended period of designation, the conditions in a state designated under section 244A(b)(3). The section also requires the Attorney General to determine whether the requirements for such designation continue to be met, and to terminate a state's designation when the Attorney General determines that those requirements are not met. In this notice, the Attorney General terminates the designation of Lebanon, pursuant to section 244A(b)(3) of the Act.

### Notice of Termination of Designation of Lebanon Under Temporary Protected Status Program

By the authority vested in me as Attorney General under section 244A of the Immigration and Nationality Act, and pursuant to sections 244A(b)(3) (A) and (C) of the Act, I find, after consultation with the appropriate agencies of the United States Government, that the extraordinary and temporary conditions found to exist in Lebanon on March 21, 1991, and on January 20, 1992, are not presently in existence. The United States embassy in Beirut reports that the security situation for Lebanese citizens is steadily improving. The Lebanese government's amnesty law specifically protects Lebanese citizens from prosecution for virtually all actions taken during the war years, and the majority of Lebanese go about their daily activity without hindrance. While the few persons who might still encounter difficulties in Lebanon due to their affiliations could apply for asylum, we believe that Temporary Protected Status is no longer appropriate for Lebanese citizens in general.

Accordingly, it is ordered that the designation of Lebanon for Temporary Protected Status is terminated effective 60 days after publication of this notice in the **Federal Register**.

Dated: January 27, 1993.
Stuart M. Gerson,
*Acting Attorney General.*
[FR Doc. 93-2861 Filed 2-5-93; 8:45 am]
BILLING CODE 4410-01-M

## Office of Justice Programs

### Office for Victims of Crime

### Discretionary Grant Program and Application Information for Fiscal Year 1993; Correction

**AGENCY:** Office for Victims of Crime, Office of Justice Programs, Justice.
**ACTION:** Correction.

**SUMMARY:** In the public announcement of availability of the funds and application information under the Discretionary Grant Program beginning on page 5416 in the issue of Thursday, January 21, 1993, make the following correction:

On page 5417 in the third column in the first paragraph, the fourth sentence should read: "At least 70 percent of the grant funds is to be allotted for the purchase of workshop presentations from the list; or in special cases, other workshop presentations may be purchased with OVC approval."

Dated: January 29, 1993.
Carolyn Hightower,
*Acting Director, Office for Victims of Crime.*
[FR Doc. 93-2906 Filed 2-5-93; 8:45 am]
BILLING CODE 4410-18-P

### Office for Victims of Crime

### FY 1993 Assistance to Victims of Federal Crime in Indian Country Discretionary Grant Program Application Kit; Correction

**AGENCY:** Office for Victims of Crime Office of Justice Programs, Justice.

(4 of 11), Page 4 of 11    Case: 25-2120, 05/28/2025, DktEntry: 49.18, Page 4 of 11
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 15 of 28

Federal Register / Vol. 58, No. 24 / Monday, February 8, 1993 / Notices    7583

ACTION: Correction.

SUMMARY: In the public announcement of the availability of FY 1993 Assistance to Victims of Federal Crime in Indian Country Discretionary Grant Program Application Kit beginning on page 584 in the issue of Wednesday, January 6, 1993, make the following correction:

On page 584, in the second column, the Summary paragraph should include Florida and Oklahoma. The Summary paragraph should read, "The Office for Victims of Crime (OVC) is publishing this Notice of availability of the FY 1993 Discretionary Grant Application Kit for the State agencies appointed by the Governors in Alabama, Colorado, Florida, Iowa, Louisiana, Mississippi, Nebraska, North Carolina, Oklahoma, and Texas."

Dated: January 29, 1993.

Carolyn A. Hightower,
*Acting Director, Office for Victims of Crime.*
[FR Doc. 93-2907 Filed 2-5-93; 8:45 am]
BILLING CODE 4410-18-P

---

# NATIONAL FOUNDATION ON THE ARTS AND THE HUMANITIES

## Arts in Education Advisory Panel: Notice of Renewal

In accordance with the provisions of the Federal Advisory Committee Act (Pub. L. 92-463) and General Services Administration regulations issued pursuant thereto (41 CFR part 101-6), and under the authority of section 10(a)(4) of the National Foundation on the Arts and the Humanities Act of 1965, as amended (20 U.S.C. 959 (a)(4)), notice is hereby given that renewal of the Arts in Education Advisory Panel has been approved by the Chairman of the National Endowment for the Arts for a period of 2 years until February 2, 1995. The Committee's objectives and scope of activities include the formulation of expert advice and recommendations to the Chairman, National Endowment for the Arts and the National Council on the Arts with respect to: (a) Applications submitted to the National Endowment for the Arts for Federal grant assistance under the National Foundation on the Arts and the Humanities Act of 1965, as amended, and (b) policies and programs of the National Endowment for the Arts. This Committee shall report to the National Endowment for the Arts, National Foundation on the Arts and the Humanities.

This charter will be filed with the standing Committees of the Senate and the House of Representatives having legislative jurisdiction over the Endowment and with the Library of Congress.

Dated: February 2, 1993.

Yvonne M. Sabine,
*Director, Office of Panel Operations, National Endowment for the Arts.*
[FR Doc. 93-2897 Filed 2-5-93; 8:45 am]
BILLING CODE 7537-01-M

---

## Challenge/Advancement Advisory Panel: Notice of Renewal

In accordance with the provisions of the Federal Advisory Committee Act (Pub. L. 92-463) and General Services Administration regulations issued pursuant thereto (41 CFR part 101-6), and under the authority of section 10(a)(4) of the National Foundation on the Arts and the Humanities Act of 1965, as amended (20 U.S.C. 959(a)(4)), notice is hereby given that renewal of the Challenge/Advancement Advisory Panel has been approved by the Chairman of the National Endowment for the Arts for a period of 2 years until February 2, 1995. The Committee's objectives and scope of activities include the formulation of expert advice and recommendations to the Chairman, National Endowment for the Arts and the National Council on the Arts with respect to: (a) Applications submitted to the National Endowment for the Arts for Federal grant assistance with the National Foundation on the Arts and the Humanities Act of 1965, as amended, and (b) policies and programs of the National Endowment for the Arts. This Committee shall report to the National Endowment for the Arts, National Foundation on the Arts and the Humanities.

This charter will be filed with the standing Committees of the Senate and the House of Representatives having legislative jurisdiction over the Endowment and with the Library of Congress.

Dated: February 2, 1993.

Yvonne M. Sabine,
*Director, Office of Panel Operations, National Endowment for the Arts.*
[FR Doc. 93-2898 Filed 2-5-93; 8:45 am]
BILLING CODE 7537-01-M

---

## Dance Advisory Panel; Notice of Renewal

In accordance with the provisions of the Federal Advisory Committee Act (Pub. L. 92-463) and General Services Administration regulations issued pursuant thereto (41 CFR Part 101-6), and under the authority of section 10(a)(4) of the National Foundation on the Arts and the Humanities Act of 1965, as amended (20 U.S.C. 959 (a)(4)), notice is hereby given that renewal of the Dance Advisory Panel has been approved by the Chairman of the National Endowment for the Arts for a period of 2 years until February 2, 1995. The Committee's objectives and scope of activities include the formulation of expert advice and recommendations to the Chairman, National Endowment for the Arts and the National Council on the Arts with respect to: (a) Applications submitted to the National Endowment for the Arts for Federal grant assistance under the National Foundation on the Arts and the Humanities Act of 1965, as amended, and (b) policies and programs of the National Endowment for the Arts. This Committee shall report to the National Endowment for the Arts, National Foundation on the Arts and the Humanities.

This charter will be filed with the standing Committees of the Senate and the House of Representatives having legislative jurisdiction over the Endowment and with the Library of Congress.

Dated: February 2, 1993.

Yvonne M. Sabine,
*Director, Office of Panel Operations, National Endowment for the Arts.*
[FR Doc. 93-2899 Filed 2-5-93; 8:45 am]
BILLING CODE 7537-01-M

---

## Design Arts Advisory Panel; Notice of Renewal

In accordance with the provisions of the Federal Advisory Committee Act (Pub. L. 92-463) and General Services Administration regulations issued pursuant thereto (41 CFR paragraph 101-6), and under the authority of section 10(a)(4) of the National Foundation on the Arts and the Humanities Act of 1965, as amended [20 U.S.C. 959(a)(4)], notice is hereby given that renewal of the Design Arts Advisory Panel has been approved by the Chairman of the National Endowment for the Arts for a period of 2 years until February 2, 1995. The Committee's objectives and scope of activities include the formulation of expert advice and recommendations to the Chairman, National Endowment for the Arts and the National Council on the Arts with respect to: (a) Applications submitted to the National Endowment for the Arts for Federal grant assistance under the National Foundation on the Arts and the Humanities Act of 1965, as amended, and (b) policies and programs of the National Endowment for the Arts. This Committee shall report to the National Endowment for the Arts,

(5 of 11), Page 5 of 11    Case: 25-2120, 05/28/2025, DktEntry: 49.18, Page 5 of 11
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 16 of 28

**2654** Federal Register / Vol. 83, No. 12 / Thursday, January 18, 2018 / Notices

not require extra or additional documentation beyond what is required for Form I–9 completion. Further, employers participating in E-Verify who receive an E-Verify case result of "Tentative Nonconfirmation" (TNC) must promptly inform employees of the TNC and give such employees an opportunity to contest the TNC. A TNC case result means that the information entered into E-Verify from an employee's Form I–9 differs from Federal or state government records.

Employers may not terminate, suspend, delay training, withhold pay, lower pay, or take any adverse action against an employee based on the employee's decision to contest a TNC or because the case is still pending with E-Verify. A Final Nonconfirmation (FNC) case result is received when E-Verify cannot verify an employee's employment eligibility. An employer may terminate employment based on a case result of FNC. Work-authorized employees who receive an FNC may call USCIS for assistance at 888–897–7781 (TTY 877–875–6028). For more information about E-Verify-related discrimination or to report an employer for discrimination in the E-Verify process based on citizenship, immigration status, or national origin, contact IER's Worker Hotline at 800–255–7688 (TTY 800–237–2515). Additional information about proper nondiscriminatory Form I–9 and E-Verify procedures is available on the IER website at *https://www.justice.gov/ier* and the USCIS website at *http://www.dhs.gov/E-verify.*

**Note Regarding Federal, State, and Local Government Agencies (Such as Departments of Motor Vehicles)**

While Federal Government agencies must follow the guidelines laid out by the Federal Government, state and local government agencies establish their own rules and guidelines when granting certain benefits. Each state may have different laws, requirements, and determinations about what documents you need to provide to prove eligibility for certain benefits. Whether you are applying for a Federal, state, or local government benefit, you may need to provide the government agency with documents that show you are a TPS beneficiary and/or show you are authorized to work based on TPS. Examples of such documents are:

(1) Your current EAD;
(2) A copy of your Notice of Action (Form I–797C) for your application to renew your current EAD providing an automatic extension of your currently expired or expiring EAD;
(3) A copy of your Application for Temporary Protected Status Notice of Action (Form I–797) for this re-registration; and
(4) A copy of your past or current Application for Temporary Protected Status Notice of Action (Form I–797), if you received one from USCIS.

Check with the government agency regarding which document(s) the agency will accept. Some benefit-granting agencies use the USCIS Systematic Alien Verification for Entitlements (SAVE) program to confirm the current immigration status of applicants for public benefits. In most cases, SAVE provides an automated electronic response to benefit-granting agencies within seconds, but, occasionally, verification can be delayed. You can check the status of your SAVE verification by using CaseCheck at the following link: *https://save.uscis.gov/casecheck/,* then by clicking the "Check Your Case" button. CaseCheck is a free service that lets you follow the progress of your SAVE verification using your date of birth and one immigration identifier number. If an agency has denied your application based solely or in part on a SAVE response, the agency must offer you the opportunity to appeal the decision in accordance with the agency's procedures. If the agency has received and acted upon or will act upon a SAVE verification and you do not believe the response is correct, you may make an InfoPass appointment for an in-person interview at a local USCIS office. Detailed information on how to make corrections, make an appointment, or submit a written request to correct records under the Freedom of Information Act can be found on the SAVE website at *http://www.uscis.gov/save.*

[FR Doc. 2018–00886 Filed 1–17–18; 8:45 am]
BILLING CODE 9111–97–P

---

**DEPARTMENT OF HOMELAND SECURITY**

**U.S. Citizenship and Immigration Services**

[CIS No. 2616–18; DHS Docket No. USCIS–2008–0034]

RIN 1615–ZB71

**Termination of the Designation of El Salvador for Temporary Protected Status**

**AGENCY:** U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security.
**ACTION:** Notice.

**SUMMARY:** The designation of El Salvador for Temporary Protected Status (TPS) is set to expire on March 9, 2018. After reviewing country conditions and consulting with appropriate U.S. Government agencies, the Secretary of Homeland Security has determined that conditions in El Salvador no longer support its designation for TPS and that termination of the TPS designation of El Salvador is required pursuant to statute. To provide time for an orderly transition, the Secretary is terminating the designation effective on September 9, 2019, which is 18 months following the end of the current designation.

Nationals of El Salvador (and aliens having no nationality who last habitually resided in El Salvador) who have been granted TPS and wish to maintain their TPS and receive TPS-based Employment Authorization Documents (EAD) valid through September 9, 2019, must re-register for TPS in accordance with the procedures set forth in this Notice. After September 9, 2019, nationals of El Salvador (and aliens having no nationality who last habitually resided in El Salvador) who have been granted TPS under the El Salvador designation will no longer have TPS.

**DATES:** The designation of El Salvador for TPS is terminated effective at 11:59 p.m., local time, on September 9, 2019.

The 60-day re-registration period runs from January 18, 2018 through March 19, 2018. (**Note:** It is important for re-registrants to timely re-register during this 60-day period.)

**FOR FURTHER INFORMATION CONTACT:**

• You may contact Alex King, Branch Chief, Waivers and Temporary Services Branch, Service Center Operations Directorate, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, 20 Massachusetts Avenue NW, Washington, DC 20529–2060; or by phone at (202) 272–8377 (this is not a toll-free number). **Note:** The phone number provided here is solely for questions regarding this TPS Notice. It is not for individual case status inquiries.

• For further information on TPS, including guidance on the re-registration process and additional information on eligibility, please visit the USCIS TPS web page at *http://www.uscis.gov/tps.* You can find specific information about this termination of El Salvador's TPS by selecting "El Salvador" from the menu on the left side of the TPS web page.

• Applicants seeking information about the status of their individual cases may check Case Status Online, available on the USCIS website at *http://*

(6 of 11), Page 6 of 11        Case: 25-2120, 05/28/2025, DktEntry: 49.18, Page 6 of 11
        Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 17 of 28

Federal Register / Vol. 83, No. 12 / Thursday, January 18, 2018 / Notices        2655

*www.uscis.gov,* or call the USCIS National Customer Service Center at 800–375–5283 (TTY 800–767–1833). Service is available in English and Spanish.

• Further information will also be available at local USCIS offices upon publication of this Notice.

**SUPPLEMENTARY INFORMATION:**

**Table of Abbreviations**

BIA—Board of Immigration Appeals
CFR—Code of Federal Regulations
DHS—U.S. Department of Homeland Security
DOS—Department of State
EAD—Employment Authorization Document
FNC—Final Nonconfirmation
FR—Federal Register
Government—U.S. Government
IJ—Immigration Judge
INA—Immigration and Nationality Act
IER—U.S. Department of Justice Civil Rights Division, Immigrant and Employee Rights Section
SAVE—USCIS Systematic Alien Verification for Entitlements Program
Secretary—Secretary of Homeland Security
TNC—Tentative Nonconfirmation
TPS—Temporary Protected Status
TTY—Text Telephone
USCIS—U.S. Citizenship and Immigration Services
U.S.C.—United States Code

Through this Notice, DHS sets forth procedures necessary for eligible nationals of El Salvador (or aliens having no nationality who last habitually resided in El Salvador) to re-register for TPS and to apply for renewal of their EADs with USCIS. Re-registration is limited to persons who have previously registered for TPS under the designation of El Salvador and whose applications have been granted.

For individuals who have already been granted TPS under El Salvador's designation, the 60-day re-registration period runs from January 19, 2018 through March 19, 2018. USCIS will issue new EADs with a September 9, 2019 expiration date to eligible Salvadoran TPS beneficiaries who timely re-register and apply for EADs. Given the timeframes involved with processing TPS re-registration applications, DHS recognizes that not all re-registrants will receive new EADs before their current EADs expire on March 9, 2018. Accordingly, through this **Federal Register** notice, DHS automatically extends the validity of EADs issued under the TPS designation of El Salvador for 180 days, through September 5, 2018. This Notice explains how TPS beneficiaries and their employers may determine which EADs are automatically extended and how this affects the Form I–9, Employment Eligibility Verification, and E-Verify processes.

**What is Temporary Protected Status (TPS)?**

• TPS is a temporary immigration status granted to eligible nationals of a country designated for TPS under the INA, or to eligible persons without nationality who last habitually resided in the designated country.

• During the TPS designation period, TPS beneficiaries are eligible to remain in the United States, may not be removed, and are authorized to obtain EADs so long as they continue to meet the requirements of TPS.

• TPS beneficiaries may also apply for and be granted travel authorization as a matter of discretion.

• The granting of TPS does not result in or lead to lawful permanent resident status.

• To qualify for TPS, beneficiaries must meet the eligibility standards at INA section 244(c)(1)–(2), 8 U.S.C. 1254a(c)(1)–(2).

• When the Secretary terminates a country's TPS designation, beneficiaries return to one of the following:

○ The same immigration status or category that they maintained before TPS, if any (unless that status or category has since expired or been terminated); or

○ Any other lawfully obtained immigration status or category they received while registered for TPS, as long as it is still valid on the date TPS terminates.

**When was El Salvador designated for TPS?**

On March 9, 2001, the Attorney General designated El Salvador for TPS based on an environmental disaster within that country, specifically the devastation resulting from a series of earthquakes that occurred in 2001. *See* Designation of El Salvador Under Temporary Protected Status, 66 FR 14214 (Mar. 9, 2001). The designation has been continuously extended since its initial designation. The Secretary of Homeland Security last announced an extension of TPS for El Salvador on July 8, 2016, based on the Secretary's determination that the conditions warranting the designation continued to be met. *See* Extension of the Designation of El Salvador for Temporary Protected Status, 81 FR 44645 (July 8, 2016).

**What authority does the Secretary have to terminate the designation of El Salvador for TPS?**

Section 244(b)(1) of the INA, 8 U.S.C. 1254a(b)(1), authorizes the Secretary, after consultation with appropriate U.S. Government agencies, to designate a foreign state (or part thereof) for TPS if the Secretary determines that certain country conditions exist.[1] The Secretary may then grant TPS to eligible nationals of that foreign state (or eligible aliens having no nationality who last habitually resided in the designated country). *See* INA section 244(a)(1)(A), 8 U.S.C. 1254a(a)(1)(A).

At least 60 days before the expiration of a country's TPS designation or extension, the Secretary, after consultation with appropriate Government agencies, must review the conditions in the foreign state designated for TPS to determine whether the conditions for the TPS designation continue to be met. *See* INA section 244(b)(3)(A), 8 U.S.C. 1254a(b)(3)(A). If the Secretary determines that the foreign state continues to meet the conditions for TPS designation, the designation must be extended for an additional period of 6 months and, in the Secretary's discretion, may be extended for 12 or 18 months. *See* INA section 244(b)(3)(C), 8 U.S.C. 1254a(b)(3)(C). If the Secretary determines that the foreign state no longer continues to meet the conditions for TPS designation, the Secretary must terminate the designation, but such termination may not take effect earlier than 60 days after the date the **Federal Register** notice of termination is published, or if later, the expiration of the most recent previous extension of the country designation. *See* INA section 244(b)(3)(B), 8 U.S.C. 1254a(b)(3)(B). The Secretary may determine the appropriate effective date of the termination and the expiration of any TPS-related documentation, such as EADs, for the purpose of providing for an orderly transition. *See id.;* INA section 244(d)(3), 8 U.S.C. 1254a(d)(3).

**Why is the Secretary terminating the TPS designation for El Salvador as of September 9, 2019?**

DHS has reviewed conditions in El Salvador. Based on the review, including input received from other appropriate U.S. Government agencies, including the Department of State, the Secretary of Homeland Security has determined that the conditions supporting El Salvador's 2001 designation for TPS on the basis of

---

[1] As of March 1, 2003, in accordance with section 1517 of title XV of the Homeland Security Act of 2002, Public Law 107–296, 116 Stat. 2135, any reference to the Attorney General in a provision of the INA describing functions transferred from the Department of Justice to the U.S. Department of Homeland Security (DHS) ''shall be deemed to refer to the Secretary'' of Homeland Security. *See* 6 U.S.C. 557 (codifying the Homeland Security Act of 2002, tit. XV, section 1517).

(7 of 11), Page 7 of 11    Case: 25-2120, 05/28/2025, DktEntry: 49.18, Page 7 of 11
    Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 18 of 28

**2656**    **Federal Register** / Vol. 83, No. 12 / Thursday, January 18, 2018 / Notices

environmental disaster due to the damage caused by the 2001 earthquakes are no longer met. Recovery efforts relating to the 2001 earthquakes have largely been completed. The social and economic conditions affected by the earthquakes have stabilized, and people are able to conduct their daily activities without impediments directly related to damage from the earthquakes. Additionally, El Salvador has been regularly accepting the return of its nationals with final removal orders In fiscal year 2016, DHS removed 20,538 Salvadoran nationals, and, in fiscal year 2017, DHS removed 18,838 Salvadoran nationals.

Following the 2001 earthquake, El Salvador received a significant amount of international aid to assist in its recovery efforts, including millions of dollars dedicated to emergency and long-term assistance. Accordingly, many reconstruction projects have now been completed. Damaged schools and hospitals have been reconstructed and repaired, homes have been rebuilt, and money has been provided for water and sanitation and to repair damaged roads and other infrastructure. Additionally, El Salvador's economy is steadily improving. The Salvadoran Government has estimated that the country's unemployment rate was 7 percent in 2014, 2015, and 2016. The Gross Domestic Product (GDP) in El Salvador reached an all-time high of $26.80 billion (USD) in 2016 and is expected to reach $27.3 billion (USD) by the end of 2017. El Salvador's GDP is projected to increase to about $28.6 billion in 2020.

Government assistance and resources for returnees are reportedly limited, but the Salvadoran Government, U.S. Government, and international organizations are working cooperatively to improve security and economic opportunities in El Salvador to lay the groundwork for an eventual return of many Salvadorans from the United States. DHS estimates that there are approximately 262,500 nationals of El Salvador (and aliens having no nationality who last habitually resided in El Salvador) who hold TPS under El Salvador's designation.

### Notice of Termination of the TPS Designation of El Salvador

By the authority vested in the Secretary of Homeland Security under INA section 244(b)(3), 8 U.S.C. 1254a(b)(3), I have determined, after consultation with appropriate U.S. Government agencies, that the conditions for the designation of El Salvador for TPS under 244(b)(1)(B) of the INA, 8 U.S.C. 1254a(b)(1)(B), are no longer met. Accordingly, I order as follows:

(1) Pursuant to INA section 244(b)(3)(B) and in accordance with INA section 244(d)(3), in order to provide for an orderly transition, the designation of El Salvador for TPS is terminated effective at 11:59 p.m., local time, on September 9, 2019, which is 18 months following the end of the current designation.

(2) Information concerning the termination of TPS for nationals of El Salvador (and aliens having no nationality who last habitually resided in El Salvador) will be available at local USCIS offices upon publication of this Notice and through the USCIS National Customer Service Center at 1–800–375–5283. This information will be published on the USCIS website at *www.uscis.gov.*

**Kirstjen M. Nielsen,**
*Secretary.*

### Required Application Forms and Application Fees To Re-Register for TPS

To re-register for TPS based on the designation of El Salvador, you *must* submit an Application for Temporary Protected Status (Form I–821). You do not need to pay the filing fee for the Form I–821. *See* 8 CFR 244.17. You may be required to pay the biometric services fee. Please see additional information under the ''Biometric Services Fee'' section of this Notice.

Through operation of this **Federal Register** notice, your existing EAD issued under the TPS designation of El Salvador with the expiration date of March 9, 2018, is automatically extended for 180 days, through September 5, 2018. You do not need to apply for a new EAD in order to benefit from this 180-day automatic extension. However, if you want to obtain a new EAD valid through September 9, 2019, you must file an Application for Employment Authorization (Form I–765) and pay the Form I–765 fee (or request a fee waiver). Note, if you do not want a new EAD, you do not have to file Form I–765 or pay the Form I–765 fee. If you do not want to request a new EAD now, you may also file Form I–765 at a later date and pay the fee (or request a fee waiver), provided that you still have TPS or a pending TPS application. But unless you timely re-register and properly file an EAD application in accordance with this Notice, the validity of your current EAD will end on September 5, 2018. You may file the application for a new EAD either prior to or after your current EAD has expired. However, you are strongly encouraged to file your application for a new EAD as early as possible to avoid gaps in the validity of your employment authorization documentation and to ensure that you receive your new EAD by September 5, 2018.

If you are seeking an EAD with your re-registration for TPS, please submit both the Form I–821 and Form I–765 together. If you are unable to pay the application fee and/or biometric services fee, you may complete a Request for Fee Waiver (Form I–912) or submit a personal letter requesting a fee waiver with satisfactory supporting documentation. For more information on the application forms and fees for TPS, please visit the USCIS TPS web page at *http://www.uscis.gov/tps.* Fees for the Form I–821, the Form I–765, and biometric services are also described in 8 CFR 103.7(b)(1)(i).

**Note:** If you have a Form I–821 and/or Form I–765 that was still pending as of January 18, 2018, then you do *not* need to file either application again. If your pending TPS application is approved, you will be granted TPS through September 9, 2019. Similarly, if you have a pending TPS-related application for an EAD that is approved, it will be valid through the same date.

### Biometric Services Fee

Biometrics (such as fingerprints) are required for all applicants 14 years and older. Those applicants must submit a biometric services fee. As previously stated, if you are unable to pay for the biometric services fee, you may complete a Form I–912 or submit a personal letter requesting a fee waiver with satisfactory supporting documentation. For more information on the biometric services fee, please visit the USCIS website at *http://www.uscis.gov.* If necessary, you may be required to visit an Application Support Center to have your biometrics captured. For additional information on the USCIS biometrics screening process please see the USCIS Customer Profile Management Service Privacy Impact Assessment, available at *www.dhs.gov/privacy.*

### Refiling a Re-Registration TPS Application After Receiving a Denial of a Fee Waiver Request

You should file as soon as possible within the 60-day re-registration period so USCIS can process your application and issue any EAD promptly. Properly filing early will also allow you to have time to refile your application before the deadline, should USCIS deny your fee waiver request. If, however, you receive a denial of your fee waiver request and are unable to refile by the re-registration deadline, you may still refile your Form

(8 of 11), Page 8 of 11     Case: 25-2120, 05/28/2025, DktEntry: 49.18, Page 8 of 11
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 19 of 28

Federal Register / Vol. 83, No. 12 / Thursday, January 18, 2018 / Notices    2657

I–821 with the biometrics fee. This situation will be reviewed to determine whether you established good cause for late TPS re-registration. However, you are urged to refile within 45 days of the date on any USCIS fee waiver denial notice, if possible. *See* INA section 244(c)(3)(C); 8 U.S.C. 1254a(c)(3)(C); 8 CFR 244.17(b). For more information on good cause for late re-registration, visit the USCIS TPS web page at *http:// www.uscis.gov/tps.* Following denial of your fee waiver request, you may also refile your Form I–765 with fee either with your Form I–821 or at a later time, if you choose.

Note: Although a re-registering TPS beneficiary age 14 and older must pay the biometric services fee (but not the Form I–821 fee) when filing a TPS re-registration application, you may decide to wait to request an EAD. Therefore, you do not have to file the Form I–765 or pay the associated Form I–765 fee (or request a fee waiver) at the time of re-registration, and could wait to seek an EAD until after USCIS has approved your TPS re-registration application. If you choose to do this, to re-register for TPS you would only need to file the Form I–821 with the biometrics services fee, if applicable, (or request a fee waiver).

**Mailing Information**

Mail your application for TPS to the proper address in Table 1.

TABLE 1—MAILING ADDRESSES

| If you . . . | Mail to . . . |
| --- | --- |
| Are applying for re-registration and you live in the following states/territories: Alabama, Alaska, American Samoa, Arkansas, Colorado, Guam, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Mexico, New York, North Dakota, Northern Mariana Islands, Oklahoma, Puerto Rico, South Dakota, Tennessee, Texas, Utah, Virgin Islands, Wisconsin, Wyoming. | *U.S. Postal Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, P.O. Box 660864, Dallas, TX 75266.<br>*Non-U.S. Postal Delivery Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, 2501 S. State Highway, 121 Business Suite 400, Lewisville, TX 75067. |
| Are applying for re-registration and you live in the following states/territories: Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, Washington, DC, West Virginia. | *U.S. Postal Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, P.O. Box 8635, Chicago, IL 60680–8635.<br>*Non-U.S. Postal Delivery Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, 131 S. Dearborn—3rd Floor, Chicago, IL 60603–5517. |
| Are applying for re-registration and you live in the following states: Arizona, California, Nevada, Oregon, Washington. | *U.S. Postal Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, P.O. Box 21800, Phoenix, AZ 85036.<br>*Non-U.S. Postal Delivery Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, 1820 E. Skyharbor Circle S, Suite 100, Phoenix, AZ 85034. |
| Are applying for the first time as a late initial registration (this is for all states/territories). | *U.S. Postal Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, P.O. Box 8635, Chicago, IL 60680–8635.<br>*Non-U.S. Postal Delivery Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, 131 S. Dearborn—3rd Floor, Chicago, IL 60603–5517. |

If you were granted TPS by an Immigration Judge (IJ) or the Board of Immigration Appeals (BIA) and you wish to request an EAD or are re-registering for the first time following a grant of TPS by an IJ or the BIA, please mail your application to the appropriate mailing address in Table 1. When re-registering and requesting an EAD based on an IJ/BIA grant of TPS, please include a copy of the IJ or BIA order granting you TPS with your application. This will help us to verify your grant of TPS and process your application.

**Supporting Documents**

The filing instructions on the Form I–821 list all the documents needed to establish eligibility for TPS. You may also find information on the acceptable documentation and other requirements for applying or registering for TPS on the USCIS website at *www.uscis.gov/tps* under "El Salvador."

**Employment Authorization Document (EAD)**

*How can I obtain information on the status of my EAD request?*

To get case status information about your TPS application, including the status of an EAD request, you can check Case Status Online at *http:// www.uscis.gov,* or call the USCIS National Customer Service Center at 800–375–5283 (TTY 800–767–1833). If your Form I–765 has been pending for more than 90 days, and you still need assistance, you may request an EAD inquiry appointment with USCIS by using the InfoPass system at *https:// infopass.uscis.gov.* However, we strongly encourage you first to check Case Status Online or call the USCIS National Customer Service Center for assistance before making an InfoPass appointment.

*Am I eligible to receive an automatic 180-day extension of my current EAD through September 5, 2018, using this* **Federal Register** *notice?*

Yes. Provided that you currently have an El Salvador TPS-based EAD, this **Federal Register** notice automatically extends your EAD by 180 days (through September 5, 2018) if you:

• Are a national of El Salvador (or an alien having no nationality who last habitually resided in El Salvador);

• Have an EAD with a marked expiration date of March 9, 2018, bearing the notation A–12 or C–19 on the face of the card under Category.

Although this **Federal Register** notice automatically extends your EAD through September 5, 2018, you must re-register timely for TPS in accordance with the procedures described in this **Federal Register** notice if you would like to maintain your TPS.

*When hired, what documentation may I show to my employer as evidence of employment authorization and identity when completing Employment Eligibility Verification (Form I–9)?*

You can find a list of acceptable document choices on the "Lists of Acceptable Documents" for Form I–9. Employers must complete Form I–9 to verify the identity and employment authorization of all new employees. Within three days of hire, employees

(9 of 11), Page 9 of 11    Case: 25-2120, 05/28/2025, DktEntry: 49.18, Page 9 of 11
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 20 of 28

**2658**  **Federal Register**/Vol. 83, No. 12/Thursday, January 18, 2018/Notices

must present acceptable documents to their employers as evidence of identity and employment authorization to satisfy Form I–9 requirements.

You may present any document from List A (which provides evidence of both identity and employment authorization), or one document from List B (which provides evidence of your identity) together with one document from List C (which is evidence of employment authorization), or you may present an acceptable receipt for List A, List B, or List C documents as described in the Form I–9 Instructions. Employers may not reject a document based on a future expiration date. You can find additional detailed information about Form I–9 on USCIS' I–9 Central web page at *http://www.uscis.gov/I-9Central.*

An EAD is an acceptable document under List A. If your EAD has an expiration date of March 9, 2018, and states A–12 or C–19 under Category, it has been extended automatically for 180 days by virtue of this **Federal Register** notice and you may choose to present this Notice along with your EAD to your employer as proof of identity and employment eligibility for Form I–9 through September 5, 2018, unless your TPS has been withdrawn or your request for TPS has been denied. If you properly filed for a new EAD in accordance with this Notice, you will also receive Form I–797C, Notice of Action that will state your current A–12 or C–19 coded EAD is automatically extended for 180 days. You may choose to present your EAD to your employer together with this Form I–797C as a List A document that provides evidence of your identity and employment authorization for Form I–9 through September 5, 2018, unless your TPS has been withdrawn or your request for TPS has been denied. See the subsection titled, "How do my employer and I complete the Employment Eligibility Verification (Form I–9) using an automatically extended EAD for a new job?" for further information.

To reduce confusion over this extension at the time of hire, you should explain to your employer that your EAD has been automatically extended through September 5, 2018. You may also provide your employer with a copy of this **Federal Register** notice, which explains that your EAD has been automatically extended. As an alternative to presenting evidence of your automatically extended EAD, you may choose to present any other acceptable document from List A, a combination of one selection from List B and one selection from List C, or a valid receipt.

*What documentation may I present to my employer for Employment Eligibility Verification (Form I–9) if I am already employed but my current TPS-related EAD is set to expire?*

Even though your EAD has been automatically extended, your employer will need to ask you about your continued employment authorization no later than before you start work on March 10, 2018. You will need to present your employer with evidence that you are still authorized to work. Once presented, you may correct your employment authorization expiration date in Section 1 and your employer should correct the EAD expiration date in Section 2 of Form I–9. See the subsection titled, "What corrections should my current employer and I make to Employment Eligibility Verification (Form I–9) if my employment authorization has been automatically extended?" for further information. You may show this **Federal Register** notice to your employer to explain what to do for Form I–9 and to show that your EAD has been automatically extended through September 5, 2018. Your employer may need to reinspect your automatically extended EAD to check the expiration date and Category code to record the updated expiration date on your Form I–9 if your employer did not keep a copy of this EAD when you initially presented it. In addition, if you properly filed your Form I–765 to obtain a new EAD, you will receive a Form I–797C, Notice of Action. Form I–797C will state that your current A–12 or C–19 coded EAD is automatically extended for 180 days. You may present Form I–797C to your employer along with your EAD to confirm that the validity of your EAD has been automatically extended through September 5, 2018, unless your TPS has been withdrawn or your request for TPS has been denied. To reduce the possibility of gaps in your employment authorization documentation, you should file your Form I–765 to request a new EAD as early as possible during the re-registration period.

The last day of the automatic EAD extension is September 5, 2018. Before you start work on September 6, 2018, your employer must reverify your employment authorization. At that time, you must present any document from List A or any document from List C on Form I–9 Lists of Acceptable Documents, or an acceptable List A or List C receipt described in the Form I–9 Instructions to reverify employment authorization.

By September 6, 2018, your employer must complete Section 3 of the current version of the form, Form I–9 07/17/17 N, and attach it to the previously completed Form I–9, if your original Form I–9 was a previous version. Your employer can check the USCIS' I–9 Central web page at *http://www.uscis.gov/I-9Central* for the most current version of Form I–9.

Note that your employer may not specify which List A or List C document you must present and cannot reject an acceptable receipt.

*Can my employer require that I provide any other documentation to prove my status, such as proof of my Salvadoran citizenship?*

No. When completing Form I–9, including reverifying employment authorization, employers must accept any documentation that appears on the Form I–9 "Lists of Acceptable Documents" that reasonably appears to be genuine and that relates to you, or an acceptable List A, List B, or List C receipt. Employers need not reverify List B identity documents. Employers may not request documentation that does not appear on the "Lists of Acceptable Documents." Therefore, employers may not request proof of Salvadoran citizenship or proof of re-registration for TPS when completing Form I–9 for new hires or reverifying the employment authorization of current employees. If presented with EADs that have been automatically extended, employers should accept such documents as a valid List A document so long as the EAD reasonably appears to be genuine and relates to the employee. Refer to the Note to Employees section of this **Federal Register** notice for important information about your rights if your employer rejects lawful documentation, requires additional documentation, or otherwise discriminates against you based on your citizenship or immigration status, or your national origin.

*How do my employer and I complete Employment Eligibility Verification (Form I–9) using my automatically extended employment authorization for a new job?*

When using an automatically extended EAD to complete Form I–9 for a new job before September 6, 2018, you and your employer should do the following:

1. For Section 1, you should:

a. Check "An alien authorized to work until" and enter September 5, 2018, the automatically extended EAD expiration date as the "expiration date, if applicable, mm/dd/yyyy"; and

(10 of 11), Page 10 of 11    Case: 25-2120, 05/28/2025, DktEntry: 49.18, Page 10 of 11
Case 3:25-cv-01766-EMC    Document 103-4    Filed 04/07/25    Page 21 of 28

b. Enter your Alien Number/USCIS number or A-Number where indicated (your EAD or other document from DHS will have your USCIS number or A-Number printed on it; the USCIS number is the same as your A-Number without the A prefix).

2. For Section 2, employers should:

a. Determine if the EAD is auto-extended for 180 days by ensuring it is in category A–12 or C–19 and has a March 9, 2018 expiration date;

b. Write in the document title;

c. Enter the issuing authority;

d. Provide the document number; and

e. Insert September 5, 2018, the date that is 180 days from the date the current EAD expires.

If you also filed for a new EAD, as proof of the automatic extension of your employment authorization, you may present your expired or expiring EAD with category A–12 or C–19 in combination with the Form I–797C Notice of Action showing that the EAD renewal application was filed and that the qualifying eligibility category is either A–12 or C–19. Unless your TPS has been withdrawn or your request for TPS has been denied, this document combination is considered an unexpired EAD under List A. In these situations, to complete Section 2, employers should:

a. Determine if the EAD is auto-extended for 180 days by ensuring:

• It is in category A–12 or C–19; and

• The category code on the EAD is the same category code on Form I–797C, noting that employers should consider category codes A–12 and C–19 to be the same category code.

b. Write in the document title;

c. Enter the issuing authority;

d. Provide the document number; and

e. Insert September 5, 2018, the date that is 180 days from the date the current EAD expires. Before the start of work on September 6, 2018, employers must reverify the employee's employment authorization in Section 3 of Form I–9.

*What corrections should my current employer and I make to Employment Eligibility Verification (Form I–9) if my employment authorization has been automatically extended?*

If you presented a TPS-related EAD that was valid when you first started your job and your EAD has now been automatically extended, your employer may need to re-inspect your current EAD if they do not have a copy of the EAD on file. You may, and your employer should, correct your previously completed Form I–9 as follows:

1. For Section 1, you may:

a. Draw a line through the expiration date in Section 1;

b. Write September 5, 2018, the date that is 180 days from the date your current EAD expires above the previous date (March 9, 2018); and

c. Initial and date the correction in the margin of Section 1.

2. For Section 2, employers should:

a. Determine if the EAD is auto-extended for 180 days by ensuring:

• It is in category A–12 or C–19; and

• Has an expiration date of March 9, 2018.

b. Draw a line through the expiration date written in Section 2;

c. Write September 5, 2018, the date that is 180 days from the date the employee's current EAD expires above the previous date (March 9, 2018); and

d. Initial and date the correction in the Additional Information field in Section 2.

In the alternative, if you properly applied for a new EAD, you may present your expired EAD with category A–12 or C–19 in combination with the Form I–797C Notice of Action. The Form I–797C should show that the EAD renewal application was filed and that the qualifying eligibility category is either A–12 or C–19. To avoid confusion, you may also provide your employer a copy of this Notice. Your employer should correct your previously completed Form I–9 as follows:

For Section 2, employers should:

a. Determine if the EAD is auto-extended for 180 days by ensuring:

• It is in category A–12 or C–19; and

• The category code on the EAD is the same category code on Form I–797C, noting that employers should consider category codes A–12 and C–19 to be the same category code.

b. Draw a line through the expiration date written in Section 2;

c. Write September 5, 2018, the date that is 180 days from the date the employee's current EAD expires above the previous date (March 9, 2018); and

d. Initial and date the correction in the Additional Information field in Section 2.

Note: This is not considered a reverification. Employers do not need to complete Section 3 until either the 180-day extension has ended or the employee presents a new document to show continued employment authorization, whichever is sooner. By September 6, 2018, when the employee's automatically extended EAD has expired, employers must reverify the employee's employment authorization in Section 3.

*If I am an employer enrolled in E-Verify, how do I verify a new employee whose EAD has been automatically extended?*

Employers may create a case in E-Verify for a new employee using the EAD bearing the expiration date March 9, 2018, or the Form I–797C receipt information provided on Form I–9. In either case, the receipt number entered as the document number on Form I–9 should be entered into the document number field in E-Verify.

*If I am an employer enrolled in E-Verify, what do I do when I receive a "Work Authorization Documents Expiration" alert for an automatically extended EAD?*

E-Verify automated the verification process for employees whose TPS-related EAD was automatically extended. If you have employees who are TPS beneficiaries who provided a TPS-related EAD when they first started working for you, you will receive a "Work Authorization Documents Expiring" case alert when the auto-extension period for this EAD is about to expire. This indicates that you should update Form I–9 in accordance with the instructions above. Before such an employee starts to work on September 6, 2018, employment authorization must be reverified in Section 3. Employers should not use E-Verify for reverification.

**Note to All Employers**

Employers are reminded that the laws requiring proper employment eligibility verification and prohibiting unfair immigration-related employment practices remain in full force. This **Federal Register** notice does not supersede or in any way limit applicable employment verification rules and policy guidance, including those rules setting forth reverification requirements. For general questions about the employment eligibility verification process, employers may call USCIS at 888–464–4218 (TTY 877–875–6028) or email USCIS at *I-9Central@dhs.gov.* Calls and emails are accepted in English and many other languages. For questions about avoiding discrimination during the employment eligibility verification process (Form I–9 and E-Verify), employers may call the U.S. Department of Justice's Civil Rights Division, Immigrant and Employee Rights Section (IER) (formerly the Office of Special Counsel for Immigration-Related Unfair Employment Practices) Employer Hotline at 800–255–8155 (TTY 800–237–2515). The IER offers language interpretation in numerous

VZ Vacatur_0303

**2660**     **Federal Register** / Vol. 83, No. 12 / Thursday, January 18, 2018 / Notices

languages. Employers may also email IER at IER@usdoj.gov.

**Note to Employees**

For general questions about the employment eligibility verification process, employees may call USCIS at 888–897–7781 (TTY 877–875–6028) or email USCIS at I–9Central@dhs.gov. Calls are accepted in English, Spanish, and many other languages. Employees or applicants may also call the IER Worker Hotline at 800–255–7688 (TTY 800–237–2515) for information regarding employment discrimination based upon citizenship, immigration status, or national origin, including discrimination related to Employment Eligibility Verification (Form I–9) and E-Verify. The IER Worker Hotline provides language interpretation in numerous languages.

To comply with the law, employers must accept any document or combination of documents from the Lists of Acceptable Documents if the documentation reasonably appears to be genuine and to relate to the employee, or an acceptable List A, List B, or List C receipt as described in the Employment Eligibility Verification (Form I–9) Instructions. Employers may not require extra or additional documentation beyond what is required for Form I–9 completion. Further, employers participating in E-Verify who receive an E-Verify case result of "Tentative Nonconfirmation" (TNC) must promptly inform employees of the TNC and give such employees an opportunity to contest the TNC. A TNC case result means that the information entered into E-Verify from an employee's Form I–9 differs from Federal or state government records.

Employers may not terminate, suspend, delay training, withhold pay, lower pay, or take any adverse action against an employee because of the TNC while the case is still pending with E-Verify. A Final Nonconfirmation (FNC) case result is received when E-Verify cannot verify an employee's employment eligibility. An employer may terminate employment based on a case result of FNC. Work-authorized employees who receive an FNC may call USCIS for assistance at 888–897–7781 (TTY 877–875–6028). For more information about E-Verify-related discrimination or to report an employer for discrimination in the E-Verify process based on citizenship, immigration status, or national origin, contact IER's Worker Hotline at 800–255–7688 (TTY 800–237–2515). Additional information about proper nondiscriminatory Form I–9 and E-Verify procedures is available on the IER website at https://www.justice.gov/ier and the USCIS website at http://www.dhs.gov/E-verify.

**Note Regarding Federal, State, and Local Government Agencies (Such as Departments of Motor Vehicles)**

While Federal Government agencies must follow the guidelines laid out by the Federal Government, state and local government agencies establish their own rules and guidelines when granting certain benefits. Each state may have different laws, requirements, and determinations about what documents you need to provide to prove eligibility for certain benefits. Whether you are applying for a Federal, state, or local government benefit, you may need to provide the government agency with documents that show you are a TPS beneficiary and/or show you are authorized to work based on TPS. Examples of such documents are:

(1) Your current EAD;
(2) A copy of your Notice of Action (Form I–797C), the notice of receipt, for your application to renew your current EAD providing an automatic extension of your currently expired or expiring EAD;
(3) A copy of your Notice of Action (Form I–797C), the notice of receipt, for your Application for Temporary Protected Status for this re-registration; and
(4) A copy of your Notice of Action (Form I–797), the notice of approval, for a past or current Application for Temporary Protected Status, if you received one from USCIS. Check with the government agency regarding which document(s) the agency will accept. Some benefit-granting agencies use the USCIS Systematic Alien Verification for Entitlements (SAVE) program to confirm the current immigration status of applicants for public benefits. In most cases, SAVE provides an automated electronic response to benefit-granting agencies within seconds, but, occasionally, verification can be delayed. You can check the status of your SAVE verification by using CaseCheck at the following link: https://save.uscis.gov/casecheck/, then by clicking the "Check Your Case" button. CaseCheck is a free service that lets you follow the progress of your SAVE verification using your date of birth and one immigration identifier number. If an agency has denied your application based solely or in part on a SAVE response, the agency must offer you the opportunity to appeal the decision in accordance with the agency's procedures. If the agency has received and acted upon or will act upon a SAVE verification and you do not believe the response is correct, you may make an InfoPass appointment for an in-person interview at a local USCIS office. Detailed information on how to make corrections, make an appointment, or submit a written request to correct records under the Freedom of Information Act can be found on the SAVE website at http://www.uscis.gov/save.

[FR Doc. 2018–00885 Filed 1–17–18; 8:45 am]

**BILLING CODE 9111–97–P**

---

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

[Docket No. FR–6047–D–01]

**Consolidated Delegation of Authority for the Government National Mortgage Association (Ginnie Mae)**

**AGENCY:** Office of the Secretary, HUD.

**ACTION:** Notice of delegation of authority.

---

**SUMMARY:** This notice is issued to consolidate the authorities delegated from the Secretary to the President and Executive Vice President—Chief Operations Officer of the Government National Mortgage Association (Ginnie Mae).

**DATES:** *Applicability date:* December 19, 2017.

**FOR FURTHER INFORMATION CONTACT:** Senior Vice President and Chief Risk Officer, Office of Enterprise Risk, Government National Mortgage Association, Department of Housing and Urban Development, Capital View, 425 3rd Street SW, 4th Floor, Washington, DC 20024; telephone number 202–475–4918 (this is not a toll-free number). Persons with hearing- or speech-impairments may access this number through TTY by calling the Federal Relay Service at 1–800–877–8339 (this is a toll-free number).

**SUPPLEMENTARY INFORMATION:** Ginnie Mae is a wholly owned U.S. Government corporation within the Department of Housing and Urban Development. Ginnie Mae's organic statute vests all the powers and duties of Ginnie Mae in the Secretary of HUD (12 U.S.C. 1723).

In Ginnie Mae's bylaws, the Secretary has delegated all the powers and duties of Ginnie Mae that were vested in the Secretary to Ginnie Mae. In previous **Federal Register** notices, the Secretary has delegated authority over Ginnie Mae to the Ginnie Mae President. Specifically, the Secretary has delegated: (1) All the Secretary's authority with respect to managing