DOCUMENT 2.5

(2 of 14), Page 2 of 14    Case: 25-2120, 05/28/2025, DktEntry: 49.25, Page 2 of 14
Case 3:25-cv-01766-EMC    Document 104-2    Filed 04/07/25    Page 1 of 35

Federal Register / Vol. 86, No. 44 / Tuesday, March 9, 2021 / Notices    13581

**Note Regarding Federal, State, and Local Government Agencies (Such as Departments of Motor Vehicles)**

For Federal purposes, individuals approved for TPS may show their Form I–797, Notice of Action, indicating approval of their Form I–821 application, or their A12 or C19 EAD to prove that they have TPS. Individuals may present their A11 EAD to show they are covered by DED. However, while Federal Government agencies must follow the guidelines laid out by the Federal Government, state and local government agencies establish their own rules and guidelines when granting certain benefits. Each state may have different laws, requirements, and determinations about what documents you need to provide to prove eligibility for certain benefits. Whether you are applying for a Federal, state, or local government benefit, you may need to provide the government agency with documents that show you are covered under TPS and/or DED and/or show you are authorized to work based on TPS and/or DED. Examples of such documents are:

• Your new EAD with a category code of A12 or C19 for TPS, or A11 for DED;
• A copy of your Form I–797, the notice of approval, for a current Form I–821, if you received one from USCIS; or
• Any other relevant DHS-issued document that indicates your immigration status or authorization to be in the United States, or that may be used by DHS to determine whether you have such status or authorization to remain in the United States.

Check with the government agency regarding which document(s) the agency will accept.

Some benefit-granting agencies use the SAVE program to confirm the current immigration status of applicants for public benefits. SAVE can verify when an individual has TPS or DED based on the documents above. In most cases, SAVE provides an automated electronic response to benefit-granting agencies within seconds, but occasionally verification can be delayed. You can check the status of your SAVE verification by using CaseCheck at *uscis.gov/save/save-casecheck,* then by clicking the "Check Your Case" button. CaseCheck is a free service that lets you follow the progress of your SAVE verification using your date of birth and SAVE verification case number or an immigration identifier number that you provided to the benefit-granting agency. If an agency has denied your application based solely or in part on a SAVE response, the agency must offer you the opportunity to appeal the decision in accordance with the agency's procedures. If the agency has received and acted on or will act on a SAVE verification and you do not believe the response is correct, find detailed information on how to make corrections or update your immigration record, make an appointment, or submit a written request to correct records on the SAVE website at *www.uscis.gov/save.*

[FR Doc. 2021–04951 Filed 3–8–21; 4:15 pm]

**BILLING CODE 9111–97–P**

---

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**[Docket No. FR–7040–N–05]**

**60-Day Notice of Proposed Information Collection: Public Housing Assessment System (PHAS) Appeals; PHAS Unaudited Financial Statement Submission Extensions; Assisted and Insured Housing Property Inspection Technical Reviews and Database Adjustments; OMB Control No. 2577–0257**

**AGENCY:** Office of the Assistant Secretary for Public and Indian Housing, PIH, HUD.

**ACTION:** Notice.

---

**SUMMARY:** HUD is seeking approval from the Office of Management and Budget (OMB) for the information collection described below. In accordance with the Paperwork Reduction Act, HUD is requesting comment from all interested parties on the proposed collection of information. The purpose of this notice is to allow for 60 days of public comment.

**DATES:** *Comments Due Date:* May 10, 2021.

**ADDRESSES:** Interested persons are invited to submit comments regarding this proposal. Comments should refer to the proposal by name and/or OMB Control Number and should be sent to: Colette Pollard, Reports Management Officer, QDAM, Department of Housing and Urban Development, 451 7th Street SW, Room 4176, Washington, DC 20410–5000; telephone 202–402–5564 (this is not a toll-free number) or email at *Colette.Pollard@hud.gov* for a copy of the proposed forms or other available information. Persons with hearing or speech impairments may access this number through TTY by calling the Federal Relay Service at (800) 877–8339 (this is a toll-free number).

**FOR FURTHER INFORMATION CONTACT:** Dacia Rogers, Office of Policy, Programs and Legislative Initiatives, PIH, Department of Housing and Urban Development, 451 7th Street SW, Washington, DC 20410; telephone 202–402–3374, (this is not a toll-free number). Persons with hearing or speech impairments may access this number via TTY by calling the Federal Relay Service at (800) 877–8339 (this is a toll-free number). Copies of available documents submitted to OMB may be obtained from Ms. Rogers.

**SUPPLEMENTARY INFORMATION:** This notice informs the public that HUD is seeking approval from OMB for the information collection described in Section A.

**A. Overview of Information Collection**

*Title of Information Collection:* Public Housing Assessment System (PHAS) Appeals; Public Housing and Multifamily Housing Technical Reviews and Database Adjustments; Assisted and Insured Housing property inspection Technical Reviews and Database Adjustments.

*OMB Approval Number:* 2577–0257.

*Type of Request:* Revision of a currently approved collection.

*Form Number:* HUD–52306.

*Description of the need for the information and proposed use:* The collection of this information supports HUD's ongoing mission to provide safe, decent, and habitable housing to low income households. To ensure HUD's subsidized housing meets this criteria accurate data and information collection is required to provide an assessment reflective of the property's condition. Poorly performing PHAs may be subject to additional reporting requirements, may receive HUD assistance, and are subject to possible penalties. For the Office of Housing, accurate scores are vital to their monitoring and compliance efforts. Unacceptable property scores result in automatic penalties and referral for enforcement actions.

Pursuant to § 6(j)(2)(A)(iii) the United States Housing Act of 1937, as amended, HUD established procedures in the Public Housing Assessment System (PHAS) rule for a public housing agencies (PHAs) to appeal an overall PHAS score or a troubled designation (§ 902.69). The PHAS rule in §§ 902.24 and 902.68 also provides that under certain circumstances PHAs may submit a request for a database adjustment and technical review, respectively, of physical condition inspection results.

Pursuant to the Office of Housing Physical Condition of Multifamily Properties regulation at § 200.857(d) and (e), multifamily property owners also have the right, under certain circumstances, to submit a request for a database adjustment and technical

(3 of 14), Page 3 of 14    Case: 25-2120, 05/28/2025, DktEntry: 49.25, Page 3 of 14
Case 3:25-cv-01766-EMC    Document 104-2    Filed 04/07/25    Page 2 of 35

Federal Register / Vol. 90, No. 18 / Wednesday, January 29, 2025 / Presidential Documents    8443

# Presidential Documents

Executive Order 14159 of January 20, 2025

## Protecting the American People Against Invasion

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the Immigration and Nationality Act (INA) (8 U.S.C. 1101 *et seq.*) and section 301 of title 3, United States Code, it is hereby ordered:

**Section 1.** *Purpose.* Over the last 4 years, the prior administration invited, administered, and oversaw an unprecedented flood of illegal immigration into the United States. Millions of illegal aliens crossed our borders or were permitted to fly directly into the United States on commercial flights and allowed to settle in American communities, in violation of longstanding Federal laws.

Many of these aliens unlawfully within the United States present significant threats to national security and public safety, committing vile and heinous acts against innocent Americans. Others are engaged in hostile activities, including espionage, economic espionage, and preparations for terror-related activities. Many have abused the generosity of the American people, and their presence in the United States has cost taxpayers billions of dollars at the Federal, State, and local levels.

Enforcing our Nation's immigration laws is critically important to the national security and public safety of the United States. The American people deserve a Federal Government that puts their interests first and a Government that understands its sacred obligation to prioritize the safety, security, and financial and economic well-being of Americans.

This order ensures that the Federal Government protects the American people by faithfully executing the immigration laws of the United States.

**Sec. 2.** *Policy.* It is the policy of the United States to faithfully execute the immigration laws against all inadmissible and removable aliens, particularly those aliens who threaten the safety or security of the American people. Further, it is the policy of the United States to achieve the total and efficient enforcement of those laws, including through lawful incentives and detention capabilities.

**Sec. 3.** *Faithful Execution of the Immigration Laws.* In furtherance of the policies described in section 2 of this order:

   (a) Executive Order 13993 of January 20, 2021 (Revision of Civil Immigration Enforcement Policies and Priorities), Executive Order 14010 of February 2, 2021 (Creating a Comprehensive Regional Framework To Address the Causes of Migration, To Manage Migration Throughout North and Central America, and To Provide Safe and Orderly Processing of Asylum Seekers at the United States Border), Executive Order 14011 of February 2, 2021 (Establishment of Interagency Task Force on the Reunification of Families), and Executive Order 14012 of February 2, 2021 (Restoring Faith in Our Legal Immigration Systems and Strengthening Integration and Inclusion Efforts for New Americans) are hereby revoked; and

   (b) Executive departments and agencies (agencies) shall take all appropriate action to promptly revoke all memoranda, guidance, or other policies based on the Executive Orders revoked in section 3(a) of this order and shall employ all lawful means to ensure the faithful execution of the immigration laws of the United States against all inadmissible and removable aliens.

(4 of 14), Page 4 of 14    Case: 25-2120, 05/28/2025, DktEntry: 49.25, Page 4 of 14
Case 3:25-cv-01766-EMC    Document 104-2    Filed 04/07/25    Page 3 of 35

**8444**    **Federal Register**/Vol. 90, No. 18/Wednesday, January 29, 2025/Presidential Documents

**Sec. 4**. *Civil Enforcement Priorities.* The Secretary of Homeland Security shall take all appropriate action to enable the Director of U.S. Immigration and Customs Enforcement, the Commissioner of U.S. Customs and Border Protection, and the Director of U.S. Citizenship and Immigration Services to set priorities for their agencies that protect the public safety and national security interests of the American people, including by ensuring the successful enforcement of final orders of removal. Further, the Secretary of Homeland Security shall ensure that the primary mission of U.S. Immigration and Customs Enforcement's Homeland Security Investigations division is the enforcement of the provisions of the INA and other Federal laws related to the illegal entry and unlawful presence of aliens in the United States and the enforcement of the purposes of this order.

**Sec. 5**. *Criminal Enforcement Priorities.* The Attorney General, in coordination with the Secretary of State and the Secretary of Homeland Security, shall take all appropriate action to prioritize the prosecution of criminal offenses related to the unauthorized entry or continued unauthorized presence of aliens in the United States.

**Sec. 6**. *Federal Homeland Security Task Forces.* (a) The Attorney General and the Secretary of Homeland Security shall take all appropriate action to jointly establish Homeland Security Task Forces (HSTFs) in all States nationwide.

(b) The composition of each HSTF shall be subject to the direction of the Attorney General and the Secretary of Homeland Security, but shall include representation from any other Federal agencies with law enforcement officers, or agencies with the ability to provide logistics, intelligence, and operational support to the HSTFs, and shall also include representation from relevant State and local law enforcement agencies. The heads of all Federal agencies shall take all appropriate action to provide support to the Attorney General and the Secretary of Homeland Security to ensure that the HSTFs fulfill the objectives in subsection (c) of this section, and any other lawful purpose that fulfills the policy objectives of this order.

(c) The objective of each HSTF is to end the presence of criminal cartels, foreign gangs, and transnational criminal organizations throughout the United States, dismantle cross-border human smuggling and trafficking networks, end the scourge of human smuggling and trafficking, with a particular focus on such offenses involving children, and ensure the use of all available law enforcement tools to faithfully execute the immigration laws of the United States.

(d) The Attorney General and the Secretary of Homeland Security shall take all appropriate action to provide an operational command center to coordinate the activities of the HSTFs and provide such support as they may require, and shall also take all appropriate action to provide supervisory direction to their activities as may be required.

**Sec. 7**. *Identification of Unregistered Illegal Aliens.* The Secretary of Homeland Security, in coordination with the Secretary of State and the Attorney General, shall take all appropriate action to:

(a) Immediately announce and publicize information about the legal obligation of all previously unregistered aliens in the United States to comply with the requirements of part VII of subchapter II of chapter 12 of title 8, United States Code;

(b) Ensure that all previously unregistered aliens in the United States comply with the requirements of part VII of subchapter II of chapter 12 of title 8, United States Code; and

(c) Ensure that failure to comply with the legal obligations of part VII of subchapter II of chapter 12 of title 8, United States Code, is treated as a civil and criminal enforcement priority.

**Sec. 8**. *Civil Fines and Penalties.* (a) The Secretary of Homeland Security, in coordination with the Secretary of Treasury, shall take all appropriate action to ensure the assessment and collection of all fines and penalties

(5 of 14), Page 5 of 14     Case: 25-2120, 05/28/2025, DktEntry: 49.25, Page 5 of 14
Case 3:25-cv-01766-EMC    Document 104-2    Filed 04/07/25    Page 4 of 35

Federal Register / Vol. 90, No. 18 / Wednesday, January 29, 2025 / Presidential Documents      8445

that the Secretary of Homeland Security is authorized by law to assess and collect from aliens unlawfully present in the United States, including aliens who unlawfully entered or unlawfully attempted to enter the United States, and from those who facilitate such aliens' presence in the United States.

(b) Within 90 days of the date of this order, the Secretary of the Treasury and the Secretary of Homeland Security shall submit a report to the President regarding their progress implementing the requirements of this section and recommending any additional actions that may need to be taken to achieve its objectives.

**Sec. 9**. *Efficient Removals of Recent Entrants and Other Aliens.* The Secretary of Homeland Security shall take all appropriate action, pursuant to section 235(b)(1)(A)(iii)(I) of the INA (8 U.S.C. 1225(b)(1)(A)(iii)(I)), to apply, in her sole and unreviewable discretion, the provisions of section 235(b)(1)(A)(i) and (ii) of the INA to the aliens designated under section 235(b)(1)(A)(iii)(II). Further, the Secretary of Homeland Security shall promptly take appropriate action to use all other provisions of the immigration laws or any other Federal law, including, but not limited to sections 238 and 240(d) of the INA (8 U.S.C. 1228 and 1229a(d)), to ensure the efficient and expedited removal of aliens from the United States.

**Sec. 10**. *Detention Facilities.* The Secretary of Homeland Security shall promptly take all appropriate action and allocate all legally available resources or establish contracts to construct, operate, control, or use facilities to detain removable aliens. The Secretary of Homeland Security, further, shall take all appropriate actions to ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country, to the extent permitted by law.

**Sec. 11**. *Federal-State Agreements.* To ensure State and local law enforcement agencies across the United States can assist with the protection of the American people, the Secretary of Homeland Security shall, to the maximum extent permitted by law, and with the consent of State or local officials as appropriate, take appropriate action, through agreements under section 287(g) of the INA (8 U.S.C. 1357(g)) or otherwise, to authorize State and local law enforcement officials, as the Secretary of Homeland Security determines are qualified and appropriate, to perform the functions of immigration officers in relation to the investigation, apprehension, or detention of aliens in the United States under the direction and the supervision of the Secretary of Homeland Security. Such authorization shall be in addition to, rather than in place of, Federal performance of these duties. To the extent permitted by law, the Secretary of Homeland Security may structure each agreement under section 287(g) of the INA (8 U.S.C. 1357(g)) in the manner that provides the most effective model for enforcing Federal immigration laws in that jurisdiction.

**Sec. 12**. *Encouraging Voluntary Compliance with the Law.* The Secretary of Homeland Security shall take all appropriate action, in coordination with the Secretary of State and the Attorney General, and subject to adequate safeguards, assurances, bonds, and any other lawful measure, to adopt policies and procedures to encourage aliens unlawfully in the United States to voluntarily depart as soon as possible, including through enhanced usage of the provisions of section 240B of the INA (8 U.S.C. 1229c), international agreements or assistance, or any other measures that encourage aliens unlawfully in the United States to depart as promptly as possible, including through removals of aliens as provided by section 250 of the INA (8 U.S.C. 1260).

**Sec. 13**. *Recalcitrant Countries.* The Secretary of State and the Secretary of Homeland Security shall take all appropriate action to:

(a) Cooperate and effectively implement, as appropriate, the sanctions provided by section 243(d) of the INA (8 U.S.C. 1253(d)), with the Secretary of State, to the maximum extent permitted by law, ensuring that diplomatic

(6 of 14), Page 6 of 14    Case: 25-2120, 05/28/2025, DktEntry: 49.25, Page 6 of 14
Case 3:25-cv-01766-EMC   Document 104-2   Filed 04/07/25   Page 5 of 35

**8446** **Federal Register**/Vol. 90, No. 18/Wednesday, January 29, 2025/Presidential Documents

efforts and negotiations with foreign states include the foreign states' acceptance of their nationals who are subject to removal from the United States; and

(b) Eliminate all documentary barriers, dilatory tactics, or other restrictions that prevent the prompt repatriation of aliens to any foreign state. Any failure or delay by a foreign state to verify the identity of a national of that state shall be considered in carrying out subsection (a) this section, and shall also be considered regarding the issuance of any other sanctions that may be available to the United States.

**Sec. 14**. *Visa Bonds.* The Secretary of Treasury shall take all appropriate action, in coordination with the Secretary of State and the Secretary of Homeland Security, to establish a system to facilitate the administration of all bonds that the Secretary of State or the Secretary of Homeland Security may lawfully require to administer the provisions of the INA.

**Sec. 15**. *Reestablishment of the VOICE Office and Addressing Victims of Crimes Committed by Removable Aliens.* The Secretary of Homeland Security shall direct the Director of U.S. Immigration and Customs Enforcement (ICE) to take all appropriate and lawful action to reestablish within ICE an office to provide proactive, timely, adequate, and professional services to victims of crimes committed by removable aliens, and those victims' family members. The Attorney General shall also ensure that the provisions of 18 U.S.C. 3771 are followed in all Federal prosecutions involving crimes committed by removable aliens.

**Sec. 16**. *Addressing Actions by the Previous Administration.* The Secretary of State, the Attorney General, and the Secretary of Homeland Security shall promptly take all appropriate action, consistent with law, to rescind the policy decisions of the previous administration that led to the increased or continued presence of illegal aliens in the United States, and align any and all departmental activities with the policies set out by this order and the immigration laws. Such action should include, but is not limited to:

(a) ensuring that the parole authority under section 212(d)(5) of the INA (8 U.S.C. 1182(d)(5)) is exercised on only a case-by-case basis in accordance with the plain language of the statute, and in all circumstances only when an individual alien demonstrates urgent humanitarian reasons or a significant public benefit derived from their particular continued presence in the United States arising from such parole;

(b) ensuring that designations of Temporary Protected Status are consistent with the provisions of section 244 of the INA (8 U.S.C. 1254a), and that such designations are appropriately limited in scope and made for only so long as may be necessary to fulfill the textual requirements of that statute; and

(c) ensuring that employment authorization is provided in a manner consistent with section 274A of the INA (8 U.S.C. 1324a), and that employment authorization is not provided to any unauthorized alien in the United States.

**Sec. 17**. *Sanctuary Jurisdictions.* The Attorney General and the Secretary of Homeland Security shall, to the maximum extent possible under law, evaluate and undertake any lawful actions to ensure that so-called "sanctuary" jurisdictions, which seek to interfere with the lawful exercise of Federal law enforcement operations, do not receive access to Federal funds. Further, the Attorney General and the Secretary of Homeland Security shall evaluate and undertake any other lawful actions, criminal or civil, that they deem warranted based on any such jurisdiction's practices that interfere with the enforcement of Federal law.

**Sec. 18**. *Information Sharing.* (a) The Secretary of Homeland Security shall promptly issue guidance to ensure maximum compliance by Department of Homeland Security personnel with the provisions of 8 U.S.C. 1373 and 8 U.S.C. 1644 and ensure that State and local governments are provided with the information necessary to fulfill law enforcement, citizenship, or immigration status verification requirements authorized by law; and

(7 of 14), Page 7 of 14    Case: 25-2120, 05/28/2025, DktEntry: 49.25, Page 7 of 14
Case 3:25-cv-01766-EMC    Document 104-2    Filed 04/07/25    Page 6 of 35

**Federal Register** / Vol. 90, No. 18 / Wednesday, January 29, 2025 / Presidential Documents    8447

(b) The Attorney General, the Secretary of Health and Human Services, and the Secretary of Homeland Security shall take all appropriate action to stop the trafficking and smuggling of alien children into the United States, including through the sharing of any information necessary to assist in the achievement of that objective.

**Sec. 19**. *Funding Review.* The Attorney General and the Secretary of Homeland Security shall:

(a) Immediately review and, if appropriate, audit all contracts, grants, or other agreements providing Federal funding to non-governmental organizations supporting or providing services, either directly or indirectly, to removable or illegal aliens, to ensure that such agreements conform to applicable law and are free of waste, fraud, and abuse, and that they do not promote or facilitate violations of our immigration laws;

(b) Pause distribution of all further funds pursuant to such agreements pending the results of the review in subsection (a) of this section;

(c) Terminate all such agreements determined to be in violation of law or to be sources of waste, fraud, or abuse and prohibit any such future agreements;

(d) Coordinate with the Director of the Office of Management and Budget to ensure that no funding for agreements described in subsection (c) of this section is included in any appropriations request for the Department of Justice or the Department of Homeland Security; and

(e) Initiate clawback or recoupment procedures, if appropriate, for any agreements described in subsection (c) of this section.

**Sec. 20**. *Denial of Public Benefits to Illegal Aliens.* The Director of the Office of Management and Budget shall take all appropriate action to ensure that all agencies identify and stop the provision of any public benefits to any illegal alien not authorized to receive them under the provisions of the INA or other relevant statutory provisions.

**Sec. 21**. *Hiring More Agents and Officers.* Subject to available appropriations, the Secretary of Homeland Security, through the Commissioner of U.S. Customs and Border Protection and the Director of U.S. Immigration and Customs Enforcement, shall take all appropriate action to significantly increase the number of agents and officers available to perform the duties of immigration officers.

**Sec. 22**. *Severability.* It is the policy of the United States to enforce this order to the maximum extent possible to advance the interests of the United States. Accordingly:

(a) If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of its other provisions to any other persons or circumstances shall not be affected thereby; and

(b) If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid because of the failure to follow certain procedures, the relevant executive branch officials shall implement those procedural requirements to conform with existing law and with any applicable court orders.

**Sec. 23**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party

(8 of 14), Page 8 of 14     Case: 25-2120, 05/28/2025, DktEntry: 49.25, Page 8 of 14
Case 3:25-cv-01766-EMC   Document 104-2   Filed 04/07/25   Page 7 of 35

**8448**  **Federal Register**/Vol. 90, No. 18/Wednesday, January 29, 2025/Presidential Documents

against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

*[Signature: Donald Trump]*

THE WHITE HOUSE,
*January 20, 2025.*

[FR Doc. 2025–02006
Filed 1–28–25; 11:15 am]
Billing code 3395–F4–P

Federal Register / Vol. 90, No. 18 / Wednesday, January 29, 2025 / Presidential Documents          8439

# Presidential Documents

Executive Order 14157 of January 20, 2025

Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the Immigration and Nationality Act (INA), 8 U.S.C. 1101 *et seq.*, the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. 1701 *et seq.* it is hereby ordered:

**Section 1.** *Purpose.* This order creates a process by which certain international cartels (the Cartels) and other organizations will be designated as Foreign Terrorist Organizations, consistent with section 219 of the INA (8 U.S.C. 1189), or Specially Designated Global Terrorists, consistent with IEEPA (50 U.S.C. 1702) and Executive Order 13224 of September 23, 2001 (Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), as amended.

(a) International cartels constitute a national-security threat beyond that posed by traditional organized crime, with activities encompassing:

(i) convergence between themselves and a range of extra-hemispheric actors, from designated foreign-terror organizations to antagonistic foreign governments;

(ii) complex adaptive systems, characteristic of entities engaged in insurgency and asymmetric warfare; and

(iii) infiltration into foreign governments across the Western Hemisphere.

The Cartels have engaged in a campaign of violence and terror throughout the Western Hemisphere that has not only destabilized countries with significant importance for our national interests but also flooded the United States with deadly drugs, violent criminals, and vicious gangs.

The Cartels functionally control, through a campaign of assassination, terror, rape, and brute force nearly all illegal traffic across the southern border of the United States. In certain portions of Mexico, they function as quasi-governmental entities, controlling nearly all aspects of society. The Cartels' activities threaten the safety of the American people, the security of the United States, and the stability of the international order in the Western Hemisphere. Their activities, proximity to, and incursions into the physical territory of the United States pose an unacceptable national security risk to the United States.

(b) Other transnational organizations, such as Tren de Aragua (TdA) and La Mara Salvatrucha (MS–13) pose similar threats to the United States. Their campaigns of violence and terror in the United States and internationally are extraordinarily violent, vicious, and similarly threaten the stability of the international order in the Western Hemisphere.

(c) The Cartels and other transnational organizations, such as TdA and MS–13, operate both within and outside the United States. They present an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States. I hereby declare a national emergency, under IEEPA, to deal with those threats.

**Sec. 2.** *Policy.* It is the policy of the United States to ensure the total elimination of these organizations' presence in the United States and their ability to threaten the territory, safety, and security of the United States

VZ Termination_0103

(10 of 14), Page 10 of 14    Case: 25-2120, 05/28/2025, DktEntry: 49.25, Page 10 of 14
Case 3:25-cv-01766-EMC    Document 104-2    Filed 04/07/25    Page 9 of 35

**8440** **Federal Register** / Vol. 90, No. 18 / Wednesday, January 29, 2025 / Presidential Documents

through their extraterritorial command-and-control structures, thereby protecting the American people and the territorial integrity of the United States.

**Sec. 3**. *Implementation.* (a) Within 14 days of the date of this order, the Secretary of State shall take all appropriate action, in consultation with the Secretary of the Treasury, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence, to make a recommendation regarding the designation of any cartel or other organization described in section 1 of this order as a Foreign Terrorist Organization consistent with 8 U.S.C. 1189 and/or a Specially Designated Global Terrorist consistent with 50 U.S.C. 1702 and Executive Order 13224.

(b) Within 14 days of the date of this order, the Attorney General and the Secretary of Homeland Security shall take all appropriate action, in consultation with the Secretary of State, to make operational preparations regarding the implementation of any decision I make to invoke the Alien Enemies Act, 50 U.S.C. 21 *et seq.,* in relation to the existence of any qualifying invasion or predatory incursion against the territory of the United States by a qualifying actor, and to prepare such facilities as necessary to expedite the removal of those who may be designated under this order.

**Sec. 4**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

*[Signature: Donald Trump]*

THE WHITE HOUSE,
*January 20, 2025.*

[FR Doc. 2025–02004
Filed 1–28–25; 11:15 am]
Billing code 3395–F4–P

VZ Termination_0104

**16608** Federal Register / Vol. 62, No. 66 / Monday, April 7, 1997 / Notices

**DATES:** This notice is effective May 7, 1997.

**FOR FURTHER INFORMATION CONTACT:**
Ms. Karen FitzGerald, Staff Officer, Immigration and Naturalization Service, Adjudications and Nationality Division, 425 I Street, NW., Room 3214, Washington, DC 20536, telephone (202) 514–5014.

**SUPPLEMENTARY INFORMATION:**

**Background**

Under 8 CFR 103.2(a), applications submitted to the Service must be executed and filed in accordance with the instructions on the application form. By eliminating specific reference to filing location, this regulation provides service center directors with the authority to accept and process applications designated for Direct Mail. It also provides the Service with the flexibility to shift filings to the service centers as the Direct Mail Program continues to expand.

Recent legislation and the publication of an interim rule on March 26, 1996, at 59 FR 13061 have led the Service to conclude that expansion of the use of the direct mail program to include I–360 petitions filed in accordance with the provisions of the Violence Against Women Act (VAWA) is warranted.

It is the intent of the Service to ensure sensitive and expeditious processing of the petitions filed by this class of at-risk applicants. Institution of a centralized direct mail filing process enables the Service to accomplish this and engenders uniformity in the adjudication of all applications of this type. This modification also enhances the Service's ability to be more responsive to inquiries from applicants, their representatives, and benefit-granting agencies.

**Where to File**

Effective May 7, 1997, Form I–360 for self-petitioning battered spouses and children residing within the United States must be mailed, with all supporting documentation, directly to the following address: USINS Vermont Service Center, 75 Lower Weldon Street, St. Albans, VT 05479. Applicants may obtain the Form I–360 by telephoning the toll-free INS Forms Request Line, 1–800–870–3676.

**Special Note**

This notice does not apply to I–360 petitions filed by Amerasians, widow(er)s, or special immigrants.

**Transition**

During the first 30 days following the effective date of this notice, district offices and service centers will forward to the Vermont Service Center, in a timely manner, any Form I–360 filed by a self-petitioning battered spouse or child, which has been inadvertently mailed to an office other than the Vermont Service Center. Petitions filed prior to the effective date of this notice will be adjudicated at the place of initial filing.

Appeals or motions to reopen or reconsider denied I–360 petitions submitted to the Service prior to May 7, 1997 will be processed by the office where the I–360 was originally filed and adjudicated. Appeals and motions filed during the transition period, and after this notice goes into effect, should be filed with the Vermont Service Center and will be processed by that office.

During the transition period, the Service intends to work closely with community organizations and advocacy groups to provide information and assistance to the public regarding this change.

After the 30-day transition period, self-petitioning battered spouses and children will be directed to mail the Form I–360 to the Vermont Service Center for processing.

Dated: March 22, 1997.

Doris Meissner,
*Commissioner, Immigration and Naturalization Service.*
[FR Doc. 97–8835 Filed 4–4–97; 8:45 am]
BILLING CODE 4410–10–M

---

**DEPARTMENT OF JUSTICE**

**Immigration and Naturalization Service**

[INS No. 1832–97; AG Order No. 2076–97]

RIN 1115–AE26

**Extension of Designation and Redesignation of Liberia Under Temporary Protected Status Program**

**AGENCY:** Immigration and Naturalization Service, Justice.

**ACTION:** Notice.

---

**SUMMARY:** This notice extends the designation of Liberia under the Temporary Protected Status ("TPS") program for an additional 12 months (until March 28, 1998) in accordance with sections 244(b)(3)(A) and (C) of the Immigration and Nationality Act, as amended ("the Act" or "INA"). This notice also describes the procedures with which eligible aliens, who are nationals of Liberia (or who have no nationality and who last habitually resided in Liberia), must comply to re-register for TPS. Re-registration for the TPS extension period is limited to persons who already have registered for the initial period of TPS, which ended on March 27, 1992.

Pursuant to section 244(b)(1) of the Act, this notice concurrently designates Liberia anew ("redesignates") under the TPS program. This redesignation of Liberia makes TPS available to eligible Liberian TPS applicants who have "continuously resided in the United States" since June 1, 1996, and who have been "continuously physically present in the United States" since April 7, 1997.

**EFFECTIVE DATES:**

1. Extension of Designation and Re-registration

The extension of designation is effective on March 29, 1997, and will remain in effect until March 28, 1998. The primary re-registration procedures become effective on April 7, 1997, and will remain in effect until May 6, 1997.

2. Redesignation

The Liberian TPS redesignation is effective concurrently with the extension from March 29, 1997, until March 28, 1998. The registration period for the Liberian TPS redesignation program begins on April 7, 1997 and will remain in effect until October 6, 1997.

**FOR FURTHER INFORMATION CONTACT:**
Ronald Chirlin, Adjudications Officer, Immigration and Naturalization Service, Room 3214, 425 I Street, NW., Washington, DC 20536, telephone (202) 514–5014.

**SUPPLEMENTARY INFORMATION:**

**Background**

*Statutory Provisions for TPS*

1. Designation and Extension Under the TPS Program

Section 308(a)(7) of Public Law 104–132 renumbered section 244A of the Act. Under this section renumbered as INA 244 (8 U.S.C. 1254), the Attorney General is authorized to grant Temporary Protected Status in the United States to eligible aliens who are nationals of a foreign state designated by the Attorney General (or who have no nationality and last habitually resided in that state). The Attorney General may designate a state upon finding that the state is experiencing ongoing armed conflict, environmental disaster, or extraordinary and temporary conditions that prevent nationals or residents of the country from returning in safety.

At least 60 days before the end of a designation or extension of designation, the Attorney General, after consultation with appropriate agencies of the

(12 of 14), Page 12 of 14    Case: 25-2120, 05/28/2025, DktEntry: 49.25, Page 12 of 14
Case 3:25-cv-01766-EMC    Document 104-2    Filed 04/07/25    Page 11 of 35

Federal Register / Vol. 62, No. 66 / Monday, April 7, 1997 / Notices    16609

Government, reviews conditions in the foreign state for which the designation is in effect. The designation is extended if the Attorney General does not determine that termination is appropriate because the foreign state no longer meets the conditions for designation. INA 244(b)(3)(C). Through such an extension of designation, however, TPS continues to be available only to aliens who have been continuously physically present in the United States from the effective date of the designation. TPS is not available to aliens who have been physically present in the United States only from the effective date of the extension but who were not physically present from the date of the designation.

2. Redesignation of Liberia Under the TPS Program

Subsection 244(b)(1) of the Act implicitly permits the Attorney General to "redesignate" (that is, to designate under the TPS program a country that has been previously designated), as well as designated for the first time, if she first finds that the required conditions are met. The act of redesignation is referenced in subsection 244(c)(1)(A)(i), which requires that "the alien has been continuously physically present since the effective date of the most recent designation of the state." (Emphasis added.) This provision thus explicitly contemplates more than one designation. This redesignation of Liberia under the TPS program is nonetheless the first time that the Attorney General has found it appropriate to exercise her discretion to redesignate a country.

One factor in determining whether redesignation is appropriate is whether it will create a "magnet effect" for nationals of the country under consideration. In cases where the Attorney General contemplates redesignation, she may consider this possible magnet effect and any other factors weighing against redesignation, together with any discretionary factors in favor of redesignation. A significant discretionary factor in favor of redesignation is the intensification of civil strife and instability in the country under consideration.

The TPS statute imposes a requirement that, in order to be eligible for TPS, an alien must have been continuously physically present in the United States since the effective date of the most recent designation. This means that, regardless of when a designation may have been extended, in order to receive TPS an alien must have been physically present in the United States from the date of initial designation or from the date of any redesignation. INA 244(c)(1)(A)(i). The statute also authorizes the Attorney General to impose an additional requirement that an alien must have continuously resided in the United States since such date as the Attorney General may designate. INA 244(c)(1)(A)(ii). The authority to designate a separate date from which an alien must have continuously resided in the United States allows the Attorney General to tailor more narrowly the group of aliens to whom she determines it is appropriate to extend the coverage of a designation or redesignation.

The required June 1, 1996, residence date will apply to all applicants. For a small number of applicants with recent foreign travel, certain trips from the United States between June 1, 1996, and April 7, 1997 would be allowed under the definition of "continuously resided." Such trips after April 7, 1997 would be allowed within slightly narrower limits under the definition of "continuously physically present." See definitions at 8 CFR 244.1, formerly 8 CFR 240.1.

The initial registration period for this TPS redesignation continues from April 7, 1997 until October 6, 1997 in accordance with the required 180-day minimum period. INA 244(c)(1)(A)(iv).

*Extension of Designation of Liberia Under the TPS Program*

On March 27, 1991, the Attorney General designated Liberia for Temporary Protected Status for a period of 12 months, 56 FR 12746. The Attorney General subsequently extended the designation of Liberia under the TPS program for 5 additional 12-month periods with the last extension valid until March 28, 1997, 61 FR 8076.

The Attorney General has determined that temporary conditions continue to prevent nationals of Liberia from returning to their country in safety. Therefore, by this notice she is extending the designation of Liberia under the Temporary Protected Status program for an additional 12 months (until March 28, 1998) in accordance with sections 244(b)(3) (A) and (C) of the Act.

*Redesignation of Liberia Under the TPS Program*

In her discretion, the Attorney General has further determined that, in light of renewed conflict in Liberia during the first half of 1996, the temporary conditions that continue to exist in Liberia warrant redesignation. Therefore, pursuant to section 244(b)(1) of the Act, this notice concurrently grants Liberia a redesignation of TPS. With the redesignation of Liberia, TPS is now available to otherwise eligible applicants who are ineligible for reregistration under the extension of the initial designation, either because they came to the United States after the initial designation or because they failed to register in a timely manner under the initial designation.

By operation of statute, this redesignation extends the availability of TPS only to Liberians who have been continuously physically present in the United States from the effective date of this redesignation April 7, 1997. In addition, the Attorney General is exercising her discretion under INA section 244(c)(1)(A)(ii) to select a different and earlier date of June 1, 1996, from which Liberians must have continuously resided in the United States in order to receive TPS. Although the Attorney General finds that conditions in Liberia warrant redesignation, she has determined that it is appropriate to establish a separate cut-off date that relates to the renewed conflict in Liberia during the first half of 1996. Therefore, the Attorney General is imposing an additional June 1, 1996, residence date requirement.

*Notice of Extension of Designation of Liberia Under the Temporary Protected Status Program*

By the authority vested in me as Attorney General under section 244 of the Immigration and Nationality Act, as amended, (8 U.S.C. 1254), and as required by subsection 244(b)(3) (A) and (C) of the Act, I have consulted with the appropriate agencies of the U.S. Government concerning: (a) The conditions in Liberia and (b) whether permitting nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) to remain temporarily in the United States is contrary to the national interest of the United States. From these consultations, I find that:

(1) After renewed conflict in Liberia during the first half of 1996, and ongoing insecurity, there exist extraordinary and temporary conditions that prevent aliens who are nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) from returning to Liberia in safety; and

(2) Permitting nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) to remain temporarily in the United States is not contrary to the national interest of the United States.

Accordingly, extension of designation is ordered as follows:

(1) The designation of Liberia under section 244(b) of the Act is extended for an

(13 of 14), Page 13 of 14    Case: 25-2120, 05/28/2025, DktEntry: 49.25, Page 13 of 14
Case 3:25-cv-01766-EMC    Document 104-2    Filed 04/07/25    Page 12 of 35

**16610**    Federal Register / Vol. 62, No. 66 / Monday, April 7, 1997 / Notices

additional 12-month period from March 29, 1997, to March 28, 1998.

(2) I estimate that there are approximately 4,000 nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) who have been granted Temporary Protected Status and who are eligible for re-registration.

(3) In order to maintain current registration for Temporary Protected Status, a national of Liberia (or an alien having no nationality who last habitually resided in Liberia) who received a grant of TPS during the initial period of designation from March 27, 1991, to March 27, 1992, must comply with the re-registration requirements contained in 8 CFR 244.17, formerly 8 CFR 240.17, which are described in pertinent part in paragraphs (4) and (5) of this notice.

(4) A national of Liberia (or an alien having no nationality who last habitually resided in Liberia) who previously has been granted TPS must re-register by filing a new Application for Temporary Protection Status, Form I–821, together with an Application for Employment Authorization, Form I–765, within the 30-day period beginning on April 7, 1997 and ending on May 6, 1997 in order to be eligible for Temporary Protected Status during the period from March 29, 1997, to March 28, 1998. Late re-registration applications will be allowed pursuant to 8 CFR 244.17(c), formerly 8 CFR 240.17(c).

(5) There is no fee for Form I–821 filed as part of the re-registration application. The fee prescribed in 8 CFR 103.7(b)(1), currently seventy dollars ($70), will be charged for Form I–765, filed by an alien requesting employment authorization pursuant to the provisions of paragraph (4) of this notice (unless submitted with a fee waiver request properly documented in accordance with 8 CFR 244.20, formerly 8 CFR 240.20). An alien who does not request employment authorization must nonetheless file Form I–821 together with Form I–765, but in such cases both Form I–821 and Form I–765 should be submitted without fee.

(6) Pursuant to section 244(b)(3)(A) of the Act, the Attorney General will review, at least 60 days before March 28, 1998, the designation of Liberia under the TPS program to determine whether the conditions for designation continue to be met. Notice of that determination, including the basis for the determination, will be published in the **Federal Register**. If there is an extension of designation, late initial registration for TSP shall be allowed only pursuant to the requirements of 8 CFR 244.2(f)(2), formerly 8 CFR 240.2(f)(2). Any such future determination will apply to the more recent Liberian TPS registrants under the TPS redesignation as well as the re-registrants for the TPS extension.

*Notice of Redesignation of Liberia Under the Temporary Protected Status Program*

By the authority vested in me as Attorney General under section 244 of the Immigration and Nationality Act, as amended, (8 U.S.C. 1254), and pursuant to the discretion vested in the Attorney General under subsection 244(b)(1) of the Act, I have consulted with the appropriate agencies of the U.S. Government concerning redesignation of Liberia under the Temporary Protected Status program. From these consultations I find that after renewed conflict in Liberia during the first half of 1996, and ongoing insecurity, there exist extraordinary and temporary conditions that prevent aliens who are nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) from returning to Liberia in safety.

In consideration of these consultations and other relevant factors, and in the exercise of my discretion, I order redesignation of Liberia as follows:

(1) Liberia is redesignated under section 244(b)(1)(C) of the Act. Nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) who have "continuously resided in the United States" since June 1, 1996, and have been "continuously physically present" since April 7, 1997 may apply for Temporary Protected Status within the registration period which begins April 7, 1997 and ends on October 6, 1997.

(2) I estimate that there are no more than 5,000 nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) who are currently in nonimmigrant or unlawful status (in addition to the earlier Liberian TPS registrants) and are, therefore, eligible for Temporary Protected Status under this redesignation.

(3) Except as specifically provided in this notice, application for TPS by nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) must be filed pursuant to the provisions of 8 CFR part 244, formerly 8 CFR 240. Aliens who wish to apply for TPS must file an Application for Temporary Protected Status, Form I–821, together with an Application for Employment Authorization, Form I–765, during the registration period, which begins on April 7, 1997 and will remain in effect until October 6, 1997.

(4) A fee of fifty dollars ($50) will be charged for each Application for Temporary Protected Status, Form I–821, filed during the registration period.

(5) The fee prescribed in 8 CFR 103.7(b)(1), which is currently seventy dollars ($70), will be charged for each Application for Employment Authorization Form I–765, filed by an alien requesting employment authorization. An alien who does not request employment authorization must nevertheless file Form I–765, together with Form I–821, for informational purposes, but in such cases Form I–765 should be submitted without fee. Both Forms I–821 and I–765 may be submitted without the required fees if a properly documented fee waiver request in accordance with 8 CFR 244.20, formerly 8 CFR 240.20, accompanies the forms.

(6) Information concerning the TPS redesignation program for nationals of Liberia (and aliens having no nationally who last habitually resided in Liberia) will be available at local Immigration and Naturalization Service offices upon publication of this notice.

Dated: April 1, 1997.

**Janet Reno,**
*Attorney General.*
[FR Doc. 97–8925 Filed 4–4–97; 8:45 am]
**BILLING CODE 4410–01–M**

# DEPARTMENT OF LABOR

## Office of the Secretary

### Privacy Act of 1974; Publication of Two New Systems of Records; Amendments to an Existing System

**AGENCY:** Office of the Secretary, Labor.
**ACTION:** Notice of two new systems of records; amendments to an existing system of records.

**SUMMARY:** The Privacy Act of 1974 requires that each agency publish notice of all of the systems of records that it maintains. This document adds two new systems of records to this Department's current systems of records. With the addition of these two new systems of records, the Department will be maintaining 144 systems of records. This document also proposes to amend the Routine Use Category for one of the Department's existing systems of records. The proposed amended system will permit the Department to provide important information to state unemployment insurance agencies in order to facilitate the processing of unemployment insurance claims for Department of Labor (DOL) employees. Finally, various administrative (non-substantive) amendments to this same existing system are being made at this time.

**DATES:** Persons wishing to comment on this new system of records and on the proposed new Routine Use may do so by May 19, 1997. Unless there is a further notice in the **Federal Register**, the two new systems of records, and the proposed amendment to the existing system, will become effective on June 2, 1997. The remaining amendments to DOL/OASAM–1 are administrative (non-substantive), and therefore, will become effective on April 7, 1997.

**ADDRESSES:** Written comments may be mailed or delivered to Robert A. Shapiro, Associate Solicitor, Division of Legislation and Legal Counsel, 200 Constitution Avenue, NW., Room N–2428, Washington, DC 20210.

**FOR FURTHER INFORMATION CONTACT:** Miriam McD. Miller, Co-Counsel for Administrative Law, Office of the Solicitor, Department of Labor, 200 Constitution Avenue, NW., Room N–

**68130** Federal Register / Vol. 88, No. 190 / Tuesday, October 3, 2023 / Notices

# DEPARTMENT OF HOMELAND SECURITY

## U.S. Citizenship and Immigration Services

[CIS No. 2761–23; DHS Docket No. USCIS–2021–0003]

RIN 1615–ZB86

### Extension and Redesignation of Venezuela for Temporary Protected Status

**AGENCY:** U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security (DHS).

**ACTION:** Notice of Temporary Protected Status (TPS) extension and redesignation.

**SUMMARY:** Through this notice, the Department of Homeland Security (DHS) announces that the Secretary of Homeland Security (Secretary) is extending the designation of Venezuela for Temporary Protected Status (TPS) for 18 months, beginning on March 11, 2024 and ending on September 10, 2025. This extension allows existing TPS beneficiaries to retain TPS through September 10, 2025, if they otherwise continue to meet the eligibility requirements for TPS. Existing TPS beneficiaries who wish to extend their status through September 10, 2025, must re-register during the re-registration period described in this notice. Separately, the Secretary is also redesignating Venezuela for TPS. The redesignation of Venezuela allows additional Venezuelan nationals (and individuals having no nationality who last habitually resided in Venezuela) who have been continuously residing in the United States since July 31, 2023, to apply for TPS for the first time during the initial registration period described under the redesignation information in this notice. In addition to demonstrating continuous residence in the United States since July 31, 2023, and meeting other eligibility criteria, initial applicants for TPS under this designation must demonstrate that they have been continuously physically present in the United States since October 3, 2023, the effective date of this redesignation of Venezuela for TPS. The Secretary's actions represent two distinct TPS designations of Venezuela—the first designation of Venezuela that was announced on March 9, 2021 (Venezuela 2021) and is being extended in this FRN, and this second action, redesignating Venezuela on October 3, 2023 (Venezuela 2023).

**DATES:**

*Extension of Designation of Venezuela for TPS:* The 18-month extension of Venezuela 2021 begins on March 11, 2024 and will remain in effect for 18 months, ending on September 10, 2025. The extension affects existing beneficiaries of TPS and those who filed initial applications for TPS under Venezuela 2021 that were pending as of the date of this notice.

*Re-registration:* The 60-day re-registration period for existing beneficiaries under Venezuela 2021 runs from January 10, 2024, through March 10, 2024. (Note: It is important for re-registrants to timely re-register during the registration period and not to wait until their Employment Authorization Document (EAD) expires. Delaying re-registration could result in gaps in their employment authorization documentation.)

*Redesignation of Venezuela for TPS (Venezuela 2023):* The 18-month redesignation of Venezuela for TPS begins on October 3, 2023, and will remain in effect for 18 months, ending on April 2, 2025. The redesignation affects potential first-time applicants and others who do not currently have TPS.

*First-time Registration:* The initial registration period for new applicants under the Venezuela 2023 TPS redesignation begins on October 3, 2023, and will remain in effect through April 2, 2025.

**FOR FURTHER INFORMATION CONTACT:**

• You may contact René Cutlip-Mason, Chief, Humanitarian Affairs Division, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, Department of Homeland Security, by mail at 5900 Capital Gateway Drive, Camp Springs, MD 20746, or by phone at 800–375–5283.

• For more information on TPS, including guidance on the registration process and additional information on eligibility, please visit the USCIS TPS web page at *https://www.uscis.gov/tps*. You can find specific information about Venezuela's TPS designation by selecting "Venezuela" from the menu on the left side of the TPS web page.

• If you have additional questions about TPS, please visit *uscis.gov/tools*. Our online virtual assistant, Emma, can answer many of your questions and point you to additional information on our website. If you cannot find your answers there, you may also call our USCIS Contact Center at 800–375–5283 (TTY 800–767–1833).

• Applicants seeking information about the status of their individual cases may check Case Status Online, available on the USCIS website at *uscis.gov*, or visit the USCIS Contact Center at *https://www.uscis.gov/contactcenter*.

• You also can find more information at local USCIS offices after this notice is published.

**SUPPLEMENTARY INFORMATION:**

### Table of Abbreviations

BIA—Board of Immigration Appeals
CFR—Code of Federal Regulations
DHS—U.S. Department of Homeland Security
DOS—U.S. Department of State
EAD—Employment Authorization Document
FNC—Final Nonconfirmation
Form I–131—Application for Travel Document
Form I–765—Application for Employment Authorization
Form I–797—Notice of Action
Form I–821—Application for Temporary Protected Status
Form I–9—Employment Eligibility Verification
Form I–912—Request for Fee Waiver
Form I–94—Arrival/Departure Record
FR—Federal Register
Government—U.S. Government
IER—U.S. Department of Justice, Civil Rights Division, Immigrant and Employee Rights Section
IJ—Immigration Judge
INA—Immigration and Nationality Act
SAVE—USCIS Systematic Alien Verification for Entitlements Program
Secretary—Secretary of Homeland Security
TPS—Temporary Protected Status
TTY—Text Telephone
USCIS—U.S. Citizenship and Immigration Services
U.S.C.—United States Code

### Purpose of This Action (TPS)

Through this notice, DHS sets forth procedures necessary for nationals of Venezuela (or individuals having no nationality who last habitually resided in Venezuela) to (1) re-register for TPS and apply to renew their EAD with USCIS or (2) submit an initial registration application under the redesignation and apply for an EAD.

Re-registration is limited to individuals who have previously registered for TPS under Venezuela 2021[1] and whose applications have been granted. If you do not re-register properly within the re-registration period, USCIS may withdraw your TPS following appropriate procedures. *See* 8 CFR 244.14.

For individuals who have already been granted TPS under Venezuela 2021, the 60-day re-registration period for existing beneficiaries runs from January 10, 2024, through March 10, 2024. USCIS will issue new EADs with

---

[1] *See Designation of Venezuela for Temporary Protected Status and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 FR 13574 (Mar. 9, 2021).